# Exhibit 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP,<br>1600 Pennsylvania Avenue NW<br>Washington, D.C. 20500,<br><br>THE TRUMP ORGANIZATION, INC.,<br>TRUMP ORGANIZATION LLC,<br>THE TRUMP CORPORATION,<br>DJT HOLDINGS LLC,<br>THE DONALD J. TRUMP REVOCABLE TRUST,<br>725 Fifth Avenue<br>New York, NY 10022,<br><br>TRUMP OLD POST OFFICE LLC,<br>1100 Pennsylvania Avenue NW<br>Washington, D.C. 20004,<br><br>         Plaintiffs,<br><br>v.<br><br>ELIJAH E. CUMMINGS, in his official capacity as Chairman of the House Committee on Oversight and Reform,<br>PETER KENNY, in his official capacity as Chief Investigative Counsel of the House Committee on Oversight and Reform,<br>2157 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>MAZARS USA LLP,<br>135 West 50th Street<br>New York, NY 10020,<br><br>         Defendants. | Civil Action No. _____ |

## **COMPLAINT**

  Plaintiffs bring this action against Defendants for declaratory and injunctive relief and allege as follows:

# INTRODUCTION

1. The Democrat Party, with its newfound control of the U.S. House of Representatives, has declared all-out political war against President Donald J. Trump. Subpoenas are their weapon of choice.

2. Democrats are using their new control of congressional committees to investigate every aspect of President Trump's personal finances, businesses, and even his family. Instead of working with the President to pass bipartisan legislation that would actually benefit Americans, House Democrats are singularly obsessed with finding something they can use to damage the President politically. They have issued more than 100 subpoenas and requests to anyone with even the most tangential connection to the President.

3. This case involves one of those subpoenas. Last week, Defendant Elijah E. Cummings invoked his authority as Chairman of the House Oversight Committee to subpoena Mazars USA LLP—the longtime accountant for President Trump and several Trump entities (all Plaintiffs here). Chairman Cummings asked Mazars for financial statements, supporting documents, and communications about Plaintiffs over an eight-year period—mostly predating the President's time in office.

4. Chairman Cummings requested this information because Michael Cohen—a felon who has pleaded guilty to lying to Congress—told the House Oversight Committee that the President had misrepresented his net worth while he was a private citizen. The Committee, according to Chairman Cummings, now needs to "investigate whether the President may have engaged in illegal conduct." The Chairman claims he can do so because the Oversight Committee can supposedly investigate "any matter at any time."

5. Chairman Cummings has ignored the constitutional limits on Congress' power to investigate. Article I of the Constitution does not contain an "Investigations Clause" or an "Oversight

- 2 -

Clause." It gives Congress the power to enact certain *legislation*. Accordingly, investigations are legitimate only insofar as they further some legitimate legislative purpose. No investigation can be an end in itself. And Congress cannot use investigations to exercise powers that the Constitution assigns to the executive or judicial branch.

6. Chairman Cummings' subpoena of Mazars lacks a legitimate legislative purpose. There is no possible legislation at the end of this tunnel; indeed, the Chairman does not claim otherwise. With this subpoena, the Oversight Committee is instead assuming the powers of the Department of Justice, investigating (dubious and partisan) allegations of illegal conduct by private individuals outside of government. Its goal is to expose Plaintiffs' private financial information for the sake of exposure, with the hope that it will turn up something that Democrats can use as a political tool against the President now and in the 2020 election.

7. Because Chairman Cummings' subpoena to Mazars threatens to expose Plaintiffs' confidential information and lacks "a legitimate legislative purpose," this Court has the power to declare it invalid and to enjoin its enforcement. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975) (endorsing *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1259-60 (D.C. Cir. 1973)). Plaintiffs are entitled to that relief.

**PARTIES**

8. Plaintiff Donald J. Trump is the 45th President of the United States. President Trump brings this suit solely in his capacity as a private citizen.

9. Plaintiff The Trump Organization, Inc. is a New York corporation with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

10. Plaintiff Trump Organization LLC is a New York limited liability company with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

- 3 -

11. Plaintiff The Trump Corporation is a New York corporation with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

12. Plaintiff DJT Holdings LLC is a Delaware limited liability company with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

13. Plaintiff The Donald J. Trump Revocable Trust is a trust created and operating under the laws of New York.

14. Plaintiff Trump Old Post Office LLC is a Delaware limited liability company with its principal place of business at 1100 Pennsylvania Avenue NW, Washington, D.C. 20004.

