# Exhibit 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD J. TRUMP, DONALD J. TRUMP JR., ERIC TRUMP, IVANKA TRUMP,<br><br>and<br><br>THE DONALD J. TRUMP REVOCABLE TRUST, THE TRUMP ORGANIZATION, INC., TRUMP ORGANZATION LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER LLC, TRUMP ACQUISITION LLC, and TRUMP ACQUISITION, CORP.,<br><br>         Plaintiffs,<br><br>    - against -<br><br>DEUTSCHE BANK AG and CAPITAL ONE FINANCIAL CORP.,<br><br>         Defendants. | Docket No. _____<br><br>**COMPLAINT** |

Plaintiffs, by their attorneys Consovoy McCarthy Park PLLC and Mukasey Frenchman & Sklaroff LLP, bring this complaint against Defendants and allege as follows:

**A. INTRODUCTION**

  1. This case involves Congressional subpoenas that have no legitimate or lawful purpose. The subpoenas were issued to harass President Donald J. Trump, to rummage through every aspect of his personal finances, his businesses, and the private information of the President and his family, and to ferret about for any material that might be used to cause him political damage. No grounds exist to establish any purpose other than a political one.

  2. The House Permanent Select Committee on Intelligence and the House Financial Services Committee issued the subpoenas to Defendants Deutsche Bank AG and Capital One Financial Corp. These two financial institutions have long provided business and personal banking services to Plaintiffs.

3.      The Chairpersons of the Intelligence and Financial Services Committees (Adam B. Schiff and Maxine M. Waters) have confirmed the issuance of the subpoenas, making public statements to the media that emphasize their intention to probe every aspect of the private lives of the Trump family, their businesses, and even those with only the most tangential connection to Trump entities, regardless whether any evidence (credible or otherwise) exists to support such intrusive probes. The Committees have refused to provide copies of the subpoenas to Plaintiffs—preventing them from even knowing, let alone negotiating, the subpoenas' scope or breadth.

4.      Nonetheless, Defendants' descriptions of the subpoenas confirm their remarkable overbreadth. According to Defendants, the Committees are seeking **_all_** banking and financial records not just concerning the individual Plaintiffs, but also their own family members. This means the subpoenas request documents about accounts of the Plaintiffs' children (and in some cases, grandchildren).

5.      The subpoenas to the entities are equally intrusive and overbroad. They seek not only the Plaintiffs' documents, but also the financial records of their parents, subsidiaries, affiliates, branches, divisions, partnerships, properties, groups, special purpose entities, joint ventures, predecessors and successors. As if that were not broad enough, the subpoenas extend further to documents concerning each of the entities' current or former employees, officers, directors, shareholders, partners, members, consultants, managers, senior associates, staff employees, independent contractors, agents, attorneys, or other representatives.

6.      For most of the documents, the Committees demand records from the last ten years. For others, the request is unbounded—meaning the Committees seek records dating back decades, to the individual Plaintiffs' own childhoods.

7.      The intrusiveness and impropriety of these requests are obvious. The House of Representatives is demanding, among other things, records of every single checking withdrawal, credit-card swipe, or debit-card purchase—no matter how trivial or small—made by each and every

2

member of the Trump family. But the dates and times when these individuals purchased books, groceries and other personal items is not the business of the House of Representatives or anyone else. It is an abuse of power to claim otherwise (particularly since the Committees declined to ask Plaintiffs themselves for the records, or even to discuss the scope of their requests).

8. In an effort to justify their demands, the chairs of the Committees have claimed that the subpoenas are intended to investigate "potential foreign influence on the U.S. political process" or the use of the financial system for "illicit purposes." But the information they seek long predates the President's election to office, reaches well beyond transactions associated with foreign parties, and encompasses reams of account records for entities, individuals, children, and spouses who have never even been implicated in any probe.

9. The Committees have ignored the constitutional limits on Congress' power to investigate. Article I of the Constitution does not contain an "Investigations Clause" or an "Oversight Clause." It gives Congress the power to enact certain *legislation*. Accordingly, investigations are legitimate only insofar as they further some legitimate legislative purpose. No investigation can be an end in itself. And Congress cannot use investigations to exercise powers that the Constitution assigns to the executive or judicial branch.

