# Exhibit 20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

---

THE PEOPLE OF THE STATE OF NEW YORK

- against –

THE TRUMP CORPORATION,
d/b/a THE TRUMP ORGANIZATION,
TRUMP PAYROLL CORP.,
d/b/a THE TRUMP ORGANIZATION

Defendants.

Indictment No. 1473/2021

Decision and Order

---

JUAN M. MERCHAN, A.J.S.C.:

On January 24, 2022, Defendant Trump Corporation, Defendant Trump Payroll Corporation, (hereinafter "the Corporate Defendants") and Defendant Allen Weisselberg filed omnibus motions seeking various forms of relief. The People responded in opposition on May 20, 2022. The Corporate Defendants and Defendant Weisselberg submitted replies on June 7, 2022, and the People responded in opposition the following week. The Corporate Defendants joined the following portions of Defendant Weisselberg's application: (1) the motions to dismiss Counts 1 and 2 of the indictment; (2) the motions to dismiss Counts 4, 5, and 12 of the indictment as time barred under the statute of limitations; and (3) the motion to dismiss Count 15 as legally defective and unsupported by legally sufficient evidence.

On August 18, 2022, Defendant Weisselberg pled guilty. At the time of his plea, Defendant Weisselberg withdrew his motions. Because the Corporate Defendants joined in several of Defendant Weisselberg's applications, those arguments have been considered by this Court for purposes of this Decision and Order.

### INDICTMENT

The motion to inspect the grand jury minutes for legal sufficiency pursuant to CPL § 210.30(2) is granted. This Court has inspected the grand jury minutes and finds that the evidence presented to the grand jury was legally sufficient to support the charges in the indictment. This Court further finds that the grand jury proceedings were properly conducted, and that the integrity of the proceedings

was unimpaired. Therefore, the motion to dismiss the indictment pursuant to CPL § 210.35 is denied. The motion for release of the legal instructions is also denied. *See* § CPL 210.30(3).

The request for this Court to conduct an *in-camera* review of the grand jury minutes to determine whether certain pages previously withheld from the Corporate Defendants should have been turned over was previously granted. Upon review, the Court found that those withheld excerpts are not discoverable.

### GRAND JURY EVIDENCE AND LEGAL INSTRUCTIONS

The Corporate Defendants move to dismiss the indictment on the grounds that the People presumably violated evidentiary rules in the grand jury thereby impairing the integrity of the proceedings and resulting in deliberations premised on legally incompetent evidence. More specifically, the Corporate Defendants contend that the testimony of Mark Halpern of FTI Consulting "was so comprehensively flawed that he irreparably tainted the entire proceeding."[1] They further contend that the testimony of Donald Bender, an accountant from Mazars and exhibits that were used during his examination did not conform with the rules of evidence in the grand jury pursuant to CPL § 190.30.

This Court has reviewed the testimony of Mark Halpern and Donald Bender and finds that the evidence was legally sufficient to support the charges and that the grand jurors were properly instructed. The motion to dismiss the indictment on the grounds that the exhibits were improperly introduced or that the presentation failed to conform with the requirements of CPL § 190.30 is also denied. This Court has reviewed the minutes and finds that the exhibits were properly introduced into evidence under various exceptions to the hearsay rule. This Court further finds that exhibits introduced as business records and the statements contained therein were properly admitted and that the grand jury was properly instructed.

### COUNT 1 – SCHEME TO DEFRAUD

The Corporate Defendants move to dismiss the portion of Count 1 of the indictment that arises from the alleged failure of the Trump Organization to withhold New York City income taxes from Defendant Weisselberg's compensation. They claim that since this alleged conduct is separate and distinct from all the other conduct described in Count 1, it cannot be part of any "systematic

---

[1] See Memorandum of Law for Corporate Defendants at page 53.

ongoing course of conduct" as required by the statute. The Corporate Defendants further claim that the conduct is time barred because it allegedly occurred no later than 2013.

