UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                  :

THE PEOPLE OF THE STATE OF NEW YORK,    :

                                                  :        23 Civ. 3773 (AKH)

                v.                              :

                                                  :

DONALD J. TRUMP,                            :

                                                  :

                                 Defendant.      :

                                                  :

----------------------------------------------------------------x

# PRESIDENT DONALD J. TRUMP'S MEMORANDUM OF LAW IN OPPOSITION TO THE PEOPLE OF THE STATE OF NEW YORK'S MOTION FOR REMAND

Todd Blanche
Blanche Law
99 Wall Street
New York, New York 10005
212-716-1250
toddblanche@blanchelaw.com

Susan Necheles
NechelesLaw LLP
1120 Sixth Avenue, 4th Floor
New York, New York 10036
212-997-7400
srn@necheleslaw.com

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

LEGAL ARGUMENT ......................................................................................... 2

POINT I: THE PRESIDENT IS AN OFFICER OF THE UNITED STATES WHO CAN
REMOVE CASES TO FEDERAL COURT.......................................................... 2

POINT II: DANY CAN ONLY ATTEMPT TO DEFEAT PRESIDENT TRUMP'S
REMOVAL MOTION BY IGNORING A) THE AMENDMENTS TO THE REMOVAL
STATUTE AND B) PRESIDENT TRUMP'S THEORY OF THE CASE ........................ 10

   A. Removal Is Appropriate Where the Officer's Actions Were For Or Relating to
   Any Act Under Color of Federal Office ........................................................... 11

   B. DANY's Theory of the Case is Irrelevant to this Motion.............................. 13

POINT III:  PRESIDENT TRUMP'S REMOVAL NOTICE MORE THAN ADEQUATELY
ASSERTS "COLORABLE" FEDERAL DEFENSES .......................................... 14

   A. President Trump's Minimal Burden ............................................................ 14

   B. President Trump Has Adequately Articulated A Federal Preemption Defense.............. 18

     1. DANY has advanced various theories as to a "predicate" offense that are
     preempted by federal law, and they refuse to abandon them............................. 18

     2. Federal election law preempts DANY's underlying "intent to defraud" theory,
     requiring dismissal of even lesser-included misdemeanor falsifying business
     records charges................................................................................... 20

   C. President Trump Is Immune From State Prosecution For Actions Taken As A
   Result of His Role as President ..................................................................... 21

POINT IV: GIVEN THE MORE THAN ADEQUATE SHOWING BY PRESIDENT
TRUMP OF A FEDERAL DEFENSE THIS COURT NEED NOT REACH THE ISSUE OF
PROTECTIVE JURISDICTION ........................................................................ 25

CONCLUSION................................................................................................... 27

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Albrecht v. A.O. Smith Water Products*, 2011 WL 5109532 (S.D.N.Y. Oct. 21, 2011) .............. 15

*Arizona v. Manypenny,* 451 U.S. 232 (1981) .................................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 14

*Bragg v. Jordan*, No. 1:23-CV-3032 (MKV), 2023 WL 2999971 (S.D.N.Y. Apr. 19, 2023) ........................................................................................................... 26

*Brown & Williamson Tobacco Corp. v. Williams,* 62 F.3d 408 (D.C. Cir. 1995) ..................... 3, 6

*Brunson v. Adams*, 2021 U.S Dist. LEXIS 224203 (D. Utah Oct. 19, 2021) ................................ 6

*Buckley v Valeo*, 424 U.S. 1 (1976) .............................................................................. 5

*Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022) ...................................................... 3, 8, 9

*Cherichel v. Holder*, 591 F.3d 1002 (8th Cir. 2010) ........................................................... 5

*Cleveland, C. etc. R.R. v. McClung*, 119 U.S. 454 (1886) ...................................................... 8

*Clifton v. Cox*, 549 F.2d 722 (9th Cir.1977) ................................................................. 24

*Clinton v. Jones*, 520 U.S. 681 (1997) ........................................................................ 22

*Colorado v. Symes,* 286 U.S. 510 (1932) .................................................................... 11

*Commonwealth of Kentucky v. Long,* 837 F.2d 727 (6th Cir. 1988) ........................................ 23

*Cunningham v. Neagle*, 135 U.S. 1 (1890) ............................................................... 23, 24

*Cuomo v. Crane Co.*, 771 F.3d 113 (2d Cir. 2014) ......................................................... 16

*Dist. of Columbia v. Trump*, 17-cv-1596 (D. Md.) ........................................................... 5

*Durham v. Lockheed Martin Corp.,* 445 F.3d 1247 (9th Cir. 2006) ........................................ 16

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) .................................... 4

*Guidry v. Durkin*, 834 F.2d 1465 (9th Cir. 1987) ........................................................... 7

*Hagen v. Benjamin Foster Co.,* 739 F. Supp. 2d 770 (E.D. Pa. 2010) ......................... 15

*Hill Parents Ass'n. v Giaimo*, 287 F Supp 98 (D. Conn. 1968) ..................................... 6

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.,* 790 F.3d 457 (3d Cir. 2015) ......................................................... 11-12

*Isaacson v. Dow Chemical Co.,* 517 F.3d 129 (2d Cir. 2008) ...................................... 16

*Jefferson County v. Acker,* 527 U.S. 423 (1999) .............................................. 10, 13, 15

*K&D LLC v. Trump Old Post Off. LLC,* 951 F.3d 503 (2020) ........................................ 3

*Kircher v. Putnam Funds Trust,* 547 U.S. 633 (2006) ............................................ 15-16

*Latiolais v. Huntington Ingalls, Inc.,* 951 F.3d 286 (5th Cir. 2020) ............................. 12

*Maryland v. Soper,* 270 U.S. 9 (1926) .......................................................................... 11

*Matter of Application of Donovan,* 601 F. Supp. 574 (S.D.N.Y. 1985) ........................ 11

*Mayor v. Cooper*, 73 U.S. 247 (1867) ........................................................................... 18

*Mesa v. California*, 489 U.S. 121 (1989) .................................................... 7, 8, 11, 16, 25

*National Audubon Soc'y v. Department of Water & Power*, 496 F. Supp. 499 (E.D. Cal. 1980) ......................................................................................................... 18

*National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974) ............. 7

*National Wildlife Federation v. U.S.*, 626 F.2d 917 (D.C. Cir. 1980) ............................ 7

*New York v. De Vecchio,* 468 F. Supp. 2d 448 (E.D.N.Y. 2007) ................................. 11

*New York v. Tanella*, 374 F.3d 141 (2d Cir. 2004) ....................................................... 24

*North Carolina v. Ivory,* 906 F.2d 999 (4th Cir. 1990) ................................................. 11

*People v. Keller*, 176 Misc.2d 466 (N.Y. Sup. Ct. 1998) .............................................. 20

*People v. Mackey*, 49 N.Y.2d 274 (1980) ..................................................................... 19

*Perkins v. Air & Liquid Systems Corp.*, 2014 WL 1389750 (S.D.N.Y. Apr. 8, 2014) ................. 15

*Preston v Edmondson*, 263 F. Supp 370 (N.D. Okla. 1967) ........................................... 6

*Richards v. Harper*, 864 F.2d 85 (9th Cir. 1988) ................................................. 3-4, 6

