**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PEOPLE OF THE STATE OF NEW YORK

    -against-

DONALD J. TRUMP,

               Defendant.

23 Civ. 3773 (AKH)

**PEOPLE'S REPLY MEMORANDUM**
**IN SUPPORT OF MOTION FOR REMAND**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AFFIDAVITS AND EXHIBITS ............................................................. ii

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................. 2

I.     The Conduct Charged in the People's Indictment Is Not For or Related
to Any Act Under Color of the Office of President. ........................................... 2

II.    Neither Supremacy Clause Immunity nor Federal Preemption Provides a
"Colorable Federal Defense" to the Crimes Charged in the People's
Indictment ........................................................................................................ 7

     A.    Defendant has not raised a colorable defense of Supremacy
Clause immunity ................................................................................ 8

     B.    Defendant has not raised a colorable defense of federal
preemption. ...................................................................................... 11

III.   This Court Need Not Reach the Parties' Remaining Arguments. ................... 15

CONCLUSION ........................................................................................................... 18

**TABLE OF AFFIDAVITS AND EXHIBITS**

The following affidavits and exhibits accompany this motion:

Declaration of Matthew Colangelo dated June 23, 2023 (appending exhibits).

Ex. 25          Mem. Supp. Donald J. Trump's Mot. to Dismiss, *Thompson v. Trump*, No. 21-cv-400-APM (D.D.C. May 26, 2021).

# TABLE OF AUTHORITIES

### FEDERAL CASES

*Arizona v. Files*, 36 F. Supp. 3d 873 (D. Ariz. 2014) ........................................................9

*Arizona v. Manypenny*, 451 U.S. 232 (1981) .....................................................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................7

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010) .........................................................7

*Betzner v. Boeing Co.*, 910 F.3d 1010 (7th Cir. 2018) .....................................................7-8

*Brunson v. Adams*, 2021 WL 5403892 (D. Utah Oct. 19, 2021) .......................................17

*Clinton v. Jones*, 520 U.S. 681 (1997) ...........................................................................9, 10

*Colorado v. Symes*, 286 U.S. 510 (1932) ........................................................................3, 10

*County Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*,
    996 F.3d 243 (4th Cir. 2021) .........................................................................................7

*County of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022) ...............................6

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) ..........................7

*Dewald v. Wriggelsworth*, 748 F.3d 295 (6th Cir. 2014) ..................................................12

*English v. Gen. Elec. Co.*, 496 U.S. 72 (1990) .................................................................15

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)...........................17

*Georgia v. Heinze*, 2022 WL 15265493 (N.D. Ga. Oct. 25, 2022) ....................................2

*Graves v. 3M Co.*, 17 F.4th 764 (8th Cir. 2021) .................................................................7

*Hagens v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Pa. 2010)................................8

*Huron Portland Cement Co. v. City of Detroit, Mich.*, 362 U.S. 440 (1960)..............................13

*In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998).................................................................4

*In re Neagle*, 135 U.S. 1 (1890).............................................................................8, 9, 11

*Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423 (1999)......................................................3, 6

*K&D LLC v. Trump Old Post Office LLC*, 951 F.3d 503 (D.C. Cir. 2020)..........................2

*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) ........................................3, 7, 8

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ...............................................................................8

*Maryland v. Soper (No. 1)*, 270 U.S. 9 (1926)....................................................................................3

*Matter of Application of Donovan*, 601 F. Supp. 574 (S.D.N.Y. 1985) ..................................3, 6, 7

*Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022) ...........................3

*Mesa v. California*, 489 U.S. 121 (1989)..............................................................................3, 16, 18

*Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023)...................................3

*New York v. De Vecchio*, 468 F. Supp. 2d 448 (E.D.N.Y. 2007) .............................................3, 11

*New York v. Tanella*, 239 F. Supp. 2d 291 (E.D.N.Y. 2003)..............................................................6

*New York v. Tanella*, 374 F.3d 141 (2d Cir. 2004).............................................................8, 9, 11

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982).........................................................................................9

*North Carolina v. Ivory*, 906 F.2d 999 (4th Cir. 1990) .................................................................3, 11

*Ohio v. Meade*, 2022 WL 486294 (S.D. Ohio Feb. 17, 2022)..........................................................2

*Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495 (1988) ...............15

*Stern v. Gen. Elec. Co.*, 924 F.2d 472 (2d Cir. 1991)..............................................................12, 13

*Tennessee v. Davis*, 100 U.S. 257 (1879) ..........................................................................................3

*Texas v. Kleinert*, 855 F.3d 305 (5th Cir. 2017) ...............................................................................7

*Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020) ......................................................................9

*Trump v. Vance*, 140 S. Ct. 2412 (2020) .......................................................................................5, 9

*United States v. Mouat*, 124 U.S. 303 (1888) ................................................................................17

*Veneruso v. Mt. Vernon Neighborhood Health Ctr.*, 586 F. App'x 604 (2d Cir. 2014).................2

*Willingham v. Morgan*, 395 U.S. 402 (1969) ........................................................................6, 7, 10

*WinRed, Inc. v. Ellison*, 59 F.4th 934 (8th Cir. 2023) ...................................................................12

