# EXHIBIT H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

------------------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

-against-

Ind. No. 71543-23

DONALD J. TRUMP,

                              Defendant.

------------------------------------------------------------

## NOTICE OF MOTIONS IN LIMINE

PLEASE TAKE NOTICE that the People will move this Court, located at 100 Centre Street, New York, New York, on a date and time to be set by the Court, for an order:

(1) excluding expert testimony regarding federal campaign finance law;

(2) excluding evidence or argument that the Federal Election Commission dismissed complaints that defendant committed campaign finance violations;

(3) excluding evidence or argument regarding any purported decision by the United States Department of Justice not to charge defendant with campaign finance violations;

(4) excluding evidence or argument regarding selective prosecution or government misconduct;

(5) excluding evidence or argument regarding federal prosecutors' purported views of Michael Cohen's credibility;

(6) precluding argument regarding any alleged reliance on advice of counsel unless and until defendant establishes a sufficient factual predicate for that defense;

(7) excluding evidence or argument regarding legal defenses the Court has already rejected; and

(8) permitting the introduction of potential *Molineux* evidence;

and for such other and further relief as the Court may deem just and proper. A supporting affirmation, memorandum of law, and exhibits are attached to this notice of motion.

DATED:        February 22, 2024                    Respectfully submitted,

                                                   ALVIN L. BRAGG, JR.
                                                   *District Attorney, New York County*

                                                   By: */s/ Matthew Colangelo*
                                                   Matthew Colangelo
                                                   Christopher Conroy
                                                   Susan Hoffinger
                                                   Becky Mangold
                                                   Joshua Steinglass
                                                     *Assistant District Attorneys*
                                                   New York County District Attorney's Office
                                                   1 Hogan Place
                                                   New York, NY 10013
                                                   212-335-9000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

--------------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

-against-

DONALD J. TRUMP,

                               Defendant.

--------------------------------------------------------

AFFIRMATION AND
MEMORANDUM OF LAW IN
SUPPORT OF MOTIONS IN LIMINE

Ind. No. 71543-23

## AFFIRMATION

Matthew Colangelo, an attorney admitted to practice before the courts of this state, affirms under penalty of perjury that:

1.      I am an Assistant District Attorney in the New York County District Attorney's Office. I am assigned to the prosecution of the above-captioned case and am familiar with the facts and circumstances underlying the case.

2.      I submit this affirmation in support of the People's motions in limine.

3.      Defendant is charged with thirty-four counts of falsifying business records in the first degree, PL § 175.10. These charges arise from defendant's efforts to conceal an illegal scheme to influence the 2016 presidential election. As part of this scheme, defendant requested that an attorney who worked for his company pay $130,000 to an adult film actress shortly before the election to prevent her from publicizing an alleged sexual encounter with defendant. Defendant then reimbursed the attorney for the illegal payment through a series of monthly checks. Defendant caused business records associated with the repayments to be falsified to disguise his and others' criminal conduct.

4.      Attached as Exhibit 1 is a true and correct copy of defendant's Witness Disclosure for Bradley A. Smith dated January 22, 2024.

5.     Attached as Exhibit 2 is a true and correct copy of *United States v. Suarez*, No. 5:13-cr-420 (N.D. Ohio June 24, 2014).

6.     Attached as Exhibit 3 is a true and correct copy of the signed engagement letter between Bradley A. Smith and Todd Blanche dated January 4, 2024, for *People v. Trump*, Ind. No. 71543-23.

7.     Attached as Exhibit 4 is a true and correct copy of the Decision & Order in *People v. The Trump Corporation*, Ind. No. 1473/2021 (Sup. Ct. N.Y. Cnty. Jan. 5, 2022).

8.     Attached as Exhibit 5 is a true and correct copy of the Hearing Transcript in *People v. The Trump Corporation*, Ind. No. 1473/2021 (Sup. Ct. N.Y. Cnty. Oct. 20, 2022).

9.     Attached as Exhibit 6 is a true and correct copy of a document titled Expert Witness Disclosure, Professor Bradley A. Smith, in *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), ECF No. 276-5.

10.     Attached as Exhibit 7 is a true and correct copy of the Hearing Transcript in *People v. The Trump Corporation*, Ind. No. 1473/2021 (Sup. Ct. N.Y. Cnty. Oct. 21, 2022).

11.     Attached as Exhibit 8 is a true and correct copy of the Judgment of Conviction in *United States v. Cohen*, No. 18-cr-602 (S.D.N.Y. Dec. 12, 2018).

12.     Attached as Exhibit 9 is a true and correct copy of the Information in *United States v. Cohen*, No. 18-cr-602 (S.D.N.Y. Aug. 21, 2018).

13.     Attached as Exhibit 10 is a true and correct copy of the Hearing Transcript in *United States v. Cohen*, No. 18-cr-602 (S.D.N.Y. Aug. 21, 2018).

14.     Attached as Exhibit 11 is a true and correct copy of defendant's social media posts dated February 1, 2023, March 9, 2023, and March 27, 2023.

15.     Attached as Exhibit 12 is a true and correct copy of a document titled Certification, *In the Matter of Donald J. Trump for President, Inc., et al.*, Federal Election Comm'n Matter Under Review 7324, 7332, 7364, & 7366 (Mar. 11, 2021).

16.     Attached as Exhibit 13 is a true and correct copy of the Letter from Lynn Y. Tran, Assistant General Counsel, Federal Election Commission, to E. Stewart Crosland (June 1, 2021).

17.     Attached as Exhibit 14 is a true and correct copy of a document titled Statement of Reasons of Chair Shana M. Broussard & Commissioner Ellen L. Weintraub, *In the Matter of Donald J. Trump for President, Inc., et al.*, Federal Election Comm'n Matter Under Review 7324, 7332, 7364, & 7366 (July 1, 2021).

18.     Attached as Exhibit 15 is a true and correct copy of a document titled Statement of Reasons of Vice Chair Allen Dickerson et al., *In the Matter of Donald J. Trump for President, Inc., et al.*, Federal Election Comm'n Matter Under Review 7324, 7332, 7364, & 7366 (June 28, 2021).

19.     Attached as Exhibit 16 is a true and correct copy of a document titled Certification, *In the Matter of Michael D. Cohen, et al.*, Federal Election Comm'n Matter Under Review 7313, 7319, & 7379 (Mar. 31, 2021).

20.     Attached as Exhibit 17 is a true and correct copy of the Letter from Lynn Y. Tran, Assistant General Counsel, Federal Election Commission, to E. Stewart Crosland (Mar. 31, 2021).

21.     Attached as Exhibit 18 is a true and correct copy of a document titled Statement of Reasons of Commissioners Sean J. Cooksey & James E. "Trey" Trainor III, *In the Matter of Michael Cohen, et al.*, Federal Election Comm'n Matter Under Review 7313, 7319, & 7379 (Apr. 26, 2021).

22.    Attached as Exhibit 19 is a true and correct copy of the excerpted Hearing Transcript in *People by James v. Trump*, No. 452564/2022 (Sup. Ct. N.Y. Cnty. Jan. 11, 2024).

23.    Attached as Exhibit 20 is a true and correct copy of the excerpted Trial Transcript in *People by James v. Trump*, No. 452564/2022 (Sup. Ct. N.Y. Cnty. Nov. 6, 2023).

24.    Attached as Exhibit 21 is a true and correct copy of defendant's social media post dated October 7, 2016.

25.    Attached as Exhibit 22 is a true and correct copy of Megan Twohey & Michael Barbaro, *Two Women Say Donald Trump Touched Them Inappropriately*, N.Y. Times, Oct. 12, 2016.

26.    Attached as Exhibit 23 is a true and correct copy of Natasha Stoynoff, *Physically Attacked by Donald Trump—A PEOPLE Writer's Own Harrowing Story*, People Magazine, Oct. 12, 2016.

27.    Attached as Exhibit 24 is a true and correct copy of defendant's social media posts dated October 15, 2016, October 16, 2016, and October 17, 2016.

## MEMORANDUM OF LAW

Courts deciding whether to preclude or admit evidence must determine whether the evidence is relevant and, if so, whether it is admissible. *People v. Primo*, 96 N.Y.2d 351, 355 (2001). Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is material to the determination of the action. *People v. Lewis*, 69 N.Y.2d 321, 325 (1987). Irrelevant evidence is not admissible. *See id.* The court may exclude relevant evidence if its admission violates an exclusionary rule, *People v. Alvino*, 71 N.Y.2d 233, 241 (1987), or "if its probative value is outweighed by the prospect of trial delay, undue prejudice to the opposing party, confusing the issues or misleading the jury." *Primo*, 96 N.Y.2d at 355.

The Court has authority to consider pretrial motions *in limine* seeking evidentiary rulings based on both "the inherent power of a trial court to admit or exclude evidence" and the court's "inherent authority to manage the course of trials." *People v. Michael M.*, 162 Misc. 2d 803, 806-07 (Sup. Ct. Kings Cnty. 1994) (citing cases). Pretrial evidentiary rulings avoid the risk of presenting prejudicial, confusing, immaterial, or inadmissible evidence to the jury, *see State v. Metz*, 241 A.D.2d 192, 198 (1st Dep't 1998), and minimize delay and disruption during trial, *see Gallegos v. Elite Model Mgmt. Corp.*, 195 Misc. 2d 223, 226-27 (Sup. Ct. N.Y. Cnty. 2003).

For the reasons that follow, the People respectfully request that the Court grant the People's motions *in limine* to:

1.  preclude defendant's proposed testimony from Bradley A. Smith regarding federal campaign finance law;

2.  preclude the presentation of argument or introduction of evidence that the Federal Election Commission dismissed complaints alleging, or cleared defendant of, federal campaign finance violations;

3.  preclude the presentation of argument or introduction of evidence regarding any purported decision by the United States Department of Justice not to charge defendant with campaign finance violations;

4.  preclude the presentation of argument or introduction of evidence regarding defendant's claims of selective prosecution or government misconduct;

5.  preclude the presentation of argument or introduction of evidence regarding federal prosecutors' purported views of Michael Cohen's credibility;

6.  preclude argument regarding any alleged reliance on advice of counsel unless and until defendant establishes a sufficient factual predicate for that defense;

7.      preclude evidence or argument regarding legal defenses the Court has already rejected; and

8.      permit the introduction of potential *Molineux* evidence.

**I.      Motion to exclude witness testimony or argument regarding federal election laws.**

**A.      Introduction.**

Defendant intends to proffer witness testimony at trial from Bradley A. Smith about "industry norms, regulations, and practices" regarding "federal election laws," including campaign finance law. Ex. 1. The Court should exclude Mr. Smith's testimony because conclusions of law are not proper expert testimony; because his proposed testimony is irrelevant; and because the proposed testimony would improperly mislead and confuse the jury. Two different federal courts have precluded Mr. Smith's proposed testimony on campaign finance law in separate criminal prosecutions, and his testimony is just as improper here. *See United States v. Bankman-Fried*, No. 22-cr-673 (LAK), 2023 WL 6162865, at *3 (S.D.N.Y. Sept. 21, 2023); *United States v. Suarez*, No. 5:13-cr-420, slip op. at 1-2 (N.D. Ohio June 24, 2014) (Ex. 2).

**B.      Background.**

On January 22, 2024, defendant disclosed his intent to call Bradley A. Smith, a law professor and former member of the Federal Election Commission, as a witness at trial. *See* Ex. 1. Defendant styled this disclosure as a "Witness Disclosure (Background / Non-Expert Testimony)," and stated that Mr. Smith may be called as a witness "to testify about background information regarding federal election laws." *Id.*

Defendant's disclosure states that "Mr. Smith's knowledge, skill, experience, training, and education are well beyond the ordinary lay person regarding federal election law, campaign finance law, and voting rights issues," but asserts that "Mr. Smith is not being called as an 'expert'

because the defense will not ask him to give an opinion but instead will call him to testify about industry norms, regulations, and practices." *Id.*

The signed engagement letter between Mr. Smith and defense counsel for this matter describes the "Scope of Engagement" as follows:

> Blanche Law is engaging me to provide, as requested, expert consultation in connection with litigation in the above-referenced matter, to provide required written reports to the court, and to provide expert testimony as necessary in both pre-trial and trial stages. If requested or approved by Blanche Law, I may also engage in commentary with media organizations covering the matter as part of this engagement. My services are requested for commentary on laws and regulations pertaining to campaign finance law and common campaign practices, and in particular to federal campaign finance law pursuant the [sic] Federal Election Campaign Act, 52 U.S.C. § 30301 [sic] et seq., and regulations issued thereunder, and to historical background on enforcement. The work may, as necessary, include additional research.

