# EXHIBIT I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

---

THE PEOPLE OF THE STATE OF NEW YORK

- against -

DONALD J. TRUMP,

Defendant.

---

DECISION AND ORDER
ON PEOPLE'S MOTIONS IN
LIMINE

Ind. No. 71543/2023

HON. JUAN M. MERCHAN A.J.S.C.:

The People's motions *in limine* are decided as follows:

### PEOPLE'S I: MOTION TO EXCLUDE WITNESS TESTIMONY AND ARGUMENT REGARDING FEDERAL ELECTION LAWS

For the reasons set forth below, this motion is **GRANTED** in part and **DENIED** in part.

The People ask this Court to: (1) treat the proposed testimony of Bradley A. Smith ("Smith") as expert testimony and not lay testimony; (2) exclude the testimony of Smith because an expert is not permitted to offer legal conclusions; (3) exclude the proposed testimony in full because it is irrelevant; (4) exclude the proposed testimony opining whether the Stormy Daniels ("Daniels") payoff violated campaign finance law; and (5) preclude the proposed testimony about the *United States v. John Edwards* prosecution.

Exhibit 1 to the People's affirmation in support of motions *in limine* (hereinafter "People's Affirmation") is a copy of Defendant's witness disclosure for Smith, dated January 22, 2024. Also attached to the People's Affirmation as Exhibit 3, is a copy of the signed engagement letter between Smith and Todd Blanche, counsel for Defendant, dated January 4, 2024. In the engagement letter, Smith expresses appreciation for "the opportunity to serve as an expert consultant and witness" in the instant matter. People's Exhibit 3. The letter further states that Smith will "provide expert testimony as necessary in both pre-trial and trial stages." *Id.*

> "A person qualified as an expert by knowledge, skill, experience, training, or education may testify to an opinion or information concerning scientific, technical, medical, or other

> specialized knowledge when: (a) the subject matter is beyond the knowledge or understanding, or will dispel misconceptions, of a typical finder of fact; and (b) the testimony will help the finder of fact to understand the evidence or determine a fact in issue, especially when the facts cannot be stated or described in such a manner as to enable the finder of fact to form an accurate judgment about the subject matter."

> Guide to N.Y. Evid., Opinion of Expert Witness § 7.01(a) and (b).

"The testimony of a witness *not* testifying as an expert may be given in the form of an opinion or inference when that testimony is rationally based on the witnesses' personal perception, within the ambit of common experience or that of a particular witness, and would be helpful to the finder of fact in understanding that witnesses' s testimony or in determining a fact in issue, especially when facts cannot be stated or described in such a manner as to enable the finder of fact to form an accurate judgment about the subject matter of the opinion or inference." Guide to N.Y. Evid., Opinion of Lay Witness § 7.03(a), (b), (c) [emphasis added]. For the opinion of a non-expert witness to be admissible pursuant to § 7.03(a), there must exist some level of personal knowledge on the part of the witness regarding the facts of the underlying matter. *People v. Caccese*, 211 AD2d 976 [3d Dept 1995]. FRE 701 allows lay witness testimony so long as it is rationally based on the perception of the witness. Jerome Prince, Richardson on Evidence §7-201 [Farrell 11th ed 1995].

Here, it is abundantly clear that Smith does not possess personal knowledge regarding the underlying facts of the instant matter. Further, it is readily apparent, from the materials provided to the People by the Defendant, that Smith was retained to testify at trial not as a lay witness, but as an expert. See People's Exhibits 1 and 3.

Defendant seeks to elicit from Smith, among other things, that at the time Cohen paid Daniels, there had never been a case in which anyone had been convicted of a federal campaign finance law violation for the making of "hush money payments;" the facts surrounding the trial of former U.S. Senator and presidential candidate, John Edwards, his subsequent acquittal, and that the case was heavily criticized. People's Exhibit 1. Defendant also represents that Smith should be permitted to testify regarding "factual circumstances bearing on the intent of relevant parties, which includes here President Trump, AMI witnesses, and Cohen with respect to the absence of culpable *mens rea* under Penal Law § 175.10 and of the willfulness element of a FECA violation." Defendant's Opposition at pg. 7.

