# EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

THE PEOPLE OF THE STATE OF NEW YORK

-against-

DONALD J. TRUMP,

                Defendant.

Ind. No. 71543-23

**PEOPLE'S RESPONSE TO
DEFENDANT'S REQUESTS TO CHARGE**

Alvin L. Bragg, Jr.
District Attorney
New York County
One Hogan Place
New York, NY 10013

## INTRODUCTION

Point I of this response follows the structure of the People's proposed charges, noting as relevant the objections or alternative charges lodged by defendant. Point II of this response addresses the remaining portions of defendant's proposed charges.

## POINT I

### THE PEOPLE'S RESPONSES TO DEFENDANT'S OBJECTIONS TO THE PEOPLE'S PROPOSED CHARGES

#### Falsifying Business Records in the First Degree
#### (Responding to Def.'s Charge Points X and XI n.20)

Defendant largely agrees with the People's proposed language for charging the jury on Falsifying Business Records in the First Degree, with the following exceptions:

*1.* The People do not oppose defendant's proposal of additional prefatory language preceding the charge (i.e., the language prior to "Under our law"), which is consistent with the Court's standard approach. *Compare* People's Charge 1, *with* Def.'s Charge 16. By a separate email on May 15, 2024, the People have proposed a streamlined set of instructions for the subsequent 33 counts.

*2.* In defining "business record," the People have proposed defining the term "eleemosynary," People's Charge 1, because it is an uncommon word that the jury may not understand.

*3.* Defendant objects to the People's proposed definition for "caus[ing] a false entry," People's Charge 1, as being an incomplete "instruction regarding accessorial liability," Def.'s Charge 18 n.20. Defendant's objection is misplaced. The definition here does not concern "accessorial liability," but rather relates to one of the elements of the crime of Falsifying Business Records in the First Degree: namely, whether defendant has "cause[d] a false entry in the business records of an enterprise." Penal Law § 175.05(1). For that purpose, the People's proposed

1

definition draws directly from appellate authority interpreting the statute. For example, the Fourth Department affirmed the conviction of a defendant under Penal Law § 175.10 for causing false information to be entered on a workers' compensation form filled in by a third-party administrator. Although the defendant "did not file the form himself, and there is no evidence that he asked anyone to file it on his behalf," the Fourth Department nonetheless concluded that the "defendant caused the false filing" because "it was reasonably foreseeable that a workers' compensation form would be filed on defendant's behalf as a result of his [false] claim that he had been injured during the course of his employment." *People v. Barto*, 144 A.D.3d 1641, 1643 (4th Dep't 2016). Other appellate decisions accord with the Fourth Department's holding. *See, e.g.*, *People v. Park*, 163 A.D.3d 1060, 1643 (3d Dep't 2018) (evidence before the grand jury established a prima face case of falsifying business records in the first degree, even where defendant did not compile the relevant documents himself, where "defendant played a role in providing payroll information . . . or, at the very least, knew that the information contained within the relevant forms was not accurate"); *People v. Myles*, 58 A.D.3d 889, 892 (3d Dep't 2009) (affirming verdict convicting defendant of falsifying business records where he caused a false entry in the business records of a power company by applying jumper cables to a meter box, which caused the meter to record less electricity than actually consumed). The People's proposed definition is consistent with this controlling authority.

## Intent to Defraud
### (Responding to Def.'s Charge Points I.B and X n.19)

Defendant objects to the People's proposed instruction on intent to defraud on both legal and factual grounds. Def.'s Charge 2, 17 n.19. This Court should reject defendant's arguments and adopt the People's proposal.

*1.* As a legal matter, defendant concedes that this Court has already rejected his argument that intent to defraud under Penal Law § 175.10 is "limited to intentions to cheat or deprive another person of property, a thing of value, or right." Def.'s Charge 17 n.19. As this Court correctly recognized, "controlling authority" drawn from a "long line of cases not only within the First Department but in other departments as well" has squarely held that intent to defraud "is not limited to the causing of financial harm or the deprivation of money or property." Omnibus Dec. 19. This Court has also already rejected defendant's argument that intent to defraud cannot encompass an intent to defraud the voting public, expressly finding that the People's charges could be supported by defendant's "intent to defraud either the voting public, the government, or both." *Id.* The People's proposed language draws directly from this Court's legal rulings.

Defendant nonetheless opposes the proposed language on the ground that his attorneys "have not raised that issue with the jury"—i.e., the issue of whether intent to defraud can be understood the way that this Court has interpreted it—"and do not plan to do so," and that it is improper to instruct the jury on this Court's legal interpretation unless the defense first "open[s] the door." Def.'s Charge 2. Although the import of this argument is unclear, defendant appears to misapprehend the nature of the People's burden. "It is well settled that all the elements of an indicted crime which are not conceded by defendant or defendant's counsel must be charged." *People v. Flynn*, 79 N.Y.2d 879, 881 (1992). Because defendant has not conceded his intent to defraud here, this Court must instruct the jury on this element. Moreover, this Court is obligated not only to explain general legal principles, but also to "state the material legal principles applicable to the particular case" and to "explain the application of the law to the facts." CPL § 300.10(2). The People's proposed language appropriately reflects the legal definition of "intent to defraud" as applicable to the testimony presented in this prosecution.

