# EXHIBIT O

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

---

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK <br><br> -against- <br><br> DONALD J. TRUMP, <br><br> Defendant. | PEOPLE'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EVIDENCE AND FOR AN ADJOURNMENT BASED ON PRESIDENTIAL IMMUNITY <br><br> Ind. No. 71543-23 |

## INTRODUCTION

On March 7, 2024, defendant filed a motion seeking two forms of relief: (1) preclusion of evidence of defendant's "official acts at trial based on presidential immunity"; and (2) "an adjournment of the trial pending review of the scope of the presidential immunity doctrine in *Trump v. United States*," which the Supreme Court has scheduled for argument on April 25, 2024. Notably, unlike in the pending Supreme Court case, defendant is not seeking dismissal of the criminal charges here on the basis of presidential immunity. *Compare United States v. Trump*, 91 F.4th 1173, 1180 (D.C. Cir. 2024) ("Former President Trump moved to dismiss the Indictment"), *with* Mot. 1-2, 24. Indeed, he has never asserted such a defense in this criminal proceeding, and he "expressly waived any argument premised on a theory of absolute presidential immunity" in his unsuccessful effort to remove this action to federal court. *New York v. Trump*, No. 23-3773, 2023 WL 4614689, at *8 (S.D.N.Y. July 19, 2023), *appeal dismissed sub nom. People v. Trump*, No. 23-1085, 2023 WL 9380793 (2d Cir. Nov. 15, 2023). Instead, defendant invokes presidential immunity here solely as a basis to preclude certain 2018 statements he made after the conduct charged in the indictment, and then relies on such preclusion to seek an adjournment of the trial.

This Court should deny the motion in its entirety. As a threshold matter, defendant's immunity argument is untimely, and can be rejected at this stage on that basis alone. Defendant

1

has provided no valid reason for waiting until a mere two-and-a-half weeks before trial to raise this immunity argument when he has long been aware of the defense of absolute presidential immunity and evidence of the 2018 "pressure campaign" was expressly discussed nearly one year ago both in the grand jury and in the statement of facts issued with the indictment in this case. Defendant's attempt to link this case to the pending Supreme Court appeal in *Trump v. United States* is particularly egregious when, even setting aside that the immunity issue there is dissimilar, the very existence of that appeal shows that defendant could have raised an immunity argument months before the current motion.

In any event, defendant's immunity argument is meritless. The 2018 statements on which defendant bases his immunity claim are not the subject of the criminal charges here. Even assuming that those statements constitute official conduct, there is no categorical bar to using evidence of immunized conduct in a trial involving non-immunized conduct, as several courts have recognized. Regardless, the 2018 statements do not constitute official acts. Multiple courts have now rejected defendant's sweeping claim that *every* statement he made as President is an official act enjoying absolute immunity. Here, all of the statements that are the subject of defendant's motion involved defendant speaking in his personal capacity regarding his personal affairs.

Because defendant's immunity argument is either untimely presented or meritless, this Court should deny his motion in its entirety, including his request to adjourn the forthcoming trial.

## ARGUMENT

**A.     The unexplained and belated nature of defendant's motion warrants denial or, alternatively, deferral on deciding defendant's evidentiary objection.**

The CPL makes clear that parties must abide by court-ordered deadlines for "all pre-trial motions." CPL 255.20(1). That requirement is critical "to avoid the proliferation experienced under prior procedure in which a defendant could bombard the courts and Judges with dilatory

2

tactics continuing right up to the eve of trial." *People v. Lawrence*, 64 N.Y.2d 200, 204-05 (1984). Unless a party identifies a valid reason for delay, filings beyond a court's deadlines "may be summarily denied." CPL 255.20(3).