15. Defendant Elijah E. Cummings is the U.S. Representative for Maryland's 7th District and the Chairman of the House Committee on Oversight and Reform. He is a member of the Democrat party. Chairman Cummings issued the subpoena in question and is sued in his official capacity.

16. Defendant Peter Kenny is the Chief Investigative Counsel for the House Committee on Oversight and Reform. He signed and served the subpoena in question and is sued in his official capacity.

17. Defendant Mazars USA LLP is a New York limited liability partnership with its principal executive office at 135 West 50th Street, New York, NY 10020. Mazars is an accounting firm and the recipient of Chairman Cummings' subpoena. Mazars is a defendant to ensure that Plaintiffs can obtain effective relief.

## JURISDICTION & VENUE

18. This Court has subject-matter jurisdiction because this case arises under the Constitution and laws of the United States. 28 U.S.C. §§1331, 2201.

19. Venue is proper because Chairman Cummings officially resides in the District. 28 U.S.C. §1391.

## BACKGROUND

**I.     Challenges to Congressional Subpoenas**

20.     Not infrequently, federal courts adjudicate the legality of congressional subpoenas. Most such cases follow a familiar fact pattern: Congress issues a subpoena, the target does not comply, Congress tries to force compliance in federal court, and the target raises the illegality of the subpoena as a defense.

21.     But this defensive posture is not the only way to challenge a congressional subpoena. When Congress "seeks information directly from a party," that party "can resist and thereby test the subpoena." *Eastland*, 421 U.S. at 501 n.14. But when Congress "seeks that same information from a third person," this option is not available; the third party might not have an interest in protecting the information or resisting the subpoena, and its "compliance" with the subpoena "could frustrate any judicial inquiry." *Id.* For that reason, the law allows the person whose information will be exposed to sue in federal court for an "injunction or declaratory judgment" to block the subpoena's "issuance, service on, or enforcement against" the "third party." *Eastland*, 488 F.2d at 1259. The key question in such a case is "whether a legitimate legislative purpose is present." *Eastland*, 421 U.S. at 501.

22.     The "legitimate legislative purpose" requirement stems directly from the Constitution. "The powers of Congress … are dependent solely on the Constitution," and "no express power in that instrument" allows Congress to investigate individuals or to issue compulsory process. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880). The Constitution instead permits Congress to enact certain kinds of *legislation. See, e.g.*, Art. I, §8. Thus, Congress' power to investigate "is justified solely as an adjunct to the legislative process." *Watkins*, 354 U.S. at 197. "Congress is not invested with a general power to inquire into private affairs. The subject of any inquiry always must be one on which legislation could be had." *Eastland*, 421 U.S. at 504 n.15 (cleaned up); *see also Quinn v. United States*, 349 U.S. 155, 161 (1955) ("[T]he power to investigate" does not "extend to an area in which Congress is forbidden to legislate.").

- 5 -

23. "Oversight" and "transparency," in a vacuum, are not legitimate legislative purposes that can justify subpoenaing a private citizen. For more than a century, in fact, the Supreme Court has been quite "sure" that neither the House nor Senate "possesses the general power of making inquiry into the private affairs of the citizen." *Kilbourn*, 103 U.S. at 190. "[T]here is no congressional power to expose for the sake of exposure." *Watkins*, 354 U.S. at 200. "No inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of the Congress." *Id.* at 187.

24. Additionally, because Congress must have a legitimate *legislative* purpose, it cannot use subpoenas to exercise "any of the powers of law enforcement." *Quinn*, 349 U.S. at 161. Those powers "are assigned under our Constitution to the Executive and the Judiciary." *Id.* Put simply, Congress is not "a law enforcement or trial agency," and congressional investigations conducted "for the personal aggrandizement of the investigators" or "to 'punish' those investigated" are "indefensible." *Watkins*, 354 U.S. at 187. Our tripartite system of separated powers requires that "any one of the[] branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." *Kilbourn*, 103 U.S. at 190-91.

25. Finally, when a subpoena is issued by a single committee, any legislative purpose is not legitimate unless it falls within that committee's jurisdiction. "The theory of a committee inquiry is that the committee members are serving as the representatives of the parent assembly in collecting information for a legislative purpose." *Watkins*, 354 U.S. at 200. Congress therefore must "spell out that group's jurisdiction and purpose with sufficient particularity … in the authorizing resolution," which "is the committee's charter." *Id.* at 201. The committee "must conform strictly to the resolution." *Exxon Corp. v. FTC*, 589 F.2d 582, 592 (D.C. Cir. 1978). And when an investigation is "novel" or "expansive," courts will construe the committee's jurisdiction "narrowly." *Tobin v. United States*, 306 F.2d 270, 275 (D.C. Cir. 1962).