10. The subpoenas to Deutsche Bank and Capital One lack any legitimate legislative purpose. There is no possible legislation at the end of this tunnel; indeed, the Committee Chairs have not claimed otherwise. With these subpoenas, the Committees are instead assuming the powers of the Department of Justice, investigating (dubious and partisan) rumors of illegal conduct by private individuals, many of whom are outside of government. Their goal is to rummage around Plaintiffs' private financial information in the hope that they will stumble upon something they can expose publicly and use as a political tool against the President.

11. Moreover, the Committees' attempts to obtain Plaintiffs' account records violate the statutory requirements that apply to the federal government under the Right to Financial Privacy Act

3

("RFPA"). Under the RFPA, federal authorities are required to follow certain steps—including the provision of notice and an opportunity to object—before obtaining private financial records. The Committees have ignored these requirements, and any production of account records by Deutsche Bank or Capital One would violate the law.

12. This Court has the power to declare the subpoenas invalid and enjoin Defendants from complying with them for at least two reasons. First, because the Committees' subpoenas threaten to expose Plaintiffs' confidential account information and lack "a legitimate legislative purpose," and second, because they violate the protections of the RFPA. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975) (endorsing *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1259-60 (D.C. Cir. 1973), which authorized a private right of action for declaratory and injunctive relief); 12 U.S.C. §3418 (authorizing injunctive relief to prevent violations of the RFPA). Plaintiffs are entitled to that relief.

**B. PARTIES**

13. Plaintiff Donald J. Trump is the 45th President of the United States. President Trump brings this suit solely in his capacity as a private citizen.

14. Plaintiff Donald J. Trump Jr. is the son of President Trump.

15. Plaintiff Eric Trump is the son of President Trump.

16. Plaintiff Ivanka Trump is the daughter of President Trump.

17. Plaintiff The Trump Organization, Inc. is a New York corporation with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

18. Plaintiff Trump Organization LLC is a New York limited liability company with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

19. Plaintiff DJT Holdings LLC is a Delaware limited liability company with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

20. Plaintiff DJT Holdings Managing Member LLC is a Delaware limited liability company with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

21. Plaintiff Trump Acquisition, LLC is a Delaware limited liability company with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

22. Plaintiff Trump Acquisition Corp. is a Delaware corporation with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

23. Plaintiff The Donald J. Trump Revocable Trust is a trust created and operating under the laws of New York.

24. Defendant Deutsche Bank AG is a bank organized under the laws of the Federal Republic of Germany with a branch at 60 Wall Street, New York, NY 10005. Deutsche Bank received one or more subpoenas from the Committees seeking account records and other documents concerning one or more of Plaintiffs.

25. Defendant Capital One Financial Corp. is a bank holding company headquartered in McLean, VA, with numerous branch offices in New York City. Capital One received one or more subpoenas from the Committees seeking account records and other documents concerning one or more of Plaintiffs.

**C.   JURISDICTION & VENUE**

26. This Court has subject-matter jurisdiction because this case arises under the Constitution and laws of the United States, 28 U.S.C. §§1331, 2201, and because it is brought to enforce the provisions of the RFPA, 12 U.S.C. §3416.

27. Venue is proper because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and a substantial part of the property that is the subject of Plaintiffs' action is situated in this district. 28 U.S.C. §1391(b)(2).

**D. BACKGROUND**

   **1. Challenges to Congressional Subpoenas**

   28. Not infrequently, federal courts adjudicate the legality of congressional subpoenas. Most such cases follow a familiar pattern: Congress issues a subpoena, the target does not comply, Congress tries to force compliance in federal court, and the target raises the illegality of the subpoena as a defense.

   29. But this defensive posture is not the only way to challenge a congressional subpoena. When Congress "seeks information directly from a party," that party "can resist and thereby test the subpoena." *Eastland*, 421 U.S. at 501 n.14. But when Congress "seeks that same information from a third person," this option is not available; the third party might not have an interest in protecting the information or resisting the subpoena, and its "compliance" with the subpoena "could frustrate any judicial inquiry." *Id.* For that reason, the law allows the person whose information will be exposed to sue in federal court for an injunction or declaratory judgment to block the third party from complying. *Eastland*, 488 F.2d at 1259, 1255. The third party cannot comply with the subpoena unless "a legitimate legislative purpose is present." *Eastland*, 421 U.S. at 501.