The Court has reviewed the grand jury minutes and finds that the evidence presented was legally sufficient. Acts in furtherance of a scheme do not have to be identical, "as long as the fact finder is satisfied that there are, among all the transactions, common elements by which each may be identified as having been undertaken pursuant to an over-all fraudulent design." *See People v. Reynolds*, (Sup. Ct. N.Y. Co. 1997) 174 Misc.2d 812, 830, 667 N.Y.S.2d 591, *internally citing People v. Kaminsky*, 127 Misc.2d 497, 501-502, 486 N.Y.S.2d 814 (Sup. Ct. N.Y. Co. 1985); *see also People v. First Meridian Plan. Corp.* 86 N.Y.2d 608, 617 (1995). Because Count 1 includes acts which encompass a unified scheme, the continuing offense doctrine applies, meaning that if the last alleged larcenous act falls within the limitations period, then the conduct preceding it is also timely. *See People v. Kessler*, 1996 WL 903952, at *8 (Sup Ct. N.Y. Co. 1996); *see also People v. Abedi*, 156 Misc.2d 904 (Sup.Ct. N.Y. Co. 1993) (for charged crime to come within the statute of limitations, the last larcenous act must have occurred within five years). Therefore, the charged crime is neither defective nor time barred, and the motion is denied.

### SUFFICIENCY OF THE CHARGES

The Corporate Defendants move to dismiss Counts 1 and 2 on the grounds that insufficient evidence was presented to the grand jury to establish: (1) that the taxing authorities had an ownership interest in tax refunds remitted to Defendant Weisseilberg; and (2) that Defendant Weisselberg was a New York City resident for tax purposes. Review of the grand jury minutes demonstrates that legally sufficient evidence was presented to support these counts. The evidence sufficiently and competently established that the alleged failure to report and withhold non-cash compensation reduced Defendant Weisselberg's tax liability and resulted in his receipt of tax refunds to which he was not entitled. The grand jury minutes further support the contention that Defendant Weisselberg has been a New York City resident since 2005. Therefore, the motion to dismiss on these grounds is denied.

The Corporate Defendants move to dismiss the charges on the grounds that the evidence before the grand jury failed to establish that the conduct was done "in behalf of" the Corporation(s) pursuant to C.P.L. § 20.20(2)(b). The Court rejects this contention and finds that the evidence was legally sufficient to establish the charged crimes under the theory of accessorial liability.

3

### COUNT 15 – FALSIFICATION OF BUSINESS RECORDS

The Corporate Defendants move to dismiss Count 15 of the Indictment on the grounds that it is legally defective. Specifically, they argue, among other things, that the document at issue is not a business record of a business or an enterprise but rather, the personal record of Donald J. Trump ("DJT"); and that the document in question was not falsified. For the following reasons, the motion to dismiss Count 15 is denied.

Article 175 defines a "business record" as "any writing or article … kept by or maintained by an enterprise for the purpose of evidencing or reflecting its condition or activity." The Corporate Defendants concede that the Trump Organization's accounting department is responsible for maintaining DJT's Detail General Ledger but claim that the General Ledger is not a business record of the Trump Organization because it merely possessed the documents for DJT and nothing more. They rely on *People v. Banks*, 567 N.Y.S.2d 977 (1991); *People v. Norman*, 5 Misc. 3d 1016(A), Slip Op. 51392(U) (Sup. Ct. Kings Co. 2004); and *People v. Papatonis*, 243 A.D.2d 893 (3d Dept. 1997). However, those cases are clearly distinguishable. Whereas *Banks*, *Norman* and *Papatonis* involved arrangements which constituted mere possession and nothing more, here, DJT's Detail General Ledger was continuously prepared, maintained and updated by the Trump Organization. Indeed, the testimony and evidence presented to the Grand Jury established that neither Trump Organization employees Deborah Tarasoff nor Allen Weisselberg, worked for DJT in a personal capacity, yet the alleged falsification was made by Tarasoff at the direction of Weisselberg. The Corporate Defendants concede as much. The People's theory of the case, which was accepted by the Grand Jury, is that DJT's Detail General Ledger became the business record of the Trump Organization once Mr. Weisselberg was paid his salary out of DJT's *personal funds*. Put another way, DJT's Detail General Ledger is the business record of the Trump Organization because the entries evidence the Trump Organization's obligations *vis a vis* Allen Weisselberg's salary. *Momah v. Rogers*, 239 A.D.2d 20 (3d Dept. 1998) cited by Defendants, actually supports the People's position.