*Tennessee v. Davis,* 100 U.S. 257 (1879) ............................................................. 8, 11

*Texas Dept. of Hous. & Community Affairs v. Inclusive Communities Project, Inc*.,
    576 U.S. 519 (2015) ....................................................................................... 6

*Texas v. Kleinert*, 855 F.3d 305 (5th Cir. 2017) ....................................................... 2

*Trump v. Carroll*, 292 A.3d 220 (D.C. 2023) ......................................................... 24

*Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020) ................................................ 7

*Trump v. Vance*, 140 S. Ct. 2412 (2020*)* ............................................................... 8

*United States v Hendee*, 124 U.S. 309 (1888) ......................................................... 5

*United States v. Mouat*, 124 U.S. 303 (1888) ......................................................... 5

*White v. Wellington*, 627 F.2d 582 (2d Cir. 1980) ................................................. 15

*Whitehead v. Senkowski*, 943 F.2d 230 (2d Cir. 1991) .......................................... 23

*Williams v. Brooks*, 945 F.2d 1322, 1324 (5th Cir. 1991) ................................... 3, 6

*Willingham v. Morgan,* 395 U.S. 401 (1969) ................................................ 8, 11, 16

*WinRed, Inc. v. Ellison*, 59 F.4th 934 (8th Cir. 2023) ....................................... 20, 21

*Wm. Spencer & Son Corp. v. Lowe*, 152 F.2d 847 (2d Cir 1945) ............................ 6

*Yates v. United States*, 354 U.S. 298 (1957) ........................................................ 19

*Yi Tai Shao v. Roberts*, 2019 U.S. App. LEXIS 33895 (D.C. Cir. Nov. 13, 2019) ....... 3

## Statutes

28 U.S.C. § 1442(a)(1) ........................................................................................ 2, 11

28 U.S.C. §1361 .................................................................................................... 7

## Constitutional Provisions

U.S. Const. art. I, § 9, cl. 8........................................................................................ 24

U.S. Const. art. II, § 1 ............................................................................................... 4

U.S. Const. art. II, § 3 ............................................................................................... 24

U.S. Const. art. II, § 4 ............................................................................................... 4

U.S. Const. art. II, § 2, cl. 2 ..................................................................................... 4

## Congressional Reports

H.R. Rep. No. 112-117, pt. 1 (2011)................................................................... 10, 12

H.R. Rep. No. 798, 104th Cong., 2d Sess., at 20 (1996) ............................................ 16

## Other Authorities

14C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §3733 (rev. 4th ed. 2020) .......................................................................................................... 16

4 Duke Journal of Constitutional Law & Public Policy 107 (2009)................................. 3

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 322 (2012) .................. 6

Josh Blackman and Seth Barrett Tillman, Why the Manhattan DA's Trump Case Cannot Be Removed to Federal Court, Lawfare, May 18, 2023 ....................................... 2

Michael Cohen, Disloyal: A Memoir: The True Story of the Former Personal Attorney to President Donald J. Trump (2020)........................................................................... 22

Seth Barrett Tillman & Josh Blackman, Offices and Officers of the Constitution, Part I: An Introduction, 61(3) S. TEX. L. REV. 309 (2021) .............................................. 3

Seth Barrett Tillman and Josh Blackman, Offices and Officers of the Constitution, Part III: The Appointments, Impeachment, Commissions, and Oath or Affirmation Clauses, 62(4) S. TEX. L. REV. 349 (May 2023) ................................................... 3

Seth Barrett Tillman, Why Our Next President May Keep His or Her Senate Seat: A Conjecture on the Constitution's Incompatibility Clause ("Our Next President").................. 3

## INTRODUCTION

The Facts and the law all point to this Court being the appropriate jurisdiction for this case, one which was brought solely due to the political motivation of the Manhattan District Attorney. It is in fact the Manhattan District Attorney's Office ("DANY") that made the decision to wrongfully prosecute President Trump for lawful conduct that took place while the President was in office. Now DANY chooses to seek to remand the case back to New York County by deceptively mischaracterizing and ignoring the applicable facts and body of law.

For example, DANY argues that the removal statute does not apply to the President of the United States because he is an elected official and thus not an "officer of the United States," never once citing or otherwise acknowledging the numerous cases—including those involving President Trump—rejecting that proposition. *See* Point I, *infra*. According to DANY, the crux of its case was a purportedly "illegal scheme that was largely perpetrated before defendant became [P]resident." DANY's Remand Memorandum of Law ("RMOL") at 1. Such an alleged scheme, albeit nonexistent, could only violate federal, not state, campaign finance laws, as made clear by both the federal jurisprudence and the New York State election board. Indeed, federal preemption is a classic example of a federal defense justifying removal. *See* Point III, *infra.*

DANY also relies on cases—some more than 150-years old—for the meaning and purpose of the removal statute, *see*, *e.g.,* RMOL at 9, and relegates to a footnote the fact that the removal statute was substantially amended in 2011. Under the amended statute, there can be little dispute that President Trump meets the requirements for removal to federal court. *See* Point II, *infra.*

1

In sum, removal to this Court is well supported, and DANY's motion for remand back to New York State court should be summarily denied.

## LEGAL ARGUMENT

A criminal case is removable to federal court where (1) a federal officer (2) is charged for conduct "for or relating to any act under color of federal office arising under color of his office and (3) identifies a colorable federal defense. *Texas v. Kleinert*, 855 F.3d 305, 311-12 (5th Cir. 2017). Here, President Trump has more than adequately shown all three and DANY's arguments to the contrary are unavailing.

### POINT I: THE PRESIDENT IS AN OFFICER OF THE UNITED STATES WHO CAN REMOVE CASES TO FEDERAL COURT

The President of the United States is an "officer . . . of the United States" under 28 U.S.C. § 1442(a)(1). DANY's argument to the contrary is unconvincing and the Court should reject it.

Although DANY disappointingly never gives them any credit, DANY's argument is cribbed, at times nearly word-for-word, from a recent Lawfare blog post by Professors Blackman and Tillman. *See* Josh Blackman and Seth Barrett Tillman, Why the Manhattan DA's Trump Case Cannot Be Removed to Federal Court, Lawfare, May 18, 2023, available at https://www.lawfareblog.com/why-manhattan-das-trump-case-cannot-be-removed-federal-court. But while this argument—that elected officials, including the President, are not "officers of the United States"—has been advocated by these professors for some time,[1] to our knowledge it has never been accepted by any court.

---

[1] *See, e.g.,* Seth Barrett Tillman, Why Our Next President May Keep His or Her Senate Seat: A Conjecture on the Constitution's Incompatibility Clause ("Our Next President"), 4 Duke Journal of Constitutional Law

In fact, the blog post—but not DANY—forthrightly acknowledges the existence of contrary precedent. In *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 505 (2020), the D.C. Circuit affirmed President Trump's removal of a civil action to federal court under § 1442. And, while it is true that the D.C. Circuit did not expressly rule on whether the President is an "officer of the United States," § 1442 was the only basis for federal subject matter jurisdiction, *id.* at 508, and the court was required to consider *sua sponte* whether the President is an "officer of the United States," if it thought that issue meritorious. *See Yi Tai Shao v. Roberts*, 2019 U.S. App. LEXIS 33895, at *5 (D.C. Cir. Nov. 13, 2019) ("Courts are obligated to consider *sua sponte* issues related to subject matter jurisdiction") (internal brackets and quotation marks omitted). *Cf. Carroll v. Trump*, 49 F.4th 759, 771 (2d Cir. 2022) (noting that "in previous cases where substitution of the President occurred, the applicability of the Westfall Act was not questioned.") (citing cases).