*Yates v. United States*, 354 U.S. 298 (1957)..................................................................................14

**STATE CASES**

*People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105 (2008) ....................................12

*People v. Barnes*, 50 N.Y.2d 375 (1980) ...................................................................................14

*People v. Jackson*, 87 N.Y.2d 782 (1996) .................................................................................14

*People v. Mackey*, 49 N.Y.2d 274 (1980) ............................................................................13, 14

*People v. Ribowsky*, 77 N.Y.2d 284 (1991) ...............................................................................14

*People v. Taveras*, 12 N.Y.3d 21 (2009) ..................................................................................13

**FEDERAL & STATE LAWS**

Title 28, U.S. Code
    § 1442(a)(1) ............................................................................ *passim*
    § 1446(a) ...............................................................................................7
    § 1455(a) ...............................................................................................7
    § 1455(b)(2) ..........................................................................................8
    § 1455(b)(5) ..........................................................................................6

Title 11, Code of Federal Regulations
    § 108.7(b)(2) ........................................................................................12
    § 108.7(c) .............................................................................................12

N.Y. Election Law § 17-152 .........................................................................13, 14, 15

N.Y. Penal Law
    § 140.25 ...............................................................................................13
    § 175.10 .........................................................................................13, 14, 15

## INTRODUCTION

In his opposition to remand, defendant Donald J. Trump concedes that the 2017 payments at issue in this criminal proceeding were to his personal attorney handling his personal affairs, "separate and apart from the Office of the Presidency." Opp'n 23.[1] That concession defeats any claim that the conduct charged in the indictment was "for or relating to any act under color of [his federal] office," 28 U.S.C. § 1442(a)(1), particularly when paired with other indicia of the payments' unofficial nature (such as the involvement of purely private enterprises in creating and holding the business records here) that defendant has not contested. Defendant's assertion that he was initially motivated to retain a personal lawyer only because he had been elected president is immaterial, given that the effect of any such decision—indeed, the entire point—was to carve out a personal sphere "separate and apart" from his official functions. If the "under color of . . . office" requirement means anything, it must exclude conduct that a criminal defendant deliberately designates as unofficial.

Defendant also fails to rebut other, independent grounds for remand. In particular, defendant has identified no colorable defense based on immunity as a federal officer since, among other defects, he identifies no federal-law duty to perform the unofficial conduct alleged in the indictment. And his preemption defense—which is focused exclusively on a statute other than the one under which he has been charged—is entirely irrelevant because it would not provide a defense to the People's charges. This case should thus be remanded to state court.

---

[1] Citations to "Opp'n" are to defendant's memorandum of law in opposition (ECF No. 34), and citations to "Mem." are to the People's memorandum of law in support of the motion for remand (ECF No. 19).

**ARGUMENT**

**I.    The Conduct Charged in the People's Indictment Is Not For or Related to Any Act Under Color of the Office of President.**

There is no application of the statutory test under which defendant can show that the conduct charged in the People's indictment is for or related to any act under color of the office of President.

As an initial matter, defendant baselessly accuses the People of relying on a "misleading" legal standard (Opp'n 10) rather than the language from the 2011 amendments to 28 U.S.C. § 1442. In fact, the People expressly quoted the 2011 amendments (Mem. 7) and described the relevant change to the statute's text (Mem. 9 n.4). And far from being "dishonest[]" (Opp'n 10), the People's memorandum accurately characterized the federal courts as being split over whether the amendments meaningfully altered the pre-existing "under color of office" standard. *See, e.g.*, *Georgia v. Heinze*, 2022 WL 15265493, at *5 (N.D. Ga. Oct. 25, 2022) ("Circuit courts are split on whether Congress's 2011 amendment broadened the scope of acts that allows federal officers to remove a case to district court."); *Ohio v. Meade*, 2022 WL 486294, at *4 & n.3 (S.D. Ohio Feb. 17, 2022) (also noting split and concluding that "[t]he Sixth, Second, Eighth, and Ninth Circuits . . . maintain that the amendment did not expand the definition of 'under color of office' and continue to apply the traditional causal connection test" (citing *Veneruso v. Mt. Vernon Neighborhood Health Ctr.*, 586 F. App'x 604, 607 (2d Cir. 2014))).

The dispositive point here, which the People repeat from their opening memorandum (Mem. 9 n.4), is that no aspect of this remand motion turns on any difference between the pre-2011 and post-2011 standards because—even under the broadest reading of the 2011 amendments' new "relating to" language—defendant has failed to identify any underlying official act, or any connection between such an official act and the allegations in the indictment. *Cf. K&D LLC v. Trump Old Post Office LLC*, 951 F.3d 503, 507-08 n.1 (D.C. Cir. 2020) (noting differing views on

effect of the 2011 amendments, but declining to resolve the question because removal was warranted under any test). At minimum, federal courts have required a federal defendant to establish that the conduct at issue in a state lawsuit "is connected or associated with an act under color of federal office." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). Even assuming this language is more expansive than the pre-2011 statute, it continues to have teeth, and courts have not hesitated to remand cases when a defendant identifies no underlying federal duty or responsibility, or when any connection between a defendant's conduct and federal authority "is too tenuous to support removal under § 1442." *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 234 (4th Cir. 2022); *see also Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 715-16 (8th Cir. 2023).[2]