Ex. 3 at 1. Defendant is paying Mr. Smith $1,200 per hour for this engagement.[1] *Id.*

**C.    Argument.**

     **1.    Defendant's disclosure is properly considered a proffer of expert witness testimony, not lay witness testimony.**

As an initial matter, the Court should treat Mr. Smith's proposed testimony as expert testimony, not lay testimony.

Defendant has proffered Mr. Smith's testimony on four broad topics:

- "That federal campaign finance laws provide (1) that a candidate cannot use campaign funds for personal expenses, (2) that if an expense does not 'arise out' of a campaign, it cannot be paid for using campaign funds, even if the expense would have an impact on the campaign, and (3) that an expenditure made by a candidate, or by a third-party on his behalf, must be reported as a campaign contribution only if it is a campaign contribution but not if it is a personal expenditure," Ex. 1 at 2;

---

[1] Defendant's retention of a witness to "engage in commentary with media organizations covering the matter" at a rate of $1,200 per hour, Ex. 3 at 1, raises separate concerns about potential efforts by defendant to taint the jury pool or otherwise prejudice these proceedings.

- "That at the time that Mr. Cohen made the payment to Stormy Daniels, there had never been a case in which someone was convicted of violating federal campaign finance laws by making a 'hush payment' to an alleged girlfriend or former lover (either directly or through a third party) using non-campaign funds, and that there had never been any finding by the Federal Election Commission that such conduct violates federal campaign finance law," *id.*;

- "That the federal prosecution of former U.S. Senator and vice-presidential nominee John Edwards is the one public case in which a 'hush payment' theory has been alleged. Further, that in that case, the federal charges—including those based on purported federal campaign finance law violations—were either rejected by the jury or dismissed by the government." *Id.*; and

- "That the Edwards prosecution was heavily criticized and resulted in a wide consensus, among the public, media, and legal scholars, that the conduct alleged did not violate federal campaign finance laws." *Id.*

On its face, this proposed testimony relates exclusively to the interpretation and application of federal campaign finance law, rather than any factual issues relevant to this case. The proposed topics call for opinion testimony by a specialist; Mr. Smith is not a percipient witness as to any event or conduct at issue in this prosecution.

Defendant's witness disclosure asserts that "Mr. Smith is not being called as an 'expert' because the defense will not ask him to give an opinion but instead will call him to testify about industry norms, regulations, and practices." Ex. 1. But testimony about campaign finance law from a law professor whom defendant himself describes as having "knowledge, skill, experience, training, and education" in that specialized field "well beyond the ordinary lay person," Ex. 1, is the very definition of expert opinion testimony. *See* Guide to N.Y. Evid. rule 7.01(1)(a), Opinion of Expert Witness. That defendant describes Mr. Smith's proposed testimony as relating to "industry norms, regulations, and practices" does not change this conclusion, because of course the relevant norms, regulations, and practices he is describing are all governed by federal law and regulations. And in any event, testimony regarding "industry norms" in any specialized field is generally treated as expert opinion testimony under New York law. *See, e.g.*, Prince, Richardson

8

on Evidence § 7-307 (noting that "standards within an industry" is the subject matter of expert testimony) (*citing, e.g.*, *Lugo v. LJN Toys*, 75 N.Y.2d 850, 852 (1990)); *see also Regan v. Eight Twenty Fifth Corp.*, 287 N.Y. 179, 182 (1941); *French v. Ehrenfeld*, 180 A.D.2d 895, 896 (3d Dep't 1992); *Bailey v. Baker's Air Force Gas Corp.*, 50 A.D.2d 129, 132 (3d Dep't 1975); *Berman v. H.J. Enters., Inc.*, 13 A.D.2d 199, 201 (1st Dep't 1961).

Indeed, the engagement letter between Mr. Smith and defense counsel in this case shows that he was retained at a $1,200-per-hour rate "as an expert consultant and witness" to provide "expert testimony as necessary in both pre-trial and trial stages" of this prosecution. Ex. 3. Where defendant retained a law professor and agreed to pay him $1,200 an hour to serve "as an expert consultant and witness" by providing "expert testimony" about his interpretation of campaign finance law (Ex. 3), on the basis of "knowledge, skill, experience, training, and education" that are "well beyond the ordinary lay person" (Ex. 1), the Court should reject defendant's claim that the witness is "not being called as an 'expert.'"[2] *Id.*

### 2.     Mr. Smith's proposed testimony should be excluded in full because expert testimony as to a legal conclusion is impermissible.

The Court should preclude Mr. Smith's proffered testimony because defendant seeks to call him to testify about conclusions of law, and testimony regarding conclusions of law is impermissible. Just a few months ago, Judge Kaplan in the Southern District of New York precluded Mr. Smith's proposed testimony for the defendant regarding the application of federal campaign finance law to the government's prosecution of Sam Bankman-Fried on the ground that,

---

[2] For the reasons described below, Mr. Smith's improper testimony should be excluded in full. If his testimony is not precluded entirely, however, the Court should still conclude that he is an expert witness and should direct defendant to comply immediately and fully with all discovery obligations under CPL § 245.20(1)(f). Defendant should not be permitted to evade or delay reciprocal discovery by retaining a law professor "as an expert consultant and witness," Ex. 3, but then claiming that "he is not being called as an 'expert.'" Ex. 1.

among other reasons, "Mr. Smith's testimony is improper because he seeks to instruct the jury on issues of law." *Bankman-Fried*, 2023 WL 6162865, at *3. This Court should do the same.

Expert testimony is permitted where the Court determines that scientific, technical, medical, or other specialized knowledge is necessary to "help the finder of fact to understand the evidence or determine a fact in issue." Guide to N.Y. Evid. rule 7.01(1)(b), Opinion of Expert Witness; *see People v. Inoa*, 25 N.Y.3d 466, 472 (2015); *People v. Cronin*, 60 N.Y.2d 430, 432-33 (1983). But "[e]xpert opinion as to a legal conclusion is impermissible." *Colon v. Rent-A-Center, Inc.*, 276 A.D.2d 58, 61 (1st Dep't 2000) (citing *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 508-12 (2d Cir. 1977)); *see also Russo v. Feder, Kaszovitz, Isaacson, Weber, Skala & Bass, LLP*, 301 A.D.2d 63, 68-69 (1st Dep't 2002) ("An expert may not be utilized to offer opinion as to the legal standards which he believes should have governed a party's conduct."); *People v. Kirsh*, 176 A.D.2d 652, 653 (1st Dep't 1991) (trial court properly denied defendant's application to call an expert who would have offered opinion as to a legal defense), *leave denied*, 79 N.Y.2d 949 (1992); *People v. Johnson*, 76 A.D.2d 983, 984 (3d Dep't 1980) (same). Indeed, "[t]he rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (quoting Tomas Baker, *The Impropriety of Expert Witness Testimony on the Law*, 40 U. Kan. L. Rev. 325, 352 (1992)).

Expert testimony as to a legal conclusion is properly excluded because it does not "help the finder of fact to . . . determine a fact in issue," Guide to N.Y. Evid. rule 7.01(1)(b), and instead improperly infringes on the Court's role. "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."

*Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (trial court erred in admitting expert testimony that "consisted of impermissible legal conclusions rather than permissible factual opinions"). Courts routinely and properly exclude testimony that purports to explain the law to the jury. *See United States v. Stewart*, 433 F.3d 273, 311-12 (2d Cir. 2006) (trial court properly excluded defense expert testimony regarding legal principles because "[c]learly, an opinion that purports to explain the law to the jury trespasses on the trial judge's exclusive territory"); *Kirsh*, 176 A.D.2d at 653 ("Any instructions . . . as to a legal defense lay within the responsibility of the court"); *Johnson*, 76 A.D.2d at 984 (trial court properly excluded defense expert because "the proposed expert testimony involved interpretation and application of the Social Services Law and pertinent regulations and such was within the sole province of the court").

This Court had occasion to apply this principle very recently in connection with the proffered testimony of a defense expert in the *Trump Corporation* prosecution, during which the Court repeatedly noted that "this Court will not permit this trial to become a referendum on the Internal Revenue Code or a master class on taxation. The evidence at trial will be limited to what is relevant and necessary for the finders of fact to perform their duties – and nothing more." Decision & Order 3, *People v. The Trump Corporation*, Ind. No. 1473/2021 (Sup. Ct. N.Y. Cnty. Jan. 5, 2022) (Ex. 4); *see also* Hearing Tr. 33, *People v. The Trump Corporation*, Ind. No. 1473/2021 (Sup. Ct. N.Y. Cnty. Oct. 20, 2022) ("[A]s I said a long time ago, this trial is not going to turn into a master class on taxation, and I'm certainly not going to permit the jury to become confused by irrelevant issues.") (Ex. 5).

As noted in Part I.C.1 above, each of the four topics of Mr. Smith's proposed testimony relates exclusively to the interpretation and application of federal campaign finance law. Ex. 1. Testimony purporting to explain how campaign finance law applies to the election interference

scheme at issue in this prosecution would run afoul of the axiomatic principle that "[e]xpert opinion as to a legal conclusion is impermissible."[3] *Colon*, 276 A.D.2d at 61. Indeed, as noted above, a federal court very recently precluded Mr. Smith from testifying for the defense in a criminal trial—on topics much like those he proposes to testify about here—on the ground that his proffered testimony improperly sought to instruct the jury on the law.[4] *See Bankman-Fried*, 2023 WL 6162865, at *3. Mr. Smith's effort to instruct the jury on campaign finance law should get no more purchase in this case than it did before Judge Kaplan in the Southern District of New York. The Court should preclude Mr. Smith's proposed testimony here on the ground that it is improper legal instruction. *See id.*; *Russo*, 301 A.D.2d at 68-69; *Colon*, 276 A.D.2d at 61; *Kirsh*, 176 A.D.2d at 653; *Johnson*, 76 A.D.2d at 984.

### 3. Mr. Smith's proposed testimony should be excluded in full because it is irrelevant.

Mr. Smith's proposed testimony should be excluded on the entirely separate ground that it is irrelevant. Indeed, Mr. Smith was prohibited from testifying in a different federal criminal prosecution where the trial court held that Mr. Smith's views regarding federal campaign finance law were irrelevant to the defendants' own state of mind in that case. *See United States v. Suarez*, No. 5:13-cr-420, slip op. at 1-2 (N.D. Ohio June 24, 2014) (Ex. 2). Mr. Smith's testimony is just as irrelevant here.

---

[3] To the extent the Court treats Mr. Smith as a lay witness and not an expert witness, his testimony should still be excluded. The same reasons that bar expert testimony about legal matters also extend to lay testimony, including that it is the trial judge's exclusive role to instruct the jury on the law.

[4] Mr. Smith's expert witness disclosure in the *Bankman-Fried* prosecution is appended as Ex. 6 for comparison to his disclosure here. As in this case, Mr. Smith sought to testify regarding Federal Election Commission "rules and decisions governing the application and interpretation" of specific sections of the Federal Election Campaign Act, Ex. 6 at 2; as well as purportedly "[c]ommon, established, and well-known practices" for certain kinds of campaign contributions, Ex. 6 at 3.

Defendant is charged with thirty-four felonies for falsifying business records with the intent to commit, aid, or conceal the commission of another crime, in violation of Penal Law § 175.10. As pertinent here, the People may allege at trial that among the crimes defendant intended to commit, aid, or conceal are violations of the Federal Election Campaign Act ("FECA"). On that issue, the relevant question for the finder of fact is what defendant intended when he falsely described the reimbursements to Cohen for the Stormy Daniels payoffs as payments for legal services pursuant to a retainer agreement; and whether his intent in doing so included concealing Cohen's criminal violation of federal campaign finance law in connection with that payoff. Mr. Smith does not purport to have any direct evidence of defendant's state of mind. His proposed testimony about what unspecified others might have thought about the facts of a different case is thus irrelevant to the jury's factual findings regarding defendant's fraudulent intent here.

Mr. Smith's own proposed—and excluded—testimony in yet another criminal case again provides support for the exclusion of his testimony here. In *United States v. Suarez*, the defendant sought to introduce expert testimony from Mr. Smith to testify that "federal campaign laws are confusing to individuals who lack formal training," that "people often misunderstand the campaign laws," and that "it is reasonable for individuals to believe that the law allows 'straw man' donations." *Suarez*, slip op. at 1-2 (Ex. 2). The court held that "the expert testimony offered by Smith is inadmissible because it is not relevant." As the court explained:

> [W]hether the laws are commonly misunderstood does not weigh on whether defendants *in this case* intended to violate the campaign finance laws. What other individuals who may have contacted Smith knew or thought simply has no bearing on what defendants knew or thought. Because the evidence is not relevant, it will not be admitted.