2

Smith was previously precluded from testifying about similar matters in the Southern District of New York by Federal District Court Judge Lewis Kaplan. Judge Kaplan reasoned that Smith's testimony was, as it is here, improper because it sought to instruct the jury on matters of law. *United States v. Bankman-Fried*, 2023 WL 6162865 *1, [SD NY, Sept 21, 2023, No. 22-CR-0673 (LAK)]. Further, the testimony Defendant seeks to elicit from Smith here was also rejected in *United States v. Suarez*, N.D. Ohio June 24, 2014, No. 5:13-cr-420, at 1-2. In *Suarez*, the court ruled that Smith's proposed testimony was not relevant. The court agreed with the government that "whether the laws are commonly misunderstood does not weigh on whether defendants *in this case* intended to violate campaign finance laws." People's Exhibit 2 at pgs. 2-3. The same holds true here.

The People's motion is granted to the extent that Smith may not testify as a lay (fact) witness; offer opinion testimony regarding the interpretation and application of federal campaign finance laws and how they relate to the facts in the instant matter, nor may Smith testify or offer an opinion as to whether the alleged conduct in this case does or does not constitute a violation of the Federal Election Campaign Act ("FECA"). However, Smith will be permitted to testify generally as to the following: general background as to what the Federal Campaign Commission ("FEC") is, background as to who makes up the FEC, what the FEC's function is, what laws, if any, the FEC is responsible for enforcing, and general definitions and terms *that relate directly to this case*, such as for example "campaign contribution"

The Court will monitor this testimony closely to ensure full compliance. Any deviation from this ruling could result in sanctions up to and including the striking of the expert's entire testimony.

### PEOPLE'S II AND III: (II) MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING THE FEDERAL ELECTION COMMISSION'S DISMISSAL OF COMPLAINTS AGAINST DEFENDANT. (III) MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING ANY PURPORTED DECISION BY THE UNITED STATES DEPARTMENT OF JUSTICE NOT TO CHARGE DEFENDANT WITH CAMPAIGN FINANCE VIOLATIONS

The Defendant has indicated that he does not "intend to offer evidence" regarding the FEC complaints that were dismissed against Defendant, or the decision by the U.S. Department of Justice ("DOJ") not to charge Defendant with campaign finance violations. Defendant's Opposition at pgs. 10-11. However, Defendant argues that if the People introduce evidence that Cohen pleaded guilty to and was convicted of two counts of violating FECA in connection with the Karen McDougal and Stormy Daniels payoffs (See People's Memo at pg. 15), then Defendant will argue that the People have "opened the door" for him to introduce evidence that the FEC dismissed complaint against

3

Defendant and that the DOJ decided against prosecuting Defendant for potential FECA violations. *Id.*

In its Decision on Defendant's motions *in limine*, this Court agreed with Defendant that the People cannot argue at trial that Cohen's guilty plea to FECA violations is probative of Defendant's guilt in the instant matter. Decision on Defendant's Motions in Limine pg. 6. However, this Court also ruled that testimony about the underlying facts of those guilty pleas will be accepted, provided the proper foundation is laid. *Id.* In its current motions as to Points II and III, the People seek to preclude the Defendant from offering any evidence or argument that the FEC dismissed complaints against the Defendant regarding allegations that he committed campaign finance violations. People's Memo at pg. 19.

The People's motion is **GRANTED**. That the FEC dismissed the complaint against Defendant and the DOJ decided against prosecuting Defendant for potential FECA violations are probative of nothing. These matters are therefore irrelevant and Defendant is precluded from eliciting testimony or introducing evidence about both. There are countless reasons why the FEC and DOJ could have decided not to pursue enforcement against Defendant, all having nothing to do with whether he is guilty of the charges here against him.