Defendant separately suggests that the People's proposed language "could risk merging the 'intent to defraud' requirement with the separate requirement concerning Election Law § 17-152 as a predicate." Def.'s Charge 2. There is no risk of such confusion here. The People's proposal appropriately defines intent to defraud as an element of Falsifying Business Records in the First Degree and separately defines Election Law § 17-152 as "the other crime the defendant intended to commit, aid, or conceal." People's Charge 3. Far from being "merg[ed]," these separate definitions are attached to separate elements of the charged crimes. Moreover, because intent to defraud is not an element of Election Law § 17-152, there is no likelihood that the jury will be confused about what language is applicable to which definition.

*2.* As a factual matter, defendant makes the conclusory claim that there has been insufficient evidence to "suggest[] to the jury that allegedly false records created in 2017 on the private books of the Trump Organization were intended to defraud 'the government' or 'the voting public.'" Def.'s Charge 17 n.19. This Court already rejected a similar argument as to the legal sufficiency of the evidence before the grand jury of intent to defraud. Omnibus Dec. 19. As this Court is aware, the evidence before the petit jury has not only confirmed but exceeded the already-sufficient evidence before the grand jury. There is thus no basis to withhold this instruction for asserted evidentiary insufficiency.

### Count-Specific Instructions
### (Responding to Def.'s Charge Point XII)

Defendant largely agrees with the People's proposed language for the specific counts, *compare* People's Charge 3, *with* Def.'s Charge 20, except that defendant proposes instructing the jury that the People must establish "two separate intents: the intent to defraud and indent [sic] to aid or conceal the commission of another crime." Def.'s Charge 20.

4

The People oppose this additional language. The language of the statute already makes clear the "enhanced intent requirement" of Penal Law § 175.10. *People v. Taveras*, 12 N.Y.3d 21, 27 (2009). Defendant's proposal to drive an even greater wedge between "intent to defraud" and "intent to commit another crime or to aid or conceal the commission thereof" does not appear in the CJI. And defendant's proposed language is misleading in suggesting that the People must establish *different* intents. The statutory language instead provides only that a defendant's intent to defraud must "*include*[] an intent to commit another crime or to aid or conceal the commission thereof," Penal Law § 175.10 (emphasis added), which would plainly allow the jury to infer both intent to defraud and (for example) intent to conceal another crime from the same set of facts. This Court should accordingly instruct the jury in a manner consistent with the CJI and the statutory language.

## Election Law § 17-152 Predicate
### (Responding to Def.'s Charge Points I.A, XIII, XIV.C n.42)

The People oppose several aspects of defendant's proposed language on Election Law § 17-152.

### <u>Change in Theories</u>

As an initial matter, defendant argues that the People have made a "prejudicial change in their theory of this prosecution." Def.'s Charge 1. Defendant does not appear to propose any language related to this complaint, but the People nonetheless respond to correct any misimpression caused by defendant's flawed argument.

Defendant's basic complaint appears to be that the People initially proposed four theories for the "crimes" that were potential predicates under Penal Law § 175.10 but have now limited themselves to just one: a violation of Election Law § 17-152. Def.'s Charge 1-2. Such a change is in no way prejudicial. A defendant's entitlement to notice of the charges against him bars the

prosecution from presenting one theory of the case in the indictment or bill of particulars and then pivoting to an entirely inconsistent theory at trial. *See, e.g.*, *People v. Grega*, 72 N.Y.2d 489, 497 (1988) (reversing when "presentation of proof at trial . . . contradicted the factual allegations of the manslaughter count of the indictment as to the cause of death"). But defendant does not and cannot argue that the People have made any such pivot. To the contrary, the People have identified Election Law § 17-152 as a potential predicate for the Penal Law § 175.10 charges since the earliest stages of this case. *See, e.g.*, People's Response to Def.'s Request for a Bill of Particulars 5 (May 12, 2023). And the People have likewise long identified FECA, tax violations, and falsifications of business records as potential "unlawful means" for the Election Law § 17-152 conspiracy. *See, e.g.*, People's Opp. to Omnibus Mot. 25 (Nov. 9, 2023).

When, as here, the People have not altered but merely "restrict[ed] their theory of the crime"—such as by "specifying the crime the defendant intended to commit" in a burglary prosecution—the sole remedy is that "the trial court must appropriately tailor the [jury] charge to the theory the People have presented." *People v. Seignious*, 2024 WL 714455, at *3 (N.Y. Feb. 22, 2024). The People's proposed language appropriately reflects the theory of the crime that they have presented at trial.