Here, the Court may summarily deny defendant's belated request to preclude evidence because defendant has failed to identify any plausible excuse for waiting until two-and-a-half weeks before trial to file this motion. Months ago, this Court set a September 29, 2023, deadline for omnibus motions and a February 22, 2024, deadline for motions in limine. There is no justification whatsoever for defendant to disregard these deadlines and wait until a mere two-and-a-half weeks before jury selection to assert an argument about presidential immunity for the first time. Defendant was sufficiently aware of the issue of presidential immunity to waive it in the federal removal proceeding in this case on June 15, 2023, *see* Def.'s Mem. of Law Opp. Mot. for Remand 21, *People v. Trump*, No. 23- 03773, Dkt. No. 34 (June 15, 2023), and to raise it as a ground for dismissal in the D.C. prosecution on October 5, 2023, *see* Mot. to Dismiss Indictment Based on Presidential Immunity, *United States v. Trump*, No. 23-cr-00257, Dkt. No. 74 (D.D.C. Oct. 5, 2023). Moreover, the facts that defendant relies on now to support his current immunity arguments were also made available to him months ago. The indictment identified specific records from "the period in 2017 when President Trump was in office" (Mot. 1). And contrary to defendant's suggestion that the People's recent motions in limine identified for the first time the "'pressure campaign' by President Trump in 2018 relating to Michael Cohen" (Mot. 2), that pressure campaign was described in the People's statement of facts filed on April 4, 2023 (Statement of Facts ¶¶ 35-40); defendant's 2018 social-media statements were presented to the grand jury, as demonstrated in the minutes that defendant has possessed since May 23, 2023 (*e.g.*,

3

Tr. 749, 922-23, 939); and defendant literally cites to the same grand jury minutes in describing various "conversations" that he claims are subject to immunity (Mot. 4).

Defendant is also wrong to suggest that "the timing of this motion" is supported by recent actions by the U.S. Supreme Court (Mot. 2). The recent decision about Colorado's disqualification of defendant from the Republican primary ballot in that State, *Trump v. Anderson*, No. 23-719, 2024 WL 899207 (U.S. Mar. 4, 2024), concerned an application of Section 3 of the Fourteenth Amendment to defendant's acts of insurrection on January 6, 2021; this case does not seek disqualification, does not concern the Fourteenth Amendment, and concerns different acts of election interference by defendant. And in *United States v. Trump*, No. 23-939, the Supreme Court will consider whether defendant has absolute presidential immunity from criminal prosecution for his official acts while in office; as will be discussed below, the charged conduct here does not involve any official acts, and defendant has not asserted presidential immunity for the charged conduct in any event. Defendant cannot justify an eve-of-trial motion, based on legal arguments that could have been raised six months ago, based on U.S. Supreme Court cases that have nothing to do with this prosecution aside from his involvement as a defendant.

In the alternative, this Court would also be well within its discretion to defer any determination on the admissibility of this evidence until trial. Even assuming that there were a valid reason for this late filing, the CPL provides only that this Court may resolve the motion "at any-time before the end of the trial." CPL 255.20(3). Nothing thus compels this Court to address a late filing *before* trial.

It would make particular sense here to defer ruling on defendant's evidentiary objections, even assuming that this Court were inclined to overlook defendant's disregard of the Court's deadlines. Defendant repeatedly complains that the People have not "describe[d] the evidence they

4

intend to offer in detail" (Mot. 1). That complaint is misplaced given the details provided in the indictment, statement of facts, grand jury minutes, and subsequent briefing. But even assuming that defendant's complaint were valid, the solution is to proceed to trial, where the People can present their case in chief and dispel defendant's apparent confusion. Although this Court certainly has the discretion to rule on evidentiary objections before trial, there is no obstacle to its "refusing to do so in advance of the time when the question presents itself in regular course." *People v. Ocasio*, 47 N.Y.2d 55, 59 (1979). Thus, if this Court does not summarily deny defendant's late-filed motion, it could also simply defer any ruling until trial.