- 6 -

**II.     House Democrats' Campaign of Abusive Investigations**

26.     After the 2018 midterm elections, the Democrat party won a majority of seats in the House. Every House committee in the current Congress is thus chaired by a Democrat.

27.     On the night of the election, soon-to-be Speaker Nancy Pelosi announced that "tomorrow will be a new day in America" because House Democrats will use their new majority to enact "checks and balances to the Trump administration." And "subpoena power," she explained a few days later, is "a great arrow to have in your quiver." Chairman Cummings echoed the Speaker's sentiments, stating that "it's a new day" and that "[President Trump] has to be accountable." He added that "we've got to address this issue of exposing President Trump." "Congress is going to force transparency on this president," another Democrat congressional aide repeated. "Once there is transparency, I am sure there are going to be a lot of questions that flow from that."

28.     The Democrats' statements about "checks and balances" and "transparency" were not referring to legislation. Instead, according to news outlets that interviewed party leaders and aides shortly after the election, House Democrats meant that they were going to spend the next two years launching a "fusillade" of subpoenas in order to "drown Trump with investigations," "turn Trump's life upside down," and "make Trump's life a living hell."

29.     Prominent Democrats were quite candid about their party's mission. Representative John Yarmuth, now chair of the House Budget Committee, stated that the new House majority would be "brutal" for President Trump: "We're going to have to build an air traffic control tower to keep track of all the subpoenas flying from here to the White House." Another senior Democrat official revealed that, from November 2018 to January 2019, House Democrats were busy preparing a "subpoena cannon" to fire at President Trump based on a "wish-list" of nearly 100 investigatory topics. Representative Nita Lowey, now chair of the House Appropriations Committee, confirmed a

- 7 -

long list of topics that House Democrats planned to investigate and stated, "We have our boxing gloves on. I'm ready. And so is Nancy."

30.     The Democrats' "focus," according to then–Minority Whip Steny Hoyer, would be examining "the President in terms of what [business] interests he has" from his time as a private citizen. That focus would include the President's family. Future Oversight Committee member Alexandria Ocasio-Cortez, for instance, responded to a joke by the President's son Donald Trump Jr. with an explicit threat: "Please keep it coming Jr – it's definitely a 'very, very large brain' idea to troll a member of a body that will have subpoena power in a month." The Democrats want this personal information in the hopes they will find something they can use to score political points against the President leading up to the 2020 election.

31.     House Democrats are executing their plan in earnest. Recently, several House committees issued a flurry of subpoenas and requests for information about the President's family, personal finances, and businesses. Just one request by Chairman Nadler of the House Judiciary Committee, for example, asked 81 different individuals for information about President Trump.

32.     A few days ago, House Republicans discovered that Chairman Cummings had executed secret memoranda of understanding with Chairman Adam Schiff of the House Permanent Select Committee on Intelligence and Chairwoman Maxine Waters of the House Financial Services Committee. In the memoranda, the Chairs agreed to coordinate their subpoenas in order to inflict maximum political damage on President Trump. According to one congressional official with knowledge of the memoranda, they are "an agreement to conspire and coordinate their efforts to attack and investigate POTUS" by targeting his business and financial records.

33.     Last Monday, Chairman Cummings sent one such subpoena to Mazars—Plaintiffs' longtime accountant. That subpoena is the subject of this lawsuit.

**III.     Chairman Cummings' Subpoena to Mazars**

34.     The Mazars subpoena is based on one of the worst examples of the House Democrats' zeal to attack President Trump under the guise of investigations: Michael Cohen's testimony to the House Oversight Committee on February 27, 2019.

35.     The Cohen hearing was a partisan stunt, not a good-faith effort to obtain accurate testimony from a reliable witness. Cohen is a convicted liar; before his February hearing, he had pleaded guilty to several federal crimes including making false statements to Congress. Cohen's testimony was orchestrated by his lawyer Lanny Davis, a political operative for the Democrat party, and Cohen met extensively with House Democrats about the contents of his testimony before he gave it. The reason that Cohen testified, moreover, is so Chairman Cummings and other Democrats would support his request for leniency during his federal sentencing. And according to Ranking Member Jim Jordan, Cohen told several additional lies to Congress in his February testimony.