   30. The "legitimate legislative purpose" requirement stems directly from the Constitution. "The powers of Congress … are dependent solely on the Constitution," and "no express power in that instrument" allows Congress to investigate individuals or to issue compulsory process. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880). The Constitution instead permits Congress to enact certain kinds of *legislation. See, e.g.*, Art. I, §8. Thus, Congress' power to investigate "is justified solely as an adjunct to the legislative process." *Watkins*, 354 U.S. at 197. "Congress is not invested with a general power to inquire into private affairs. The subject of any inquiry always must be one on which legislation could be had." *Eastland*, 421 U.S. at 504 n.15 (cleaned up); *see also Quinn v. United States*, 349 U.S. 155, 161 (1955) ("[T]he power to investigate" does not "extend to an area in which Congress is forbidden to legislate.").

6

31. "Oversight" and "transparency," in a vacuum, are not legitimate legislative purposes that can justify subpoenaing a private citizen. For more than a century, in fact, the Supreme Court has been quite "sure" that neither the House nor Senate "possesses the general power of making inquiry into the private affairs of the citizen." *Kilbourn*, 103 U.S. at 190. "[T]here is no congressional power to expose for the sake of exposure." *Watkins*, 354 U.S. at 200. "No inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of the Congress." *Id.* at 187.

32. Additionally, because Congress must have a legitimate *legislative* purpose, it cannot use subpoenas to exercise "any of the powers of law enforcement." *Quinn*, 349 U.S. at 161. Those powers "are assigned under our Constitution to the Executive and the Judiciary." *Id.* Put simply, Congress is not "a law enforcement or trial agency," and congressional investigations conducted "for the personal aggrandizement of the investigators" or "to 'punish' those investigated" are "indefensible." *Watkins*, 354 U.S. at 187. Our tripartite system of separated powers requires that "any one of the[] branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." *Kilbourn*, 103 U.S. at 190-91.

33. Finally, when a subpoena is issued by a committee, any legislative purpose is not legitimate unless it falls within that committee's jurisdiction. "The theory of a committee inquiry is that the committee members are serving as the representatives of the parent assembly in collecting information for a legislative purpose." *Watkins*, 354 U.S. at 200. Congress therefore must "spell out that group's jurisdiction and purpose with sufficient particularity … in the authorizing resolution," which "is the committee's charter." *Id.* at 201. The committee "must conform strictly to the resolution." *Exxon Corp. v. FTC*, 589 F.2d 582, 592 (D.C. Cir. 1978). And when an investigation is "novel" or "expansive," courts will construe the committee's jurisdiction "narrowly." *Tobin v. United States*, 306 F.2d 270, 275 (D.C. Cir. 1962).

7

## 2. The Campaign of Abusive Investigations and Harassment of Plaintiffs

34. After the 2018 midterm elections, Democrats won a majority of seats in the House. Every House committee in the current Congress is thus chaired by a Democrat.

35. On the night of the election, soon-to-be House Speaker Nancy Pelosi announced that "tomorrow will be a new day in America" because the new majority would enact "checks and balances to the Trump administration." And "subpoena power," she explained a few days later, is "a great arrow to have in your quiver." "Congress is going to force transparency on this president," another congressional aide repeated. "Once there is transparency, I am sure there are going to be a lot of questions that flow from that."

36. The statements about "checks and balances" and "transparency" were not referring to legislation. Instead, according to news outlets that interviewed party leaders and aides shortly after the election, the statements meant that they were going to spend the next two years launching a "fusillade" of subpoenas in order to "drown Trump with investigations," "turn Trump's life upside down," and "make Trump's life a living hell."