In the alternative, the People argue that DJT's Detail General Ledger also qualifies as a business record of DJT as an enterprise. Article 175 defines an "enterprise" as "any entity of one or more persons, corporate or otherwise, public or private, engaged in business, commercial, professional, industrial, eleemosynary, social, political or governmental activity." Indeed, practice commentaries make clear that the definition has been broadly applied and includes "virtually any person or group of persons engaged in any organized activity for which records are kept." Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law §175.05.

4

The fact that Mr. McConney testified in the Grand Jury that DJT's Detail General Ledger was a personal record of DJT and not the books and records of a business entity is of no legal consequence. The Grand Jury was properly charged and returned a true bill as to Count 15. It will be up to the finders of fact to decide whether the People can prove every element of this, and every other offense charged, beyond a reasonable doubt.

Next, the Corporate Defendants argue that the conduct alleged in Count 15 is not criminal because the information that remained in the Detail General Ledger following Mr. Weisselberg's removal of the phrase "Per Allen Weisselberg," was in fact accurate. The cases cited by Defendants are not on point and again distinguishable. PL § 175.05(2) provides that "[a] person is guilty of falsifying business records when, with intent to defraud, he: [a]lters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise." The determinative factor is not whether the alleged alteration renders a business record accurate or inaccurate, but whether the alteration is made with the intent to defraud. In *People v. Coe*, a registered nurse (Coe), conducted a physical search of an 86-year-old nursing home resident (Gersh), who had been accused of stealing two five-dollar bills from another resident. Gersh resisted the search and became agitated, prompting Coe to call a security guard who escalated the interaction by among other things, holding Gersh's arms. The five-dollar bills were not recovered. A short time later, Gersh was found collapsed on a chair and gasping for breath. Defendant Coe administered CPR but Mr. Gersh died, nonetheless Coe made an entry in Mr. Gersh's medical chart which was accurate, but failed to include information about the search which preceded Mr. Gersh's death. Coe, charged with Falsifying Business Records in the First Degree, moved to dismiss the indictment at the conclusion of the trial. In denying the motion, the Court held that "the falsification … occurred by reason of Defendant's omission … of the facts relating to the search of Gersh … the nursing notes are qualified as '"business records"' as they are maintained to reflect [the nursing home's] activities with respect to patients … [t]he omission of the search from the discussion of Gersh's death clearly [made] the note misleading." *People v. Coe*, 501 N.Y.S.2d 997 at 1001 (1986.) The Court further clarified that although the statute requires an expressed intent to defraud, the target need not be set forth. Coe had claimed that the target of the falsification had to be the nursing home, but that "is not necessarily true, as it might just as well have been Gersh's relatives, defendant's supervisor's or others. Intent to defraud anyone is sufficient." *See Coe* 501 N.Y.S.2d at 1000, (emphasis added); *see also Morgenthau v. Khalil*, 73 A.D.3d 509, 510 (1st Dept. 2010) (where First Department rejected the claim that the underlying indictment must allege that defendant acted with intent to defraud a particular person or business entity – as opposed to the

5

government or the public at large). Similarly, here, by directing Tarasoff to remove the notation in question, Mr. Weisselberg intended to conceal the alleged compensation scheme which is central to this indictment. A finder of fact could determine that the alleged conduct was misleading and intended to deceive thus satisfying the elements of the charge of Falsifying Business Records.

## TIMELINESS OF CHARGES

The Corporate Defendants move to dismiss Counts 4, 5, and 12 claiming the charges are time barred. The People concede that Count 4 is untimely. Count 4 is therefore dismissed.

The People contend that Counts 5 and 12 are timely charged. They argue that Governor Cuomo's Executive Orders and CPL 30.10(4)(a)(i) extended the deadline by which they had to file these charges.

Pursuant to CPL § 30.10(2)(b), a prosecution for a felony "must be commenced within five years after the commission thereof." Governor Cuomo issued Executive Orders during the COVID-19 public health crisis which tolled the time limitations prescribed by the procedural laws of this state including the Criminal Procedure Law. *See People ex rel. Nevins v. Brann*, 67 Misc.3d 638, 640-642 (Sup. Ct. Queens Co. 2020).