Moreover, under DANY's flawed logic that "officials . . . elected to their positions rather than appointed" are not "officers of the United States," (RMOL at 30), members of Congress also could not remove cases to federal court under § 1442. But courts have routinely and consistently allowed such removals. *See Brown & Williamson Tobacco Corp. v. Williams,* 62 F.3d 408, 412-415 (D.C. Cir. 1995) (allowing two Congressman to remove their case to federal court); *Williams v. Brooks*, 945 F.2d 1322, 1324, n. 2 (5th Cir. 1991) (holding that "removal is proper under section 1442(a)(1)" because a congressman "is an 'officer of the United States' within the meaning of that subsection."); *Richards v. Harper*, 864 F.2d 85, 86 (9th Cir. 1988) ("Baucus and Williams [a

---

& Public Policy 107 (2009); Seth Barrett Tillman & Josh Blackman, Offices and Officers of the Constitution, Part I: An Introduction, 61(3) S. TEX. L. REV. 309 (2021); Seth Barrett Tillman and Josh Blackman, Offices and Officers of the Constitution, Part III: The Appointments, Impeachment, Commissions, and Oath or Affirmation Clauses, 62(4) S. TEX. L. REV. 349 (May 2023). To be clear, we mean no disrespect to either of these fine academics but their views on this matter are idiosyncratic, *see, e.g.*, Our Next President, at 5-6 (collecting the contrary views of numerous scholars), and of limited use to this Court.

Senator and Congressman, respectively] as officers of the United States may remove an action from state to federal court.").

DANY offered no response to this case law, in fact, they deceivingly did not cite it. Instead, DANY cites two cases, but neither even purports to address the reach of § 1442. The first is *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 497-98 (2010), which addresses the President's removal power under the Art. II Appointments Clause. DANY (again cribbing from the Lawfare blogpost) quotes *Free Enterprise Fund* to the effect that "[t]he people do not vote for the 'Officers of the United States.'" RMOL at 30. This language purportedly shows that "the Supreme Court has long interpreted 'officer' to exclude the President and Vice President because those officials are elected to their positions rather than appointed." Upon review of the language and context, however, it is clear that the Supreme Court was not deciding that meaning of "officer of the United States" as used in every clause in the Constitution, let alone in every statute in the United States Code. Rather, the Court was simply describing the meaning of "other officers of the United States" *as used in* U.S. Const. art. II, § 2, cl. 2. There, the Constitution addresses the President's "power" to "appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States[.]" Obviously, the President cannot appoint himself, *see* art. II, § 1 (providing for the election of the President), or members of Congress, *see* art. I, § 4 (providing for the election of members of Congress), and so, "other officers of the United States" as used in art. II, § 2, cl. 2, must be a reference to non-elected officials. Thus, contrary to DANY's misleading suggestion, this stray line in *Free Enterprise Fund* says nothing about the meaning of "officer of the United States" in other contexts such as the relevant context this Court must consider here.

Similarly unavailing is DANY's reliance on *United States v. Mouat*, 124 U.S. 303 (1888). *Mouat* addressed not whether the President (or members of Congress) are ever "officers of the United States," but when a government official is, in the modern parlance, a mere employee and not someone "holding employment or appointment under the United States." *Id.* at 305. *See generally Buckley v Valeo*, 424 U.S. 1, 126, n. 162 (1976) ("'Officers of the United States' does not include all employees of the United States . . . . Employees are lesser functionaries subordinate to officers of the United States").[2]

In fact, *Mouat* undercuts DANY's claim that "officer of the United States" has a single uniform meaning throughout the Constitution and United States Code. The Court reached a different conclusion acknowledging that "[u]ndoubtedly Congress may have used the word 'officer' in some other connections in a more popular sense, . . . in which case it will be the duty of the court in construing such an act of Congress to ascertain its true meaning and be governed accordingly." *Mouat*, 124 U.S. at 308. *See also United States v Hendee*, 124 U.S. 309, 313 (1888) ("We have just decided, in the case of *United States v. Mouat*, ante, 303, that a paymaster's clerk is not, in the constitutional sense of the word, an officer of the United States; but we added also that Congress may have used the word 'officer' in a less strict sense in some other connections, and in the passage of certain statutes might have intended a more popular signification to be given to that term."). In fact, the Second Circuit, in discussing *Mouat* and *Hendee*, has noted that

---

[2] DANY also cites to a 1974 OLC opinion, *but see, e.g., Cherichel v. Holder*, 591 F.3d 1002, 1016, n. 17 (8th Cir. 2010) ("We note, however, that while OLC opinions are generally binding on the Executive branch, the courts are not bound by them." (internal citation omitted)), and a Morgan Lewis white paper. RMOL at 30–31. But neither of these documents so much as discuss § 1442 and are, at any rate, largely focused on the meaning of "officer" in the Constitution. Moreover, DANY's claim that the "Executive Branch shares th[e] view" that the word "officer" does not include the President is not true. *See, e.g., Dist. of Columbia v. Trump*, 17-cv-1596 (D. Md.), Dkt. #100 at 4, n. 2 (DOJ Statement of Interest on behalf of the President in his official capacity) ("We assume for purposes of this Statement that the President is subject to the Foreign Emoluments Clause.")

"[l]egislative intent may be defeated by giving an invariable definition to the same word in different statutes." *Wm. Spencer & Son Corp. v. Lowe*, 152 F.2d 847, 849 (2d Cir 1945).

In other words, whatever the original public meaning of "officer" in a given constitutional clause, the meaning of "officer" as used in statutory provisions is to be determined contextually. Here, the meaning of "officer of the United States," as used in § 1442, a provision enacted in 1948 and amended as recently as 2013, clearly includes both the President and members of Congress.[3] Recently, the meaning of the phrase was considered by a federal magistrate judge who concluded that "there can be no question that . . . President Biden, Vice President Harris, and former Vice President Pence" could have actions removed to federal court under §1442 because they are "high-level, federal executive branch officers." *Brunson v. Adams*, 2021 U.S Dist. LEXIS 224203, at *27 (D. Utah Oct. 19, 2021) (Bennett, Mag. J.).