The existence of and connection to an underlying official act is not just tenuous here, but nonexistent, even under defendant's "theory of the case." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999). Defendant asserts that he made the 2017 payments at issue in this criminal proceeding to "Mr. Cohen as his personal lawyer"—who, at the time, was charged with "handl[ing] [defendant's] personal affairs" (Notice ¶ 19)—"for services rendered to President Trump as his

---

[2] Defendant goes too far in dismissing a wide swathe of pre-2011 decisions as "no longer controlling." Opp'n 11. Many of these cases did not turn on the strength of the connection to an underlying official act. *See, e.g.*, *Mesa v. California*, 489 U.S. 121 (1989) (addressing federal-defense requirement); *Arizona v. Manypenny*, 451 U.S. 232 (1981) (addressing applicable law after removal); *Colorado v. Symes*, 286 U.S. 510 (1932) (addressing federal-defense requirement); *Tennessee v. Davis*, 100 U.S. 257 (1879) (addressing predecessor statute's constitutionality). And the decisions that rejected removal based on the absence of *any* underlying federal duty or responsibility remain good law on that point, since the 2011 amendments altered only the language about the degree of connection required. *See Maryland v. Soper (No. 1)*, 270 U.S. 9, 35-36 (1926) (defendant failed to identify actions authorized by federal law); *North Carolina v. Ivory*, 906 F.2d 999, 1002 (4th Cir. 1990) (no federal duty identified in traffic-accident case); *New York v. De Vecchio*, 468 F. Supp. 2d 448, 462-63 (E.D.N.Y. 2007) (no federal duty associated with the defendant's responsibility for mafia murders); *Matter of Application of Donovan*, 601 F. Supp. 574, 580-81 (S.D.N.Y. 1985) (no federal duty associated with business transactions that occurred before the defendant held federal office).

personal attorney . . . while he was President." Opp'n 13, 22. Defendant does not dispute that the President of the United States can engage in unofficial actions in his personal capacity. Mem. 14 & n.7. His further concession that Cohen was his personal lawyer handling personal affairs during the period covered by the indictment means that his payments to Cohen—even assuming that they were for legal services rendered during defendant's time as President, *but see* infra at 6-7—could not have been "for or relating to any act under color of [his federal] office." 28 U.S.C. § 1442(a)(1). Instead, any legal representation that defendant received "for or relating to" his official responsibilities would have been handled by "a government attorney functioning in his official capacity." *In re Lindsey*, 158 F.3d 1263, 1283 (D.C. Cir. 1998).

The unofficial nature of the 2017 payments to Cohen is further supported by other facts not contested by defendant—including that the business records at issue in this prosecution were held by private enterprises having nothing to do with the presidency, and that the payments were drawn from accounts that were entirely unofficial in nature. Mem. 11-12; *see also* Morgan Lewis White Paper 1-2 (conceding that the Donald J. Trump Revocable Trust held the assets of the entities constituting the Trump Organization after the election specifically to manage defendant's personal affairs apart from his official responsibilities) (Necheles Ex. B).[3] In other words, under the most generous interpretation of defendant's "theory of the case," the question for this Court is whether personal transactions involving the business records of private (not official) enterprises, generated in support of defendant's payments to a personal (not official) attorney handling his personal (not official) affairs, using funds drawn from personal (not official) accounts, are "for or relat[ed] to"

---

[3] Defendant filed two different documents as "Exhibit A" and two different documents as "Exhibit B." *See* ECF Nos. 1-1, 35-1, 35-2. For clarity, the People will refer to the defense exhibits filed at ECF No. 1-1 as "Necheles Ex. A" and "Necheles Ex. B," and will refer to the defense exhibits filed at ECF No. 35-1 and 35-2 as "Blanche Ex. A" and "Blanche Ex. B."

any act under color of" defendant's federal office. Nothing about this conduct touches, relates to, has a nexus or causal connection between, is associated with, or has any other connection to any official responsibility or authority of the President.

Defendant nonetheless asserts that his 2017 payments to Cohen "were 'connected or associated' with" his official duties because he claims that, after being elected, he hired Cohen as a personal lawyer to maintain separation between his personal and presidential functions, in order to comply with various constitutional and statutory obligations. Opp'n 14. The People have previously explained that any anticipatory actions defendant took before becoming President cannot in fact relate to official acts, because he had no official capacity at the time. Mem. 11, 15, 19-20. But even assuming that some of defendant's *initial* transitional steps after being elected could be considered to be "relat[ed] to" the Office of the President—under defendant's theory that he took those steps "solely because he was President of the United States" (Notice ¶ 19)—it would make no sense to say that *further* conduct on the personal side of the line—including payments to a "personal lawyer" hired "to handle his personal affairs" (Notice ¶ 19)—somehow retained an official character. Such a position would entirely undercut the point of the transition, which was to ensure that defendant's "personal affairs would be conducted separate and apart from the Office of the Presidency." Opp'n 23. And it would conflict with the Supreme Court's holding that the business records of defendant's private enterprises—which defendant conveyed to a trust as part of the presidential transition (Morgan Lewis White Paper 2)—were "private papers" rather than "official documents." *Trump v. Vance*, 140 S. Ct. 2412, 2429 (2020). Given defendant's own assertion that he sought to sharply separate his personal affairs from his presidential duties, and that any legal services Cohen performed in 2017 related solely to the personal side, there is no

basis whatsoever to characterize the conduct alleged in the indictment as "for or relating to any act under color" of his federal office, 28 U.S.C. § 1442(a)(1).