*Id.* at 3. The exact same reasoning applies here. Mr. Smith proposes to testify that some among "the public, media, and legal scholars" thought the conduct alleged in the *United States v. Edwards* prosecution did not violate federal campaign finance laws; and the import of Mr. Smith's proposed

testimony on the other topics in his disclosure is that federal campaign finance law does not clearly criminalize some personal expenditures on other facts. Ex. 1. But the only relevant question in this case is whether—after Cohen made an illegal campaign contribution to defendant by paying $130,000 to Stormy Daniels to silence her on the eve of a presidential election—defendant intended to conceal that crime by falsely describing his reimbursements to Cohen as payments for legal services pursuant to a retainer. Mr. Smith's proposed testimony about industry norms, or about what other people might have thought the law would criminalize on other facts, "does not weigh on whether defendant[] *in this case* intended to violate [or conceal violations of] the campaign finance laws."[5] *Suarez*, slip op. at 3 (Ex. 2).

This Court reached the same conclusion as to the defense's proffered expert in the *Trump Corporation* prosecution, holding that the defendants were prohibited from offering expert testimony regarding what "any of the high managerial agents intended" because "He's an expert. He was not there. He did not speak to them. He cannot read their minds. He does not know what their intent was." *See* Hearing Tr. 14, *People v. The Trump Corporation*, Ind. No. 1473/2021 (Sup. Ct. N.Y. Cnty. Oct. 21, 2022) (Ex. 7). The same reasoning applies here, and the Court should exclude Mr. Smith's testimony in full as irrelevant.

### 4.    Mr. Smith's proposed testimony about whether the Stormy Daniels payoff violated federal campaign finance law should be excluded because it would mislead and confuse the jury.

If the Court does not exclude Mr. Smith's proposed testimony in full for the reasons identified above, the Court should exclude his proposed testimony regarding whether the conduct

---

[5] And to the extent Mr. Smith did plan to testify regarding his speculative views of defendant's potential intent based on what Mr. Smith thinks others thought of the *Edwards* prosecution, that too would be wholly inadmissible and improper; it is settled law that an expert may not testify as to a defendant's intent. *See People v. Kincey*, 168 A.D.2d 231, 232 (1st Dep't 1990) ("It was highly improper and prejudicial to allow [an expert] to testify concerning the defendant's intent").

involved in Cohen's payoff to Stormy Daniels "violates federal campaign finance law"—the second topic in Mr. Smith's witness disclosure, *see* Ex. 1—because it would mislead and confuse the jury.

Michael Cohen pleaded guilty to and was convicted of two criminal counts of violating FECA in connection with the Karen McDougal and Stormy Daniels payoffs. *See* Judgment of Conviction, *United States v. Cohen*, No. 18-cr-602 (S.D.N.Y. Dec. 12, 2018) (the "*Cohen* Judgment") (Ex. 8). In connection with the Daniels payment in particular, Cohen was charged with and pleaded guilty to the offense of making an excessive campaign contribution in violation of 52 U.S.C. §§ 30116(a)(1)(A) and 30116(a)(7). *See* Information ¶¶ 24-44, *United States v. Cohen*, No. 18-cr-602 (S.D.N.Y. Aug. 21, 2018) (Ex. 9); Hearing Tr. 23-24, 27-28, *United States v. Cohen*, No. 18-cr-602 (S.D.N.Y. Aug. 21, 2018) (the "*Cohen* Hearing Tr.") (Ex. 10). The federal district court had an independent obligation to "assure itself . . . that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Culbertson*, 670 F.3d 183, 191 (2d Cir. 2012). Mindful of that obligation, the district court accepted Cohen's guilty plea and adjudged Cohen guilty: "[B]ecause I find your plea is entered knowingly and voluntarily and is supported by an independent basis in fact containing each of the essential elements of the crimes, I accept your guilty plea and adjudge you guilty of the eight offenses to which you have just pleaded as charged in the information." *Cohen* Hearing Tr. 28 (Ex. 10); *see also Cohen* Judgment (Ex. 8).

Mr. Smith's proposed testimony—that "at the time Mr. Cohen made the payment to Stormy Daniels, there had never been a case in which someone was convicted of violating federal campaign finance laws by making a 'hush payment' to an alleged girlfriend or former lover (either indirectly or through a third party) using non-campaign funds," Ex. 1—appears intended to suggest

to the jury that the Daniels payoff was not a crime. But it was, in fact, a crime: a federal judge concluded that the conduct to which Cohen admitted "is in fact an offense" under FECA. *Culbertson*, 670 F.3d 183, 191 (2d Cir. 2012); and Cohen went to prison for it. *See Cohen* Judgment (Ex. 8). Expert testimony purporting to show that such conduct did not "violate[] federal campaign finance law" would therefore mislead the jury and should be excluded. *See, e.g.*, *People v. Corby*, 6 N.Y.3d 231, 234 (2005); *People v. Davis*, 43 N.Y.2d 17, 27 (1977).

> **5.    Mr. Smith's proposed testimony about the *United States v. Edwards* prosecution should be excluded because it would mislead and confuse the jury.**

Finally, and if the Court does not exclude Mr. Smith's proposed testimony in full for the reasons identified above, the Court should exclude the witness's proposed testimony regarding the *United States v. Edwards* prosecution—the third and fourth topics in Mr. Smith's witness disclosure, *see* Ex. 1—because it would mislead and confuse the jury.

The United States indicted former Senator and presidential candidate John Edwards in 2011 on four counts of acceptance and receipt of illegal campaign contributions in violation of FECA, 52 U.S.C. §§ 30116(a)(1)(A), 30116(f), 30109(d)(1)(A)(i). The indictment alleged that while running for President in 2007 and 2008, Edwards was engaged in an extramarital affair with a woman that resulted in her pregnancy. He allegedly sought to conceal the affair and pregnancy from the public out of concern that public disclosure would undermine his campaign. Edwards and a campaign staffer solicited money from several friends and campaign donors of Edwards, which was then sent to the woman to cover living expenses and medical care for the purpose of keeping her from disclosing the affair and pregnancy during the campaign. The government alleged that those donations were illegal contributions, and that Edwards was aware they were illegal contributions and intentionally violated the law by accepting and failing to disclose them. *See*

*generally* Government's Resp. to Def.'s Mot. to Dismiss 2-6, *United States v. Edwards*, No. 1:11-cr-161-1 (M.D.N.C. Sept. 26, 2011), ECF No. 59.

Edwards moved to dismiss the indictment on the ground that he was motivated by non-campaign-related, purely personal reasons to conceal the relationship, and that payments to conceal an affair for personal reasons do not become unlawfully campaign-related just because disclosure of the affair might also have the effect of damaging his candidacy for office. The government argued that under FECA and the Federal Election Commission's implementing regulations, third-party payments of expenses for a candidate's personal use are campaign contributions—and thus subject to FECA's donation limits and disclosure requirements—"unless the payment would have been made irrespective of the candidacy." *Id.* at 10 (quoting 11 C.F.R. § 113.1(g)(6)).

The district court denied the motion to dismiss without prejudice to it being raised after the close of the government's evidence at trial. *See* Hearing Tr. 4-5, *United States v. Edwards*, No. 1:11-cr-161-1 (M.D.N.C. Oct. 27, 2011), ECF No. 108. The defense moved again after the close of the government's case, and the court again denied the motion. *See* Trial Tr. 97, *United States v. Edwards*, No. 1:11-cr-161-1 (M.D.N.C. May 11, 2012), ECF No. 303. The court ultimately provided the following jury instructions (in relevant part): "The government does not have to prove that the sole or only purpose of the money was to influence the election. People rarely act with a single purpose in mind. . . . If you find beyond a reasonable doubt that one of her purposes was to influence an election, then that would be sufficient." *See* Final Jury Instructions 8-9, *United States v. Edwards*, No. 1:11-cr-161-1 (M.D.N.C. May 18, 2012), ECF No. 288. The jury then acquitted Edwards on the charges.

Thus, in the *Edwards* prosecution, the government's case was lost not on the legal sufficiency of the allegations but on the jury's factual findings at trial. And that jury verdict of acquittal has no legal import here. Apart from double jeopardy protection for the specific defendant in a given case, a jury acquittal does not establish legal precedent—it may reflect mistake, compromise, or lenity, *see United States v. Powell*, 469 U.S. 57, 65 (1984); and is in any event not a holding as to the law. The only conceivably relevant legal determinations from the *Edwards* case are the denials of the defendant's motions to dismiss and the trial court's jury instruction quoted above—all of which support the People here, and which Mr. Smith's proposed testimony conspicuously fails to address.

Here, the People intend to present evidence at trial showing that the Stormy Daniels payoff (and the other underlying federal campaign finance violations) were *not* purely personal; and that instead, at least one of the purposes of the entire hush money scheme was to influence the 2016 presidential election. Because testimony from Mr. Smith explaining that former Senator Edwards was acquitted at trial does not illuminate whether the payoff scheme here was intended in part to influence defendant's candidacy for the 2016 election, its admission could only mislead and confuse the jury. *See Corby*, 6 N.Y.3d at 234-35; *Primo*, 96 N.Y.2d at 356-57. The jury's factual findings about former Senator Edwards's motives following the presentation of evidence in that trial do not bear on defendant's motives here. And as noted, Mr. Smith's proposed testimony makes clear that he has nothing to say on the factual issue that was the dispositive factor in *Edwards*— namely, what was defendant's intent when he falsified the reimbursements to Cohen. Mr. Smith's testimony regarding the outcome of the *Edwards* trial should thus be excluded as misleading and confusing.

## II.    Motion to exclude evidence or argument regarding the Federal Election Commission's dismissal of complaints against defendant.

### A.    Introduction.

The Federal Election Commission ("FEC") received a number of administrative complaints against defendant in connection with the hush money payoffs at issue in this prosecution and dismissed those complaints without investigation after the Commissioners deadlocked on tie votes regarding whether or not to proceed. Defendant has asserted in public statements and may seek to argue at trial that this prosecution is unwarranted because of those dismissals. *See* Ex. 11.[6] The Court should exclude any evidence or argument at trial regarding dismissal of the FEC complaints against defendant because those dismissals are not relevant to the determination of any legal question or fact in issue in this prosecution, and because evidence or argument regarding those dismissals would confuse and mislead the jury.

### B.    Background.

The FEC received and considered multiple complaints that defendant and others violated FECA in connection with the payoff scheme involving Daniels, McDougal, and Sajudin.[7] *See* 11

---

[6] *E.g.*, Ex. 11 at 1 (claiming that "[t]he FEC dopped the 'Horseface' Daniels Fake Witch Hunt, because they found no evidence of problems."); Ex. 11 at 3 (claiming that "[e]very Prosecutor, and the FEC, who looked at it, took a pass.").

[7] The FEC's compliance procedures are codified at 11 C.F.R. part 111. Under those procedures, "[a]ny person who believes that a violation of" FECA has occurred "may file a complaint in writing with the General Counsel" of the FEC. 11 C.F.R. § 111.4(a). The General Counsel reviews those complaints and makes a recommendation to the Commission "whether or not it should find reason to believe that a respondent has committed or is about to commit a violation of statutes or regulations over which the Commission has jurisdiction." 11 C.F.R. § 111.7(a). The Commissioners then vote on what is called a "reason to believe" finding, with an affirmative vote of four (out of six) Commissioners required to proceed to open an investigation. *Id.* § 111.9(a). If four Commissioners vote in favor of a reason-to-believe finding, an investigation is conducted and subsequent steps in the compliance process follow (including, if warranted, a "probable cause to believe" recommendation and finding, conciliation attempts, and civil litigation). *See id.* §§ 111.9(a), 111.10, 111.16–.19. Absent four votes at the reason-to-believe stage, no investigation

C.F.R. §§ 111.3(a), 111.4(a). As to defendant's culpability in connection with the McDougal and Sajudin payoffs, the six members of the FEC split three-three on whether there was reason to believe that defendant knowingly and willfully accepted prohibited contributions, and because the votes of four out of six members are required for a reason-to-believe finding, *see* 11 C.F.R. §§ 111.9(a), 111.10(a), the Commission closed the complaints before any investigation was conducted.[8] The three Commissioners who voted to dismiss did so *not* on the merits but instead as a matter of prosecutorial discretion, explaining that "[i]n choosing how to allocate the Commission's limited enforcement resources, we opted against pursuing the long odds of a successful enforcement in these matters" against Trump, and "instead voted to dismiss as an exercise of prosecutorial discretion." Statement of Reasons of Vice Chair Allen Dickerson et al., *In the Matter of Donald J. Trump for President, Inc., et al.*, Federal Election Comm'n Matter Under Review 7324, 7332, 7364, & 7366 (June 28, 2021) (Ex. 15).