### PEOPLE'S IV: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING SELECTIVE PROSECUTION OR GOVERNMENT MISCONDUCT

The People seek to exclude evidence or argument regarding Defendant's claims of selective prosecution and government misconduct. Specifically, they seek exclusion of the following : (1) any claim that the Indictment is novel, unusual, or unprecedented, (2) any testimony or evidence from the book, "People v. Donald Trump: An Inside Account" by Mark Pomerantz, regarding his purported opinions of this prosecution, (3) arguments regarding the length of the People's investigation and related claims that the prosecution was timed to interfere with the Defendant's presidential campaign, (4) "argument or evidence referencing the purported motivations or personal and professional backgrounds of the District Attorney or counsel for the People in this case," (5) arguments, questions, or evidence regarding any potential punishment or other consequences as a result of these proceedings or that the charges should have been brought as misdemeanors rather than felonies, and (6) "Arguments or evidence regarding alleged bias or purported motivations of the Court and court staff..." People's Memo at pgs. 27-30.

4

The Defendant has stated that he does "not intend to ask the jury to acquit President Trump on a claim of 'selective prosecution...'" Defendant's Opposition pg. 11. Defendant's representation renders this aspect of the People's motion moot and thus warrants no decision by this Court.

Further, Defendant is precluded from (1) arguing that the Indictment is novel, unusual, or unprecedented, (2) making argument about pre-indictment delay, (3) making arguments and introducing evidence regarding the purported motivations or personal and professional backgrounds of the District Attorney or counsel for the People in this case, (4) making arguments and introducing evidence regarding any potential punishment or other consequences to the Defendant as a result of these proceedings, (5) making argument or introducing evidence regarding the alleged bias of the court and court staff, and (6) arguing or introducing evidence regarding Pomerantz's purported views on the instant prosecution as expressed in his book. These issues are not relevant and will only serve to confuse or mislead the jury. Indeed, many of these issues were already decided in this Court's February 15, 2024, Omnibus Decision. The Court also reiterates that this decision does not limit either side's ability to impeach witnesses during cross examination or to argue to the Court, at sidebar, that opposing counsel has "opened the door" to the introduction of previously precluded evidence.

Should either party seek to impeach a witness during cross examination, they shall have the opportunity to do so by laying the proper foundation. However, both parties are on notice that the Court will closely monitor any attempts to circumvent this Court's rulings. The parties are directed to craft questions carefully to avoid inculcating the jury with concerns about matters this Court has already ruled are irrelevant and therefore, off-limits.

### PEOPLE'S V: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING FEDERAL PROSECUTORS' PURPORTED VIEWS OF MICHAEL COHEN'S CREDIBILITY

The People seek to preclude the Defendant from introducing "evidence of the Justice Department's purported views regarding Michael Cohen's credibility, including claims that he has lied or withheld evidence from federal investigators or prosecutors in the past." People's Memo at pg. 31. Defendant seeks this Court's permission to cross examine Cohen with respect to the views and opinions of federal prosecutors vis a vis Cohen's credibility. Defendant's Opposition at pg. 17. However, in the same opposition, Defendant also asks this Court to "reserve judgment on the admissibility of statements in those filings [by the Justice Department] until President Trump confronts Cohen and decides whether, and to what extent, he will seek to offer the filings based on Cohen's answers." Defendant's Opposition at pg. 15. The filings Defendant is referring to are two

5

submissions by federal prosecutors in connection with their opposition to Cohen's motion for a reduction of his sentence on the federal conviction. The two submissions touch on the following:

- "That federal prosecutors had 'substantial concerns about Cohen's credibility as a witness;'
- An opinion that Cohen 'lied' to the Special Counsel's Office in August 2018;
- Subsequent to those lies, that Cohen 'repeatedly declined to provide full information' to SDNY prosecutors;
- Cohen 'made material false statements' to SDNY prosecutors in January and February 2019;
- 'Cohen then made numerous false statements and repeatedly minimized his own conduct in both his post-sentencing proffers with the Office and his public statements'; and
- That 'Cohen's lies and minimization continue to this day. In this very motion, Cohen once again attempts to blame his tax evasion on his accountant.'"

Defendant's Opposition at pg. 15-16; Defendant's Affirmation in Opposition to People's Motions *in Limine* Exhibits 4 and 5.