### **Conspiracy**

*1.* Defendant's proposed language on "knowledge of a conspiracy" (Def.'s Charge 21-22) incorrectly requires that the People prove willfulness. The premise of defendant's argument is that "one form of 'unlawful means' involved violations of FECA [the Federal Election Campaign Act]," and that violations of FECA "require[] evidence of willfulness." Def.'s Charge 22. Defendant's premise is wrong. Although willfulness is required to support certain enhanced penalties under the statute (including criminal sanctions), it is not a necessary element for a

contribution or expenditure to be a violation of FECA's requirements. *Compare, e.g.*, 52 U.S.C. § 30109(a)(5)(A) (authorizing a civil penalty of up to $5,000 for "a violation of this Act"), *with id.* § 30109(a)(5)(B)-(C) (authorizing higher civil penalties or criminal referrals for "a knowing and willful violation of this Act").

Accordingly, the People propose the following language in place of defendant's proposal:

> Knowledge of a conspiracy does not by itself make the defendant a coconspirator. The defendant must intend that conduct be performed that would promote or prevent the election of a person to public office by unlawful means. Intent means conscious objective or purpose. Thus, a person acts with the intent that conduct be performed that would promote or prevent the election of a person to public office by unlawful means when his or her conscious objective or purpose is that such conduct be performed.[1]

*2.* The People oppose defendant's proposed language about the import of mere presence for a conspiracy. Def.'s Charge 22. As a footnote in the CJI makes clear, that language implements the Court of Appeals' holding in *People v. Reyes* that it is legally insufficient to infer that a defendant entered into a conspiratorial "agreement based on [his] sheer presence at a meeting at which a conspiracy is discussed." 31 N.Y.3d 930, 931 (2018).

For two reasons, that holding is immaterial here, and defendant's proposed language is thus unwarranted. First, for purposes of the charges of Falsifying Business Records in the First Degree, it is irrelevant whether defendant himself participated in any conspiracy under the Election Law. Omnibus Dec. 7-8. Instead, all that is necessary is that he intend to commit, aid, or conceal such an Election Law conspiracy, even if the conspiracy is entered into and executed by others. *Id.*

Second, and in any event, the People's case does not rely on defendant's (or anybody else's) mere "passive act of 'being present,'" *Reyes*, 31 N.Y.3d at 931, as proof that "two or more

---

[1] CJI 2d [NY] Penal Law § 105.00, "Conspiracy to Commit a Crime."

persons . . . conspire[d] to promote or prevent the election of any person to a public office by unlawful means," Election Law § 17-152. Instead, as the trial evidence has shown, multiple participants expressly discussed, entered into, and carried out such a conspiracy. Defendant's proposed language about the import of mere presence is thus unnecessary.

*3.* The People oppose defendant's proposed language on separate or independent conspiracies. Def.'s Charge 22. Such language is necessary only when a defendant is actually charged with a conspiracy and the jury must decide whether the defendant is guilty of "the single integrated conspiracy alleged in the indictment" or whether there are instead multiple conspiracies, some of which might not involve the defendant. *People v. Leisner*, 73 N.Y.2d 140, 151 (1989); *see also United States v. Cambindo Valencia*, 609 F.2d 603, 625 (2d Cir. 1979) (citing risk of prejudicial "spillover" as reason for the charge).

Here, defendant has not been charged with conspiracy. And although a conspiracy under Election Law § 17-152 is the crime that the People allege he intended to commit, aid, or conceal for purposes of the charges under Penal Law § 175.10, it is irrelevant for that purpose whether there was a single conspiracy or multiple conspiracies: so long as there were *any* conspiracies, then defendant's intent to commit, aid, or conceal them would support the charges of Falsifying Business Records in the First Degree. Moreover, because it is not even relevant whether defendant himself participated in the conspiracies that he intended to commit, aid, or conceal, *see* Omnibus Dec. 7-8, it is unnecessary for the jury to determine whether he was involved in a single conspiracy or multiple conspiracies. Defendant's proposed language is thus unnecessary given the nature of the actual, non-conspiracy criminal charges here, and would serve no purpose other than to confuse and mislead the jury.

**Unlawful Means**

*1.* Defendant is wrong to assert that the jury "must reach a unanimous decision regarding whether the People have established 'unlawful means' and, if so, which 'unlawful means' was or were at issue." Def.'s Charge 23. First, the statute does not require the jury to identify any specified or particular unlawful means. *See People v. Mackey*, 49 N.Y.2d 274, 279 (1980). Second, under New York law, it is well-established that the jury need not be unanimous about alternative means of accomplishing a single offense. *See People v. Mateo*, 2 N.Y.3d 383, 407 (2004); *see also People v. Watson*, 284 A.D.2d 212, 213 (1st Dep't 2001) ("A conviction of larceny, whether by false promise or false pretense, constitutes only one offense. Thus, juror unanimity is not required as to the particular method by which the larceny was committed."). Thus, the jury need not agree on which unlawful means were employed, so long as it unanimously concludes that that the defendant conspired to promote or prevent the election of any person to a public office by unlawful means. People's Charge 4.