**B.    Defendant's claim of presidential immunity is not a basis for precluding evidence that is otherwise relevant and admissible.**

Assuming that this Court decides to address defendant's claims now, it should deny defendant's request to preclude evidence based on a theory of presidential immunity.

> **1.   Defendant does not claim immunity based on the charged conduct, and there would be no such immunity in any event.**

As an initial matter, defendant does not appear to be raising any claim of absolute presidential immunity based on the actual criminal charges here. The indictment charged 34 counts of falsifying business records in the first degree based on false entries that defendant made or caused in 2017. Defendant's motion, however, makes no immunity argument at all regarding those records. Instead, the motion focuses on a series of public communications by defendant in 2018, and argues that these "social media posts and public statements" are official acts for which defendant should be immune from prosecution (Mot. 22; *see generally id.* at 3-4, 20-23). Defendant's only reference to evidence from 2017 is his complaint that the People "have not provided sufficiently specific notice" of the "documents and testimony relating to the period in 2017" to allow him "to distinguish between personal and official acts" (Mot. 1). But that complaint

5

cannot possibly refer to the 2017 conduct charged in the indictment, which precisely identifies the documents supporting each count of falsifying business records in the first degree.[1]

Defendant's current motion thus raises no presidential immunity argument regarding the actual charges in the indictment. Such an interpretation would be consistent with defendant's general approach to the immunity defense throughout this litigation. As discussed, defendant expressly waived presidential immunity in his federal removal proceeding, even though "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). And defendant also failed to raise an immunity defense in his omnibus motions in this proceeding, thus further waiving any defense based on presidential immunity to the charges here. *See Carroll v. Trump*, 88 F.4th 418, 429-30 (2d Cir. 2023) (holding, in removed civil proceeding, that defendant waived defense of presidential immunity by failing to raise it in "his answer to Plaintiff's original complaint in New York state court").

In any event, any claim of presidential immunity based on the charged conduct would be meritless. As an initial matter, there is a serious question about whether a former President can claim absolute presidential immunity against criminal liability at all. The Supreme Court has made

---

[1] In any event, defendant is wrong to say that there has not been adequate notice on this front. First, the indictment and statement of facts provided more than adequate notice. Second, defendant acknowledged as much by seeking to remove this proceeding to federal court on the ground that the charged conduct related to acts performed under color of his former presidential office. *See* Notice of Removal ¶¶ 25-30, *New York v. Trump*, No. 23-3773, Dkt. No. 1 (S.D.N.Y. May 4, 2023). Third, the federal removal proceeding involved extensive briefing and an evidentiary hearing on the precise question—the distinction "between personal and official acts" (Mot. 1)— that defendant claims to be mystified about here. *See Trump*, 2023 WL 4614689, at *7 ("The evidence overwhelmingly suggests that the matter was a purely a personal item of the President…. Hush money paid to an adult film star is not related to a President's official acts."). Finally, defendant should have requested more details in his several requests for a bill of particulars, yet inexplicably failed to do so on this ground.

clear—in a case involving this defendant—that a sitting President is subject to both federal and state criminal process, including "when the President is under investigation," and specifically observed that "state grand juries are free to investigate a sitting President with an eye toward charging him *after completion of his term*," as has occurred here. *Vance*, 140 S. Ct. at 2426-27 (emphasis added); *see also Nixon v. Fitzgerald*, 418 U.S. 683, 706 (1974). And although the Department of Justice has long taken the position that a President cannot be criminally prosecuted while in office, it has also emphasized that this temporary immunity "would not preclude such prosecution once the President's term is over." U.S. Dep't of Justice, Office of Legal Counsel, *A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 Op. OLC 222, 255 (2000) (Ex. 18); *see also* U.S. Dep't of Justice, Office of Legal Counsel, *Amenability of the President, Vice President and other Civil Officers to Federal Criminal Prosecution While in Office* 32 (Sept. 24, 1973) (Ex. 19). There is thus no clear support for a *former* President claiming immunity against criminal charges.