36.     Nevertheless, Chairman Cummings seized on Cohen's allegation that certain financial statements—which Mazars had prepared for President Trump while he was a private citizen—contained inaccuracies. Citing Cohen's testimony, Chairman Cummings wrote to Mazars on March 20, 2019, asking it to produce the following information about President Trump:

> With respect to Donald J. Trump, Donald J. Trump Revocable Trust, the Trump Organization Inc., the Trump Organization LLC, the Trump Corporation, DJT Holdings LLC, the Trump Old Post Office LLC, the Trump Foundation, and any parent, subsidiary, affiliate, joint venture, predecessor, or successor of the foregoing:
>
> 1.     All statements of financial condition, annual statements, periodic financial reports and independent auditors' reports prepared, compiled, reviewed, or audited by Mazars USA LLP or its predecessor, WeiserMazars LLP;
>
> 2.     Without regard to time, all engagement agreements or contracts related to the preparation, compilation, review, or auditing of the items described in Request Number 1;
>
> 3.     All underlying, supporting, or source documents and records used in the preparation, compilation, review, or auditing of items described in Request

- 9 -

        Number 1, or any summaries of such documents and records relied upon, or any requests for such documents and records; and

4.     All memoranda, notes, and communications related to the preparation, compilation, review, or auditing of the items described in Request Number 1, including, but not limited to:

    a.     all communications between Donald Bender and Donald J. Trump or any employee or representative of the Trump Organization; and

    b.     all communications related to potential concerns that records, documents, explanations, or other information, including significant judgments, provided by Donald J. Trump or other individuals from the Trump Organization, were incomplete, inaccurate, or otherwise unsatisfactory.

        Unless otherwise noted, the time period covered by this request is from January 1, 2009, to the present.

    37.     Chairman Cummings did not consult with Committee Republicans before sending his request to Mazars. When they discovered the request, Representatives Jordan and Mark Meadows—the Ranking Member of the Oversight Committee and the Subcommittee on Government Operations, respectively—objected. They wrote Mazars informing it that, because Chairman Cummings' request seeks "information and material about President Trump's personal finances … well before [he] was even a candidate for federal office," it "does not appear to have a valid legislative purpose and instead seems to seek information to embarrass a private individual." The Ranking Members repeated their concerns in a letter to Chairman Cummings, explaining that the Chairman's request "seems to examine facts relating to a transaction that never materialized" and other "information [from] … well before the President was even a candidate." This is not an attempt at "legitimate oversight," they added; its only purpose is "to embarrass President Trump" and to maintain House Democrats' "repeated partisan attacks on the President."

    38.     Mazars, through its outside counsel, wrote back to Chairman Cummings on March 27. Mazars informed Chairman Cummings that it "cannot voluntarily turn over the documents."

- 10 -

39. Mazars was correct. Under its contract with Plaintiffs, Mazars must abide by the American Institute of CPAs' ethical rules, which prohibit accountants from "disclos[ing] any confidential client information without the specific consent of the client." AICPA Code of Prof'l Conduct §1.700.001.01. New York law imposes the same duty. *See* 8 N.Y.C.R.R. §29.10(c) ("[U]nprofessional conduct" by accountants includes the "revealing of personally identifiable facts, data or information obtained in a professional capacity without the prior consent of the client."). A congressional subpoena does not relieve Mazars from these duties, unless the subpoena is "validly issued and enforceable." AICPA Code §1.700.001.02.

40. Chairman Cummings thus tried to craft a subpoena that would hold up in court. Sensing this would be a tall order, the Chairman waited until the House left for its Easter break to circulate a memorandum about the subpoena and then to issue it. This maneuver allowed him to subpoena Mazars without first conferring with Committee Republicans and having to defend his reasoning at an open meeting of the Oversight Committee.

41. Chairman Cummings' memorandum, dated April 12, 2019, again cited Cohen's testimony as the basis for subpoenaing Mazars. The Chairman also suggested that "news reports have raised additional concerns regarding the President's financial statements and representations." But the first "news report"—a blog post from MSNBC's Rachel Maddow Show—merely repeated Cohen's testimony. And the second "news report"—a March 2019 article from the Washington Post—quoted legal experts who explained why the financial statements did not break any laws. The Chairman's memorandum nonetheless stated that the Committee needed to investigate "whether the President has been accurate in his financial reporting."

42. Ranking Member Jordan again objected to Chairman Cummings' planned subpoena. In an April 15 letter and memorandum, the Ranking Member explained that the subpoena "is an unpreceded abuse of the Committee's subpoena authority to target and expose the private financial

- 11 -

information of the President of the United States" for "political gain." The subpoena is an impermissible attempt to "expose the private affairs of individuals," the Ranking Member explained, because "Chairman Cummings has cited no specific law or legislative proposal for which he requires eight years of sensitive, personal financial information about President Trump." Ranking Member Jordan also noted his deep concern that Chairman Cummings would selectively leak whatever information he obtained from Mazars, citing examples where the Chairman had strategically leaked similar sensitive information in the past.