37. Prominent Representatives were quite candid about their mission. Representative John Yarmuth, now chair of the House Budget Committee, stated that the new House majority would be "brutal" for President Trump: "We're going to have to build an air traffic control tower to keep track of all the subpoenas flying from here to the White House." Another senior official revealed that, from November 2018 to January 2019, Representatives were busy preparing a "subpoena cannon" to fire at President Trump based on a "wish-list" of nearly 100 investigatory topics. Representative Nita Lowey, now chair of the House Appropriations Committee, confirmed a long list of topics that the House planned to investigate and stated, "We have our boxing gloves on. I'm ready." Just last month, Chairwoman Waters declared that "I haven't forgotten about 45"—meaning President Trump. "I have the gavel—and subpoena power—and I am not afraid to use it."

8

38. The "focus," according to then–Minority Whip Steny Hoyer, would be examining "the President in terms of what [business] interests he has" from his time as a private citizen. Chairwoman Waters declared that "[w]e're going to find out where your money has come from." The Committees want this personal information in the hopes they will find something to score political points against the President leading up to the 2020 election.

39. The Committee Chairpersons are executing their plan in earnest. Recently, several House committees issued a flurry of subpoenas and requests for information about the President's family, personal finances, and businesses. Just one request by Chairman Jerrold Nadler of the House Judiciary Committee, for example, asked 81 different individuals and entities for information about President Trump.

40. A few weeks ago, Chairpersons Schiff, Waters, and Elijah Cummings of the House Oversight Committee agreed to coordinate their subpoenas in order to inflict maximum political damage on President Trump by targeting his business and financial records.

41. Last Monday, Chairman Cummings sent one such subpoena to Mazars USA LLP—Plaintiffs' longtime accountant.

42. The subpoenas at issue in this lawsuit were sent shortly thereafter.

**3.      The Subpoenas to Deutsche Bank and Capital One.**

43. Chairman Schiff and Chairwoman Waters issued statements to the press confirming the existence of the subpoenas to Defendants shortly after they were sent. Chairman Schiff confirmed that Deutsche Bank had received a "friendly" subpoena. Chairman Waters told the press that the subpoenas were sent as part of an alleged inquiry into the "potential use of the U.S. financial system for illicit purposes."

44. Plaintiffs, through counsel, contacted the Committees and requested copies of the subpoenas to help determine their scope. Notwithstanding their willingness to discuss the subpoenas

9

with the press, the Committees declined to provide copies of the subpoenas (or any information about their contents) to Plaintiffs.

45.     On April 17, 2019, counsel for Deutsche Bank confirmed in writing to Plaintiffs that it had received the subpoenas. According to Deutsche Bank, the subpoenas seek "records and/or information related to banking activities, including information regarding accounts, financings, and related financial information" for all of the named Plaintiffs.

46.     Moreover, the subpoenas to Deutsche Bank seek production of account records and other financial information for Plaintiffs' "parents, subsidiaries, affiliates, branches, divisions, partnerships, properties, groups, special purpose entities, joint ventures, predecessors, successors or any other entity in which they have or had a controlling interest." The subpoenas further extend to all "current or former employees, officers, directors, shareholders, partners, members, consultants, managers, senior associates, staff employees, independent contractors, agents, attorneys or other representatives" of the Plaintiff entities.

47.     For the individual Plaintiffs, Deutsche Bank has advised that the subpoenas seek banking and financial records for all "members of their immediate families," including any accounts for which they are beneficiaries, trustees, beneficial owners, or over which they have control. This sweeps in the complete banking and account records of numerous children—including minors—and spouses of the named individuals.

48.     Deutsche Bank subsequently confirmed that, in general, the subpoenas call for it to produce responsive documents from January 1, 2010 through the present—although for some documents (including account applications and opening documents), the subpoena requires production without any time limitation.

49.     Deutsche Bank informed Plaintiffs that, absent a court order, they intend to begin production of documents in response to the subpoena on May 6.

10

50. Plaintiffs subsequently contacted Capital One, which confirmed receipt of a subpoena that, upon information and belief, seeks similar documents from the same Plaintiffs. Capital One has informed Plaintiffs that it feels obligated to comply with the subpoena absent court intervention before May 6.

51. Plaintiffs have numerous accounts, including personal, family, and business accounts, at Deutsche Bank and Capital One.