The indictment was filed on June 30, 2021. Although conduct described in counts 5 and 12 occurred more than five years prior to the filing of the indictment, Executive Order 202.8 issued by the Governor on March 20, 2020, and extended by Executive Order 202.101 on April 6, 2021, tolled "any specific time limit for the commencement" of any felony through May 6, 2021. These tolls extended the deadline for the prosecution of the alleged conduct charged by one year and 47 days. In other words, this felony prosecution had to be commenced within 6 years and 47 days from when the crimes were allegedly committed. The conduct described in counts 5 and 12 allegedly occurred on April 18, 2016. The tolled period or extension for commencing the action thus brought the conduct described in counts 5 and 12 well within the prescribed five-year time limit.

## SELECTIVE PROSECUTION

The Corporate Defendants move to dismiss the indictment on the grounds that the New York County District Attorney's Office and the New York State Office of the Attorney General allegedly targeted them impermissibly for prosecution on the basis of political animus in violation of the Due Process and Equal Protection provisions of the United States and New York State Constitutions. In

6

the alternative, Defendants argue they have made a sufficient showing of animus and disparate treatment to require this Court to order the People to provide discovery and grant a hearing on their claims of selective prosecution.

Public authorities are forbidden from enforcing "valid law with an evil eye and an unequal hand, so as to practically make unjust and illegal discriminations between persons in similar circumstances." *See Matter of 303 West 42nd St. v. Klein*, 46 N.Y.2d 686, 693 (1979) *internally quoting Yick Wo v. Hopkins*, 118 U.S. 356, 373-374 (1886). The burden of proving such claims, however, is significant and the presumption is that "enforcement of the laws is undertaken in good faith without discrimination." *Matter of 303 W. 42nd St.* 46 N.Y.2d at 695 *internally citing United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) 46 N.Y.2d 686, 694 (1979). In the case at bar, the Corporate Defendants have failed to demonstrate a reasonable probability of success on the merits that this prosecution was premised upon an impermissible standard and that the law was not applied to others similarly situated. *See People v. Blount*, 90 N.Y.2d 998, 999 (1997) *internally citing Matter of 303 West 42nd St.*

The Corporate Defendants have failed to demonstrate they are being prosecuted based on an impermissible standard. The Corporate Defendants unsuccessfully raised similar claims when they moved to quash subpoenas issued by the Office of the Attorney General pursuant to an ongoing civil investigation. In a Decision and Order issued on February 17, 2022, Judge Engoron of the Supreme Court, denied the application and the Appellate Division First Department affirmed the denial, finding that the impetus for that investigation was not based on an impermissible standard but instead, initiated following the "public testimony of a senior corporate insider." *See People v. The Trump Organization, Inc., et al.*, 2022 WL 489625, 6; *see also Matter of the People v. The Trump Organization, et al*, 205 A.D.3d 625, 627 (1st Dept. 2022). Here too, the New York County District Attorney's Office affirms that it commenced its investigation and prosecution following public reporting. *See* Shinerock Affirmation ¶¶ 9 and 30.

Likewise, Defendants have failed to demonstrate disparate treatment, as their claims are devoid of any evidence that the law was not applied to other similarly situated individuals. The People, conversely, have shown that this prosecution is similar to other "off the books" compensation schemes routinely prosecuted by the District Attorney's Office.[2] The People further claim that the

---

[2] See People's Memorandum of Law at page 25 citing *People v. Skyline Restoration and Waterproofing Inc.*, SCI No. 4561/2019 (corporation pled guilty in January 2019 to charges related to intentionally underreporting payroll to tax authorities); *People v. York Restoration Corp.*, SCI No. 0010/2020 (corporation pled guilty in December 2019 to charges related to its underreporting of employee payroll to state insurance authorities); and *People v. Federer, et al.*, Ind. No. 70154/2022 (multiple corporations charged in an off the books compensation scheme).

7

Office has previously commenced actions where the accused were charged with grand larceny for wrongfully taking tax refunds. *See People v. Garrett*, 39 A.D.3d 431 (1st Dept. 2007) (grand larceny conviction affirmed where defendant transit worker falsely stated on his tax returns that his employer was a foreign entity and received refunds of money that had been withheld from his paycheck); *see also People v. Nelson*, 38 A.D.3d 472, 472-473 (1st Dept. 2007) (grand larceny conviction affirmed where defendant filed fraudulent returns and obtained refunds in the form of credits against other tax liabilities).