The fact that a President is an officer of the United States under § 1442 is also consistent with how the phrase has been interpreted in another mid-twentieth-century statute, the Mandamus

---

[3] These amendments are particularly relevant in light of the prior caselaw interpreting "officer" in § 1442 to include elected officials like members of Congress. *See Brown & Williamson Tobacco Corp.*, 62 F.3d 408, 412-415 (D.C. Cir. 1995) (allowing two Congressman to remove their case to federal court); *Williams v. Brooks*, 945 F.2d 1322, 1324, n. 2 (5th Cir.1991) (holding that "removal is proper under section 1442(a)(1), however, as a congressman is an 'officer of the United States' within the meaning of that subsection."); *Richards v. Harper*, 864 F.2d 85, 86 (9th Cir. 1988) ("Baucus and Williams [a Senator and Congressman, respectively] as officers of the United States may remove an action from state to federal court."); *Hill Parents Ass'n. v Giaimo*, 287 F Supp 98, 99 (D. Conn. 1968) ("A member of Congress is unquestionably an officer of the United States as this term is commonly used and must be considered as such pursuant to Section 1442(a)(1)"); *Preston v Edmondson*, 263 F. Supp 370, 372 (N.D. Okla. 1967) ("The Court finds and concludes that it is within the intent and meaning of Title 28 U.S.C. Section 1442(a)(1) that the term 'officer of the United States' includes a United States Congressman."). "Against this background understanding in the legal . . . system, Congress' decision to amend the" removal statute "while still adhering to the operative language in" §1442 "is convincing support for the conclusion that Congress accepted and ratified the unanimous holdings" *Texas Dept. of Hous. & Community Affairs v. Inclusive Communities Project, Inc*., 576 U.S. 519, 536-537 (2015), of the lower courts that "officer" is not limited to appointed officials. *See also id.* ("'If a word or phrase has been given a uniform interpretation by inferior courts, a later version of that act perpetuating the wording is presumed to carry forward that interpretation.'" (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 322 (2012) (internal ellipses omitted)).

6

Act, which was enacted by Congress in 1962 and provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an *officer or employee of the United States* . . . to perform a duty owed to the plaintiff." 28 U.S.C. §1361 (emphasis added). In *National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974), a federal employees' union sued President Nixon in his official capacity to compel him to implement a pay raise for employees as required by a federal pay statute. The D.C. Circuit found it had jurisdiction under the Mandamus Act "to mandamus the President to perform the ministerial duty" of effectuating legally required pay raises. *Id.* at 616. *See also National Wildlife Federation v. U.S.*, 626 F.2d 917, 923 (D.C. Cir. 1980) ("Mandamus is not precluded because the federal official at issue is the President of the United States.").

The alternate rule proposed by DANY—that elected officials cannot remove criminal cases to federal court—makes little sense in light of the "purpose of" § 1442, which is that "the Federal Government can act only through its officers and agents, and they must act within the States." *Mesa v. California*, 489 U.S. 121, 126 (1989) (internal quotation marks omitted). But if "those officers can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess . . . the operations of the general government may at any time be arrested at the will of one of its members." *Id. See also Guidry v. Durkin*, 834 F.2d 1465, 1468 (9th Cir. 1987) ("The purpose of this statute is to provide a federal forum, presumably free of whatever local prejudice might exist in a state court, in which federal officers may defend claims arising out of the performance of their duties.").

These concerns apply equally, if not more forcefully, when the federal officer in question is the President of the United States, who "is the only person who alone composes a branch of government." *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2034 (2020). It makes little sense to

suggest that Congress meant to protect from state interference, for example, postal workers, *Mesa v. California*, 489 U.S. 121, revenue officers, *Tenn. v. Davis*, 100 U.S. 257, 260 (1879), and customs officers, *Cleveland, C. etc. R.R. v. McClung*, 119 U.S. 454, 460 (1886), but leave Presidents (and members of Congress) subject to the whims of "state prosecutors [who] may have political motivations." *Trump v. Vance*, 140 S. Ct. 2412, 2428 (2020*).*[4]  *Cf. Carroll v. Trump*, 49 F.4th 759, 772 (2d Cir. 2022) ("In light of this contextual evidence, there is no reason to assume that Congress in enacting the FTCA meant to exclude the President . . . .")

DANY does cite, albeit in a footnote, the Second Circuit's recent decision in *Carroll v. Trump*, 49 F.4th 759, 767, holding that the President is an employee of the federal government who enjoys immunity for official acts under the Westfall Act.  Much of the Second Circuit's reasoning applies *mutatis mutandis* to this case as well, especially in light of the Supreme Court's holding that "the test for removal should be broader, not narrower, than the test for official immunity." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969).  DANY's claim, on the other hand, is that while the President has immunity for his official acts, he must litigate that immunity defense in state court.  But the *Willingham* Court rejected almost this identical argument, holding that it is untenable to claim that a government official may be "protected from a damage suit by the official immunity doctrine," but that the official "ha[s] to litigate their immunity defense in the state courts." So too here.

DANY, in its attempt to distinguish *Carroll v. Trump,* badly misstates its reasoning.  DANY writes that "the Second Circuit's reasoning in *Carroll* would support a different result for the term

---

[4] Notably, the Supreme Court in *Trump v. Vance*, 140 S. Ct. at 2428, stated that the "Supremacy Clause prohibits state judges and prosecutors from interfering with a President's official duties."  To support this assertion, the Court cited *Tenn. v. Davis*, 100 U. S. 257 (1880).  But under DANY's theory, *Tenn. v. Davis*, a removal case and thus inapplicable to the President, would seem to provide no support for the Supreme Court's holding about the President.

'officer,' because the Westfall Act defines an 'employee' as, *inter alia*, an 'officer[] . . . of any federal agency," and the Second Circuit conspicuously declined to find that the President was such an 'officer[],' instead concluding that the Act's listing of potential federal "[e]mployee[s]" merely provided non-exhaustive 'examples of who are covered by that term.'"   RMOL at 31, n. 13 (quoting *Carroll*, 49 F.4th at 768).  However, the issue in *Carroll* was not whether the President is an "officer of the United States," but whether he is an "officer *of any federal agency*."  *See Carroll v. Trump*, 49 F.4th 759, 768 ("Carroll principally argues that the President does not come within the scope of the FTCA and the Westfall Act because he is not an officer or employee *of any 'executive departments.'"* (emphasis added)).  This was also the reasoning of the (subsequently reversed) District Court.  *See Carroll v. Trump*, 498 F. Supp.3d 422, 434-435 (S.D.N.Y. 2020) ("The president is a constitutional officer.  He occupies the highest office in our nation, which is created by Article II of the Constitution.  But that is not what Section 2671 requires.  It speaks only of 'officers . . . *of any federal agency*,' not officers of the United States within the meaning of the Constitution."  (emphasis in the original)).

Here, of course, the relevant statutory language is not "officer of any federal agency," but "officer . . . of the United States," which neither the District Court nor the Second Circuit ever suggested does not include the President.  For these reasons, the Court should reject DANY's argument and hold that the President can remove cases to federal court under § 1442.

**POINT II: DANY CAN ONLY ATTEMPT TO DEFEAT PRESIDENT TRUMP'S REMOVAL MOTION BY IGNORING A) THE AMENDMENTS TO THE REMOVAL STATUTE AND B) PRESIDENT TRUMP'S THEORY OF THE CASE**

DANY's motion for remand is disappointing in that it all but ignores the 2011 amendment to § 1442. The amendment changed the relevant element from "for any act under color of such office," to "for or relating to any act under color of such office."

In fact, DANY begins Point I of its brief with the argument that this case must be remanded to State Court because "Defendant fails to establish that his alleged criminal conduct arose 'under color of . . . office.'" RMOL at 8 (capitalizations changed). Whether President Trump's action "arose under color of office" is a misleading standard, as under the current language of the statute this case is removable if President Trump's action were "relat[ed] to any act under color of . . . office."