Although this Court need not go beyond defendant's presentation of the facts, the case for remand becomes even stronger if the Court declines to accept as true defendant's conclusory factual claims about the nature and purpose of the 2017 payments. To be sure, the Supreme Court has generally instructed that, in civil cases, courts should "credit the [federal party's] theory of the case for purposes of" the removal inquiry. *Jefferson Cnty.*, 527 U.S. at 432. But a defendant still bears the burden of demonstrating by a preponderance of the evidence that removal was proper, as the proponent of federal-court jurisdiction does in every case. *See County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022); *Donovan*, 601 F. Supp. at 579. Because this case is a criminal prosecution, that demonstration requires a "more detailed showing" than for a civil action. *Willingham v. Morgan*, 395 U.S. 402, 409 n.4 (1969); *Donovan*, 601 F. Supp. at 578. And because the removal statute mandates an evidentiary hearing when a defendant seeks to remove a criminal prosecution (but not a civil case), *see* 28 U.S.C. § 1455(b)(5), that "detailed showing" must be supported by evidence, not a defendant's mere say-so.

Although courts adjudicating a removal petition may treat alleged facts in a defendant's notice of removal as true if those facts are uncontested, *see, e.g.*, *New York v. Tanella*, 239 F. Supp. 2d 291, 292 & n.3, 295 (E.D.N.Y. 2003), the People's memorandum does present evidence contesting defendant's asserted facts. In particular, defendant has himself said that the 2016 payment to the adult film actress was a "private" transaction, and his lawyer has publicly acknowledged that the 2017 payments at issue here were reimbursements to Cohen for that earlier expenditure. Mem. 10-11 (quoting Exs. 4, 5, 6, 7). The People's evidence regarding the actual purpose of defendant's 2017 payments to Michael Cohen thus conclusively establishes the absence

of any underlying official act: no presidential duty or responsibility obligated defendant to have

Cohen make the $130,000 payment to an adult film actress in October 2016, to agree to reimburse

Cohen for that payment before his inauguration in January 2017, and then to make regular

payments in 2017 to satisfy his pre-existing and pre-presidential debt. Mem. 3-6.

## II.   Neither Supremacy Clause Immunity nor Federal Preemption Provides a "Colorable Federal Defense" to the Crimes Charged in the People's Indictment.

Defendant has not raised a colorable federal defense of either Supremacy Clause immunity

or federal preemption, and the People's motion for remand can be granted on that basis alone.

In the removal context, courts have generally equated a "colorable" defense with a

"plausible" one. *See, e.g., Graves v. 3M Co.*, 17 F.4th 764, 771 (8th Cir. 2021); *County Bd. of

Arlington Cnty. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 254 (4th Cir. 2021); *Texas v.

Kleinert*, 855 F.3d 305, 313 (5th Cir. 2017); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir.

2010); *see also, e.g. Latiolais*, 951 F.3d at 297 ("if a defense is plausible, it is colorable" (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). "Plausibility" is by now a familiar standard for

evaluating the sufficiency of pleadings under Federal Rule of Civil Procedure 8. *See Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007). The Supreme Court has expressly held that notices of

removal should be reviewed under Rule 8's plausibility standard, *Dart Cherokee Basin Operating

Co., LLC v. Owens*, 574 U.S. 81, 87-89 (2014),[4] and lower courts have applied this standard

specifically in the context of 28 U.S.C. § 1442, *see, e.g., Betzner v. Boeing Co.*, 910 F.3d 1010,

---

[4] The Supreme Court was articulating the standard for reviewing a notice of removal of a civil action under 28 U.S.C. § 1446(a), rather than a notice of removal of a criminal prosecution under 28 U.S.C. § 1455(a). *See Dart Cherokee Basin Operating Co.*, 574 U.S. at 87. The language of those subsections is identical but for the substitution of "any criminal prosecution" and "such prosecution" in § 1455(a) for "any civil action" and "such action" in § 1446(a), and there is no reason to apply a *lower* standard when reviewing the notice of removal in a criminal matter. *See Willingham*, 395 U.S. at 409 n.4; *Donovan*, 601 F. Supp. at 578.

1015 (7th Cir. 2018); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Defendant is thus off base in complaining that measuring plausibility by the *Iqbal* pleading standard amounts to an "underhanded attempt to heighten [his] burden."[5] Opp'n 14.

Here, defendant's asserted federal defenses are neither colorable nor plausible; as explained below, they are "immaterial" and "wholly insubstantial," and thus cannot support removal. *Latiolais*, 951 F.3d at 297.