The FEC resolved the complaints regarding defendant's involvement in the Daniels payoff in the same way. The FEC again stalemated (this time on a two-two vote among the four participating Commissioners) on the question whether there was reason to believe that defendant knowingly and willfully accepted excessive contributions from Cohen. *See* Certification, *In the Matter of Michael D. Cohen, et al.*, Federal Election Comm'n Matter Under Review 7313, 7319, & 7379 (Mar. 31, 2021) (Ex. 16); Letter from Lynn Y. Tran, Assistant General Counsel, Federal

---

is conducted, and the FEC then generally "terminates its proceedings" and closes the matter. *See id.* § 111.9.

[8] *See* Certification, *In the Matter of Donald J. Trump for President, Inc., et al.*, Federal Election Comm'n Matter Under Review 7324, 7332, 7364, & 7366 (Mar. 11, 2021) (Ex. 12); Letter from Lynn Y. Tran, Assistant General Counsel, Federal Election Commission, to E. Stewart Crosland (June 1, 2021) (Ex. 13); Statement of Reasons of Chair Shana M. Broussard & Commissioner Ellen L. Weintraub, *In the Matter of Donald J. Trump for President, Inc., et al.*, Federal Election Comm'n Matter Under Review 7324, 7332, 7364, & 7366 (July 1, 2021) (Ex. 14).

Election Commission, to E. Stewart Crosland (Mar. 31, 2021) (Ex. 17); 11 C.F.R. § 111.9(a). The two Commissioners who voted to dismiss did so *not* on the merits but "as an exercise of prosecutorial discretion" because (1) the FEC faced an "extensive enforcement backlog"; (2) "a federal judge was sufficiently satisfied" that Cohen had explained the factual basis for his guilty plea to FECA violations "count by count, during his allocution"; and (3) Cohen had already "been punished by the government of the United States." Statement of Reasons of Commissioners Sean J. Cooksey & James E. "Trey" Trainor III, *In the Matter of Michael Cohen, et al.*, Federal Election Comm'n Matter Under Review 7313, 7319, & 7379 (Apr. 26, 2021) (Ex. 18). Accordingly, the two Commissioners concluded that "pursuing these matters further was not the best use of agency resources." *Id.* The Commission then closed the complaints without investigation.

C.    **Argument.**

The Court should exclude evidence or argument regarding the FEC's dismissal of these complaints for three reasons. First, because the FEC dismissed the complaints against defendant at the reason-to-believe stage without any investigation after the Commissioners stalemated on tie votes regarding whether to proceed, defendant's public claims that the FEC "found no evidence of problems," Ex. 11, is based on demonstrably false and misleading premises about how the FEC conducts its enforcement matters. Argument or evidence purporting to show (falsely) that the FEC cleared defendant of FECA culpability would improperly confuse and mislead the jury and should be excluded. *See Corby*, 6 N.Y.3d at 234; *Davis*, 43 N.Y.2d at 27.

Second, the fact of the FEC dismissals should be excluded because it is irrelevant. The FEC's dismissal of administrative complaints against defendant without investigation does not make any fact regarding defendant's intent to defraud—or any other element of the charged offenses—more or less probable, particularly where the Commissioners who voted to dismiss did so not on the merits but as an exercise of prosecutorial discretion. *See Lewis*, 69 N.Y.2d at 325.

21

Evidence or argument regarding the FEC's dismissals should therefore be excluded as irrelevant. *See People v. Greene*, 16 A.D.3d 350, 350 (1st Dep't 2005); *People v. Griffin*, 173 A.D.2d 120, 124-25 (4th Dep't 1991), *aff'd*, 80 N.Y.2d 723 (1993).

Finally, even if the FEC dismissals did reflect some determination by that agency regarding whether defendant violated FECA—which they do not—the dismissals should be excluded for the separate reason that whether defendant himself committed another crime is not material to the jury's determination of defendant's intent to defraud, as this Court has repeatedly recognized in this case. *See* Decision & Order on Def.'s Omnibus Motions 12 (Feb. 15, 2024) (the "*Trump* Omnibus Decision"); Decision & Order on Mot. to Quash Def.'s Subpoena 10 (Dec. 18, 2023). Courts have upheld convictions under Penal Law § 175.10 even when the defendant was acquitted of the crimes that he intended to commit or conceal, so long as the evidence showed that, notwithstanding the acquittal, defendant falsified business records with the requisite general intent. *See, e.g.*, *People v. Holley*, 198 A.D.3d 1351, 1351-52 (4th Dep't 2021); *People v. Houghtaling*, 79 A.D.3d 1155, 1157-58 (3d Dep't 2010); *People v. McCumiskey*, 12 A.D.3d 1145, 1145-46 (4th Dep't 2004). And there is no requirement that a defendant intend to conceal the commission of *his own* crime; instead, "a person can commit First Degree Falsifying Business Records by falsifying records with the intent to cover up a crime committed by somebody else." *People v. Dove*, 15 Misc. 3d 1134(A), at *6 n.6 (Sup. Ct. Bronx Cnty. 2007) (citing *People v. Smithtown Gen. Hosp.*, 93 Misc. 2d 736, 736 (Sup. Ct. Suffolk Cnty. 1978)). The FEC dismissals of administrative complaints against defendant are thus not material to whether defendant acted with the requisite intent to conceal the commission of another crime. Evidence or argument regarding the FEC dismissals should be excluded.

III.    **Motion to exclude evidence or argument regarding any purported decision by the United States Department of Justice not to charge defendant with campaign finance violations.**

    A.    **Introduction.**

Defendant has asserted in public statements and may seek to argue at trial that this prosecution is unwarranted because the United States Department of Justice did not indict him for federal campaign finance violations. *See* Ex. 11. The Court should exclude any evidence or argument regarding any purported decision by the Justice Department not to charge defendant with violating federal campaign finance law because it is irrelevant and would mislead the jury.

    B.    **Argument.**

Defendant has frequently claimed that the Justice Department previously examined his conduct and "found that I did nothing wrong." Ex. 11. That defendant was not indicted by the federal government in connection with the election interference scheme at issue here is probative of literally nothing relevant to this prosecution.

Defendant was the sitting President during the entire period that the federal government investigated the campaign finance violations to which Cohen pleaded guilty.[9] The Department of Justice "has long understood that a President is absolutely immune from arrest, indictment, and criminal prosecution while he remains in office." Brief for the United States as Amicus Curiae Supporting Petitioner at 11, *Trump v. Vance*, 140 S. Ct. 2412 (2020) (No. 19-635). Thus, even assuming defendant was the target of a federal criminal investigation related to the campaign finance violations to which Cohen pleaded guilty, he could not have been indicted under the Justice

_____

[9] Cohen pleaded guilty to federal campaign finance violations in August 2018, *see Cohen* Hearing Tr. 23-24, 27-28 (Ex. 10); and the federal government concluded its investigation into whether other individuals may be criminally liable for that conduct in July 2019. *See* Government's Letter 1 n.1, *United States v. Cohen*, No. 18-cr-602 (S.D.N.Y. July 18, 2019).

Department's longstanding approach. *Cf. CREW v. U.S. Dep't of Justice*, 45 F.4th 963, 968 (D.C. Cir. 2022) (noting that "[i]n light of the sitting President's immunity from criminal prosecution, [Special Counsel] Mueller declined to determine whether President Trump's potentially obstructive conduct" in connection with the investigation into Russian interference in the 2016 presidential election "constituted a crime").

Argument or evidence that defendant was not charged with campaign finance violations by the Justice Department would thus improperly confuse and mislead the jury and should be excluded. *See Corby*, 6 N.Y.3d at 234; *Davis*, 43 N.Y.2d at 27; *see also, e.g.*, *United States ex rel. Feldman v. van Gorp*, No. 03 Civ. 8135 (WHP), 2010 WL 2911606, at *2-3 (S.D.N.Y. July 8, 2010) (granting motion *in limine* to exclude evidence of the Justice Department's decision not to intervene in False Claims Act case as irrelevant, because "the government may have a host of reasons for not pursuing a claim" (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006))).

Such argument and evidence would also be irrelevant for the same reasons identified in Part II.C above: whether defendant himself violated FECA is not material to the jury's determination of defendant's intent to defraud. *Trump* Omnibus Decision 12; *see also People v. Taveras*, 12 N.Y.3d 21, 27 (2009); *People v. Thompson*, 124 A.D.3d 448, 449 (1st Dep't 2015); *Houghtaling*, 79 A.D.3d at 1157-58; *McCumiskey*, 12 A.D.3d at 1145.

## IV.   Motion to exclude evidence or argument regarding selective prosecution or government misconduct.

### A.   Introduction.

Defendant may seek to argue at trial that he has been singled out for prosecution based on impermissible considerations, and—relatedly—that the charges in the indictment are novel or unprecedented. Selective prosecution is not a valid trial defense, and the Court properly rejected

defendant's pretrial motion to dismiss on this basis. *Trump* Omnibus Decision 20-22. Because the presentation of evidence or argument purporting to show selective prosecution would risk confusing and misleading the jury and is not probative of defendant's guilt or innocence, the Court should exclude any evidence or argument regarding defendant's claim of selective prosecution, including argument that the prosecution is politically motivated or that the charges are novel or unusual.

### B.    Argument.

Defendant has repeatedly stated in court filings and public statements that this prosecution is based on impermissible motives and that he is being singled out for improper reasons. Defendant has also asserted in court filings and public statements that the charges in the indictment are "novel" or "unprecedented." *E.g.*, Def.'s Omnibus Mem. 29, 31. The Court should preclude defendant from presenting argument and introducing evidence of purported selective prosecution at trial because selective prosecution is not a valid trial defense, and because any selective prosecution argument at trial would serve no purpose other than to advance an improper jury nullification defense.

### 1.    Selective prosecution is not a valid trial defense.

The Court of Appeals has emphasized that a defendant's claim of selective prosecution is not a valid trial defense and is instead a constitutional claim for dismissal that should be addressed before trial. "[I]n our State, the claim of unequal protection is treated not as an affirmative defense to criminal prosecution or the imposition of a regulatory sanction but rather as a motion to dismiss or quash the official action." *Matter of 303 W. 42nd St. Corp. v. Klein*, 46 N.Y.2d 686, 693 (1979) (citing *People v. Goodman*, 31 N.Y.2d 262, 268-69 (1972); *People v. Utica Daw's Drug Co.*, 16 A.D.2d 12, 15-18 (4th Dep't 1962)). That is because "[a] claim of discriminatory enforcement does not reach the issue of the guilt or innocence of the defendant." *Goodman*, 31 N.Y.2d at 269;

*see also Utica Daw's Drug Co.*, 16 A.D.2d at 15-16. Thus, "the claim of discriminatory enforcement should not be considered as an affirmative defense to the criminal charge, to be determined together with the issue of guilt by the trier of fact, but, rather, should be addressed to the court *before trial* as a motion to dismiss the prosecution upon constitutional grounds." *Goodman*, 31 N.Y.2d at 268-69.

Here, defendant moved to dismiss the indictment on the ground that he was singled out for prosecution for impermissible reasons, and sought discovery and an evidentiary hearing on that claim. The People opposed, and the Court denied defendant's motion. *See Trump* Omnibus Decision 20-22. The presentation of any argument or evidence regarding defendant's claims of selective prosecution at trial would be irrelevant to any fact the jury needs to decide, and would instead confuse and mislead the jury and needlessly prolong the trial. Indeed, the Court of Appeals has expressly recognized—in directing that claims of discriminatory enforcement "should be addressed to the court by a pretrial motion to dismiss"—that permitting the introduction at trial of argument or evidence on selective prosecution risks "delay or confusion at trial." *Goodman*, 31 N.Y.2d at 269; *see People v. Decker*, 218 A.D.3d 1026, 1042 (3d Dep't 2023) (trial court properly precluded defendant from "exploring a collateral issue concerning any potential bias of the [Sheriff's Department], as the probative value of such evidence was outweighed by the danger that it could confuse or mislead the jury into deciding the case on issues beyond the evidence presented").