"The credibility of a witness may be impeached by asking the witness on cross-examination about the witness's bias, hostility, or interest for or against any party to the proceeding and by extrinsic evidence of such bias, hostility or interest." Guide to N.Y. Evid., Impeachment by Bias, Hostility, Interest §6.13. Further, "once a proper foundation is laid, a party may show that an adversary's witness has, on another occasion, made oral or written statements which are inconsistent with some material part of the trial testimony, for the purpose of impeaching the credibility and thereby discrediting the testimony of the witness." Jerome Prince, Richardson on Evidence §6-411 [Farrell 11th ed 1995]. The trial court has discretion to control the presentation of evidence of partiality. Guide to N.Y. Evid., Impeachment by Bias, Hostility, Interest, § 6.13 note pg. 2, citing to *People v. Corby*, 6 NY3d 231, 234-237 [2005]. The trial court "may not completely exclude the offered evidence unless the inference of impartiality is remote or speculative, or the party who seeks to impeach the witness lacks a good faith basis for the question, or the evidence would be cumulative." *Id.*

The People's motion is **GRANTED** to the extent that Defendant may not impeach witnesses through inadmissible hearsay such as the opinions of federal prosecutors. This ruling does not foreclose appropriate, good faith impeachment on cross examination.

### PEOPLE'S VI: MOTION TO EXCLUDE ARGUMENTS REGARDING ANY ALLEGED RELIANCE ON ADVICE OF COUNSEL UNLESS AND UNTIL DEFENDANT ESTABLISHES A SUFFICIENT FACTUAL PREDICATE FOR THAT DEFENSE

The People's motion was filed on February 22, 2024. On March 11, 2024, Defendant served notice that "he does not intend to assert a formal advice-of-counsel defense ... Accordingly there is no privilege waiver requiring production of communications protected by the attorney-client privilege[.]" Defendant's Notice pg. 2. Thus, this branch of the People's motion is rendered moot. Defendant has unequivocally avowed that he will not rely on the defense.

Nonetheless, in the same notice, Defendant apprises this Court that he will assert a defense, which for purposes of this decision, will be referred to as "presence of counsel." Defendant claims there is a "marked difference" between the defenses of "advice-of-counsel" and "presence of counsel." Defendant's Notice pg 1. Apparently, Defendant "intends to elicit evidence concerning the presence, involvement and advice of lawyers in relevant events giving rise to the charges in the Indictment." Defendant's Notice pg 2. Thus, the argument continues, Defendant has not waived the attorney client privilege and there is therefore no requirement that he produce any otherwise privileged documents. Defendant's Notice pg 2; See also Defendant's Opposition at pg. 19. Defendant further argues "… that while a formal advice-of-counsel defense may result in a privilege waiver, the separate defense that President Trump 'lacked criminal intent' based on 'the involvement of attorneys in certain decision-making' does not." Defendant's Opposition at pg. 19.

In support, Defendant cites *United States v. Bankman-Fried*, 2023 WL 6392718 [SD NY, Oct 1, 2023, No. 22-CR-0673 (LAK)], where Judge Kaplan wrote, "evidence concerning the presence, involvement and even advice of lawyers in relevant events is viewed best as evidence probative of the defendant's intent to defraud or lack thereof."

In *Bankman-Fried*, just as here, the People moved *in limine* to preclude defendant from asserting at trial the defense-of-advice of counsel. Defendant opposed the motion and disclaimed that he would invoke a "formal advice of counsel defense." *United States v. Bankman-Fried*, 2024 WL 477043 at *1 [SD NY, Feb 7, 2024, No. 22-CR-0673 (LAK)]. Instead, he indicated that he intended to argue that "his awareness that attorneys 'were involved in decisions related to' charged conduct was relevant to

7

demonstrating a lack of criminal intent." Following an offer of proof, Judge Kaplan ultimately ruled that defendant could testify as to the document retention policies of his company but "excluded the other areas of testimony." *Id.* at 2. Notably, the court analyzed defendant's proffered testimony through the lens of Federal Rules of Evidence 401 and 403. "Thus, the issue before the Court was not whether the defendant adduced evidence satisfying the elements of a formal advice-of-counsel defense, but rather whether the testimony he sought to give would have satisfied Rules 401 and 403." *Id.* In other words, Judge Kaplan analyzed the proferred testimony under a relevance standard. In his ruling, Judge Kaplan noted that "[a]lthough evidence of the presence of attorneys can be probative of a defendant's state of mind, it on occasion can pose a substantial risk of misleading the jury. Specifically, such evidence risks suggesting to the jury that, because lawyers were involved to some degree with one aspect of events, the defendant was entitled to conclude that he was acting within the law with respect to some other aspect of events." A "jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of the transaction." *Id.* at 3. "Such a misunderstanding would unfairly prejudice the government because it would 'give the defendant all the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense.'" *Id.* at 3, quoting Judge Forrest in *S.E.C. v. Tourre*.