Defendant misplaces his reliance on federal case law about the need for a jury to find facts used to increase a defendant's authorized criminal sentence. Def.'s Charge 23 n.29. Those cases have no relevance whatsoever to the distinct rule recognized in *Mateo* and the federal cases cited therein. *See Spears v. Mullin*, 343 F.3d 1215, 1236 (10th Cir. 2003) (characterizing identical argument as "wishful thinking"), *limited on unrelated grounds*, *Coddington v. Sharp*, 959 F.3d 947, 954 n.‡ (10th Cir. 2020) (disagreeing with *Spears*'s assessment of harmless-error review under federal habeas law).

*2.* Defendant further argues that "[t]he term 'unlawful,' as used in Election Law § 17-152, is limited to criminal offenses." Def.'s Charge 28 n.42. There is no support for this argument. As defendant's own sources make clear, the term "unlawful" merely means "not authorized by law,"

Black's Law Dictionary (11th ed. 2019); it is thus by its terms not limited to criminal prohibitions. Courts have interpreted similarly unrestricted language in comparable statutes as extending to non-criminal prohibitions. *See, e.g.*, *People by Schneiderman v. Ivybrooke Equity Enterprises, LLC*, 175 A.D.3d 1000, 1001 (2019) (interpreting Executive Law § 63(12)'s reference to "illegal acts" to include violations of a local ordinance prohibiting housing discrimination). And when the Legislature intended to refer to a crime, it "knew how to do so," *People v. Williams*, 66 N.Y.2d 659, 660 (1985)—such as in requiring that a conviction under Penal Law § 175.10 include proof that a defendant had an "intent to commit another crime." The "deliberate omission" of the word "crime" from Election Law § 17-152 thus precludes any argument that the Legislature limited that statute to criminal offenses. *Sarbin v. Sw. Media Corp.*, 179 A.D.2d 567, 567 (1st Dep't 1992).

### The Federal Election Campaign Act
### (Responding to Def.'s Charge Points I.C and XIV)

The Court should adopt the People's proposed language regarding FECA. Defendant's proposed language suffers from multiple defects that the People have already largely addressed in their February 29, 2024 opposition to defendant's motions in limine. People's Opp. to Def.'s Mots. in Limine ("People's MIL Opp.") 11-17. The People highlight several of those points here.

### <u>Contribution</u>

*1.* FECA regulates certain contributions and expenditures that are made "for the purpose of influencing any election for federal office." 52 U.S.C. §§ 30101(8)(A)(i), (9)(A)(i), 30118(b)(2). Defendant argues that for such a transaction to be regulable "requires proof that the activity clearly and unambiguously related to" a campaign. Def.'s Charge 25. Defendant further proposes additional language stating that a third-party expenditure of a candidate's personal expenses is not a contribution if the payment would have been made "irrespective of the candidacy." *Id.*

10

Together, this proposed language confuses the applicable federal law by proliferating multiple standards out of what is fundamentally a single inquiry. For purposes of a third party's payment of a candidate's expenses, the FEC has *defined* such a payment to be a "contribution"—and thus necessarily made "for the purpose of influencing any election for Federal office," 11 C.F.R. § 100.52(a)—if it was not "made irrespective of the candidacy," *id.* § 113.1(g)(7). In other words, such a third-party payment is deemed to be made for the purpose of influencing a federal election so long as it does not meet the "irrespective of the candidacy" test—that is, so long as the payment would not have been made but for the candidate's status as a candidate for federal office.

Defendant accuses the People of "conflat[ing]" distinct requirements, Def.'s Charge 2, but it is defendant who fails to appreciate that there is effectively a single standard here, not several standards. That connection is established by the plain language of the applicable regulation, which expressly states that a third party's payment of a candidate's expenses "*shall be a contribution . . . to the candidate unless the payment would have been made irrespective of the candidacy.*" 11 C.F.R. § 113.1(g)(7) (emphasis added). The "shall be a contribution" language means that such a third-party payment is, by operation of law, a FECA-regulated "contribution" as that term is defined in 52 U.S.C. § 30101(8)(A)(i). Defendant is thus incorrect to claim that the "irrespective of the candidacy" rule "is a *distinct* limitation on the meaning of the term 'contribution.'" Def.'s Charge 3 (emphasis added). Instead, by the plain terms of the regulation, the "irrespective of the candidacy" test is the *definition* of a "contribution" for purposes of evaluating a third party's payment of a candidate's personal expenses. In other words: a third party's payment of a candidate's personal expenses is a "contribution" under the law if the third party would not have made the payment but for the candidacy.