At most, however, any immunity would be limited to defendant's actions that were plausibly within his official responsibilities as President. The President possesses "absolute immunity from damages liability predicated on his official acts," which extends to "acts within the 'outer perimeter' of his official responsibility." *Fitzgerald*, 457 U.S. at 749, 756. But there is "no support for an immunity for *unofficial* conduct"—*i.e.*, conduct "beyond the scope of any action taken in an official capacity." *Clinton v. Jones*, 520 U.S. 681, 694-95 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

Here, the charged conduct involves unofficial rather than official acts by defendant, as the federal district court found in addressing the related question of whether defendant was acting "under color of office" here. Specifically, the court found that "[t]he evidence overwhelmingly

suggests that the matter [i.e., the conduct charged here] was a purely a personal item of the President—a cover-up of an embarrassing event. Hush money paid to an adult film star is not related to a President's official acts. It does not reflect in any way the color of the President's official duties." *Trump*, 2023 WL 4614689, at *7. Moreover, in the federal proceeding, defendant "conceded . . . that he hired Cohen to attend to his private matters," and the court identified multiple additional facts demonstrating that the conduct alleged here was unofficial: "Cohen's invoices and their associated records were maintained by the Trump Organization, a private enterprise, in New York City, not in Washington, D.C. as official records of the President. Trump paid Cohen from private funds, and the payments did not depend on any Presidential power for their authorization." *Id.*

At base, as the federal court correctly recognized, the falsified business records at issue here were generated as part of a scheme to reimburse defendant's personal lawyer for an entirely unofficial expenditure that was made before defendant became President—namely, Michael Cohen's October 2016 payment of $130,000 to an adult film actress, in exchange for her signing of a nondisclosure agreement regarding her sexual encounter with defendant. There is no colorable argument that these actions constituted official conduct, and accordingly no basis for defendant to assert absolute presidential immunity based on those actions. *See Clinton*, 520 U.S. at 696 (the President "is otherwise subject to the laws for his purely private acts").[2] Perhaps for this reason, defendant does not raise such an immunity defense here.

---

[2] Defendant's extended discussion of presidential immunity based on "official acts" (Mot. 5-18) is thus entirely beside the point. And his attempt to analogize this case to *Trump v. United States* (Mot. 18-19) is also meritless, as the courts in that criminal case have assumed that the charged conduct involved official acts. *See Trump v. United States*, No. 23-939, 2024 WL 833184, at *1 (U.S. Feb. 28, 2024); *Trump*, 91 F.4th at 1205 n.14.

8

## 2. No categorical rule precludes admission of evidence of official acts that is relevant to criminal charges for non-immune conduct.

Because defendant has no argument based on presidential immunity for the charged conduct, his only argument is based on presidential immunity for 2018 public statements he made that he claims constitute "official acts" subject to presidential immunity (Mot. 20-23). But defendant is not being criminally charged for those 2018 statements. *Compare Trump*, 91 F.4th at 1180-82, 1188 (rejecting defendant's claim of presidential immunity from "the conduct alleged in the Indictment"). Nor are the People seeking to subpoena this information from defendant, since all the statements are already publicly available. *Compare Trump v. Vance*, 140 S. Ct. 2412, 2429 (2020) (rejecting claim of absolute presidential immunity from responding to state grand jury subpoena). In other words, defendant is not raising presidential immunity for any of the purposes that the defense typically serves: namely, immunity from criminal charges or criminal process.