43. Despite the Ranking Members' objections, Chairman Cummings issued the subpoena to Mazars that same day. The subpoena was identical to the Chairman's initial request for information, except that it asked for information from "2011 through 2018" instead of "2009 to the present." The subpoena currently orders Mazars to comply by noon on April 29, 2019.

44. Ranking Member Jordan responded to the subpoena in a letter dated April 17. The subpoena, he explained, "is an act of raw partisan politics meant only to further your obsession with attacking the President of the United States." Chairman Cummings "did not dispute the fact that [his] subpoena to Mazars is part of a coordinated and carefully managed campaign to use congressional oversight for political gain," the Ranking Member observed, and never "articulated how the sensitive, personal financial information [he] seek[s] will advance a legitimate legislative purpose."

45. Plaintiffs bring this suit to challenge the validity and enforceability of Chairman Cummings' subpoena. Now that the subpoena has issued, Mazars faces an unfair choice: ignore the subpoena and risk contempt of Congress, or comply with the subpoena and risk liability to Plaintiffs if the subpoena is invalid or unenforceable. To resolve these conflicting commands, the D.C. Circuit has instructed third-party accountants like Mazars to hold onto the subpoenaed materials until the dispute over the subpoena's validity is finally resolved in court: "[AICPA] Rule 301 … explains that it 'shall not be construed ... to affect in any way the member's obligation to comply with a validly issued

and enforceable subpoena or summons.' But [the client] challenges the enforceability of a subpoena …. Thus [the accountant] c[an] refuse to produce the documents, thereby allowing [the client to litigate the subpoena], without violating its obligation to comply with enforceable subpoenas." *United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010). Congress thus cannot take any action against Mazars until this litigation is finally resolved.

## CLAIM FOR RELIEF

46. Plaintiffs incorporate all their prior allegations.

47. Chairman Cummings' subpoena is invalid and unenforceable because it has no legitimate legislative purpose.

48. The subpoena seeks to investigate events that occurred while President Trump was a private citizen, years before he was even a candidate for public office.

49. The subpoena seeks to investigate events that could not possibly lead to legislation within the Oversight Committee's statutory jurisdiction and constitutional authority.

50. The subpoena is an attempt to investigate and adjudicate possible violations of federal law by private individuals—law-enforcement powers that only the executive and judicial branches can exercise.

**WHEREFORE**, Plaintiffs ask this Court to enter judgment in their favor and to provide the following relief:

a. A declaratory judgment that Chairman Cummings' subpoena is invalid and unenforceable;

b. A permanent injunction quashing Chairman Cummings' subpoena;

c. A permanent injunction prohibiting Chairman Cummings and Mr. Kenny from taking any actions to enforce the subpoena, from imposing sanctions for noncompliance with the subpoena, and from inspecting, using, maintaining, or disclosing any information obtained as a result of the subpoena;

  d. A temporary restraining order and preliminary injunction prohibiting Mazars from producing the requested information, and prohibiting Chairman Cummings and Mr. Kenny from taking any actions to enforce the subpoena, until the subpoena's validity has been finally adjudicated on the merits;

  e. Plaintiffs' reasonable costs and expenses, including attorneys' fees; and

  f. All other preliminary and permanent relief to which Plaintiffs are entitled.

                Respectfully submitted,

Dated: April 22, 2019          *s/ William S. Consovoy*

Stefan C. Passantino (D.C. Bar #480037)  William S. Consovoy (D.C. Bar #493423)
MICHAEL BEST & FRIEDRICH LLP    Cameron T. Norris
1000 Maine Ave. SW, Ste. 400      CONSOVOY MCCARTHY PARK PLLC
Washington, D.C. 20024        3033 Wilson Blvd., Ste. 700
(202) 747-9582           Arlington, VA 22201
spassantino@michaelbest.com      (703) 243-9423
                will@consovoymccarthy.com
*Counsel for The Trump Organization, Inc., Trump* cam@consovoymccarthy.com
*Organization LLC, The Trump Corporation, DJT*
*Holdings LLC, The Donald J. Trump Revocable*  Patrick Strawbridge
*Trust, and Trump Old Post Office LLC*     CONSOVOY MCCARTHY PARK PLLC
                Ten Post Office Square
                8th Floor South PMB #706
                Boston, MA 02109
                patrick@consovoymccarthy.com

                *Counsel for President Donald J. Trump*