52. The records at issue are protected from disclosure by the federal Right to Financial Privacy Act, 12 U.S.C. §3501 *et seq.*, which imposes strict procedural requirements on federal attempts to obtain account records. The Committees did not follow those procedures here and, as a result, the Act prohibits Deutsche Bank and Capital One from producing the account records.

53. Plaintiffs bring this suit to challenge the validity and enforceability of the subpoenas. Now that the subpoenas have issued, Deutsche Bank and Capital One face a difficult choice: ignore the subpoenas and risk contempt of Congress, or comply with the subpoenas and risk liability to Plaintiffs under the RFPA and other laws. To resolve these conflicting commands, courts instruct third-party custodians like Defendants to hold onto the subpoenaed materials until the dispute over the subpoenas' validity is finally resolved in court. *See United States v. AT&T Co.*, 567 F.2d 121, 129 (D.C. Cir. 1977); *United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010). Thus, Congress cannot take any action against Deutsche Bank or Capital One until this litigation is finally resolved.

**E.    CLAIMS FOR RELIEF**

**1.    The Subpoenas Exceed the Committees' Constitutional Authority**

54. Plaintiffs incorporate all their prior allegations.

55. The subpoenas are invalid and unenforceable because they have no legitimate legislative purpose.

56. The subpoenas seek to investigate events that occurred while President Trump was a private citizen, years before he was even a candidate for public office.

11

57. The subpoenas seek to investigate events that could not possibly lead to legislation within the Intelligence or Financial Services Committees' statutory jurisdiction and constitutional authority.

58. The subpoenas are an attempt to investigate and adjudicate possible violations of federal law by private individuals—law-enforcement powers that only the executive and judicial branches can exercise.

### 2. The Subpoenas Violate the Right to Financial Privacy Act

59. Plaintiffs incorporate all their prior allegations.

60. The RFPA prohibits Deutsche Bank and Capital One from giving a customer's protected account information to the federal government. 12 U.S.C. §3403(a).

61. Financial institutions can turn over a customer's information only if the government certifies that it has complied with the RFPA's procedures. §3403(b). For a subpoena, those procedures include (1) "reason to believe" that the records are "relevant to a legitimate law enforcement inquiry"; (2) giving a copy of the subpoena to the customer; and (3) waiting at least 10 days so the customer has a chance to object. §3405; *see also* §3408 (similar procedures for "written requests").

62. The Committees have not complied with the RFPA's provisions or issued the required certifications.

63. The RFPA authorizes injunctive relief "to require that the procedures of this chapter are complied with." §3418.

**WHEREFORE**, Plaintiffs ask this Court to enter judgment in their favor and to provide the following relief:

a. A declaratory judgment that the subpoenas are invalid and unenforceable;

b. A permanent injunction quashing the subpoenas;

c.  A permanent injunction prohibiting Deutsche Bank and Capital One from disclosing, revealing, delivering, or producing the requested information, or otherwise complying with the subpoenas;

d.  A temporary restraining order and preliminary injunction prohibiting Deutsche Bank and Capital One from disclosing, revealing, delivering, or producing the requested information, or otherwise complying with the subpoenas, until the subpoena's validity has been finally adjudicated on the merits;

e.  Plaintiffs' reasonable costs and expenses, including attorneys' fees; and

f.  All other preliminary and permanent relief to which Plaintiffs are entitled.

Dated: April 29, 2019

Marc L. Mukasey
MUKASEY FRENCHMAN & SKLAROFF LLP
250 Park Avenue, 7th Floor
New York, NY 10177
347-527-3940
marc.mukasey@mukaseylaw.com

*Counsel for The Trump Organization, Inc., Trump Organization LLC, The Trump Corporation, DJT Holdings LLC, DJT Holdings Managing Member LLC, The Donald J. Trump Revocable Trust, Trump Acquisition LLC, and Trump Acquisition, Corp.*

Respectfully submitted,

 *s/ Patrick Strawbridge* 
Patrick Strawbridge (*pro hac vice* pending)
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

William S. Consovoy
Cameron T. Norris
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

*Counsel for President Donald J. Trump, Donald J. Trump Jr., Eric Trump, and Ivanka Trump*

13