The decision to prosecute, and which charges to present to a grand jury, rests within the prosecutor's discretion so long as there is probable cause to believe that the accused committed an offense defined by statute. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). The People have demonstrated that the investigation and ensuing prosecution here commenced following public reporting that Defendant Weisselberg had concealed his compensation from the taxing authorities. The Corporate Defendants have failed to overcome the presumption that this enforcement was undertaken in good faith and without discrimination. The Court further finds that the Corporate Defendants were not selectively targeted.

Because the Corporate Defendants have failed to demonstrate a reasonable probability of success on the merits of these claims, their applications are denied. *See Matter of 303 West 42nd St. v. Klein*, 46 N.Y.2d 686, 690 (1979).

### NUMBER OF PROSECUTORS IN THE GRAND JURY

The Corporate Defendants move to dismiss the indictment on the grounds that there were too many prosecutors present in the grand jury chamber and that as a result, the prosecutors "overstepped [their] function and invaded that of the grand jury." In the alternative, the Corporate Defendants request an evidentiary hearing to determine whether the number of prosecutors in the grand jury chamber prejudiced or influenced the grand jury. *See* Trump Organization Omnibus Memorandum at page 46. Defendants concede there are no New York cases on point and rely almost entirely upon *Comonwealth v. Favulli*, 352 Mass. 95 (1967).

CPL §190.25 governs the proceedings and operation of the grand jury. The Statute does not limit how many prosecutors may be present in a grand jury chamber. In *Favulli*, the Supreme Judicial Court of Massachusetts rejected "the contention that the presence of six prosecutors on two occasions in itself show[ed] an overstepping of the prosecutor's function and an invasion of that of the grand jury." *See Favulli* at 106. The *Favulli* Court established that it is within a prosecutor's discretion to

decide how many assistants may be necessary in the grand jury chamber provided the prosecutor "scrupulously refrains from words or conduct that will invade the province of the grand jury or tends to induce action" other than that which the grand jury deems warranted. *Id.* at 106. This court will assume, as did the Supreme Judicial Court of Massachusetts, "that unless the facts require another conclusion, the [New York County District Attorney] did not have assistants present for any other purpose than the effective presentation of the evidence." *Id.* at 106. The burden is not on the State to show a necessity, or the reason for the presence of the prosecutors. *Id.* at 106. That is not to say that a prosecutor should unnecessarily bring more assistants into the grand jury chamber than is required as that might raise unnecessary issues. *Id.* at 107. Here, however, the importance of the presentation was "self-evident" as it was in *Favulli* which involved the Governor and the Executive Council. Thus, the presence of a number of assistant district attorneys "could add no significant emphasis." *Id.* at 106-107.

There is nothing in the record to suggest that this grand jury was "overawed or moved to act other than as the members deemed right" by the number of prosecutors present. *Id.* at 107. The record before this Court indicates that the grand jury understood and exercised its independence and its prerogative. *Id.* at 107. Under the unique facts and circumstances as presented herein, it cannot be said that the number of prosecutors in the grand jury chamber overstepped the prosecutor's function or invaded that of the grand jury. The motion to dismiss the indictment on these grounds is denied. The application for an evidentiary hearing is likewise denied.

### SUBJECT MATTER JURISDICTION AND NEXUS TO FEDERAL LAW

The Corporate Defendants move to dismiss the first two counts of the indictment claiming that this Court may not determine whether Defendants defrauded the Internal Revenue Service (hereinafter IRS) because only the IRS and federal courts can answer inherently federal questions; and (2) that even if this Court could determine whether federal taxes are due, the Supremacy Clause of the United States Constitution preempts this Court from doing so.

The New York State Constitution provides this Court with general original jurisdiction in law and equity and exclusive jurisdiction over crimes prosecuted by indictment. *See* N.Y. Const., art VI, § 7(a). This Court is competent to entertain all causes of action unless its jurisdiction has been specifically proscribed or where under the Supremacy Clause of the United States Constitution, exclusive jurisdiction has been conferred on the federal courts. *See People v. Correa*, 15 N.Y.3d 213, 227-228 (2010) (internal citations omitted).