The legislative history makes plain that the purpose in adding the words "or relating to" was intended to "broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. Rep. No. 112-117, pt. 1 (2011), reprinted in 2011 U.S.C.C.A.N. 420, 425. DANY only acknowledges this amendment in a footnote and even then, as discussed below, dishonestly claims that "[c]ourts have not applied this amendment uniformly." RMOL at 9 n. 4. DANY likewise ignores the factual positions set forth in the Notice of Removal, basing its argument solely on its view and theory of the case, a standard inapplicable to removal motions. *See Jefferson County v. Acker,* 527 U.S. 423, 432 (1999) ("Accordingly, we credit the [the party seeking removal's] theory of the case for purposes of both elements of our jurisdictional inquiry . . . .").

### A. Removal Is Appropriate Where the Officer's Actions Were For Or Relating to Any Act Under Color of Federal Office

The federal removal statute permits, *inter alia*, a criminal prosecution to be removed to federal court where such action is against "any officer" of the United States and the action "for *or relating to* any act under color of such office. 28 U.S.C. § 1442(a)(1) (emphasis added). The emphasized language was added by Congress in 2011, and almost all cases relied on by DANY in their remand motion preceded this amendment. For example, *Maryland v. Soper* was decided in 1926,[5] *Colorado v. Symes* was decided in 1932,[6] *Willingham v. Morgan* in 1969,[7] *Arizona v. Manypenny* was decided in 1981,[8] *Tennessee v. Davis* was decided in 1879,[9] *Mesa v. California* was decided in 1989,[10] *Matter of Application of Donovan* was decided in 1985,[11] *New York v. De Vecchio* was decided in 2007,[12] and *North Carolina v. Ivory* was decided in 1990.[13] These cases are no longer controlling to the extent that they fail to adhere to the current statutory standard.

As the Third Circuit explained in *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.,* 790 F.3d 457 (3d Cir. 2015) prior to the statute's amendment in 2011, § 1442 required a showing that the defendant "ha[d] been sued for any act under color of [federal] office," meaning for acts that were "at least in part because of what they

---

[5] 270 U.S. 9 (1926) RMOL at 8.

[6] 286 U.S. 510 (1932), RMOL at 8.

[7] 395 U.S. 401 (1969), RMOL at 9.

[8] 451 U.S. 232 (1981), RMOL at 9.

[9] 100 U.S. 257 (1879), RMOL at 9.

[10] 489 U.S. 121 (1989), RMOL at 8.

[11] 601 F. Supp. 574 (S.D.N.Y. 1985), RMOL at 11.

[12] 468 F. Supp. 2d 448 (E.D.N.Y. 2007), RMOL at 13.

[13] 906 F.2d 999 (4th Cir. 1990), RMOL at 13.

were asked to do by the Government."  790 F.3d at 470 (internal quotation marks omitted).  After

"the statute was amended to encompass suits for *or relating* to any act under color of [federal]

office' it is sufficient for there to be a 'connection' or 'association' between the act in question and

the federal office."  *In re Commonwealth's Motion* found that its understanding of the statute

comported with the legislative history relating to the 2011 amendment to § 1442(a)(1), which

indicated that the addition of the words "or relating to" was intended to "broaden the universe of

acts that enable Federal officers to remove to Federal court."  *In re Commonwealth's Motion,* 790

F.3d at 471 (*quoting* H. Rep. No. 112-117, pt. 1 (2011), reprinted in 2011 U.S.C.C.A.N. 420,

425).

Recognizing that the amendment is fatal to its position, DANY, in a footnote, weakly

attempts to dismiss the significance of this new language by falsely claiming that "[c]ourts have

not applied this amendment uniformly."  RMOL at 9 n. 4 (citing *Latiolais v. Huntington Ingalls,*

*Inc.,* 951 F.3d 286, 292 (5th Cir. 2020)).  Contrary to DANY's description of the holding in

*Latiolais*, the Fifth Circuit overruled its prior decisions which continued to impose a "direct causal

nexus" requirement even after the 2011 amendment to §1442.  In doing away with this

requirement, *Latiolais* noted:

> The Supreme Court has recognized, the ordinary meaning of the words relating to is a
> broad one – to stand in some relation; to have bearing or concern; to pertain; refer; to
> bring into association with or connection with.  Congress added this broad' term to for.
> …   By the Removal Clarification Act, Congress broadened federal officer removal to
> actions, not just causally connected, but alternatively connected or associated, with acts
> under color of federal office.

*Latiolais*, 951 F.3d at 292.

In sum, DANY's entire argument—that President Trump has not shown that his actions

were taken "under color of office"—is wrong because it is premised on no-longer-operative

statutory text.

### B.   DANY's Theory of the Case is Irrelevant to this Motion

Not only does DANY rely on an irrelevant test, DANY also incorrectly dismisses and ignores the factual allegations in President Trump's Notice of Removal.  Instead, in seeking remand, DANY bases its entire argument on a failed and previously rejected theory that the payments to Michael Cohen were solely reimbursements for campaign contributions, and therefore not acts done under color of federal law.  *See* RMOL at 10-12.  But the case law is clear that in evaluating whether a removing defendant has adequately plead § 1442 jurisdiction, the Court must credit the removing party's theory of the case.  *See Jefferson County v. Acker,* 527 U.S. 423, 432 (1999) ("Accordingly, we credit the [party seeking removal's)] theory of the case for purposes of both elements of our jurisdictional inquiry . . . .").  DANY's brief, however, fails to respond to President Trump's theory of the case as laid out in the Notice of Removal:

> President Trump will assert that the statements in the purported business records at issue were in fact truthful statements because the money paid to Michael Cohen was, in part, "retainer" or legal payments to Michael Cohen to act as President Trump's personal attorney.  At the time of his election, there was some public expressions of concern about potential conflicts of interest, corruption, and possible constitutional violations due to President Trump's extensive business interests and wealth.  Thus, shortly before assuming the Office of the Presidency, and in order to assure the American public that he had separated his personal business from his public duties, *see* Morgan Lewis White Paper, attached as Exhibit B, as well as to fulfill various constitutional obligations, *e.g.,* the Foreign Emoluments Clause, Art. I, sec. 9, cl.8, and the Take Care Clause, Art. II, sec. 3, President Trump, in an abundance of caution, placed his businesses in a Trust.  Additionally, President Trump hired a personal lawyer – Michael Cohen – to handle his personal affairs.  These steps were taken solely because he was President of the United States.

Notice of Removal ¶ 19.

Once the Court applies the correct standard of law to the correct set of factual assertions, the question becomes whether there is a "connection or association" between President Trump's activity—after he was elected and in order to fulfill his constitutional obligations, of hiring Mr. Cohen as his personal lawyer, and notating payments to Mr. Cohen as retainer payments.  The

question answers itself—clearly these actions were "connected or associated" with President Trump's official duties of ensuring that there was no doubt that he was complying with the Constitution of the United States of America, including the Foreign Emoluments Clause and the Take Care Clause.

Accordingly, President Trump, as required under § 1442, has more than adequately shown a sufficient nexus between the alleged acts charged in the indictment and the performance of his official duties.