### A.    Defendant has not raised a colorable defense of Supremacy Clause immunity.

Defendant's opposition to the People's motion for remand asserts, for the first time, a claim of Supremacy Clause immunity. Opp'n 21-25. Assuming this argument is not waived as a basis for removal, *but see* Mem. 17; 28 U.S.C. § 1455(b)(2), the Court should conclude that it is not a colorable defense to the People's charges of falsifying business records.[6]

Under the doctrine of Supremacy Clause immunity, a federal officer is immune from state prosecution only if (1) the official was performing an "act which he was authorized to do by the law of the United States [and] which it was his duty to do"; and (2) in doing so, he did "no more than what was necessary and proper for him to do." *New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004) (quoting *In re Neagle*, 135 U.S. 1, 75 (1890)). Defendant's Notice of Removal does not colorably assert either aspect of this test.

---

[5] Defendant's objection relies principally on a footnote from a district court opinion which observed that the *Twombly* standard "seems more exacting" than should be required for removal. *See* Opp'n 14-15 (quoting *Hagens v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 780 n.9 (E.D. Pa. 2010)). Whatever the force of that observation, the cited case predated the Supreme Court's holding in *Dart Cherokee Basin Operating Co.*

[6] Defendant affirmatively disclaims any defense based on absolute presidential immunity. Opp'n 21. The Court therefore need not consider the People's arguments as to why that defense would not present a colorable ground for removal of this prosecution.

First, even accepting as true defendant's characterization of the relevant facts, he has failed to show that his generation of business records in connection with his 2017 payments to Michael Cohen was the result of any official presidential duty authorized by federal law. As already discussed, *see supra* at 3-5, defendant concedes that Cohen was his personal attorney handling his personal affairs during the presidency. Defendant nonetheless asserts that Supremacy Clause immunity covers his payments to Cohen (and the business records associated with those payments) because Cohen had "been hired in an effort to comply with President Trump's obligations and assurances to the American public that his personal affairs would be conducted separate and apart from the Office of the Presidency" (Opp'n 22-23). But defendant's interactions with his personal attorney, for personal affairs that are "separate and apart" from his official presidential duties, cannot possibly constitute "act[s] which he was authorized to do by the law of the United States [and] which it was his duty to do." *Tanella*, 374 F.3d at 147 (quoting *Neagle*, 135 U.S. at 75).

Defendant's argument to the contrary would mean that a president's purely personal conduct would *always* be deemed official, contravening the Supreme Court's holdings that there is an "outer perimeter" to the president's official functions beyond which he may engage in "unofficial conduct," *Clinton v. Jones*, 520 U.S. 681, 693 (1997); *see Nixon v. Fitzgerald*, 457 U.S. 731, 755-56 (1982), as well as the Supreme Court's holdings that the business records of the very same private enterprises at issue here were defendant's "personal papers" rather than "official documents" subject to various official privileges, *Vance*, 140 S. Ct. at 2429; *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2033 (2020). In other words, defendant asks the Court to conclude that a president's official duties include all of the *unofficial* conduct he engages in. A Supremacy Clause defense premised on the argument that unofficial conduct is official is not colorable. *See Arizona v. Files*, 36 F. Supp. 3d 873, 878 (D. Ariz. 2014) (although the federal immunity defense

is not limited to actions specifically directed by statute, "the case law does not endorse an 'anything goes' approach to fixing the authority of federal officers")

To be clear: reaching this conclusion does not require this Court to resolve any genuine dispute over the merits of defendant's claimed defense of Supremacy Clause immunity. *See Willingham*, 395 U.S. at 407. Here, even crediting the facts that defendant himself has presented, Supremacy Clause immunity is legally unavailable because he does not identify any colorable argument that he had a federal-law duty to perform the personal, unofficial conduct alleged in the indictment—*i.e.*, generating the business records associated with his 2017 payments to Michael Cohen. *See, e.g.*, *Clinton*, 520 U.S. at 694 ("[W]e have never suggested that the President, or any other official, has an immunity that extends beyond the scope of any action taken in an official capacity"); *Symes*, 286 U.S. at 518 ("Federal officers and employees are not, merely because they are such, granted immunity from prosecution in state courts for crimes against state law.").

For similar reasons, defendant is wrong to contend that the presumption of innocence supports his attempt to establish a colorable defense of Supremacy Clause immunity. Opp'n 21-22. No aspect of the People's motion for remand requires the Court to conclude that defendant is guilty of the charged offenses. In particular, this Court need not pass on the veracity of the indictment's allegations that defendant's 2017 payments were reimbursements for Cohen's $130,000 payment to an adult film actress in 2016, or that defendant acted here with intent to defraud that included an intent to conceal or commit another crime. This Court need only look to the facts as defendant himself describes them in his Notice—that he made personal payments to a personal lawyer, based on a pre-presidential decision to sharply separate his personal affairs from his official duties (Notice ¶ 19)—to conclude that the alleged actions that defendant took while serving as President were

entirely unofficial, rather than "act[s] which he was authorized to do by the law of the United States [and] which it was his duty to do."[7] *Tanella*, 374 F.3d at 147 (quoting *Neagle*, 135 U.S. at 75).