### 2.    Argument regarding selective prosecution would improperly advance a jury nullification defense.

Second, argument or evidence purporting to show selective prosecution should be excluded because it would serve no purpose other than to advance an improper jury nullification defense. As noted above, the Court of Appeals has long held that selective prosecution "does not reach the

issue of the guilt or innocence of the defendant," *Goodman*, 31 N.Y.2d at 269; and this Court already considered and rejected defendant's request for dismissal on the basis of claimed constitutional violations. *See Trump* Omnibus Decision 20-22. Presenting argument or evidence purporting to show that defendant was unfairly singled out for prosecution for political or other improper reasons would thus serve no purpose other than to urge the jury to acquit even if the facts establish each element of the charged offenses. But jury nullification "is not a legally sanctioned function of the jury." *People v. Goetz*, 73 N.Y.2d 751, 752 (1998).

The Court should thus preclude defendant from mounting "a 'political' defense . . . and invit[ing] jury nullification by questioning the Government's motives." *United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (claims by the defendants that they were victims of political persecution were "matters far beyond the scope of legitimate issues in a criminal trial"); *see United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997) (affirming district court's decision to preclude defendant from "introducing evidence at trial that the grand jury investigation was illegitimate," because "requir[ing] juries in perjury cases to evaluate the government's motives for bringing particular investigations . . . would add a new element to the crime"); *see also Decker*, 218 A.D.3d at 1042.

### 3. The Court should make clear that any holding that precludes argument regarding selective prosecution includes all versions of this claim that defendant has advanced in his frequent public comments on this case.

The Court should specify that any holding that precludes defendant from presenting argument and evidence of selective prosecution includes, but is not limited to, the following claims that defendant has advanced in his frequent public comments on this case.

*1.* Argument or evidence purporting to show that the indictment is novel, unusual, or unprecedented should be precluded because it would be irrelevant and would "improperly invite[] the jury to make legal determinations," which are "the exclusive province of the court." *United*

*States v. Stewart*, No. 03-cr-717 (MGC), 2004 WL 113506, at *1-2 (S.D.N.Y. Jan. 26, 2004) (granting motion *in limine* to preclude defendants from arguing that one of the counts in the indictment was "novel" or was "an unusual or unprecedented application of the securities laws"); *see United States v. Navarro*, 651 F. Supp. 3d 212, 242 (D.D.C. 2023) (granting the government's motion *in limine* to exclude argument that the charges in that case were "infrequent" or "unprecedented," because those arguments "simply repackage Defendant's selective prosecution defense" and "are not relevant to any element of the charged offenses or any valid defense"); *see also* Hearing Tr. 38-39, *People v. The Trump Corporation*, Ind. No. 1473/2021 (Sup. Ct. N.Y. Cnty. Oct. 20, 2022) (granting the People's motion *in limine* and holding that "the defendants are precluded from remarking during jury selection and in their opening statements that the charges are novel, unusual, or unprecedented") (Ex. 5).

*2.* Argument or evidence regarding former Special Assistant District Attorney Mark Pomerantz's purported views on this prosecution, as related in his book titled *People vs. Donald Trump: An Inside Account*, should be precluded because the selective prosecution claims defendant has cited that book to support were properly rejected in the Court's omnibus ruling, *see Trump* Omnibus Decision 21-22; and because any hearsay statements in that book are irrelevant to defendant's guilt or innocence in any event.

*3.* Argument or evidence regarding defendant's claims regarding the length of the People's investigation, his allegation of unconstitutional preindictment delay, and the related claim that this prosecution was somehow timed to interfere with defendant's presidential campaign,[10] should be

---

[10] *See, e.g.*, Hearing Tr. 12 (Feb. 15, 2024) (Defense counsel: "[I]t is completely election interference to say, you are going to sit in this courtroom, in Manhattan, when there is no reason for it."); *Former President Trump on Hush Money Case*, C-SPAN (Feb. 15, 2024), https://www.c-span.org/video/?533626-1/president-trump-hush-money-case (Defendant: "It's an election

precluded because those assertions "simply repackage Defendant's selective prosecution defense," *Navarro*, 651 F. Supp. 3d at 242; and could "confuse or mislead the jury into deciding the case on issues beyond the evidence presented." *Decker*, 218 A.D.3d at 1042; *see also Trump* Omnibus Decision 3-6 (rejecting defendant's motion to dismiss based on the claim of unconstitutional pre-indictment delay).

*4.* Argument or evidence referencing the purported motivations or personal and professional backgrounds of the District Attorney or counsel for the People in this case should be precluded because it does not support an affirmative defense to prosecution; does not reach the issue of defendant's guilt or innocence; risks confusing and misleading the jury; and improperly invites jury nullification. *See, e.g.*, *Goodman*, 31 N.Y.2d at 269; *Decker*, 218 A.D.3d at 1042; *Rosado*, 728 F.2d at 93. Evidence and argument regarding "the motivation and conduct" of counsel "are categorically irrelevant"; and "even if evidence of them had any slight relevance, it would be substantially outweighed by the capacity of such evidence and lawyer arguments to confuse the jury and create unfair prejudice." *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 271 (S.D.N.Y. 2015) (granting motion in limine); *see also United States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2001) (personal attacks on a party's counsel are "reprehensible" and "detract from the dignity of judicial proceedings").

*5.* Argument, questions, or evidence regarding potential punishment or other consequences of these proceedings[11] should be prohibited in front of the jury because it has no tendency to prove

---

interference case. Nobody's ever seen anything like it in this country, it's a disgrace. . . . They want to keep me nice and busy so I can't campaign so hard.").

[11] *See, e.g.*, Trial Tr. 3628:3-6, *People by James v. Trump*, No. 452564/2022 (Sup. Ct. N.Y. Cnty. Nov. 6, 2023) (Defendant: "And it is a shame what is going on. And we sit here all day, and it is election interference because you want to keep me in this courthouse all day long, and let's keep going.") (Ex. 20).

any material fact. *See Lewis*, 69 N.Y.2d at 325; *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task."); *Navarro*, 651 F. Supp. 3d at 242. Similarly, arguments or evidence that the charges in this case are not serious or should be considered misdemeanors, as defendant has frequently asserted in court filings and public statements, should likewise be precluded. Presenting argument or eliciting evidence regarding the claimed seriousness of the offense or the effect of these proceedings on defendant's outside commitments is also improper because it invites nullification and otherwise confuses the issues before the jury. *See Navarro*, 651 F. Supp. 3d at 242 (citing *United States v. Wade*, 962 F.3d 1004, 1012 (7th Cir. 2020)); *People v. Douglas*, 178 Misc. 2d 918, 926-28 (Sup. Ct. Bronx Cnty. 1998).

*6.* Argument or evidence regarding alleged bias or purported motivations of the Court and court staff should be precluded. Defendant prolifically attacks judges and court staff in his public comments,[12] and impugned the motives of the court on repeated occasions in the courtroom during court proceedings in the recent *People by James v. Trump* civil fraud trial.[13] Any such argument here would be irrelevant and would improperly invite the jury to reach a verdict based on something other than the evidence at trial. *Rosado*, 728 F.2d at 93.

---

[12] *See, e.g.*, People's Mot. to Quash or for a Protective Order 3-4 (Nov. 9, 2023) (collecting statements); People's Mot. for a Protective Order 2-3, 7-12 (Apr. 24, 2023) (same).

[13] *See, e.g.*, Hearing Tr. 116, *People by James v. Trump*, No. 452564/2022 (Sup. Ct. N.Y. Cnty. Jan. 11, 2024) (Defendant to the Court: "You have your own agenda, I can certainly understand that. You can't listen for more than one minute.") (Ex. 19); Trial Tr. 3510:9-10, *People by James v. Trump*, No. 452564/2022 (Sup. Ct. N.Y. Cnty. Nov. 6, 2023) ("This is a very unfair trial, very, very.") (Ex. 20); *id.* at 3558:5-3559:13 ("I think it's fraudulent, the [court's] decision. I think it's fraudulent. The fraud is on the Court, not on me. . . . And how do you do that? How do you rule against somebody and call them a fraud, as the President of the United States, who did a great job. . . . It's a terrible thing you did. You knew nothing about me. You believed this political hack back there, and that's unfortunate.") (Ex. 20); *id.* at 3628:7-8 ("And we have a very hostile Judge, extremely hostile Judge, and it is sad.") (Ex. 20).

**V.    Motion to exclude evidence or argument regarding the federal government's purported views of Michael Cohen's credibility.**

**A.    Introduction.**

Defendant may argue or seek to introduce evidence of the Justice Department's purported views regarding Michael Cohen's credibility, including claims that he has lied to or withheld evidence from federal investigators or prosecutors in the past. Although Cohen and other witnesses may be subject to appropriate cross-examination on topics that properly go to their believability—subject to the Court's case-by-case assessment that such cross-examination is not irrelevant, prejudicial, or confusing—a witness may not be impeached based on the federal government's claimed hearsay opinions regarding credibility or prior bad acts. The Court should thus exclude argument or evidence regarding the Justice Department's purported views of Cohen's credibility.

**B.    Argument.**

In multiple filings before this Court, defendant has cited Justice Department filings in Cohen's federal criminal case as evidence that Cohen lied to, made material false statements, or declined to provide full information to federal investigators or prosecutors. *See* Def.'s Mem. Opp. People's Mot. to Quash 10 (Nov. 30, 2023) (citing the Justice Department's 2019 opposition to Cohen's motion to reduce his sentence); Def.'s Mot. to Reargue 4-5 (Jan. 17, 2024) (citing the Justice Department's 2023 opposition to Cohen's motion for termination of supervised release). And in cross-examining Cohen during the *People by James v. Trump* civil fraud trial several months ago, counsel for Trump offered into evidence the federal government's 2018 sentencing memo from the *United States v. Cohen* prosecution (without objection by the Attorney General), and cross-examined Cohen on assertions by the federal government in that memo (again without objection). *See* Trial Tr. 2284-87, *People by James v. Trump*, No. 452564/2022 (Sup. Ct. N.Y. Cnty. Oct. 24, 2023). Because those observations by federal prosecutors are inadmissible hearsay

31

and improper opinion evidence regarding credibility, the Court should exclude at this trial argument or evidence purporting to describe the federal government's views of Cohen's credibility.

Hearsay is any out-of-court statement offered for its truth. *People v. Buie*, 86 N.Y.2d 501, 505 (1995). Memoranda or pleadings from court files offered for their truth are routinely excluded as inadmissible hearsay. *See, e.g.*, *2641 Concourse Co. v. City Univ. of New York*, 147 A.D.2d 379, 379 (1st Dep't 1989), *aff'g on op. below*, 135 Misc. 2d 464, 465-66 (N.Y. Ct. Cl. 1987); *Liberto v. Worcester Mut. Ins. Co.*, 87 A.D.2d 477, 478-79 (2d Dep't 1982); *People v. Brann*, 69 Misc. 3d 201, 207 (Sup. Ct. N.Y. Cnty. 2020). Evidence or argument based on the federal government's legal memoranda purporting to establish as true that Cohen lied to investigators or prosecutors should thus be excluded as inadmissible hearsay.

Evidence or argument regarding federal prosecutors' views of Cohen should separately be excluded because it would be improper opinion evidence. Opinion evidence is inadmissible as a general rule. *See* Prince, Richardson on Evidence § 7-101. Although there are exceptions to this general exclusion, *see* Guide to N.Y. Evid. rule 7.03(1) (Opinion of Lay Witness), opinion testimony regarding a witness's credibility is not among those exceptions because "[c]redibility is, as the cases have repeated and insisted from the dawn of the common law, a matter solely for the jury." *People v. Williams*, 6 N.Y.2d 18, 26 (1959).

Finally, the admission of evidence during cross-examination that purports to reflect federal prosecutors' views of Cohen's credibility as indicated in federal court filings would be an improper use of extrinsic evidence to challenge Cohen's credibility. "The general rule is that a party may not introduce extrinsic evidence on a collateral matter solely to impeach credibility." *Alvino*, 71

32

N.Y.2d at 248. The purposes of this rule are "judicial economy, to prevent needless multiplication of issues in a case, and to insure that the jury is not confused with irrelevant evidence." *Id.*

## VI. Motion to preclude argument regarding any alleged reliance on advice of counsel unless and until defendant establishes a sufficient factual predicate at trial.

### A. Introduction.

The People ask the Court to preclude improper argument, including in opening statements, regarding any alleged reliance on advice of counsel unless and until defendant establishes a sufficient factual predicate for the advice-of-counsel defense at trial.