Thus, while Defendant emphasizes a selected portion of Judge Kaplan's decision, he ignores the rest. The phrase quoted by Defendant does not support his claimed entitlement to the defense. Judge Kaplan's observation that "evidence concerning the presence, involvement and even advice of lawyers in relevant events is viewed best as evidence probative of the defendant's intent to defraud, or lack thereof" is not surprising – he merely states that which is well known. What is compelling and offers this Court greater guidance, is contained in the rest of the decision, as noted above, including Footnote 24 which reads "[t]he Court observes, without greater comment, that it is not entirely clear how, if at all, the relevance of evidence introduced through an informal advice-of-counsel defense varies from that of a formal advice-of counsel defense." *Bankman-Fried*, 2024 WL 477043 at *2.

This Court agrees with Judges Kaplan and Forrest that allowing the proposed defense presents a substantial risk that the jury will be misled. It would not be fair, nor would it advance the search for truth to "give defendant all of the essential benefits of an advice of counsel defense without having to bear" the other responsibilities that come with it.

The People have inquired countless times from Defendant whether he intended to rely on advice of counsel. Likewise, this Court has given Defendant numerous opportunities to declare his

8

intent. Ultimately, he was directed to give notice by March 11, 2024. He has now made clear that he will not invoke the defense of advice of counsel.

Turning to the amorphous defense of "presence of counsel," Defendant has in the past hinted, implied, and now declared that he will rely on said defense. However, Defendant has never asked this Court *whether* he would be permitted to do so. This Court now rules that Defendant may not offer, or even suggest, the defense of "presence-of-counsel." To allow said defense in this matter would effectively permit Defendant to invoke the very defense he has declared he will not rely upon, without the concomitant obligations that come with it. The result would undoubtedly be to confuse and mislead the jury. This Court can not endorse such a tactic.

People's VI is **GRANTED**.

### PEOPLE'S POINT VII: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING LEGAL DEFENSES THIS COURT HAS ALREADY REJECTED

The People move to preclude Defendant from rearguing at trial matters already decided and ruled upon in its Decision and Order of February 15, 2024: (1) that the People unconstitutionally delayed bringing charges, (2) that a federal offense is a valid object crime for charges of first degree falsifying business records, (3) that New York Election Law § 17-152 applies to the charged conduct and is not preempted, (4) that this prosecution was not motivated by an improper purpose, (5) that the charges are timely under the statute of limitations, and (6) that there are no violations of grand jury secrecy that affected the integrity of these proceedings. People's Memo at pg. 25.

People's VII is **GRANTED**. This ruling does *not* prevent Defendant from conducting good faith cross examination of witnesses. The Court, however, reminds the parties that improper re-argument or failure to adhere to this Court's rulings could result in sanctions or preclusion of evidence.

### PEOPLE'S POINT VIII: MOTION TO INTRODUCE POTENTIAL MOLINEUX EVIDENCE

#### Introduction

It is well-settled that evidence of uncharged crimes is inadmissible if such evidence is offered solely to show a criminal disposition or propensity and, therefore, that the defendant is likely to have committed the crime at issue. *People v. Ventimiglia*, 52 NY2d 350 [1981]; *People v. Molineux*, 168 NY 264 [1901]. When evidence of other wrongs or acts committed by a person is offered for the purpose of raising an inference that the person is likely to have committed the act in issue, the evidence is

9

inadmissible. Guide to N.Y. Evid., Molineux: Evidence of Crimes and Wrongs, § 4.38 Note. However, there are exceptions to this general rule. In *People v. Molineux*, 168 NY 264 (1901), the Court of Appeals enumerated five categories of uncharged crimes which could be introduced at trial on the People's direct case: to establish defendant's motive; to show lack of mistake or accident in the commission of the crime; to establish defendant's intent or knowledge; common scheme or plan; and to establish the identity of the person charged with the crime. It is now well accepted that these five categories are illustrative and not exhaustive. Reference to an uncharged crime may be proper if the uncharged crime is inextricably interwoven with and is highly probative of the crime charged. *People v. Vails*, 43 NY2d 364 (1977); or where a narrative description of the crimes charged necessitates mention of the uncharged criminal conduct. *People v. Gantz*, 104 AD2d 692 (3rd Dept. 1984).