Defendant is thus wrong to propose any alternative language for determining whether such an expenditure is a contribution regulated under FECA. In particular, defendant is wrong to argue that such third-party payments must be "related to the campaign of a particular candidate." Def.'s Charge 3. The FEC has expressly concluded otherwise: for example, the FEC has deemed a third-party payment to be a contribution when the donor would not have made it "but for the recipient's status as a Federal candidate," even when the payment would have been "used solely for the candidate's personal expenses" and *not* "to defray campaign expenses." Fed. Election Comm'n, Advisory Op. 2000-08 (Harvey) at 2-3.[2]

*2.* The FEC Advisory Opinion just quoted is the basis for the People's proposed instruction that "a third party's payment of a candidate's expenses will be deemed a contribution when the payment would not have been made but for the candidate's status as a candidate for federal office, even when the payment is used solely for the candidate's personal expenses." People's Charge 5. Defendant claims that the Advisory Opinion does not support such an instruction because the FEC acknowledged there that the proposed donor was making the payment "in recognition and support of [the candidate's] desire to run for office." Def.'s Charge 3.

This argument confuses a particular fact about that case with the general legal principle that the FEC was applying. It is true that the donor in that case stated that the payment was being made to support a candidate's run for office. But the conclusion that the FEC drew from that statement was "that the proposed gift would not be made but for the recipient's status as a Federal candidate; it is, therefore, linked to the Federal election." Fed. Election Comm'n, Advisory Op. 2000-08 (Harvey) at 3. In other words, the "but for" test—which is merely another formulation of

---

[2] *Available at* https://saos.fec.gov/aodocs/2000-08.pdf.

12

the "irrespective of the candidacy" test—was the underlying legal standard that the donor's specific facts satisfied.

The FEC reached a similar conclusion in determining that a mortgage loan made to then-Senator Hillary Clinton for a personal family home was not a contribution to her campaign. *See Matter of Hillary Rodham Clinton*, Fed. Election Comm'n MUR 4944, at 1-2 (Aug. 28, 2001).[3] The FEC found that the bank would still have made the loan "had Senator Clinton not been a candidate." *Id.* at 4. Because "Senator Clinton's candidacy was immaterial" to the bank's decision to extend the loan, the making of the loan was done "irrespective of the candidacy." *Id.* at 3.

The People's proposed language accurately reflects this underlying legal standard.

*3.* Defendant claims that the "irrespective of the candidacy" test precludes any consideration of subjective motivations, Def.'s Charge 3, but he is wrong. In fact, the FEC has expressly acknowledged the relevance of evidence of subjective intent: as a leading FEC determination explains, whether a third-party payment of a candidate's expenses "is a gift or an excessive contribution turns on the intent" of the third party making the payment, and individuals' assertions about their state of mind in making the payment constitute "direct evidence of their intent." *Matter of Senator John Ensign et al.*, Fed. Election Comm'n MUR 6200 (Nov. 17, 2010).[4] Other FEC rulings likewise refer repeatedly to the intent of the donor or donee. *See Matter of Mike Lee et al.*, Fed. Election Comm'n MUR 7025, at 8-9, 12 (Mar. 23, 2016) (considering third parties' subjective intent behind payments of candidate's expenses in evaluating whether those payments would have been made "irrespective of the candidacy");[5] *Matter of Hillary Rodham Clinton*, Fed.

---

[3] *Available at* https://www.fec.gov/files/legal/murs/4944/0000012A.pdf.

[4] *Available at* https://www.fec.gov/files/legal/murs/6200/SORMUR6200.pdf.

[5] *Available at* https://www.fec.gov/files/legal/murs/7025/16044392460.pdf.

Election Comm'n MUR 4944, at 3-4 (Aug. 28, 2001) (considering "the bank's perspective" in deciding to make a loan and "the Clintons' perspective" in purchasing a house).[6] Thus, contrary to defendant's claim, the third-party payor's intent is directly relevant in evaluating whether he paid a candidate's expenses "irrespective of the candidacy" and thus made a contribution.

Defendant's citation to *Orloski v Fed. Election Comm'n*, 795 F.2d 156 (D.C. Cir. 1986), does not support his argument. That case did not involve FECA provisions addressing third-party payments of candidates' expenses, but rather an entirely separate FEC test "for distinguishing between political and non-political congressional events." *Id.* at 160. For that purpose, the FEC had adopted "an objective, bright-line test" to accommodate certain "[a]dministrative exigencies," and the D.C. Circuit found that approach reasonable under the circumstances. *Id.* at 165. The FEC's approach to a completely different problem has no bearing on the distinct campaign-finance issue here, or on a distinct regulation, 11 C.F.R. § 113.1(g)(7), that does take subjective intent into consideration. Moreover, even *Orloski* did not categorically preclude consideration of subjective intent: to the contrary, as the D.C. Circuit recognized, "the FEC's objective test is used to infer the probable intent of both the donor and the donee"; in this way, "the test adopted in this case does not ignore the state of mind of the donor." *Id.* at 162.