Instead, defendant makes the peculiar argument that immunity can somehow preclude introduction of evidence of official presidential acts in a criminal proceeding, even if that evidence is otherwise relevant and admissible for criminal charges to which no immunity attaches (Mot. 20). Defendant cites no precedent supporting such a rule of preclusion, and several courts have squarely held otherwise. *See United States v. Wen*, slip op. 2-3, No. 04-cr-241 (E.D. Wisc. Sept. 12, 2025) (attached as Ex. 1) (consular immunity "does not create an evidentiary privilege that renders evidence of such conduct inadmissible at trial"), *conviction aff'd*, 477 F.3d 896, 897 (7th Cir. 2007); *United States v. Zhong*, No. 16-614, 2018 WL 6186474, at *6 (E.D.N.Y. Nov. 26, 2018) ("Although Defendant is entitled to residual immunity from prosecution, the government may admit evidence of Defendant's acts while he was an accredited diplomat…."), *rev'd on other grounds*, 26 F.4th 536 (2d Cir. 2022). Indeed, the Second Circuit, while reversing the conviction in *Zhong* on other grounds, agreed with the district court that "there is no per se bar on the use of

9

immune behavior in completing the story—or proving a defendant's knowledge, intent, or planning—of charged non-immune conduct."[3] *Zhong*, 26 F.4th at 553 n.9.

To be sure, prosecutors may not introduce evidence of immunized conduct in support of criminal charges *directly* based on such conduct. The Supreme Court held as much in *United States v. Johnson*, 383 U.S. 169 (1966) (cited at Mot. 21), concluding that a conspiracy charge could not be predicated on conduct immunized by the federal Constitution's Speech and Debate Clause, although it could proceed on other non-immune evidence. *See id.* at 184-85. Here, by contrast, the People are not pursuing criminal charges arising from defendant's 2018 statements at all. Instead, as the People have explained in their motions in limine (pp. 50-53), the evidence of defendant's 2018 pressure campaign against Stormy Daniels and Michael Cohen will be introduced as *Molineux* evidence to establish, among other things, defendant's consciousness of guilt. New York courts have held that such *Molineux* evidence is distinct from direct evidence of charged conduct. *See, e.g.*, *People v. Snagg*, 35 A.D.3d 1287, 1288 (4th Dep't 2006) (distinguishing between elements of conspiracy charge and separate *Molineux* evidence); *People v. Morales*, 309 A.D.2d 1065, 1066 (3d Dep't 2003) (same). Because the 2018 conduct on which defendant bases his immunity argument is thus not the subject of the criminal charges in the indictment, but instead bears only on "defendant's knowledge, intent, or planning . . . of charged non-immune conduct," *Zhong*, 26 F.4th at 553 n.9, there is no categorical rule foreclosing its admission.

---

[3] The Second Circuit reversed the conviction in *Zhong* because it found that the bad-acts evidence at issue did not satisfy the federal equivalent of the *Molineux* rule. *Zhong*, 26 F.4th at 551-53.

### 3. Defendant's 2018 conduct would not constitute official acts in any event.

Finally, even assuming that there were some rule precluding use of evidence of official acts in a criminal prosecution not arising from such acts, that rule would not apply here because the 2018 actions described in defendant's motion were not official acts.

Defendant's basic claim is that all of his 2018 public statements were official acts because he was "communicating with the public on matters of public concern" (Mot. 22). But the D.C. Circuit has squarely rejected the argument that "*all* of a President's speech on matters of public concern, as a categorical rule, is an exercise of official presidential responsibility." *Blassingame v. Trump*, 87 F.4th 1, 15 (D.C. Cir. 2023). Moreover, "whether the President speaks (or engages in conduct) on a matter of public concern bears no necessary correlation with whether he speaks (or engages in conduct) in his official or personal capacity." *Id.* at 16. Rather, the question is whether, for each of the statements at issue here, defendant was "act[ing] in an unofficial, private capacity," or instead "carrying out the official duties of the presidency." *Id.* at 4.