In the instant matter, the charges in dispute all constitute violations of New York State law. Simply because the trier of fact will determine whether the evidence proved taxes were evaded does not transform these penal law charges for fraud, conspiracy, and larceny into federal claims. *See Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005) (state court defamation action was not transformed into a suit "arising under" federal law simply because it anticipated a federal defense). The Internal Revenue Code (hereinafter IRC) does not explicitly provide for exclusive Federal jurisdiction and State courts presumptively have concurrent jurisdiction with Federal courts over Federal claims. *See Simpson Elec. Corp. v. Leucadia, Inc.*, 72 N.Y.2d 450, 455 (1988) (internal citations omitted). The presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, an unmistakable implication from legislative history, or clear incompatibility between State court jurisdiction and Federal interests. *Id.* at 455, *internally citing, Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981); *Claflin v. Houseman*, 93 U.S. 130, 136 (1876). However, the Corporate Defendants have failed to identify an explicit provision of Federal law which prevents this Court from presiding over this matter. The Corporate Defendants rely on 18 USC § 3231 which states, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." But they ignore the language which further states, "[n]othing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof." Indeed, the Supreme Court of the United States has identified only three statutes with the requisite extraordinary force to support complete preemption: the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act. *See Sullivan*, 424 F.3d at 272 (internal citations omitted). Here, there is no expressed provision which strips this Court of its authority to preside over violations of state law which contemplate federal tax liability.

The Corporate Defendants do not seek dismissal on the aspects of Count 1 of the indictment which arise from alleged violations of state and local tax obligations. In fact, they concede that state courts have jurisdiction to, and routinely do, make determinations about state and local tax obligations. Instead, they claim the determination of federal tax liability is a question reserved to the federal system and further assert that the purported complexity of the federal tax code demands uniform interpretation which can only be achieved by adjudicating these claims in federal court. Here it is worth noting that the general definition of "adjusted gross income" of a resident individual in New York, "means his federal adjusted gross income as defined in the laws of the United States for the taxable year." *See* Tax Law § 612(a). Thus, the state and local tax code track the language of the IRC.

10

The Corporate Defendants have failed to demonstrate that Congress has preempted the field of local criminal enforcement where the federal government is the victim. States often bring criminal actions where crimes are perpetrated against the federal government. *See State v. Radzvilowicz*, 703 A.2d 767, 787 (Conn. Ct. App. 1997) (state prosecution for forgery of federal tax forms not preempted by federal law); *State v. Jones*, 958 P.2d 938, 939 (Utah Ct. App. 1998) (state prosecution for fraud against federal employee retirement system not preempted by federal law); *State v. McMurry*, 909 P.2d 1084, 1086 (Ariz. Ct. App. 1995) (state prosecution for forgery of United States currency not preempted by federal law); *People v. Fury*, 279 N.Y. 433, 437 (1939) (because the federal government has made the uttering of counterfeit bank notes criminal does not bar the state from including a similar crime in its Penal Law).

Finally, there exists significant state and federal cooperation in tax administration and enforcement which casts further doubt on the claim that this Court is preempted from determining federal tax liability. Indeed, Congress has authorized the disclosure of federal tax records to state agencies charged with the administration of state tax laws. *See* 26 U.S.C. § 6103(d)(1). In fact, a New York State Tax Law provision regulating tax preparers was not preempted by federal law because Congress recognized the existence of parallel state licensing and regulation of tax preparers. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-67 (1989); *see also New York State Ass'n of Enrolled Agents, Inc. v. New York State Dep't of Tax'n & Fin*, 29 Misc. 3d 332, 336 (Sup. Ct., N.Y. Co. 2010).

For the foregoing reasons, this motion is denied.