### POINT III:  PRESIDENT TRUMP'S REMOVAL NOTICE MORE THAN ADEQUATELY ASSERTS "COLORABLE" FEDERAL DEFENSES

#### A.  President Trump's Minimal Burden

In its remand motion, DANY argues that the case should be remanded to state court because, in its view, President Trump has failed to articulate a "colorable" federal defense in his notice of removal that is at least "plausible."  RMOL at 16-25.  Relying on the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), DANY asserts that a "colorable" federal defense in this context means a theory that is more than "possible" or "merely consistent with" a federal defense.  RMOL at 16.  President Trump's anticipated federal defenses of preemption and Supremacy Clause immunity more than meet this standard.

The Court should reject DANY's underhanded attempt to heighten President Trump's burden for removal.  In actuality, the requirement that a federal defense be "colorable," as it relates to removal, is even less onerous than the *Twombly/Iqbal* "plausibility" standard for stating a claim. As one district court persuasively observed, although courts may sometimes speak loosely of "plausibility" in the context of removal notices, removals are actually governed by a different standard from affirmative pleadings:

> [T]he term "plausible" is generally used differently in the Section 1442(a)(1)
> context than in cases determining whether a complaint should be dismissed under
> Rule 12(b)(6) in accordance with *Twombly* and its progeny.  The latter standard,
> which defines plausible factual allegations as those that go beyond the speculative
> level, seems more exacting than that required by many courts deeming a colorable
> defense a plausible one when evaluating whether to grant a plaintiff's motion to
> remand.

*Hagen v. Benjamin Foster Co.,* 739 F. Supp. 2d 770, n. 9 (E.D. Pa. 2010) (citation omitted).  The

*Hagen* court concluded that a federal defense is "colorable" for removal purposes if the defendant

asserting the defense "identifies facts which, *viewed in the light most favorable to the defendant*,

would establish a complete defense at trial."  *Hagen*, 739 F. Supp. 2d at 783 (emphasis added).

Several district courts in this Circuit have expressly endorsed the *Hagen* approach l.[14]

The burden imposed on a removing defendant is minimal, irrespective of the applicable

standard for "plausibility."  The leading Supreme Court case construing the "colorable" defense

requirement recognizes that a defendant who seeks removal need not "virtually . . . win his case

before he can have it removed."  *Jefferson County, Ala. V. Acker*, 527 U.S. 423, 431 (1999)

(internal quotation marks omitted).  Indeed, DANY readily concedes that a "colorable" federal

defense sufficient for removal does not have to be "clearly sustainable" on the facts.  RMOL at 16

(citing *Kleinert*, 855 F.3d at 313).  *See also White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980)

(a notice of removal may be sufficient for removal purposes even if it "contain[s] inconsistent

allegations").

---

[14] *See Perkins v. Air & Liquid Systems Corp.*, 2014 WL 1389750, at *1 (S.D.N.Y. Apr. 8, 2014) ("I am
prepared to follow *Hagen* . . . and conclude that removing defendant . . . has, using the standard of *Hagen*,
'identified facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete
defense'").  *See also Albrecht v. A.O. Smith Water Products*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21,
2011) (citing *Hagen*: "an analysis under §1442 must view the evidence and facts in the light most favorable
to the defendant").

Instead, on a remand motion, a district court's inquiry is jurisdictional in nature, meaning that a "colorable" federal defense is one that is sufficient to "assure the federal court that it has jurisdiction to adjudicate the case." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006). *See also* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §3733 (rev. 4th ed. 2020) (for removals generally, it is enough "if the court is provided the facts from which its jurisdiction can be determined"). As a result, "neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).

Consistent with the *Hagen* approach, the Supreme Court has stated that public policy supports guaranteeing a federal forum to defendants with a "colorable" federal defense, and therefore "[t]his policy should not be frustrated by a narrow, grudging interpretation of §1442(a)(1)." *Willingham*, 395 U.S. at 406-7. *See also Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1249 (9th Cir. 2006) ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal").

As for what qualifies as a "colorable" federal defense, courts have imposed few limitations. *Isaacson v. Dow Chemical Co.,* 517 F.3d 129, 138 (2d Cir. 2008). A federal defense is one that is both "defensive" in nature and "based in federal law." *Mesa v. California*, 489 U.S. 121, 129-30 (1989). Immunity is unquestionably a federal defense, and "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham*, 395 U.S. at 407. Of course, an immunity defense is not the only "colorable" federal defense that justifies removal to federal court. *Isaacson*, 517 F.3d at 139. Federal preemption is another such federal defense. In fact, when amending §1442(a)(1) in 1996, Congress identified

the adjudication of preemption defenses in federal court as one of the rationales for removal by a federal officer.  *See* H.R. Rep. No. 798, 104th Cong., 2d Sess., at 20 (1996) (§1442(a)(1) provides a federal forum for "important and complex federal issues such as preemption").

Against this backdrop, the Court should reject DANY's invitation to wade into disputed factual matters concerning President Trump's anticipated federal defenses.  Although his removal notice need only have raised a single "colorable" federal defense, President Trump has raised multiple such defenses.  For example, he has raised a federal preemption defense based on DANY's allegations of criminality in an area of exclusive federal concern—federal campaign finance laws—through which DANY hopes to transform time-barred misdemeanors into felonies. Moreover, even as misdemeanors without a predicate offense, the charges are invalidly premised on the same preempted untrue theory that President Trump intended to defraud the federal electorate.  President Trump has also raised an immunity defense under the Supremacy Clause based on the direct, proximate relationship between the alleged criminal conduct, which indisputably occurred in 2017 during his term as President, and the discharge of his official duties as President.  A federal officer who is reasonably discharging his federal duties remains immune from state prosecution.

These anticipated federal defenses are "colorable" under even an *Twombly/Iqbal* standard and would provide President Trump a complete defense to prosecution.  DANY's remand motion should therefore be denied.

**B.   President Trump Has Adequately Articulated A Federal Preemption Defense**

As noted above, Congress explicitly identified federal preemption as a quintessential federal defense which the federal-officer removal statute is designed to cover.  DANY's argument that such a defense is unavailing here is not persuasive.

**1.   DANY has advanced various theories as to a "predicate" offense that are preempted by federal law, and they refuse to abandon them.**

DANY bizarrely claims that a finding of federal preemption as to election law offenses would not give rise to a viable federal defense because DANY purports to retain the right to allege at any time that President Trump intended to commit or conceal some other crime that might not be preempted by federal law.  DANY's fanciful argument is beside the point.

To the extent the charges are or could be based on an intent to commit or conceal an election law offense, federal preemption would provide a complete defense to the charges.  The gravamen of the charged "scheme" is that President Trump was allegedly reimbursing Mr. Cohen in 2017 for hush-money payments Mr. Cohen made for the alleged purpose of influencing the presidential election.  President Trump therefore has a defense that this state prosecution is precluded because federal law has entirely preempted state law in the area of federal elections, and he should be entitled to raise this defense in federal court.  If President Trump's federal preemption defense is "colorable" as to even just *one* theory of the case, removal of the entire case is required.  *National Audubon Soc'y v. Department of Water & Power*, 496 F. Supp. 499, 509 (E.D. Cal. 1980) ("It is well settled that if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims").  *See also Mayor v. Cooper*, 73 U.S. 247, 252-53 (1867) (observing that "[n]or is it any objection [to federal jurisdiction] that questions are involved which are not all of a Federal character.  If one

of the latter exist, if there be a single such ingredient in the mass, it is sufficient. That element is decisive upon the subject of jurisdiction.").  There is no question that DANY intends to argue to the jury that it may convict even if all it finds is that President Trump falsified business records with the intent to conceal a violation of election laws (and no other crime).  Therefore, the defense that such a theory of the prosecution is preempted is a full federal defense to the charges.