Second, defendant does not identify any basis, let alone a colorable basis, to conclude that any purported official conduct was "no more than what was necessary and proper for him to do." *Id.* (quoting *Neagle*, 135 U.S. at 75). To meet this element, a federal official "must subjectively believe that his actions were justified," and "that belief must be objectively reasonable." *Id.* Apart from reciting the legal standard (Opp'n 24), there is no showing anywhere in defendant's removal papers that even attempts to satisfy these two distinct requirements. "[M]erely reciting the magic words 'necessary and proper' will not satisfy *Mesa*'s jurisdictional requirement if the underlying facts averred, or indeed existing on the whole record before the court, do not make out a colorable federal defense." *Ivory*, 906 F.2d at 1001 n.2; *see also De Vecchio*, 468 F. Supp. 2d at 462 ("[A]lthough [the defendant's] general claim that everything he did was in the discharge of his federal duties might well satisfy the broad pleading requirements under *Willingham*'s liberal immunity standard for removal in civil cases, he simply cannot satisfy the more stringent requirements for criminal cases . . . .").

**B.    Defendant has not raised a colorable defense of federal preemption.**

Defendant's claim that "federal law has entirely preempted state law in the area of federal elections" (Opp'n 18) is simply wrong. As the People have already explained (Mem. 24-25), federal courts have uniformly held that FECA does not preempt state regulation of fraud,

---

[7] These facts are further supported by the People's unrebutted evidence that defendant and his attorney publicly acknowledged that the reimbursement to Cohen was for a "private contract" and "private agreement" made to "resolve a personal and false allegation." Mem. 4-5 (quoting Ex. 4, Ex. 5); *see also id.* (citing Ex. 6, Ex. 7).

misrepresentation, and deceptive practices, even as applied to political spending or fundraising.[8]
*See, e.g.*, *WinRed, Inc. v. Ellison*, 59 F.4th 934, 946 (8th Cir. 2023); *Stern v. Gen. Elec. Co.*, 924
F.2d 472, 475 (2d Cir. 1991). Federal law does not disable New York from "requir[ing] that
[private enterprises] refrain from fraud" in conducting their business. *People ex rel. Spitzer v.
Applied Card Sys., Inc.*, 11 N.Y.3d 105, 115 (2008).

Defendant is thus wrong to contend that FECA would preclude *any* conviction for
falsifying business records that is based on intent to defraud the public. Opp'n 20-21. The fact that
FECA preempts state laws concerning "[d]isclosure of receipts and expenditures by Federal
candidates," 11 C.F.R. § 108.7(b)(2), does not support defendant's position here. The New York
Court of Appeals rejected a nearly identical argument in *Applied Card*.  In that case, a credit-card
issuer claimed that the New York Attorney General's fraud claims under Executive Law § 63(12)
and General Business Law §§ 349 and 350 were preempted by the disclosure requirements and
express preemption provision of the federal Truth-in-Lending Act. 11 N.Y.3d at 113-14. The Court
disagreed, holding that the Attorney General could enforce New York's general prohibitions
against "fraudulent and deceptive misinformation" because the lawsuit was not seeking to interfere
with the specific disclosures mandated by federal law, and thus was not covered by the federal
statute's express preemption of state laws "relating to the disclosure of information." *Id.* at 114,
117. So too here: because the charges here do not relate to the specific disclosures mandated by
FECA, there is no barrier to enforcing New York's general requirements for honest record-
keeping. *See also Dewald v. Wriggelsworth*, 748 F.3d 295, 302-03 (6th Cir. 2014) (allowing claim
against an individual who solicited money by fraudulently purporting to represent a federally

---

[8] The Federal Election Commission's regulation implementing FECA's preemption provision
expressly identifies half a dozen non-preempted categories of state law. *See* 11 C.F.R. § 108.7(c).

registered political action committee); *Stern*, 924 F.2d at 475 (FECA "does not preclude New York from pursuing its independent interest in ensuring that corporate directors exercise sound judgment in the expenditure of corporate funds").

Defendant also claims that "federal preemption would provide a complete defense" to the charges here because (a) he characterizes the charges as alleging that defendant perpetrated business fraud with the intent to commit or conceal a violation of N.Y. Election Law § 17-152, and (b) he claims that federal law would preempt any application of this state election law to the presidential election. Opp'n 18. In addition to the defects with this argument that the People have already identified (Mem. 21-25), defendant's preemption claim fails for several other reasons.