### B. Argument.

First, defendant has not shown the proper predicate for an advice-of-counsel defense. In order for any defendant to employ that defense, there must be "sufficient facts in the record" to establish that the defendant "honestly and in good faith sought the advice of counsel," "fully and honestly laid all the facts before his counsel," and "in good faith and honestly followed counsel's advice." *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) (quoting *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012)). There is no evidence that would support any of these facts. Defendant has identified Alan Garten, the Trump Organization's Chief Legal Officer, as a potential trial witness, but has not disclosed any statements from Mr. Garten pursuant to CPL § 245.20(4) or any other documents or records pursuant to CPL § 245.20(1)(o); and there is no other evidence that would support an advice-of-counsel defense.[14]

Second, New York law is clear that defendant's "own testimony establishing reliance on counsel's advice [is] a prerequisite to . . . the proposed defense of advice of counsel." *People v.*

---

[14] The Court has directed defendant "to provide notice and disclosure of his intent to rely on the defense of advice-of-counsel by March 11, 2024, and to produce all discoverable statements and communications within his possession or control by the same date." Decision & Order Regarding Advice-of-Counsel Defense 6 (Feb. 7, 2024).

*Lurie*, 249 A.D.2d 119, 124 (1st Dep't 1998), *leave denied*, 92 N.Y.2d 900 (1998), *habeas denied sub nom. Lurie v. Wittner*, 228 F.3d 113, 132-34 (2d Cir. 2000). Because defendant has no obligation to testify at trial—and because there is no way to confirm whether he will do so before he takes the stand—any argument that asserts reliance on an advice-of-counsel defense would be improper before defendant has met the necessary prerequisite through his own testimony.

Because there is currently no factual predicate to assert the advice-of-counsel defense, the Court should preclude any argument at trial suggesting otherwise—including in defendant's opening statement—until sufficient facts are established. *See United States v. Lacey*, No. CR-18-00422, 2023 WL 4746562, at *6-7 (D. Ariz. July 24, 2023) (holding that if evidence to support an advice-of-counsel defense has not been "disclosed or produced prior to opening statements, Defendants are precluded from making such early pronouncements," because "[t]o permit Defendants to tell the jury" that they relied on the advice of counsel absent a sufficient factual predicate "would present irrelevant evidence, could be factually misleading, would result in jury confusion, and would prejudice the Government"); *United States v. Charlemagne*, No. 8:15-cr-462, 2016 WL 11678620, at *2-3 (M.D. Fla. Sept. 2, 2016) (granting government's motion in limine to preclude reference to reliance on advice of counsel in opening statement, "without prejudice to Defendant's right to assert a good faith reliance on counsel defense if and when a proper predicate is laid and the attorney-client privilege is expressly waived by Defendant"); *United States v. King*, No. 3:06-cr-212, 2006 WL 3490805, at *8 (M.D. Fla. Dec. 1, 2006) (describing oral order granting government's motion in limine and ruling that "until Defendant could lay the proper predicate, Defendant could not argue that he relied on an attorney's advice").

**VII.    Motion to exclude evidence or argument regarding legal defenses the Court has already rejected.**

The Court should exclude evidence or argument regarding legal defenses the Court has already rejected.

The Court's ruling on defendant's omnibus motions rejected various legal defenses, holding (among other things) that the People did not unconstitutionally delay bringing charges, *see Trump* Omnibus Decision 3-6; that a federal offense is a valid object crime for charges of first-degree falsifying business records, *id.* at 13-14; that New York Election Law § 17-152 applies to the charged conduct and is not preempted, *id.* at 15-16; that this prosecution was not motivated by an improper purpose, *id.* at 20-22; that the charges are timely under the statute of limitations, *id.* at 22-23; and that there are no violations of grand jury secrecy that affected the integrity of these proceedings, *id.* at 27-28.

Any argument or evidence that contradicts any of the Court's prior orders in this case should be excluded because questions of law are for the Court to decide. *See United States v. Gorham*, 523 F.2d 1088, 1098 (D.C. Cir. 1975) (it is "the duty of the court to expound the law and that of the jury to apply the law as thus declared to the facts as ascertained by them" (quoting *Sparf v. United States*, 156 U.S. 51, 106 (1895))); *Kirsh*, 176 A.D.2d at 653. And the introduction of evidence or argument regarding issues foreclosed by the Court's prior decisions would confuse the issues, mislead the jury, waste time, and cause undue delay.

**VIII.    Motion to introduce potential *Molineux* evidence.**

The People respectfully request a pretrial ruling regarding the admissibility of three categories of potential *Molineux* evidence. *See People v. Ventimiglia*, 52 N.Y.2d 350, 362 (1981); *People v. Molineux*, 168 N.Y. 264 (1901).

First, the Court should permit the introduction of evidence regarding defendant's prior bad acts that relate to or were committed in the course of the underlying conspiracy to promote his election. This evidence is not *Molineux* evidence at all but is instead part of the *res gestae* of defendant's criminal conduct. To the extent the Court analyzes it under the *Molineux* doctrine, it is clearly admissible because it is highly relevant to material, non-propensity issues regarding defendant's intent to defraud.

Second, the Court should permit the introduction of evidence regarding (a) the Access Hollywood Tape, and (b) public allegations of sexual assault that followed the release of the Access Hollywood Tape in the fall of 2016. This evidence is probative of defendant's motive and intent, and provides necessary background and context to explain defendant's conduct to the jury.

Third, the Court should permit the introduction of evidence regarding defendant's prior bad acts that involve efforts to dissuade witnesses from cooperating with law enforcement—including through pressure campaigns, public harassment, and retaliation—because such evidence shows defendant's consciousness of guilt and corroborates his intent.

### A.     Legal standard.

Under the *Molineux* rule, "evidence of uncharged crimes is inadmissible where its *only* relevance is to show defendant's bad character or criminal propensity," because of the concern that the jury will convict defendant based on his criminal predisposition rather than his involvement in the charged misconduct. *People v. Agina*, 18 N.Y.3d 600, 603 (2012) (emphasis added). By contrast, "when the evidence of the other crimes is relevant to an issue other than the defendant's criminal tendency," the jury may properly consider such evidence to help flesh out its understanding of the charges against the defendant. *People v. Beam*, 57 N.Y.2d 241, 250 (1982). Thus, evidence of a defendant's uncharged crimes or other bad acts is admissible if (1) it is "relevant to some material issue in the case," and (2) "the trial court determines in its discretion that the probative value of the

evidence outweighs the risk of undue prejudice to the defendant." *People v. Frumusa*, 29 N.Y.3d 364, 369 (2017) (internal quotation marks omitted).

Evidence of a defendant's prior bad acts is generally relevant to a material issue when the evidence is probative of a defendant's "motive, intent, absence of mistake, identity, and common scheme or plan." *Molineux*, 168 N.Y. at 292-94. The categories that the Court of Appeals identified in *Molineux* are "merely illustrative," and "[t]here is no closed category of relevancy." Prince, Richardson on Evidence § 4-501 (citing cases). Accordingly, courts have also held that the People may introduce evidence of uncharged conduct to, for example, "complete a witness's narrative to assist the jury in their comprehension of the crime," *People v. Mendez*, 165 A.D.2d 751, 752 (1st Dep't 1990), or where the evidence is "inextricably interwoven with the narrative of events and was necessary background to explain to the jury the relationship" between the parties. *People v. Santiago*, 295 A.D.2d 214, 215 (1st Dep't 2002).

"Weighing the evidence's probative value against its potential prejudice to the defendant is a matter of discretion for the trial court." *People v. Morris*, 21 N.Y.3d 588, 595 (2013) (internal quotation marks omitted). To be sure, "almost all relevant, probative evidence" of prior bad acts "will be, in a sense, prejudicial," because "[e]vidence which helps establish a defendant's guilt can always be considered evidence that 'prejudices' him or her." *People v. Brewer*, 28 N.Y.3d 271, 277 (2016); *see also People v. Colavito*, 87 N.Y.2d 423, 429 (1996). "But the probative value of a piece of evidence is not automatically outweighed by prejudice merely because the evidence is compelling." *Brewer*, 28 N.Y.3d at 277. Instead, what makes *Molineux* testimony permissible "is that the damage resulted from something other than [the evidence's] tendency to prove propensity." *Id.*

**B.    The Court should permit the introduction of evidence regarding defendant's prior bad acts that relate to or were committed in the course of the underlying conspiracy to promote his election.**

The People allege that defendant falsified business records as part of a criminal scheme to conceal damaging information from the voting public in advance of the 2016 presidential election. *Trump* Omnibus Decision 1-3, 6. To establish the intent-to-defraud element of the charged offenses under Penal Law § 175.10, the People will introduce evidence at trial regarding defendant's agreement with others to influence the 2016 presidential election by identifying and purchasing negative information about him to suppress its publication and benefit his electoral prospects, as well as evidence regarding the steps that were taken to carry out that unlawful agreement.

In particular, and as described in the People's prior filings in this case, the People will present evidence regarding:

- defendant's August 2015 meeting at Trump Tower with David Pecker and Michael Cohen, where they agreed that Pecker would help with defendant's presidential campaign by identifying and suppressing negative information about defendant, and by publishing positive stories about defendant and negative stories about defendant's competitors for the election, *see, e.g.*, *Trump* Omnibus Decision 1-2; People's Omnibus Opp. 3; People's Statement of Facts ¶¶ 7-9;

- the purchase of information from Dino Sajudin regarding an alleged out-of-wedlock child Trump had fathered with one of his housekeepers, *see* People's Omnibus Opp. 3-4, 8; People's Statement of Facts ¶¶ 10-11, 22-23;

- the purchase of information regarding an alleged extramarital relationship between Karen McDougal and defendant, *see Trump* Omnibus Decision 2; People's Omnibus Opp. 4-6, 8; People's Statement of Facts ¶¶ 12-15, 22-23;

- the purchase of information regarding an alleged sexual encounter between Stormy Daniels and defendant, *see Trump* Omnibus Decision 2-3; People's Omnibus Opp. 1, 6-8; People's Statement of Facts ¶¶ 3, 16-21; and

- AMI's publication of negative information about defendant's competitors for the election, as well as the publication of positive stories regarding defendant, *see* People's Omnibus Opp. 3; People's Statement of Facts ¶ 9.

As described below, this evidence is part of the *res gestae* of defendant's criminal conduct and is not properly considered *Molineux* evidence for that reason. For the avoidance of any doubt, however, the Court may also hold that even if this evidence does constitute evidence of prior uncharged crimes or bad acts under *Molineux*, it is admissible because it is inextricably interwoven with the narrative of events and is probative of defendant's intent, and because any prejudicial impact is outweighed by its probative value.

> **1.    Evidence regarding the formation and execution of defendant's conspiracy with others to influence the 2016 presidential election is not *Molineux* because it is part of the *res gestae* of his criminal conduct.**

Evidence regarding the Trump Tower agreement and the steps taken to implement that agreement is direct evidence of an element of the offense: namely, defendant's intent to defraud. First-degree falsifying business records requires that defendant's intent to defraud include "an intent to commit another crime or to aid or conceal the commission thereof." PL § 175.10. The People allege that defendant intended to commit or conceal election law crimes, including violations of Election Law § 17-152 and FECA. *See Trump* Omnibus Decision 12-16. The People must establish only that defendant *intended* to commit or conceal another crime. *Id.* at 12.

As the Court has already recognized, the evidence described above—including evidence of the August 2015 Trump Tower agreement; the payoffs to Sajudin, McDougal, and Daniels that were made because of the Trump Tower agreement; and AMI's publication of flattering stories about defendant paired with denigrating stories about his opponents—supports a finding that defendant intended to commit or conceal criminal conduct. *See id.* at 11-16. Thus, evidence regarding the agreement to promote defendant's election, as well as evidence of the steps taken to execute that agreement, is not *Molineux* evidence at all but is instead part of the *res gestae* of defendant's criminal conduct.

The Court of Appeals has explained that "the common thread in all *Molineux* cases is that the evidence sought to be admitted concerns a *separate* crime or bad act committed by the defendant. *Frumusa*, 29 N.Y.3d at 369-70. But "[w]here, as here, the evidence at issue is relevant to the very same crime for which the defendant is on trial, there is no danger that the jury will draw an improper inference of propensity because no separate crime or bad act committed by the defendant has been placed before the jury." *Id.* at 370. Evidence regarding the formation and execution of defendant's conspiracy with others to influence the 2016 presidential election is part of the *res gestae* of his criminal conduct and is admissible without regard to the *Molineux* doctrine. *See, e.g.*, *People v. Alfaro*, 19 N.Y.3d 1075, 1076 (2012) (affirming decision below that evidence was properly admitted where "the items were part of the 'res gestae' of the entire criminal transaction"); *People v. Delacruz*, 199 A.D.3d 614, 614 (1st Dep't 2021) (video of defendant displaying a gun and threatening the victim "did not constitute *Molineux* evidence" because it was instead "direct proof of defendant's specific criminal intent"); *People v. Robinson*, 200 A.D.2d 693, 694 (2d Dep't 1994) (affirming trial court's admission of facts that were "essential components of the res gestae").