Admissibility of such evidence is determined by a two-part inquiry: First, the proponent of the evidence must identify some issue other than mere criminal propensity to which the evidence is relevant. *People v. Vargas*, 88 NY2d 856 (1996). This first requirement is a question of law, not discretion. *People v. Alvino*, 71 NY2d 233 [1987]. Such evidence should not be admitted if it is merely cumulative and no pressing necessity for its introduction is demonstrated. *People v. Ventimiglia*, 52 NY2D 350. Once such a showing is made, the court, before admitting the evidence, must determine whether the probative value of the evidence exceeds the potential for prejudice to the defendant. *People v. Hurdy*, 73 NY2d 40 [1988]

**Point One.**

The People ask this Court to allow the introduction of evidence regarding Defendant's prior bad acts that relate to, or were committed during, the alleged underlying conspiracy to promote his election. People's Motion at pg. 36. The People argue that the evidence is admissible as *Molineux* evidence and because it constitutes *res gestae*[1]. Specifically, the People seek to introduce the following: (1) evidence pertaining to Defendant's August 2015 meeting at Trump Tower (hereinafter "Trump Tower Meeting") with Pecker and Cohen; (2) evidence pertaining to the alleged purchase of information from Dino Sajudin; (3) evidence pertaining to the alleged extramarital affair between Defendant and Karen McDougal; (4) evidence pertaining to the alleged sexual encounter with Stormy Daniels; and (5) evidence pertaining to AMI's alleged publication of negative information about Defendant's opponents.

---

[1] For the reasons set forth by the Court in this section, because the proposed evidence is admissible under *Molineux*, the Court declines to address the People's argument that the evidence is also admissible as *res gestae*.

10

The Court refers the parties to its Decision on Defendant's Motions *in Limine* pgs. 3-4 for its earlier ruling with respect to evidence pertaining to Sajudin, McDougal, and Daniels. The Court grants the People's motion with respect to the introduction of evidence surrounding the Trump Tower Meeting. The theory proffered by the People for its introduction satisfies several *Molineux* exceptions. The evidence of this meeting, and the substance of the discussions held by Defendant, Pecker, and Cohen as represented by the People, is inextricably interwoven with the narrative of events, that is, the steps that eventually led to the purchasing of information from, among others, Daniels. The highly probative value of this evidence is not outweighed by any potential undue prejudice to the Defendant. As such, the evidence the People seek to introduce regarding this meeting is admissible provided a proper foundation is laid and it meets evidentiary standards. Turning to the aspect of the Trump Tower meeting that involves the allegations that AMI sought to publish flattering stories about Defendant while seeking to publish denigrating stories about his opponents, the Court reserves decision on this specific issue. The People will be required to make an offer of proof as to what this information is, why it is admissible as *Molineux* evidence and how its probative value outweighs its prejudicial effect.

In Footnote 15 on page 41 of their motions, the People also seek to introduce evidence regarding the $50,000 expense claim "related to Cohen's payments to a tech firm, RedFinch Solutions, to rig an online poll ranking business leaders in defendant's favor." People's Memo at pg. 41. The Court agrees that information regarding the $50,000 must come in as it relates directly to Cohen's reimbursement and thus goes to the alleged falsification of business records. That aspect of the information is highly probative. It also helps complete the narrative and explain the total amount of the payment. However, it is not necessary to elicit that RedFinch was hired to "rig an online poll." The Court finds that information is unnecessarily prejudicial. Again, evidence that there was a $50,000 payment to RedFinch related to polling and the election is admissible. Evidence that RedFinch was retained to engage in the business of "rigging" online polls is not necessary and may not be introduced.