### Press Exemption

Under FECA, the term "expenditure" does not include "any news story, commentary, or editorial distributed through the facilities of any broadcasting station, newspaper, magazine, or other periodical publication." 52 U.S.C. § 30101(9)(B)(i); *see also* 11 C.F.R. § 100.73. Because defendant plainly intends to raise the press exemption as a defense, the People do not oppose some

---

[6] *Available at* https://www.fec.gov/files/legal/murs/4944/0000012A.pdf.

instruction on this legal concept. Defendant's proposed language, however, is inaccurate and incomplete.

For one thing, the "normal press functions" standard is not an *alternative* test, as defendant suggests by using the word "or." Def.'s Charge 27. Rather, it is an *additional* criterion that must be satisfied before an ostensible media outlet can claim the press exemption. *See Reader's Digest Ass'n, Inc. v. Fed. Election Comm'n*, 509 F. Supp. 1210, 1214 (S.D.N.Y. 1981).

In addition, defendant's proposed language fails to provide any of the criteria considered by the FEC in determining whether the press exemption applies. Of particular relevance here are the criteria considered by the FEC in determining that AMI and David Pecker had "knowingly and willfully violated" FECA by making the Karen McDougal payment. In making that determination, the FEC found that "[t]he press exemption does not apply to the payment at issue" based on AMI's "admissions disclaiming a journalistic or editorial purpose and admitting that it made or facilitated the payment to McDougal for the express purpose of assisting the Trump Committee." Factual & Legal Analysis 2, 10, *In re A360 Media, LLC f/k/a American Media, Inc., & David J. Pecker*, Federal Election Comm'n Matter Under Review 7324, 7332, & 7366 (Apr. 13, 2021).[7]

Accordingly, the People propose the following alternative instruction:

> FECA's definitions of "contribution" and "expenditure" do not include any cost incurred in covering or carrying a news story, commentary, or editorial by a magazine, periodical publication, or similar press entity, so long as such activity is a normal, legitimate press function.[8] To determine whether an expenditure is a normal, legitimate press function, you may consider (a) whether the magazine or periodical publication made the expenditure for the principal purpose of assisting a campaign, rather than for a journalistic or editorial purpose; (b) whether the expenditure significantly exceeds any value the publication expected to receive in return; (c) whether the expenditure is inconsistent with the treatment of comparable situations by

---

[7] *Available at* https://www.fec.gov/files/legal/murs/7324/7324_22.pdf.

[8] 11 C.F.R. § 100.73; *Fed. Election Comm'n v. Phillips Pub., Inc.*, 517 F. Supp. 1308, 1313 (D.D.C. 1981).

press entities; and (d) whether the expenditure is not made in the same manner as the publication's general activities as a press entity.[9]

## **Willfully**

For reasons already explained, defendant is wrong to propose instructing the jury that a contribution violates FECA only if it is done "willfully." Def.'s Charge 28.

### **Violation of Tax Laws**
### **(Responding to Def.'s Charge Point I.D)**

*1.* Defendant's argument that there is insufficient evidence to identify violations of tax laws as an "unlawful means" of the Election Law conspiracy is incorrect. Defendant ignores the extensive evidence of the "grossing-up" scheme that Jeff McConney discussed with Allen Weisselberg, along with the documents that memorialize that gross-up. Tr. 2298-2306; People's 35 & 36. The evidence is also legally sufficient to show that the Trump Organization then falsely reported that grossed-up reimbursement figure on two 1099 Forms that the Trump Organization issued to Cohen and sent to the IRS as well. *See* Tr. 2362-65; People's 93. That the fraudulent gross-up happened after the election is immaterial; a rational juror could conclude that an essential part of the conspiracy to promote defendant's election by unlawful means was maintaining its secrecy by concealing the actual purpose of these payments, which necessarily extended to the decision in 2017 to disguise the reimbursement to Cohen as income.