Applying that standard, the United States District Court for the Southern District of New York recently held that defendant was not acting in an official capacity—and hence did not enjoy absolute presidential immunity—when he made several statements in 2019 on Twitter, in remarks to reporters, and in an interview regarding an individual who had accused him of sexual assault. *See Carroll v. Trump*, No. 20-7311, 2023 WL 4393067, at *2-3, *9-11 (S.D.N.Y. July 5, 2023), *aff'd in part, appeal dismissed in part*, 88 F.4th 418 (2d Cir. 2023). The district court found that defendant could not invoke presidential immunity simply by making the general claim that the President's official duties include responding to personal attacks; instead, the court found that "the *content* of [defendant's] statements matter," and concluded that defendant's personal attacks on his accuser lacked "any connection . . . to any official responsibility of the president." *Id.* at *11.

11

Here, too, the 2018 statements that defendant cursorily claims are official acts are in fact "disconnected entirely from an official function." *Id.* All of the statements concern a subject matter that a federal court has already determined to be purely personal, rather than official. *See Trump*, 2023 WL 4614689, at *7. The content of the statements confirms that, even in 2018, defendant was commenting on this personal matter in his personal capacity. For example, many of defendant's 2018 social media posts and interview statements comment on his relationship with Michael Cohen—but, as defendant averred in the federal removal proceeding, defendant had at that time hired Cohen as his "personal lawyer . . . to handle his personal affairs." *Id.* at *3 (quoting defendant's notice of removal). And defendant has utterly failed to identify *any* specific official duty or responsibility that defendant was fulfilling, or official authority that defendant was invoking, in making gratuitous public statements in 2018 regarding his personal affairs or his personal lawyer. Instead, defendant was making these statements "in an unofficial, private capacity," *Blassingame*, 87 F.4th at 16, thereby foreclosing any invocation of absolute presidential immunity.

C.  **Adjournment of the trial is not warranted under any circumstance.**

Because defendant's immunity argument is untimely raised, inapposite to admissibility, or simply meritless, there is no basis whatsoever to adjourn the forthcoming trial. But an adjournment would not be warranted even if there were any merit to defendant's current argument. As discussed, defendant raises no immunity argument regarding the charged conduct; thus, unlike in *Trump v. United States*, there is no threshold barrier to proceeding to trial. Moreover, evidentiary objections are routinely raised and resolved mid-trial when the question of admissibility becomes ripe. There is no danger in following that procedure here, when the evidence in question is not privileged or unduly prejudicial. And, to the extent that there is any credibility to defendant's current complaint that the relevant facts are unclear (Mot. 1), factual development at trial may very

12

well clarify whether and to what extent defendant may have any viable claim of presidential immunity. As the D.C. Circuit has observed, claims of official immunity are necessarily fact-bound and may depend on the record developed at trial. *See Blassingame*, 87 F.4th at 5. There would thus be no reason to adjourn the upcoming trial, even assuming defendant had timely presented a colorable immunity argument as a basis for precluding evidence.

## CONCLUSION

Defendant's motion to exclude evidence and for an adjournment should be denied.

Dated:  March 13, 2024  Respectfully submitted,

*/s/ Matthew Colangelo*
Matthew Colangelo
Steven C. Wu  Christopher Conroy
Philip V. Tisne  Susan Hoffinger
 Of Counsel  Becky Mangold
Joshua Steinglass
Assistant District Attorneys
New York County District Attorney's Office
1 Hogan Place
New York, NY 10013
212-335-9000

13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

---

THE PEOPLE OF THE STATE OF NEW YORK

-against-

DONALD J. TRUMP,

                          Defendant.

Ind. No. 71543-23

---

**AFFIRMATION OF SERVICE**

The undersigned affirms under penalty of perjury that on March 13, 2024, he served the foregoing Opposition to Defendant's Motion to Exclude Evidence and for an Adjournment Based on Presidential Immunity on counsel for defendant (Todd Blanche, Susan Necheles, Emil Bove, Gedalia Stern, and Stephen Weiss) by email with consent.

Dated:      March 13, 2024               Respectfully submitted,

                                                    */s/ Matthew Colangelo*
                                                    Matthew Colangelo
                                                    Assistant District Attorney