## ALLEGED INADEQUACY OF PLEADINGS

The Corporate Defendants move to dismiss Counts 1 and 2 of the indictment on the grounds that the counts effectively charge Defendants with the commission of federal tax crimes but allegedly fail to identify which specific provisions of the tax law were purportedly violated. They further argue that these charges incorporate and rely on federal tax law and therefore the People have the burden of identifying and proving the specific underlying federal tax crimes as well as the exact penal law violations in the charged counts. Finally, the Corporate Defendants argue that this lack of specificity violates their constitutional rights to notice of the charges against them

The counts in dispute pertain to conduct which is proscribed by the New York State Penal Law. Counts 1 and 2 of the indictment charge the Corporate Defendants with the crimes of Scheme to Defraud in the First Degree, in violation of PL § 190.65(1)(b) and Conspiracy in the Fourth Degree, in violation of PL § 105.10(1).

11

This Court finds that the indictment is sufficiently plead. The indictment contains statements in each count that designate where and when the offenses were allegedly committed and the facts supporting the elements of the charged offenses, with sufficient precision to apprise Defendants of the conduct which is the subject of the accusations. *See* CPL §§ 200.50(5)-(7). This Court has scrutinized the indictment and finds that it provides much greater specificity than required by statute. It describes how the underreporting of compensation reduced the taxes owed, and it lists the dates that refunds were improperly obtained. Therefore, the motions are denied.

### ALLEGED VAGUENESS OF FEDERAL GIFT AND BONUS TAX LAWS

The Corporate Defendants move to dismiss those portions of the indictment which allege that tuition paid by Mr. Trump on behalf of Defendant Weisselberg's grandchildren constitutes taxable income and that Defendant Weisselberg's year-end bonuses were improperly reported on IRS Forms 1099 rather than IRS Forms W-2. They further claim that no taxpayer could have fair warning that the conduct alleged in the indictment could result in criminal liability because the tuition and bonuses are premised on ambiguous interpretations of federal tax laws. Accordingly, the Corporate Defendants claim these allegations violate their right to Due Process and should therefore be dismissed.

This Court has reviewed the statutes in contention. Generally, "gross income does not include the value of property acquired by gift." *See* 26 USCA § 102(a). However, "any amount transferred by or for an employee to, or for the benefit of, an employee" is not excluded from gross income. *See* 26 USCA § 102(c)(1). "An employee's renumeration may consist of regular wages and supplemental wages" such as bonuses. See 26 CFR § 31.3402(g)-1. Whether these provisions or the exceptions thereto are overly complicated is an issue for the trier of fact at trial. This Court's review of the grand jury minutes revealed that legally sufficient evidence was presented to support these charges. Therefore, the applications for dismissal are denied.

### RENEWED DEMANDS FOR WORK PRODUCT, EXCULPATORY INFORMATION, AND A BILL OF PARTICULARS

Defendants demand any documents or information in the People's possession, including tax calculations prepared by consultants or experts, regarding the amount of money in taxes saved by the Corporate Defendants from their alleged failure to classify fringe benefits as taxable income. The People claim that no such calculations exist and further assert that they have provided to the Corporate Defendants all tax records in their possession. The People have filed Certificates of Compliance attesting that they have fulfilled their discovery obligations after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery pursuant to CPL § 245.20(1).

Pursuant to CPL § 245.65, "records, reports, correspondence, memoranda, or internal documents of the adverse party which are only the legal research, opinions, theories or conclusions of the adverse party or its attorney or the attorney's agents" are not discoverable. The People are reminded however of their continuing obligation to disclose any *Brady* material as well as all evidence and information described within CPL § 245.20(k) expeditiously.

The demand for a bill of particulars is denied.

The Corporate Defendants are reminded of their discovery obligations pursuant to CPL § 245.20(4).

### REQUEST FOR A VENTIMIGLIA HEARING AND STATEMENTS ATTRIBUTABLE TO DEFENDANTS, SEVERANCE, AND A SANDOVAL HEARING

The motion for severance is moot given that Defendant Weisselberg pled guilty on August 18, 2022.

The People are directed to comply with CPL §§ 245.10(1)(b) and 245.20(3)(a) and (b) by September 12, 2022. Should the People seek to introduce any alleged uncharged misconduct as substantive proof of a material issue, this Court will hold a *Ventimiglia* hearing immediately before trial.

The foregoing constitutes the decision and order of the Court.

Dated: September 6, 2022
New York, New York

SEP 0 6 2022

_____
Juan M. Merchan
Judge of the Court Claims
Acting Justice of the Supreme Court

HON. JUAN M. MERCHAN

14

SEP 0 5 2022