Even the mere possibility that the grand jury based any of its charging decisions, or that the petit jury could base its verdict, on President Trump's alleged intent to commit or conceal violations of N.Y. Election Law §17-152 would render the indictment and resulting verdict invalid. *See generally, Yates v. United States*, 354 U.S. 298, 311-312 (1957) (where jury is presented with two theories as a basis for conviction, only one of which is legally valid, "the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.").

Recognizing the problematic nature of their position, DANY next argues that identifying the other "crime" that President Trump allegedly intended to commit or conceal is irrelevant because, in DANY's understanding of the falsifying business records statute, all they need to prove is a "general intent to commit a crime . . . not [defendant's] intent to commit a specific crime." RMOL at 23.  Even assuming DANY is correct,[15] there is still a need to prove that the defendant

---

[15] DANY's reliance on *People v. Mackey*, 49 N.Y.2d 274, 278-281 (1980), a burglary case, is misplaced. Falsifying business records is distinguishable from burglary, where a defendant's intent to commit some other crime can often easily be inferred from the circumstances surrounding his knowing and unlawful entry onto the premises.  For example, in *Mackey*, the jury was permitted to infer the intruder's general criminal intent from, *inter alia*, his removal of a storm window screen before entering into the house from a darkened alley.  By contrast, a defendant must act with a particular or specified intent to "defraud" in order to be guilty of falsifying business records.  And for the offense to be a felony, the defendant's intent to "defraud" must include an intent to either commit another crime *or* to aid *or* conceal the commission thereof.  By employing such specific and disjunctive language, the Legislature could not have intended to permit a felony conviction on the basis of a general criminal intent, especially when a particular criminal intent is already required for a misdemeanor conviction.

intended to commit or conceal a "crime" as part of an intent to defraud.  To the extent that N.Y. Election Law §17-152 is preempted, a conspiracy "to promote or prevent" a presidential election is simply not a crime, and there can be no general or specific intent to commit a non-existent crime.[16]

### 2. Federal election law preempts DANY's underlying "intent to defraud" theory, requiring dismissal of even lesser-included misdemeanor falsifying business records charges.

Wholly apart from the fact that N.Y. Election Law §17-152 is preempted by federal law, President Trump will argue that he cannot be convicted of either misdemeanor or felony charges of falsifying business records because an element of both of those charges requires an intent to defraud, and here DANY has taken the position that President Trump intended to defraud "the voting public during the 2016 presidential election."  DANY's Statement of Facts (Exhibit A) at ¶1.  Aside from the fact that the falsifying business record statute requires an intent to cause pecuniary harm (*see People v. Keller*, 176 Misc.2d 466 (N.Y. Sup. Ct. 1998) (dismissing falsifying records charge premised on a scheme to falsify credit card charge slips that falsely reflected "escort" charges as limousine charges)), any alleged scheme to defraud the voting public by failing to report purported campaign contributions or expenditures is expressly preempted by FECA.

DANY's backdoor attempt to enforce FECA's campaign contribution regulations through the rubric of policing "business records" fails and is not supported by the cases it cites.  On the contrary, in *WinRed, Inc. v. Ellison*, 59 F.4th 934, 942-44 (8th Cir. 2023) relied on by DANY, the Eighth Circuit declined to enjoin, on FECA preemption grounds, a state investigation of a political

---

[16] Nor can a FECA violation serve to be a predicate (even assuming a federal crime can be a predicate) since to the extent 175.10 is interpreted as covering violations of federal election offenses, the statute would be preempted under the Supremacy Clause.

action committee for alleged violations of Minnesota's consumer-protection law which the Court held fits into one of the categories of statutes expressly *not* superseded by FECA under the regulations.  However, as *WinRed, Inc.* recognized, the regulations do specifically preempt state laws that regulate conduct related to the "[d]isclosure of receipts and expenditures."  59 F.4th at 943 (*citing* 11 C.F.R. § 108.7(b)(2)).  In other words, where a statute seeks to enforce "honest record-keeping" (RMOL at 25) with respect to federal campaign contributions and expenditures, such conduct is preempted by FECA.

### C.  President Trump Is Immune From State Prosecution For Actions Taken As A Result of His Role as President

DANY argues that there is a "serious question . . . whether a former President can claim absolute presidential immunity against criminal liability."  RMOL at 17.  This Court need not decide this "serious question" for purposes of this motion because President Trump has not raised it in his removal notice.  If he had raised the defense, the Court's inquiry on this motion would be limited to assessing whether the defense is at least "colorable."  *See* Point III.A, *supra.*  In any event, this Court can safely ignore DANY's lengthy discussion in their motion papers concerning the viability of an absolute presidential immunity defense.  On the narrower question of Supremacy Clause immunity, however, DANY concedes that a federal employee enjoys immunity from state prosecution for acts he has performed when carrying out his federal duties.  RMOL at 19.

According to DANY's mistaken belief, a claim of Supremacy Clause immunity would have to fail here because "the President's official responsibility does not include falsifying private business records."  RMOL At 21.  In making this argument, DANY ignores a fundamental, bedrock principle in American law: the presumption of innocence.  The allegation that President Trump falsified business records is just that, an allegation, and neither President Trump nor this

Court are obligated to accept it as true.  Instead, as indicated in his removal notice, the facts viewed in the light most favorable to the defendant support President Trump's position that the payments to Mr. Cohen were made at least in part as payment for services rendered to President Trump as his personal attorney, and therefore his purported "business records"—which in actuality were his personal check register—were not falsified at all.  As President Trump prepared to assume the Office of the Presidency on January 20, 2017, Mr. Cohen resigned from his position within the Trump Organization to assume the role of "personal counsel to President Donald J. Trump" and represent President Trump combatting the "liberal media and anti-Trump advocacy groups inten[t] on attacking" President Trump.   *See* Exhibit B (emails from Mr. Cohen announcing his resignation from the Trump Organization).  And, not surprisingly, Mr. Cohen expected and was indeed compensated for his work for President Trump when serving in this capacity, which included handling personal legal matters for President Trump, along with addressing "open matters that need to be handled" (excerpts from Michael Cohen, Disloyal: A Memoir: The True Story of the Former Personal Attorney to President Donald J. Trump (2020) [hereinafter Disloyal]).  According to Mr. Cohen, President Trump and Mr. Cohen agreed at that time that Mr. Cohen would receive $420,000 as a "retainer" for the work that Mr. Cohen would be doing for President Trump while he was President.  *See* Disloyal pgs. 308-10.

Viewed in this context, DANY's arguments necessarily require rejection.  Indeed, this case is not akin to *Clinton v. Jones*, 520 U.S. 681 (1997), where the parties did not dispute that President Clinton's alleged wrongdoing of Paula Jones occurred in 1991, long before he became President in 1993, was entirely unrelated to his conduct as President.  Here, by contrast, the payments to Mr. Cohen and the allegedly false ledger entries were made during President Trump's first year as President of the United States, when Mr. Cohen was acting as President Trump's personal counsel

after having been hired in an effort to comply with President Trump's obligations and assurances to the American public that his personal affairs would be conducted separate and apart from the Office of the Presidency.  As a result, President Trump has more than adequately demonstrated a federal defense entitling him to Supremacy Clause immunity.