First, the Supreme Court has long "enjoin[ed] seeking out conflicts between state and federal regulation where none *clearly* exists." *Huron Portland Cement Co. v. City of Detroit, Mich.*, 362 U.S. 440, 446 (1960) (emphasis added). Here, defendant's preemption argument has only a tenuous connection to the actual criminal charges against him—and would not provide a "complete defense" (Opp'n 18) by any means. Defendant's sole claim of preemption targets Election Law § 17-152. But the charges here are not for violating that statute, but rather for falsifying business records under Penal Law § 175.10. For that crime, to establish the element of general "intent to commit [or conceal] another crime," *id.*, the People need not prove that defendant intended to commit or conceal (or that anybody actually committed) *any* particular crime— whether a violation of Election Law § 17-152 or something else. *See* Mem. 22-24; *People v. Taveras*, 12 N.Y.3d 21, 26-27 (2009); *People v. Mackey*, 49 N.Y.2d 274, 279 (1980).[9] And even

---

[9] In a footnote, defendant suggests that *Mackey* is inapplicable here because that decision addressed burglary rather than falsification of business records. Opp'n 19 n.15. Defendant identifies no law supporting this argument, and there is none. *Mackey*'s holding turned on the fact that the burglary statute required proof of "intent to commit a crime therein," Penal Law § 140.25, without specifying any particular crime. "Had the Legislature intended" that the People "prove an intent to

if some particular crime did have to be specified for the "intent to commit or conceal" element of Penal Law § 175.10, the People have alleged that defendant intended to conceal or commit multiple other crimes for which defendant has raised no preemption argument whatsoever. Mem. 22; *see also* People's Response to Defendant's Request for a Bill of Particulars 5 ("the crimes defendant intended to commit or to aid or conceal may include violations of . . . New York Tax Law §§ 1801(a)(3) and 1803; [or] New York Penal Law §§ 175.05 and 175.10") (Ex. 2).

Defendant's preemption challenge to Election Law § 17-152 thus does not clearly provide a defense to the actual criminal charges against him. Indeed, defendant implicitly concedes as much when he argues that a general verdict here *might* be overturned on appeal if, based on the evidence presented at trial and charges submitted to the jury, there is "[e]ven the mere possibility" that the petit jury relied in some way on a perceived violation of the election law. Opp'n 19 (citing *Yates v. United States*, 354 U.S. 298 (1957)). But whether the jury's verdict would suffer from such a defect will depend on whether and to what degree the People rely on Election Law § 17-152 at trial, *cf. People v. Barnes*, 50 N.Y.2d 375, 379 n.3 (1980) (noting that prosecution may but is not required to specify an intended crime for burglary); how the state court instructs the jury (*see* Opp'n 19 (speculating about what the People "intend[] to argue to the jury")); and whether the jury returns special verdicts or interrogatory responses that could resolve any ambiguity over

---

commit a particular crime as distinct from the general intent to commit crime," "it could easily in revising the Penal Law have inserted the word 'specified' or the word 'particular' between 'a' and 'crime,'" but it did not. *Mackey*, 49 N.Y.2d at 279. The same reasoning applies to Penal Law § 175.10, which refers to "an intent to commit another crime or to aid or conceal the commission thereof" but, like the burglary statute, does not use the word "specified" or "particular" between "another" and "crime." Far from being novel, such a result would reflect nothing more than the application of the well-established interpretive principle that, when the Legislature omits language from a statute, "an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded." *People v. Jackson*, 87 N.Y.2d 782, 788 (1996) (quotation marks omitted).

the basis for its verdict (and thus avoid any chance of reversal under *Yates*), *see People v. Ribowsky*, 77 N.Y.2d 284, 290-91 (1991). Given these contingencies, the "mere possibility" (Opp'n 18) that a verdict here may rely on Election Law § 17-152 "is simply too speculative a basis on which to rest a finding of pre-emption." *English v. Gen. Elec. Co.*, 496 U.S. 72, 90 (1990).

Second, even assuming that the People were to focus only on defendant's intent to commit or conceal a violation of Election Law § 17-152, defendant errs in suggesting that preemption of that statute would mean that there would be no underlying crime to support a conviction for falsifying business records in the first degree. Opp'n 19-20. Unlike in other contexts, where a party argues that the effect of federal preemption is to leave an area *un*regulated, *see Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988), here defendant's preemption claim is based on his characterization of the state-law charges as a "backdoor attempt to enforce FECA's campaign contribution regulations." Opp'n 20. But if a state-law "backdoor attempt" is preempted on this basis, then under defendant's own argument the underlying violations of federal "campaign contribution regulations" necessarily remain—including, here, the violations of FECA for which Michael Cohen pleaded guilty and for which defendant was implicated in the information filed in this Court by the United States Attorney's Office for the Southern District of New York. *See* Information ¶¶ 24-44, *United States v. Cohen*, No. 18-cr-602 (S.D.N.Y. Aug. 21, 2018) (Ex. 21). Defendant's intent to commit or conceal a violation of a federal crime would satisfy that element of Penal Law § 175.10. Whether Election Law § 17-152 is preempted is thus immaterial for this reason as well.

## III.   This Court Need Not Reach the Parties' Remaining Arguments.

Defendant agrees that "this Court need not decide the question of protective jurisdiction" (Opp'n 26) but nonetheless requests a backup hearing on the issue if this Court were otherwise to

rule in favor of remand. Opp'n 25-26. No such hearing is warranted because the theory of protective jurisdiction provides no basis for removal.