> **2.  In the alternative, evidence regarding defendant's conspiracy with others to influence the presidential election is centrally relevant to material issues in the case, and its probative value far outweighs any prejudicial effect.**

To the extent the Court concludes that evidence regarding the formation and execution of defendant's conspiracy with others to influence the 2016 presidential election may be *Molineux* evidence, the Court should conclude that it is relevant to a material, non-propensity issue, and that the probative value of the evidence far outweighs the risk of undue prejudice. *See Frumusa*, 29 N.Y.3d at 370 (encouraging the People to bring possible evidentiary issues to the attention of the

court and defendant before trial, including where the *Molineux* doctrine may not need to be applied).

First, evidence of defendant's steps to conspire with others to help his candidacy by purchasing and suppressing damaging information is "inextricably interwoven with the narrative of events and [is] necessary background to explain to the jury" the criminal conduct defendant intended to commit or conceal. *Santiago*, 295 A.D.2d at 215. Defendant is charged with falsely stating in the business records of New York enterprises that his 2017 payments to Cohen were for legal services rendered pursuant to a retainer agreement, when in fact those payments were instead reimbursements for one part—the Stormy Daniels payoff—of the conspiracy to assist defendant's presidential campaign. Evidence regarding the Trump Tower agreement and the subsequent steps to execute the plan that was hatched at that meeting—which included the Daniels payoff—thus provides necessary background to explain the criminal conduct defendant intended to conceal when he falsified the business records at issue in this prosecution.[15] *See id.*; *see also, e.g.*, *People v. Vails*, 43 N.Y.2d 364, 367-69 (1977) (*Molineux* evidence is relevant where it shows "a concurrence of common features such that the acts proved can naturally be explained as caused by a general plan of which each act is but a part"); *People v. DeJesus*, 127 A.D.3d 589, 590 (1st Dep't 2015); *People v. Finkelstein*, 121 A.D.3d 615, 615-16 (1st Dep't 2014). Indeed, the Court's opinion on defendant's omnibus motions described this evidence "by way of background" when

---

[15] Relatedly, the People will also present evidence that the $420,000 reimbursement amount to Cohen was made up in part of a $50,000 request for reimbursement for expenses he claimed he incurred. *See* Trump Omnibus Decision 3; People's Omnibus Opp. 8; People's Statement of Facts ¶ 25. The People will elicit testimony that the $50,000 expense claim related to Cohen's payments to a tech firm, RedFinch Solutions, to rig an online poll ranking business leaders in defendant's favor. Because the RedFinch expense is a component of the total reimbursement amount for the payments at issue in this criminal prosecution, it is admissible for the same reasons described above: it is part of the *res gestae* of defendant's criminal conduct; and if the Court instead considers it *Molineux*, it is inextricably interwoven with the narrative of events.

introducing and describing the charged offenses. *Trump* Omnibus Decision 1-3; *see also People v. Till*, 87 N.Y.2d 835, 837 (1995) (evidence of prior bad acts admissible to provide necessary background information).

Second, and relatedly, this evidence is necessary to "complete the narrative" concerning the charged crimes. *Till*, 87 N.Y.2d at 837; *see also People v. Gines*, 36 N.Y.2d 932, 932-33 (1975). Evidence of the Trump Tower agreement and the steps the participants took to execute that agreement is all part of a single narrative that explains the illegal conduct defendant sought to conceal when he falsely described the payments to Cohen as payments for legal services instead of truthfully describing them as reimbursements for the Stormy Daniels payoff. *See, e.g.*, *Alfaro*, 19 N.Y.3d at 1075 (holding that items were properly admitted where, "[e]ven assuming that the subject items constituted prior uncharged crimes evidence under *Molineux*," they "completed the narrative of this particular criminal transaction"); *People v. Flambert*, 160 A.D.3d 605, 606 (1st Dep't 2018) (evidence admissible where it tends to "place the events in question in a believable context"). Indeed, each of the transactions that was pursued as a result of the Trump Tower agreement is so central to the conspiracy to influence the election that the conspiracy cannot be accurately understood without reference to each of the other transactions—to omit any of the episodes would be to present an incomplete and nonsensical narrative of the events that form the basis for the charged conduct. This evidence is thus admissible because it is necessary to "flesh out the narrative so there are no gaps in the story line provided to the jury." *People v. Leonard*, 29 N.Y.3d 1, 4 (2017); *People v. Green*, 35 N.Y.2d 437, 442 (1974) ("[S]ome cases are sufficiently complex that the jury would wander helpless, as in a maze, were the decisive occurrences not placed in some broader, expository context.").

Third, this evidence is highly probative of defendant's intent. In cases where the defendant's mental state cannot be "inferred from the commission of the act" alone, the *Molineux* doctrine is especially flexible in permitting the introduction of evidence that tends to show that the defendant acted with the requisite state of mind. *Alvino*, 71 N.Y.2d at 242-43 (citing cases). Cases involving fraudulent intent are paradigmatic cases where *Molineux* evidence has often been allowed, "because a fraudulent intent rarely can be established by direct evidence." *Matter of Brandon*, 55 N.Y.2d 206, 211 (1982); *see also People v. Rodriguez*, 17 N.Y.3d 486, 489 (2011). Here, evidence that defendant agreed with others to execute an illegal scheme to identify and purchase negative information about him in order to suppress its publication and benefit his electoral prospects is highly probative of defendant's mental state when he later falsified business records to cover up that scheme. *See People v. Leeson*, 12 N.Y.3d 823, 827 (2009) (*Molineux* evidence was relevant to defendant's state of mind when it "placed the charged conduct in context" (quoting *People v. Dorm*, 12 N.Y.3d 16, 19 (2009))); *People v. Ingram*, 71 N.Y.2d 474, 480 (evidence is admissible under the *Molineux* intent exception where it "makes the innocent explanation improbable"); *see also* Trump Omnibus Decision 18-19 (evidence that defendant intended to pay money "to prevent the publication of information that could have adversely affected his presidential aspirations" was material to defendant's intent to defraud).

Finally, evidence regarding the specific allegations defendant sought to suppress through the Sajudin, McDougal, and Daniels payoffs is relevant to defendant's motive. In each instance, the allegations that defendant sought to suppress—that he had an out-of-wedlock child; that he had an extramarital sexual relationship; that he had an extramarital sexual encounter with an adult film actress—are allegations that defendant knew could damage his candidacy. *See Trump* Omnibus Decision 1; People's Omnibus Opp. 3-8; People Statement of Facts ¶¶ 10-23. Evidence regarding

the nature of these allegations is critical evidence that supports defendant's motive in making false entries in the relevant business records in order to prevent disclosure of both the payoff scheme and the underlying information. *See, e.g.*, *People v. Frankline*, 27 N.Y.3d 1113, 1115 (2016) (evidence of a prior assault admissible to show motive for a subsequent assault); *Till*, 87 N.Y.2d at 837 (evidence of uncharged robbery was properly admitted where it "established a motive for defendant's attempt to kill or assault the off-duty police officer to avoid capture and punishment"); *People v. Johnson*, 137 A.D.3d 811, 812 (2d Dep't 2016) (*Molineux* testimony was properly admitted where "it was relevant to and probative of defendant's motive to commit the charged crimes").

The probative value of this evidence far outweighs any risk of "undue," *People v. Cass*, 18 N.Y.3d 553, 560 (2012), or "unfair," *Frankline*, 27 N.Y.3d at 1115, prejudice to defendant. As explained above, evidence that defendant conspired with others to unlawfully influence the 2016 presidential election could not be more probative: it bears directly on material issues involving defendant's state of mind when he later falsified business records to conceal that conspiracy, and separately provides necessary background to explain crucial context and complete the narrative regarding the charged crimes.

By contrast, the risk of undue prejudice to defendant is low. This evidence is centrally relevant to the jury's understanding of the charged offenses. "When evidence of uncharged crimes is relevant to some issue other than the defendant's criminal disposition," it is only when the evidence "is actually of slight value when compared to the possible prejudice to the accused" that it can be said its admission is an abuse of the trial court's discretion. *People v. Allweiss*, 48 N.Y.2d 40, 47 (1979); *see also Frumusa*, 29 N.Y.3d at 373 (evidence "was not unduly prejudicial" where, among other factors, "it was relevant to defendant's larcenous intent"); *Cass*, 18 N.Y.3d at 563

(evidence not unduly prejudicial where it had "a direct bearing" on the question of defendant's intent). And because the evidence is directly relevant to specific issues in the case, there is little risk the jury will overestimate its significance. *See Allweiss*, 48 N.Y.2d at 46.

The Court should therefore hold that evidence of defendant's prior acts is admissible where it relates to or was committed in the course of the underlying conspiracy to promote his election.

### C. The Court should permit the introduction of evidence regarding the Access Hollywood Tape and subsequent public allegations by women that defendant sexually assaulted them.

The Court should also permit the introduction of evidence regarding (1) the Access Hollywood Tape; and (2) certain public allegations of sexual assault that followed the release of the Access Hollywood Tape in the fall of 2016. Each of these categories of evidence is probative of defendant's motive and intent, and provides necessary background information for the jury that places the charged offenses in context.

#### 1. The Access Hollywood Tape.

On October 7, 2016, about one month before the 2016 presidential election, the Washington Post published a video recorded in 2005 that depicted defendant saying to the host of *Access Hollywood*: "You know I'm automatically attracted to beautiful – I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star, they let you do it. You can do anything. . . . Grab 'em by the pussy. You can do anything." *Carroll v. Trump*, 660 F. Supp. 3d 196, 200-01 (S.D.N.Y. 2023) (quoting the Access Hollywood Tape). In response, defendant issued public statements describing the tape as "locker room banter," Ex. 21, and drawing a distinction between words (which he admitted saying) and conduct (which he denied).[16]

---

[16] Both the Access Hollywood Tape and defendant's statements explaining his remarks on that tape (by distinguishing between words and conduct) are contained in video exhibits which the People will submit to the Court if the Court would like to review them in adjudicating this motion.

The Access Hollywood Tape is centrally relevant to critical issues in the case, and its probative value outweighs any risk of undue prejudice. The evidence at trial will show that after the release of the Access Hollywood Tape one month before the presidential election, defendant and his campaign staff were deeply concerned that the tape would harm his viability as a candidate and reduce his standing with female voters in particular. The release of the tape—and the accompanying concerns about its possible impact on the election—are thus directly related to the Stormy Daniels payoff, which was executed just a few weeks later. *See* People's Omnibus Opp. 6-7, 55; People's Statement of Facts ¶¶ 16-21. The Access Hollywood Tape is such a central component of defendant's conspiracy to influence the election that it is "inextricably interwoven with the narrative of events and [is] necessary background to explain to the jury" why the Daniels payoff was made when it was. *Santiago*, 295 A.D.2d at 215; *see also Vails*, 43 N.Y.3d at 367-69; *Green*, 35 N.Y.2d at 442. Omitting the Access Hollywood Tape would leave counterfactual and artificial "gaps in the story line presented to the jury," *Leonard*, 29 N.Y.3d at 4; the tape is necessary to "complete[] the narrative of this particular criminal transaction," *Alfaro*, 19 N.Y.3d at 1075, and "place the events in question in a believable context," *Flambert*, 160 A.D.3d at 606.

The Access Hollywood Tape is also relevant to defendant's intent and motive at the time he and his confederates executed the Daniels payoff and when he later sought to conceal it. *See Trump* Omnibus Decision 18-19. Evidence regarding the tape and its impact on the campaign supports the conclusion that defendant wanted to avoid further damaging disclosures immediately before the election, which makes other, "innocent explanation[s]" for the payoff and coverup "improbable." *Ingram*, 71 N.Y.2d at 480. The tape is highly relevant to defendant's motive for the same reason—it supports the conclusion that he suppressed the Daniels story and then concealed the payoff because he believed additional disclosures about an alleged sexual encounter with an

adult film actress, following immediately on the heels of the Access Hollywood Tape, would cost him votes. *Frankline*, 27 N.Y.3d at 1115; *Till*, 87 N.Y.2d at 837. Indeed, the release of the Access Hollywood Tape was so monumental to the campaign that the first draft of the non-disclosure agreement with Stormy Daniels was penned within four days. The motivation to complete the Daniels non-disclosure agreement cannot be understood without reference to the desperation facing defendant and his campaign in the wake of the tape's release.