**Point Two.**

The People seek to introduce evidence regarding the (a) Access Hollywood Tape; and (b) public allegations of sexual assault that followed the release of the Access Hollywood Tape in the fall of 2016. People's Motion at pg. 36.

When ruling on a *Molineux* motion, the trial court may either "admit or exclude [the evidence] in total or admit it without the prejudicial parts when that can be done without distortion of its

11

meaning." Jerome Prince, Richardson on Evidence §4-502 [Farrell 11th ed 1995] citing to *People v. Matthews*, 68 NY2d 118, 122 [1986]. Here, the Court finds that the tape is relevant to the critical issues in this case. The Court agrees that it falls under several *Molineux* exceptions. For example, the People argue that the "evidence at trial will show that after the release of the Access Hollywood Tape one month before the presidential election, Defendant and his campaign staff were deeply concerned that the tape would harm his viability as a candidate and reduce his standing with female voters in particular." People's Memo at pg. 46. Thus, the tape helps establish Defendant's intent and motive for making the payment to Daniels and then, attempting to conceal them. However, the Court agrees with Defendant that a compromise should be struck to avoid undue prejudice to the Defendant. Defendant's Opposition pg. 26. This Court rules that the proper balance lies in allowing the People to elicit testimony about a videotaped interview which surfaced on October 7, 2016, that contained comments of a sexual nature which Defendant feared could hurt his presidential aspirations. However, it is not necessary that the tape itself be introduced into evidence or that it be played for the jury. The Court may reconsider this aspect of the ruling should the Defense open the door.

Finally, the Court reserves decision regarding the admissibility of evidence related to the allegations of sexual assault levied against the Defendant following the release of the Access Hollywood Tape. The People will be required to make a further offer of proof. The Court will then be in a better position to properly analyze the proposed evidence pursuant to *Molineaux / Ventimiglia*.

### Point Three[2].

The People seek to introduce, as consciousness of guilt, evidence that Defendant attempted to dissuade witnesses from cooperating with law enforcement. People's Motion at 36. Specifically, the People seek to introduce (1) "evidence of the pressure campaign the Defendant engaged in to ensure Cohen did not cooperate with federal investigators during their investigation into campaign finance violations," (2) "harassing comments on social media and in other public statements" made about Cohen and Daniels, (3) Defendant's April 2023 lawsuit against Cohen, and (4) past comments made by Defendant "endorsing aggressive attacks on one's perceived opponents." People's Memo at pg. 50.

---

[2] The Court is in receipt of Defendant's motion, filed March 7, 2024, that is relevant to this section of the People's motions *in limine*. Specifically, Defendant argues that the statements the People seek to introduce in this section should be precluded because they constitute "official acts" by the Defendant and are thus subject to Presidential Immunity. The Court is also in receipt of the People's response to Defendant's March 7, 2024, motion. The Court will issue a separate ruling on Defendant's claim of presidential immunity. This section of the Court's Decision on the motion in limine will be revised, if necessary.

The Defendant argues that the People have not created a sufficient record to support the ruling they seek and that they need to "pre-clear" this evidence with the Court before presenting arguments or testimony to the jury on these issues.

Decision on the People's first and second requests regarding the alleged pressure campaign against witnesses as well as the alleged harassing comments made on social media towards Cohen and Daniels is reserved pending a further offer of proof by the People. Though this Court agrees that conduct such as attempting to threaten witnesses, imploring them to testify falsely, and offering money to change their testimony could certainly be probative of consciousness of guilt (*People v. DeVivo*, 282 AD2d 770 [3d Dept 2001]), this Court needs to review the proposed evidence before ruling on its admissibility.

Likewise, the Court reserves judgment as to the People's third and fourth requests regarding the civil lawsuit Defendant filed against Cohen in April 2023, as well as past comments Defendant made allegedly endorsing aggression and attacks upon his opponents. With respect to the latter, the Court requires further information about what was actually said or written, as well as when and where it was written.

The foregoing constitutes the Decision and Order of this Court.

March 18, 2024
New York, New York

**MAR 1 8 2024**

_____
Juan M. Merchan
Acting Justice of the Supreme Court
Judge of the Court of Claims

**HON. J. MERCHAN**

13