*2.* Defendant is also incorrect in asserting that the People "limited the tax crimes at issue in this case" to state tax law violations. The People identified New York Tax Law §§ 1801(a)(3)

---

[9] These factors are drawn from the factors considered by both the FEC and the U.S. Attorney's Office for the Southern District of New York in evaluating AMI's role in the McDougal transaction. *See* Factual & Legal Analysis, *supra*, at 10; First General Counsel Report, Federal Election Comm'n Matter Under Review 7324, 7332, & 7366, at 37-39, at https://www.fec.gov/files/legal/murs/7324/7324_19.pdf; People's 182 at ¶ 5 (AMI Non-Prosecution Agreement).

and 1802 in the bill of particulars response "expressly without limiting the People's theory at trial." *See, e.g.*, People's Response to Def.'s Request for a Bill of Particulars 5 (citing *People v. Barnes*, 50 N.Y.2d 375, 379 n.3 (1980)). And the People's opposition to defendant's omnibus motions expressly argued that the "unlawful means" included "mischaracterizing the nature of the repayment for tax purposes," Omnibus Opp. 25; and the People further argued that such mischaracterization "has criminal consequences under state and local tax laws, as well as federal law." *Id.* at 38-38. There is nothing new about the People's reliance on city, state, and federal tax law violations.

## POINT II

### THE PEOPLE'S RESPONSES TO
### DEFENDANT'S ADDITIONAL PROPOSALS

#### Limiting Instruction Regarding Defendant
#### (Responding to Def.'s Charge Point II)

The People do not believe it is necessary for this Court to provide additional language instructing the jurors to "set aside any bias or prejudice" regarding defendant. Def.'s Charge 5. The Court's preliminary instructions already directed the jury that the verdict may not "be influenced in any way by bias, prejudice, [or] sympathy." Tr. 840. This Court's final instructions will presumably also direct the jurors to be "fair and impartial" and to avoid any influence from "bias, prejudice, [or] sympathy." CJI 2d [NY] Final Jury Instructions.

To the extent the Court nonetheless believes a more specific limiting instruction regarding this defendant should be given, the People propose the following, more neutral alternative to defendant's proposal:

> Jurors, you will recall that during jury selection you agreed that you would set aside any personal opinions or bias you might have in favor of or against the defendant, and that you would decide this case fairly on the evidence and the law. Again, I direct you to decide this case on the evidence and the law as it relates to the defendant here on trial. You must set aside any

personal opinions or bias you might have in favor of or against the defendant, and you must not allow any such opinions to influence your verdict.

**Limiting Instruction Regarding**
**Non-Disclosure Agreements and "Hush Money"**
**(Responding to Def.'s Charge Point III)**

The People oppose this proposed language, which is not a legal instruction at all but instead an argument that defense counsel is free to make during summation.

**Hearsay: Evidence Not Offered for the Truth**
**(Responding to Def.'s Charge Point IV)**

The People oppose this proposed language as unnecessary. The Court included a hearsay instruction in its preliminary instructions to the jury, Tr. 845-46, and has given limiting instructions when appropriate as evidence has been admitted.

To the extent the Court is inclined to restate its limiting instructions, that restatement should include only an instruction as to exhibits or testimony that were in fact admitted for a limited purpose. Any restatement of a previously-provided limiting instruction should thus include only People's 152, 153-A, 153-B, 153-C, 161, 171A (as to Rodriguez's texts only), 180, and 181. (We do not believe People's 257 was admitted subject to a limiting instruction, but are not opposed to the Court including this exhibit within any limiting language in the jury charge, as to Cuomo's texts only.) But no limiting instruction is appropriate as to the testimony from Hope Hicks and Michael Cohen regarding reactions to the Access Hollywood Tape; that testimony was not subject to any limitation when elicited and should not be restricted to a limited purpose after the fact. *See* Tr. 2161-66, 3374-75.

**Hearsay: Agreements by AMI and Cohen**
**(Responding to Def.'s Charge Point V)**

The People oppose defendant's proposed language. Among other things, defendant's proposed language purports to instruct the jury on contested factual points—such as whether AMI

18

"admit[ted] to any violations of law" in the non-prosecution agreement with federal prosecutors and the conciliation agreement with the FEC. Def.'s Charge 9; *compare* Tr. 1243 (People: "That's how I read the agreement, is that they admitted to a campaign finance violation."), *with* Tr. 1444-1445 (defense cross-examination seeking to establish otherwise). Such points belong in summation, not in the jury charge.

The People propose instead that the Court repeat the limiting instructions that it previously provided to the jurors: for the AMI agreements at Tr. 1244-1245, and for Cohen's guilty plea at Tr. 3615-3616.

> AMI: You have heard testimony that while David Pecker was an executive at AMI, AMI entered into a Non-Prosecution Agreement with federal prosecutors, as well as a Conciliation Agreement with the Federal Election Commission. That evidence was permitted to assist you, the jury, in assessing David Pecker's credibility and to help provide context for some of those surrounding events. You may consider that testimony for those purposes only. Neither the Non-Prosecution Agreement, nor the Conciliation Agreement is evidence of the Defendant's guilt, and you may not consider them in determining whether the Defendant is guilty or not guilty of the charged crimes.

> Cohen: You have heard testimony that Michael Cohen pleaded guilty to violating the Federal Election Campaign Act, otherwise known as FECA. That evidence was permitted to assist you, the jury, in assessing Mr. Cohen's credibility as a witness and to help provide context for some of the events that followed. You may consider that testimony for those purposes only. Mr. Cohen's plea is not evidence of the defendant's guilt, and you may not consider it in determining whether the defendant is guilty or not guilty of the charged crimes.