The doctrine of Supremacy Clause immunity, which protects federal officers from state prosecution under certain circumstances, dates back more than a century to the Supreme Court's decision in *Cunningham v. Neagle*, 135 U.S. 1 (1890).  In ruling that a deputy U.S. Marshal was immune from state prosecution after killing a man he believed was about to kill a Supreme Court Justice, although the deputy was not specifically authorized to protect the Justice, the Supreme Court announced the rule that "if the prisoner is held in the state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to do as marshal of the United States, and if in doing that act he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under . . . [state] law . . . ."  *Id.* at 75.

*Neagle* established a two-part test for determining whether a state court has jurisdiction to prosecute a federal official for his conduct that is in violation of state law, *i.e.*, "a state court has no jurisdiction if (1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do."  *Whitehead v. Senkowski*, 943 F.2d 230, 234 (2d Cir. 1991) (quoting *Commonwealth of Kentucky v. Long,* 837 F.2d 727, 752 (6th Cir. 1988)).

To satisfy the "scope of authority" part of the test, a federal officer's conduct need not necessarily be specifically authorized by statute.  As the Supreme Court explained in *Neagle*, "[i]n the view we take of the constitution of the United States, any obligation fairly and properly inferable from that instrument or any duty of the officer to be derived from the general scope of

23

his duties under the laws of the United States, is a 'law,' within the meaning of this phrase." *Neagle*, 135 U.S. at 59.  President Trump's decision to separate his personal business from his public duties derived from his position as President of the United States and were rooted in constitutional concerns such as the Foreign Emoluments Clause, Art. 1, §9, cl. 8 and the Take Care Clause contained in Art. II, §3.  A federal officer may be acting within his "scope of authority" for purposes of the *Neagle* test "even though his acts may have exceeded his express authority."  *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004) (citing *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir.1977)).  The "necessary and proper" part of the test means that Supremacy Clause immunity "applies where petitioner 'had no motive other than to discharge his duty under the circumstances as they appeared to him and that he had an honest and reasonable belief' that his actions were necessary and proper."  *Tanella*, 374 F.3d at 151 (quoting *Long*, 837 F.2d at 745).

DANY can only respond to President Trump's "colorable" *Neagle* immunity defense with speculation and bare assertions disputing that President Trump was acting within the scope of his authority and honestly and reasonably to discharge his duties.  These are necessarily factbound determinations that cannot possibly be disproven at this stage by DANY on the basis of the record as it exists.  *See, e.g., Trump v. Carroll,* 292 A.3d 220, 225 (D.C. 2023) (declining to answer "factbound" certified question from the Second Circuit as to whether President Trump was acting within the scope of his employment).  If President Trump is ultimately able to demonstrate his entitlement to *Neagle* immunity, either the indictment will be dismissed on motion or he will be acquitted at trial.  It is a complete defense.

President Trump should be able to test his immunity defense by this Court "early in the proceedings" so that he will not have to "run the gauntlet of standing trial and having to wait until later to have the [immunity] issue decided."  *Tanella*, 374 F.3d at 147 (citing *Long,* 837 F.2d at

752).  Indeed, in considering *Neagle* and its progeny, *Long* held that a district court "has a duty to make a prompt ruling" when a federal officer raises Supremacy Clause immunity.  *Long*, 837 F.2d at 752.  The Sixth Circuit continued, "[w]e further hold that if the state fails to come forward with any evidentiary showing that disputed issues of fact exist to rebut the claim of the federal officer, the district court should sustain the defense of immunity under the Supremacy Clause."  *Id.*  In other words, "the state cannot overcome that defense merely by way of allegations."  *Id.*

President Trump's removal notice more than adequately raises the "colorable" defenses of preemption and federal immunity.  Accordingly, the Court should deny DANY's remand motion.

### POINT IV: GIVEN THE MORE THAN ADEQUATE SHOWING BY PRESIDENT TRUMP OF A FEDERAL DEFENSE THIS COURT NEED NOT REACH THE ISSUE OF PROTECTIVE JURISDICTION

According to DANY, the Supreme Court has never endorsed the theory of protective jurisdiction, and *Mesa* noted that endorsing it would "pose 'grave constitutional problems.'" RMOL at 26 (*quoting Mesa*, 489 U.S. at 137).  DANY overstates *Mesa*.  What *Mesa* actually said—in response to the government's urging that such jurisdiction exists—is that in a case where "no state court hostility or interference has even been alleged by petitioners" (such as the driving violations that were the subject of *Mesa*), there was no need to adopt a theory of protective jurisdiction.  Yet, as Justice Brennan noted in his concurring opinion, the "Court today rightly refrains from deciding whether removal in such a situation is possible, since that is not the case before us.  But the Court leaves open the possibility that, where a federal officer is prosecuted because of local hostility to his function."  *Mesa*, 489 U.S. at 140.

DANY's suggestion that President Trump cannot establish such local hostility in this case is unconvincing because the allegations lodged by DANY center on nothing more than it claims

25

to be a "routine" falsifying business records case for which DANY's failure to prosecute "would have been a blatant dereliction of duty," RMOL29.  Indeed, DANY offers no explanation why this "routine" case took six years to prosecute (notwithstanding the fact that a New York County grand jury was convened in 2019 to investigate this very conduct), why the case was known as the "zombie" case within DANY, or why the former lead prosecutor opined that "the facts surrounding the payments did not amount to much in legal terms," and that there "appeared to be no felony state crime in play."  *Bragg v. Jordan*, No. 1:23-CV-3032 (MKV), 2023 WL 2999971, at *1-2 (S.D.N.Y. Apr. 19, 2023).

This case is anything but a "routine" prosecution.  Nevertheless, for the reasons noted above, this Court need not decide the question of protective jurisdiction because President Trump has more than adequately alleged a federal defense.  If the Court were to disagree, however, we request the opportunity for a hearing (pursuant to 28 U.S.C. § 1455(b)(5)) at which President Trump can establish the local hostility evident in this prosecution.

## CONCLUSION

For the foregoing reasons, as well as those contained in President Trump's Notice of Removal, DANY's remand motion should be denied, and this Court should maintain jurisdiction.

Dated:    New York, New York
           June 15, 2023

Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche
Blanche Law
99 Wall Street
New York, New York 10005
212-716-1250
toddblanche@blanchelaw.com

*/s/ Susan Necheles*
Susan R. Necheles
NechelesLaw LLP
1120 Sixth Avenue, 4th Floor
New York, New York 10036
212-997-7400
srn@necheleslaw.com

*Attorneys for President Donald J. Trump*

27

**CERTIFICATE OF SERVICE**

I, Todd Blanche, do certify that on June 15, 2023, I caused a copy of President Donald J. Trump's Memorandum of Law in Opposition to the People's Motion to Remove and a copy of the Affirmation accompanying that Motion to be served via email to the attorneys representing the People on this matter.  I certify this under penalty of perjury.


Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche
Blanche Law
99 Wall Street
New York, New York 10005
212-716-1250
toddblanche@blanchelaw.com