Contrary to defendant's arguments, the People did not "overstate[]" the Supreme Court's holding in *Mesa* (Opp'n 25) by noting that the Court there had rejected protective jurisdiction as a basis for removal under 42 U.S.C. § 1442(a)(1). The only question arguably left open in *Mesa* was whether, as a *constitutional* matter, Congress could theoretically authorize removal on a purely "protective" basis—*i.e.*, based solely on the fact that a defendant was a federal officer, regardless of whether he raised a colorable federal defense. 489 U.S. at 137-38.[10] But the Court squarely rejected such a basis for removal as a *statutory* matter, holding that "[f]ederal officer removal under 28 U.S.C. § 1442(a) *must* be predicated upon averment of a federal defense." *Id.* at 139 (emphasis added). That conclusion definitively rules out defendant's attempt to rely on protective jurisdiction here to avoid remand.

For this reason alone, the Court should reject defendant's backup request for an additional hearing. Opp'n 26. But any such hearing would also be unwarranted because defendant has failed even to allege the necessary factual basis for invoking protective jurisdiction. As the People have explained (Mem. 27), the concerns about "local hostility to federal authority" that have animated theoretical discussions of protective jurisdiction as a basis for removal, *Mesa*, 489 U.S. at 140 (Brennan, J., concurring), require proof of *both* "hostile state prosecutors *and* collaborationist state courts," *id.* at 138 (emphasis added). Defendant has made no effort to argue here that the New York courts are categorically prejudiced against federal authority—an omission that is itself fatal

---

[10]   Justice Brennan's suggestion that the majority had "refrain[ed] from deciding" this constitutional question, *Mesa*, 489 U.S. at 140 (Brennan, J., concurring), is questionable, given the majority's explicit conclusion that "it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes," *id.* at 136.

to any attempt to invoke protective jurisdiction. And his claim that the People here are improperly motivated by hostility to federal authority is also wholly unsupported.

Separately, as the People previously noted, this Court also "need not reach [the] issue" of whether the President can be an "officer . . . of the United States" entitled to seek removal under 28 U.S.C. § 1442(a)(1), in light of other, more obvious defects to removal. Mem. 8.[11] Defendant's lengthy discussion of this topic merely confirms that there is a serious and unresolved question on this issue. Defendant identifies no precedent directly addressing this question[12]—little surprise, given the paucity of state-court litigation, especially criminal proceedings, involving current or former presidents. And defendant acknowledges (in a footnote, Opp'n 5 n.2) that he previously took the position that the President is *not* an "officer" of the United States under various constitutional and statutory provisions (Morgan Lewis White Paper 1); this case is different, he contends, because the meaning of "officer of the United States" must "be determined contextually" and does not have "a single uniform meaning throughout the Constitution and United States Code." Opp'n 5, 6.

---

[11] Defendant gratuitously accuses the People of "cribb[ing]" this argument from a blog post. No. The Supreme Court cases the People discussed (Mem. 30) are frequently cited in debates over the meaning of "officer of the United States" under Article II. Indeed, in other litigation, defendant himself has relied on those passages from the same Supreme Court cases in discussing the meaning of "officer." *See* Mem. Supp. Donald J. Trump's Mot. to Dismiss 16-17, *Thompson v. Trump*, No. 21-cv-400-APM (D.D.C. May 26, 2021) (quoting *United States v. Mouat*, 124 U.S. 303, 307 (1888), and *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 498 (2010)) (Ex. 25).

[12] Defendant quotes an unpublished report and recommendation by a magistrate judge in a pro se lawsuit, but the ellipsis in his quotation omits that the hundreds of defendants there included not just the President, Vice President, and former Vice President, but also "129 members of the United States House of Representatives" and "94 United States Senators," *Brunson v. Adams*, 2021 WL 5403892, at *1 (D. Utah Oct. 19, 2021). Perhaps given the sheer number of defendants, neither the plaintiff nor the federal government engaged at all in the question of whether the President specifically qualified as an "officer" under 2 U.S.C. § 1442(a)(1). *See* Motion to Remand, ECF No. 5 (seeking remand based solely on alleged bias and lack of federal-question jurisdiction) & Memorandum Opposing Motion to Remand 1, ECF No. 11 (saying only that defendants included "nearly four hundred current or former federal officers," one of whom was the President), *Brunson v. Adams*, No. 21-00111 (D. Utah Aug. 9 & Aug. 30, 2021).

This Court need not and should not wade into this morass. The other arguments for remand raised by the People rest on settled legal doctrines and facts specific to this case—including defendant's own characterizations of the nature and purpose of the charged conduct. Granting remand solely on those grounds would thus be more than sufficient to return this criminal proceeding to the state court where it belongs. And it would avoid embroiling this case in appellate litigation on a novel and unsettled legal issue. This Court should thus order remand based on defendant's failure to identify an act under color of office or any colorable federal defense.

## CONCLUSION

The People's motion for remand should be granted.

DATED: June 23, 2023                    Respectfully submitted,

ALVIN L. BRAGG, JR.
*District Attorney*
*New York County*

By: */s/ Matthew Colangelo*
Matthew Colangelo
Steven C. Wu
Philip V. Tisne
New York County District Attorney's Office
1 Hogan Place
New York, NY 10013
212-335-9000
colangelom@dany.nyc.gov

*Attorneys for the People of the State of New York*