The probative value of the Access Hollywood Tape outweighs any risk of undue prejudice. The Access Hollywood Tape and its impact on the campaign could not be more relevant to the Daniels payoff and subsequent coverup. As the Court of Appeals has explained, "[i]f the evidence has substantial probative value and is directly relevant to the purpose—other than to show criminal propensity—for which it is offered, the probative value of the evidence outweighs the danger of prejudice and the court may admit the evidence." *Cass*, 18 N.Y.3d at 560. And the prejudicial impact is low because the evidence is directly relevant to defendant's intent. *See id.* at 563; *see also Frumusa*, 29 N.Y.3d at 373. Indeed, a federal court recently held in a defamation case against Trump that the Access Hollywood Tape was admissible under Rule 404(b) of the Federal Rules of Evidence (the federal-law provision for "Other Crimes, Wrongs, or Acts") because it was relevant to the defendant's intent, and was not unduly prejudicial because "[t]here would be nothing inherently 'unfair' in receiving evidence that is uniquely probative" of defendant's state of mind. *Carroll v. Trump*, No. 20-cv-7311 (LAK), 2024 WL 97359, at \*9-11 (S.D.N.Y. Jan. 9, 2024).

### 2. Public allegations of sexual assault that followed the release of the Access Hollywood Tape in the fall of 2016.

About five days after the Access Hollywood Tape was published, and following defendant's public explanation that the tape reflected only banter, not behavior, several women alleged in news reports that defendant had sexually assaulted them in the past. *See* Megan Twohey

& Michael Barbaro, *Two Women Say Donald Trump Touched Them Inappropriately*, N.Y. Times, Oct. 12, 2016 (Ex. 22); Natasha Stoynoff, *Physically Attacked by Donald Trump—A PEOPLE Writer's Own Harrowing Story*, People Magazine, Oct. 12, 2016 (Ex. 23). In public comments at campaign rallies and on social media, defendant denied the allegations of sexual assault and asserted that the allegations were being made to harm—and were harming—his standing with voters in general and women voters in particular.[17] Ex. 24.

As with the Access Hollywood Tape, evidence of these allegations and defendant's public response provides critical context for the charges the jury will consider, and is manifestly relevant to defendant's intent and motive in paying to silence Stormy Daniels and then concealing the payoff. As noted above, defendant's public comments in reaction to the allegations published on October 12, 2016 in the New York Times and People Magazine show his awareness and concern that the allegations risked his candidacy by hurting his standing with female voters. *E.g.*, Ex. 24 at 1 ("Nothing ever happened with any of these women. Totally made up nonsense to steal the election. Nobody has more respect for women than me!"); *id.* at 2 ("Polls close, but can you believe I lost large numbers of women voters based on made up events THAT NEVER HAPPENED. Media rigging election!"); *id.* at 3 ("Can't believe these totally phony stories, 100% made up by women (many already proven false) and pushed big time by press, have impact!"). Thus, this evidence not only provides important context and background, but also explains defendant's intent and motive in arranging the Stormy Daniels hush payment and subsequent coverup, because further disclosures of alleged sexual misconduct—and especially the disclosure of an alleged

---

[17] Defendant's comments at campaign rallies are contained in excerpted video exhibits which the People will submit to the Court if the Court would like to review them in adjudicating this motion.

sexual liaison with an adult film actress just weeks before Election Day—seriously risked his electoral prospects.

The risk of undue prejudice is low. First, this evidence would not be admitted to show that defendant in fact sexually assaulted the women who accused him of doing so; there is thus no propensity issue at play. *See Agina*, 18 N.Y.3d at 603 (*Molineux* evidence inadmissible "where its *only* relevance is to show defendant's bad character or criminal propensity" (emphasis added)). And appropriate limiting instructions would make clear to the jury that this evidence should be considered only for the fact that the allegations were made, not as evidence of defendant's character or as proof that the allegations are true. *See People v. Hernandez*, 103 A.D.3d 433, 434 (1st Dep't 2013) (prejudicial effect of *Molineux* evidence was minimized by the court's limiting instructions); *see also People v. Morris*, 21 N.Y.3d 588, 598 (2013) (jurors are presumed to follow a trial court's limiting instructions). Second, the People propose to admit evidence of only three accusations of sexual assault (the accusations that were reported in the New York Times and People Magazine articles published on October 12, 2016). There are public reports that more than dozen women accused defendant of sexual assault in the weeks following the release of the Access Hollywood Tape;[18] evidence of just a select few instances of those allegations—which defendant specifically referenced on the campaign trail in acknowledging the effect on his campaign—is not cumulative. *Cf. People v. Rodriguez*, 193 A.D.3d 554, 556 (1st Dep't 2021) (introducing a "significant quantum of evidence" is more likely to cause undue prejudice). Third, the risk of unfair prejudice is low where the allegations reported in the New York Times and People Magazine articles are not "any more sensational or disturbing" than other evidence that will be before the

---

[18] *See, e.g.*, Lindsay Kimble, *Everything You Need to Know About the Sexual Assault Allegations Against Donald Trump Before Election Day*, People Magazine, Nov. 1, 2016, https://people.com/politics/ every-sexual-assault-accusation-against-donald-trump/.

jury. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *see United States v. Siegel*, 717 F.2d 9, 16-17 (2d Cir. 1983).

> **D.    The Court should permit the introduction of evidence regarding defendant's efforts to dissuade witnesses from cooperating with law enforcement, including through pressure campaigns, public harassment, and retaliation.**

The Court should also permit the introduction of evidence regarding defendant's attempts to dissuade witnesses from cooperating with law enforcement because such evidence shows defendant's consciousness of guilt and corroborates his intent. This evidence falls into four categories:

- First, after the FBI executed a search warrant on Cohen's residences, office, and electronic devices in April 2018, defendant and others engaged in a public and private pressure campaign to ensure that Cohen did not cooperate with the federal investigation into campaign finance violations related to the McDougal and Daniels payoffs. *See* People's Statement of Facts ¶¶ 35-40. The People will introduce evidence of this pressure campaign and will elicit testimony regarding how these statements affected a witness.

- Second, defendant has singled out two of the People's witnesses—Michael Cohen and Stormy Daniels—with harassing comments on social media and in other public statements. The People will introduce evidence of these statements, and will elicit testimony from witnesses regarding the threats and harassment they received after defendant targeted them with these and other public attacks.

- Third, in April 2023, eight days after he was arraigned in this case, defendant sued Cohen in federal court in Florida seeking $500 million in damages based on allegations that Cohen "spread falsehoods" about defendant. The People will elicit witness testimony regarding that lawsuit and its effect on the witness.

- Fourth, the People will introduce evidence of past comments by defendant endorsing aggressive attacks on one's perceived opponents. For example, in one book, defendant wrote: "When somebody hurts you, just go after them as viciously and as violently as you can."[19] In another book, defendant wrote: "When you are wronged, go after those people because it is a good feeling and because other people will see you doing it."[20]

---

[19] Donald J. Trump, *Trump: How to Get Rich* 138 (2004).

[20] Donald J. Trump, *Think Big: Make it Happen in Business and in Life* 192 (2007).

This evidence is relevant to material, non-propensity issues in the case. Evidence of the pressure campaign against Cohen is probative of both defendant's effort to deter Cohen from cooperating with law enforcement, and of defendant's steps to intimidate Cohen and retaliate against him once he began doing so. *See, e.g.*, *Report on the Investigation into Russian Interference in the 2016 Presidential Election, Vol. II of II*, at 154-56 (Mar. 2019) ("The evidence concerning this sequence of events could support an inference that the President used inducements in the form of positive messages in an effort to get Cohen not to cooperate, and then turned to attacks and intimidation to deter the provision of information or undermine Cohen's credibility once Cohen began cooperating."), https://www.justice.gov/storage/report_volume2.pdf. The Court of Appeals has long recognized that efforts to coerce or harass witnesses can show consciousness of guilt. *See People v. Bennett*, 79 N.Y.2d 464, 469-70 (1992); *People v. Shilitano*, 218 N.Y. 161, 179 (1916) (evidence of "an effort to coerce witnesses and suppress evidence against the defendant" admissible to prove consciousness of guilt). And evidence of post-crime conduct that reflects a defendant's consciousness of guilt—including efforts at coercion, threats, or intimidation of witnesses—is admissible under the *Molineux* doctrine for that reason. *See, e.g.*, *People v. Parilla*, 211 A.D.3d 1609, 1610 (4th Dep't 2022) (efforts to bribe witness showed consciousness of guilt and were admissible under *Molineux*); *People v. Cotton*, 184 A.D.3d 1145, 1146 (4th Dep't 2020) (evidence of tampering or witness intimidation admissible under *Molineux* to show consciousness of guilt).

The same is true of the evidence that defendant has targeted Cohen and Daniels on social media and in other public statements with persistent, harassing, and denigrating comments. *See Cotton*, 184 A.D.3d at 1146; *People v. Pitt*, 170 A.D.3d 1282, 1284 (3d Dep't 2019) (threatening post-crime comments showed consciousness of guilt and were admissible under *Molineux*); *People*

*v. Leitzsey*, 173 A.D.2d 488, 488-89 (2d Dep't 1991) (same). And evidence that defendant sued Cohen just days after defendant's arraignment in this matter—and sought enormous money damages for claimed injuries based in part on Cohen's testimony before the grand jury—likewise is relevant to material issues in this case because it supports consciousness of guilt and therefore corroborates defendant's intent in connection with the charged conduct. *See, e.g.*, *People v. Lumaj*, 298 A.D.2d 335, 335 (1st Dep't 2002) (evidence of efforts to deter a witness from testifying was "clearly admissible as it demonstrated defendant's consciousness of guilt"); *People v. De Vivo*, 282 A.D.2d 770, 772 (3d Dep't 2001) (evidence of threats, retaliation, and efforts to get witnesses to change their testimony "is highly probative and was properly admitted as it was indicative of defendant's consciousness of guilt") (citing cases). The final category of evidence—defendant's prior statements that perceived opponents should be attacked "as viciously and as violently" as possible—is material and relevant for a non-propensity purpose because it provides context for witness testimony the People will elicit regarding the effect defendant's public attacks and harassment had on them.[21] *See Flambert*, 160 A.D.3d at 606.

Given the direct connection between this consciousness-of-guilt evidence and defendant's intent, its probative value outweighs the danger of any unfair prejudice. *See Lumaj*, 298 A.D.2d at 335; *Cotton*, 184 A.D.3d at 1146; *see generally Cass*, 18 N.Y.3d at 560. An appropriate limiting instruction that the jury is to consider this evidence only for consciousness of guilt and

---

[21] The evidence mentioned in this paragraph—defendant's public harassment of Cohen and Daniels; his $500 million lawsuit against Cohen; and his prior written statements endorsing retaliation against opponents—likely is not *Molineux* at all, and its admission at trial should be assessed just like any other evidence. *See People v. Hamilton*, 73 A.D.3d 408, 409 (1st Dep't 2010). The People include this evidence here for the avoidance of any doubt and to the extent the Court believes the *Molineux* doctrine does apply. *See Frumusa*, 29 N.Y.3d at 370.

corroboration of defendant's intent—not to show defendant's bad character or criminal propensity—will further reduce any risk of undue prejudice. *See Parilla*, 211 A.D.3d at 1610.

Dated:          February 22, 2024            Respectfully submitted,

                                             */s/ Matthew Colangelo*
                                             Matthew Colangelo
                                             Christopher Conroy
                                             Susan Hoffinger
                                             Becky Mangold
                                             Joshua Steinglass
                                             *Assistant District Attorneys*
                                             New York County District Attorney's Office
                                             1 Hogan Place
                                             New York, NY 10013
                                             212-335-9000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

---------------------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

-against-                                                      Ind. No. 71543-23

DONALD J. TRUMP,

                                    Defendant.

---------------------------------------------------------------

## AFFIRMATION OF SERVICE

The undersigned affirms under penalty of perjury that on February 22, 2024, he served the People's Motions in Limine and the accompanying Affirmation, Memorandum of Law, and Exhibits on counsel for defendant (Todd Blanche, Emil Bove, Susan Necheles, Gedalia Stern, and Stephen Weiss) by email with consent.

Dated:          February 22, 2024                    Respectfully submitted,

                                                     _/s/ Matthew Colangelo_
                                                     Matthew Colangelo
                                                     Assistant District Attorney

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

**THE PEOPLE OF THE STATE OF NEW YORK**

**-against-**

**DONALD J. TRUMP,**

**Defendant.**

**MOTIONS IN LIMINE**
**Indictment No. 71543-23**

**Alvin L. Bragg, Jr.**
**District Attorney**
**New York County**
**One Hogan Place**
**New York, New York 10013**
**(212) 335-9000**