### Credibility of Witnesses
### (Responding to Def.'s Charge Point VI)

The People oppose this proposed language because there has not been any testimony "that a judge found that Cohen testified falsely in an unrelated proceeding." Def.'s Charge 11.

**Involvement of Counsel**
**(Responding to Def.'s Charge Point VII)**

The People oppose this language. This Court has already rejected defendant's request to present "the amorphous defense of 'presence of counsel.'" March 18 Order on People's Motions in Limine 9. Defendant refers to his subsequent April 15, 2024 pre-motion letter seeking to reargue this Court's March 18 ruling, Def.'s Charge 12 n.12, but for the reasons explained by the People in their April 19, 2024 letter response, defendant has identified no legal or other reason to support his persistent effort to interpose a "presence of counsel" defense here.

Defendant further claims that the trial testimony now provides "an adequate basis in the record for this instruction," Def.'s Charge 12 n.12, but he is wrong. As the People argued in their April 19, 2024 letter response and our February 22 Motions in Limine, what defendant would need to provide to even make a prima facie case for a "presence of counsel" defense is direct testimony from himself, subject to cross-examination, about his actual "state of mind" regarding the involvement of the lawyers in the underlying conduct. *United States v. Bankman-Fried*, No. 22-0673, 2024 WL 477043, *2 (S.D.N.Y. Feb. 7, 2024). Rather than such testimony, defendant instead points to Michael Cohen's testimony that he "conveyed to [defendant] the assurance from David Pecker that AMI's agreement with Karen McDougal was 'bulletproof.'" Def.'s Charge 12 n.12. But as Cohen then explained, in conveying this message to defendant, he understood "bulletproof" to mean that the story was "locked down"—i.e., that they had "prevented the story from being released on ABC News," Tr. 3323—not that the transaction was lawful as determined by fully advised counsel. Although defendant points out that Pecker may have used the term "bulletproof" to mean something else, it was Cohen, not Pecker, who spoke to defendant. Thus, on the critical question of *defendant's* state of mind, there has been no trial testimony that would support defendant's request for a legal instruction on the dubious defense of "presence of counsel."

And even if there were any evidence to show that defendant knew anything at all about legal advice to David Pecker, "a defendant cannot assert good faith or reasonable reliance based on a third-party's representation of advice the third party received through consultations with counsel to which the defendant did not have access." *Lek Securities Corp.*, No. 17-cv-1789, 2019 WL 5703944, *4 (S.D.N.Y. Nov. 5, 2019).

## Spoliation
### (Responding to Def.'s Charge Point VIII)

The People oppose defendant's proposed charge on spoliation. This instruction mischaracterizes the testimony from David Daus, which was that there was a factory reset on one of Michael Cohen's phones (Tr. 2062-63), followed by—as defendant fails to note—the restoration of an entire backup file (Tr. 2063-65).

## Accomplice and Accessorial Liability
### (Responding to Def.'s Charge Points IX and XI)

*1.* Defendant's proposed language regarding instructing the jury about Michael Cohen as an accomplice appears to be drawn directly from the CJI. Def.'s Charge 14-15. The People do not oppose this language.

*2.* Defendant's proposed language regarding accessorial liability is incomplete. Def.'s Charge 18. In addition to the language proposed by defendant, the Court should also instruct the jury on the following from the CJI:

> If it is proven beyond a reasonable doubt that the defendant is criminally liable for the conduct of another, the extent or degree of the defendant's participation in the crime does not matter. A defendant proven beyond a reasonable doubt to be criminally liable for the conduct of another in the commission of a crime is as guilty of the crime as if the defendant, personally, had committed every act constituting the crime.

> The People have the burden of proving beyond a reasonable doubt that the defendant acted with the state of mind required for the commission of the crime, and either personally, or by acting in concert with another person, committed each of the remaining elements of the crime.

Your verdict (on each count you consider), whether guilty or not guilty, must be unanimous.  In order to find the defendant guilty, however, you need not be unanimous on whether the defendant committed the crime personally, or by acting in concert with another, or both.


DATED:        May 17, 2024              Respectfully submitted,

                                        ALVIN L. BRAGG, JR.
                                        *District Attorney, New York County*

                                        By: */s/ Matthew Colangelo*
Steven C. Wu                            Matthew Colangelo
Alan Gadlin                             Christopher Conroy
   *Of Counsel*                         Katherine Ellis
                                        Susan Hoffinger
                                        Becky Mangold
                                        Joshua Steinglass
                                          *Assistant District Attorneys*
                                        New York County District Attorney's Office
                                        1 Hogan Place
                                        New York, NY 10013
                                        212-335-9000