# EXHIBIT Y

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, | |
| - against - | Ind. No. 71543-23 |
| DONALD J. TRUMP, | |
| Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF DONALD J. TRUMP'S MOTION FOR THE COURT'S RECUSAL AND FOR AN EXPLANATION** |

President Donald J. Trump respectfully submits this memorandum of law in support of his motion for Your Honor's recusal from this case and for an on-the-record explanation to the parties about certain contributions apparently made by Your Honor.

**INTRODUCTION**

As discussed below, because of actual or perceived impartiality, Your Honor cannot preside over this case, for at least two reasons: (1) the political and financial interest of Your Honor's daughter in Authentic Campaigns creates an actual or perceived conflict of interest because rulings and decisions Your Honor will be required to make in this case may result in a financial benefit to Your Honor's daughter; and (2) Your Honor's role in a prior case encouraging Allen Weisselberg to cooperate against President Trump and his interests shows a preconceived bias against President Trump.

Separately, by this motion we respectfully request that Your Honor put on the record relevant information surrounding what appear to be certain political contributions made by Your

Honor to candidate Joe Biden's Presidential campaign and other political causes so that the defense can assess whether these donations separately warrant Your Honor's recusal.

The actual and perceived biases discussed below are exacerbated by the fact that the Court was not randomly assigned to this case but was specifically chosen to preside over this case's grand jury process and trial. This fact makes plain the need to assure the public that the judge who presides over this historic case is actually impartial. And for the reasons discussed below, we respectfully submit that this role cannot be fulfilled by Your Honor.

## I. LEGAL STANDARD FOR RECUSAL

As it relates to the conflicts raised herein, recusal is required whether there is actual bias or even the appearance of bias. "The right to an impartial jurist is a basic requirement of due process." *People v. Novak*, 30 N.Y.3d 222, 225 (2017). *See also People v. De Jesus*, 42 N.Y.2d 519, 523 (1977) ("'The right of every person accused of crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury is a fundamental principle of criminal jurisprudence.'") (quoting *People v. McLaughlin*, 150 N.Y. 365, 375 (1896)); 22 N.Y.C.R.R. § 100.3(B)(4) ("A judge shall perform judicial duties without bias or prejudice against or in favor of any person.").

But even the appearance of bias, without actual bias, requires recusal in many cases, including here. "Not only must judges actually be neutral, they must appear so as well." *Novak*, 30 N.Y.3d at 226. *See also* 22 N.Y.C.R.R. §100.2 ("A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities."). The relevant question is therefore "not whether the judge is actually, subjectively biased, but whether the average judge in her position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton v. A. T. Massey Coal Co*., 556 U.S. 868, 881 (2009).

These fundamental principles are codified in the Rules of the Chief Administrator of the Courts Governing Judicial Conduct, 22 N.Y.C.R.R. Part 100 (the "Rules"). In line with the caselaw, the Rules establish an objective test for disqualification and provides that a "judge *shall* disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned…." § 100.3(E)(1) (emphasis added).

Section 100.3(E)(1) sets forth a non-exclusive list of instances in which the judge's impartiality might reasonably be questioned, such as where "the judge has a personal bias or prejudice concerning a party." *Id.* at §100.3(E)(1)(a)(i). "Whether a judge's impartiality might reasonably be questioned is necessarily a question of fact in each case. Even if the judge believes that he or she can be impartial, the judge should recuse himself or herself if an objective, disinterested observer could reasonably question the judge's impartiality." New York State Bar Association Committee on Professional Ethics, Opinion 673 (1995).[1]

Of particular relevance to this recusal motion are Sections 100.2(a) and (b) of the Rules, which provides, in relevant part, as follows:

> (a) A judge shall respect and comply with the law and shall conduct himself or herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
> (b) No judge shall allow his or her family, social, or other relationship to influence his judicial conduct or judgment.

---

[1]Addressing the issue of whether a lawyer may appear before a town justice after having represented the town justice's adult child in an unrelated matter, Opinion 673 noted that "disclosure should be made" and further observed as follows:

> "The standard of Canon 3C(1), however, is an objective one, based on the perceptions of a reasonable disinterested observer. The existence of a family connection anywhere in the case could reasonably affect an observer's calculation of the judge's impartiality."

Because we do not agree to remit this Court's conflicts, pursuant to 22 N.Y.C.R.R. §100.3(F), we respectfully submit that this Court is required to disqualify itself.[2]

## II. FACTS SUPPORTING THE NEED FOR RECUSAL AND EXPLANATION

### A. A Family Member Of The Court Works As A Political Activist That Stands To Profit From Negative Rulings Or A Conviction Of President Trump

As has been reported in the media, Your Honor's daughter is a partner, President, and Chief Operating Officer of Authentic Campaigns ("Authentic"), an entity that stands to financially benefit from decisions the Court makes in this case.[3]

---

[2]Remittal, where permitted, is a three-step process: First, the judge must fully disclose the basis for disqualification on the record. Second, without the judge's participation, the parties who have appeared and not defaulted and their lawyers must all agree that the judge should not be disqualified. Third, the judge must independently conclude that he/she can be impartial and be willing to participate in the case. If all three steps are satisfied, the judge may accept remittal of disqualification and must incorporate the parties' and their attorneys' agreement into the record of the proceeding…." New York State Advisory Committee on Judicial Ethics, Opinion 20-82/20-86 (2020).

[3]The defense was not aware of Your Honor's daughter's employment until it was reported by the media after the arraignment in this case. We submit that the Court should have disclosed at or prior to arraignment its relationship, through its daughter, to Authentic Campaigns for the reasons stated herein. In circumstances far less significant than those presented by this case, the Court of Appeals has required such disclosure:

> "[T]he Court of Appeals has inferred a disclosure requirement in certain situations based on the obligation to avoid an appearance of impropriety. *See Matter of Roberts*, 91 NY2d 93, 96 (1997) (stating, as to a judge who sat on his dentist's case, 'we note particularly the serious failure to inform a litigant of a potential basis for recusal. ..which evokes an impermissible appearance of impropriety'); *see also, e.g., Matter of Young*, 19 NY3d 621, 626 (2012) ('petitioner neither disqualified himself nor disclosed his relationship to the defendant or complaining witness'); *Matter of LaBombard*, 11 NY3d 294, 298 (2008) ('petitioner neither disqualified himself nor disclosed his relationship with defendant's mother to all interested parties'); Matter of Assini, 94 NY2d 26, 28 (1999) (judge permitted an attorney with whom he shared office space to appear before him 'without ever disclosing their ongoing relationship in the record or inviting objections to his presiding'; *see also Matter of Doyle*, *supra*, 23 NY3d at 662 (even though remittal

(continued…)

Authentic describes itself as a digital agency "that partners with clients to build award-winning online programs for progressive campaigns." https://authentic.org/our-agency/. Its clients are a roster of progressive causes and Democrat elected officials, including the Biden-Harris campaign, Kamala Harris for the People, and Hakeem Jeffries to name a few. Authentic is a company which has both publicly taken positions against President Trump and has reported raising over $74 million in campaign contributions for clients since 2018 (mostly in 2020 and 2022) to Democrats. The front page of its website prominently displays a campaign rally for Vice President Kamala Harris; touts having raised "hundreds of millions of dollars for progressive campaigns"; and features the "Biden Harris" campaign as its client.







Authentic worked for the 2020 Biden Campaign in its contest against President Trump, and continues to promote messaging directed, at least in part, against President Trump.

---

was not available, 'there is no indication that petitioner made any attempt whatsoever at disclosure here')."

*Matter of Gumo*, 2014 N.Y. Comm. Jud. Conduct Ops LEXIS 8, *24-25 (Dec. 30, 2014). The Court's failure to do so, as well as its failure to disclose its political contributions, discussed, *infra*, further exacerbates the appearance of partiality in this case.

In addition, Authentic's website (https://authentic.org/updates/) features content reflecting a heavy Democratic, and anti-Donald J. Trump, slant, including, by way of example, headlines such as:

- "Authentic CEO talks to New York Times about President Trump scamming people online";
- "Jen O'Malley Dillon talking about Authentic's work on the Biden presidential campaign"; and
- "Inside Kamala Harris's Small-Dollar Fund-Raising Operation."

**B. The Court Previously Sought To Induce Allen Weisselberg To Cooperate Against President Trump**

During the course of *People v. Allen Weisselberg*, , the Court participated in plea negotiations with DANY counsel and counsel for Mr. Weisselberg.[4] At a June 17th meeting in the Court's Chambers the Court informed Mr. Weisselberg's attorneys that unless Mr. Weisselberg cooperated with the People against Donald Trump and his interests, the Court would only offer Mr. Weisselberg a state prison sentence of at least one to three years imprisonment, even if Mr. Weisselberg pleaded guilty.[5] Affirmation of Susan Necheles ("Necheles Aff."), ¶ 3(a). Alternatively, if Mr. Weisselberg went to trial and was convicted, the Court indicated that it would sentence Mr. Weisselberg to a longer sentence of imprisonment than one to three years.

---

[4] In this memorandum, we briefly summarize the facts of these plea discussions as relevant to this recusal motion. A more extensive discission of these facts is found in the Trump Corporation's Recusal Motion in *People v. Trump Corp.*, Ind. No. 1473/2021, attached as Ex. A.

[5] In prior proceedings there was dispute about whether Your Honor specifically identified Donald J. Trump by name as the individual about whom Mr. Weisselberg should cooperate. *See* Affirmation of Susan Hoffinger, ¶ 15, attached as Ex. B. This is a red herring. As Your Honor is aware, Mr. Weissleberg worked for President Trump for over 35 years, the target of the People's investigation in the grand jury was President Trump, and at no time did anyone contemplate Mr. Weisselberg cooperating about anything other than his work as CFO for President Trump's companies. In fact, the People conceded that at the meeting in Your Honor's Chambers, they suggested that Mr. Weisselberg cooperate about Donald Trump's Statement of Financial Condition. *See id*.

Necheles Aff. 3(b). *See* also Jonah E. Bromwich, Ben Protess and William K. Rashbaum, Inside the Negotiations That Led a Top Trump Executive to Plead Guilty ("NYT Article"), New York Times, August 18, 2022. In short, this Court indicated that the "only way to avoid serving time behind bars … was if Mr. Weisselberg cooperated and pleaded guilty." NYT Article. In particular, Your Honor apparently told counsel for Mr. Weisselberg words to the effect of "what does he have to lose by trying to cooperate with the People?" Necheles Aff. ¶ 3(c). The Court also informed the Parties that it "would take into consideration Mr. Weisselberg's good faith efforts" at cooperation. Affirmation of Susan Hoffinger in Opposition to the Trump Corporation Recusal Motion in Ind. No. 1473/2021, ¶ 15, attached as Ex. B.

### C. The Court Made Campaign Contributions Against President Trump And Other Causes Contrary To President Trump's Agenda

Media reports have revealed what appear to be contributions by Your Honor to Joe Biden's prior presidential campaign against President Trump, Progressive Turnout Project, and Stop Republicans, all of which raise if true, at the very least, an appearance of impartiality.

According to publicly available information, during the 2020 presidential campaign, the Court made three political contributions through ActBlue. The first, for $15, was earmarked for the Biden campaign, the second, for $10, was earmarked to the Progressive Turnout Project, and the third, also for $10, was earmarked to Stop Republicans (a subsidiary of the Progressive Turnout Project.). *See* https://www.fec.gov/data/receipts/individual-contributions/?contributor_name=Merchan%2C+Juan&contributor_occupation=judge; J. Herb, *et al.*, $35 political contribution to Democrats raises fresh scrutiny of Judge Merchan, CNN, Apr. 6, 2023, available at www.cnn.com/2023/04/06/politics/judge-merchan-trump-biden-contribution/index.html (last accessed: Apr. 6, 2023) ("CNN Article). The defense does not have any additional information about these contributions and their intended purpose, and Your Honor

has not placed anything on the record concerning those apparent contributions prior to or after the media's reporting of those contributions. *But see, supra*, n. 3 (discussing a judge's disclosure obligation about potential conflicts)

## III. LEGAL ARGUMENT

### A. The Court's Partiality Will Reasonably Be Questioned Due To The Political And Financial Interest Of Your Honor's Daughter In Authentic Campaigns

Based on Your Honor's daughter's role at Authentic, Your Honor should recuse himself from this case. Your Honor's familial relationship with the President and COO of Authentic is particularly problematic given the role this very case may play in political campaigns and advertising in the 2024 presidential election. It is likely that many of President Trump's opponents, both political candidates and organizations, will attempt to use this case—and any rulings by the Court—to attack him. Indeed, virtually every client listed on Authentic's website has been critical in the past of President Trump and fundraised on these criticisms. We submit that reasonable people will question this Court's impartiality if Authentic or one of its clients (such as the Biden Harris campaign or Adam Schiff) cite the Court's statements or rulings in their campaigns or advertisements. This may lead members of the public to reasonably believe that the Court is not an impartial jurist but either part of a political operation or acting to financially benefit his daughter and Authentic. After all, Authentic financially benefits by creating content that its clients will pay for. Simply put, Your Honor's daughter's close connection to President Trump's political adversaries and her work at, and financial interest in, a firm which is deeply engrained with Democratic politics raises real and legitimate concerns about this Court's impartiality, particularly in a case against a former Republican President who is actively campaigning for re-election.

It is highly likely that many rulings this Court will make will either be aligned or in conflict with the ideological and financial positions of Your Honor's daughter's company. Your Honor therefore is required to recuse himself because judges may not participate in any case in which they *or their children* have "an interest that could be substantially affected by the proceeding." *Id.* at §100.3(E)(1)(d)(iii).[6] The "floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' … before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).[7] As one court explained, "[h]aving a personal interest in the outcome of a proceeding may be grounded in the … potential or actual impact on a family member of the judge. In such circumstances, the judge may be predisposed to decide the proceeding in a way that will benefit whatever personal interest he has that will be affected by his judgment." *In re Prosser*, 340 Wis. 2d 292, 304 (2012).

In any event, while this direct potential financial interest in and of itself is enough to warrant recusal, even if the potential financial interest was not direct, it is also well-settled that Judges must avoid even the *appearance* of partiality. "A judge before whom a case is moved for trial shall preside at such trial unless he is satisfied, upon challenge or *sua sponte*, that he is

---

[6]*See* Judiciary Law §14 ("A judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy within the sixth degree.").

[7]*Rippo v. Baker*, 580 U.S. 285, 287 (2017) ("Under our precedents, the Due Process Clause may sometimes demand recusal even when a judge 'ha[s] no actual bias.' … Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' … *see Williams v. Pennsylvania,* 579 U. S. 1, 8, 136 S. Ct. 1899, 195 L. Ed. 2d 132, 141 (2016) ("The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias" (internal quotation marks omitted)).

unable to serve with complete impartiality, in fact or appearance, with regard to the matter at issue or the parties involved." 22 N.Y.C.R.R. §700.5(c); *see Corradino v. Corradino*, 48 N.Y.2d 894, 895 (1979) ("we believe it the better practice for the court to have disqualified itself and thus to maintain the appearance of impartiality"); *In re Murphy*, 82 N.Y.2d 491, 495 (1993) ("Judges should strive to avoid even the appearance of partiality, and the 'better practice' would be to err on the side of recusal in close cases[.]") The familial relationship with Authentic certainly creates at least the appearance of a conflict, and a reasonable observer would easily conclude that the Court could not maintain complete impartiality while making rulings that either support, or conflict with, the personal and financial interests of Your Honor's daughter.

In *Concord Assoc., L.P.*, for example, the Appellate Division disqualified Justice LaBuda based upon the appearance of bias and prejudice over his handling of a case about which his wife, Kathleen LaBuda, had made public comments. 130 A.D.3d at 1406. In essence, the plaintiffs sought to build a casino in Sullivan County. The defendants initially funded that casino but subsequently sought to create a competing casino on the adjacent property from plaintiffs. During this time, "Kathleen LaBuda, in her official capacity as the majority leader of the Sullivan County Legislature, vice chair of its Committee on Community and Economic Development and a member of the County Casino Impact Committee, had publicly voiced her support in favor of [the defendants'] competing casino proposal, and those statements of support were reported by local and regional news outlets." *Id.* at 1406. As a result, Plaintiffs sought Justice LaBuda's recusal. "In denying plaintiffs' request, however, Acting Justice LaBuda stated that he was unaware of his wife's public support for the [defendant's] proposal and, in any event, it would 'in no way impact[] upon [his] impartiality and fairness.'" *Id.* Justice LaBuda then ruled in favor of the defendants on public policy grounds.

Reversing Justice LaBuda's denial of the recusal motion, the Appellate Division found that:

> Under the circumstances, it seems to us that Acting Justice LaBuda should have recognized that this was a situation in which his 'impartiality might reasonably be questioned' … and, therefore, we must conclude that his failure to recuse himself constituted a clear abuse of discretion….

*Id.* at 1406-07. The Court further criticized Justice LaBuda for displaying "a striking lack of 'sensitivity to the aroma of favoritism [that] … a favorable disposition could engender.'" *Concord Assoc., L.P. v. EPT Concord, LLC*, 130 A.D.3d 1404, 1406 (3d Dept 2015), quoting *Matter of George (State Commn. on Jud. Conduct)*, 22 N.Y.3d 323, 328 (2013).

The situation here is strikingly similar to the facts set forth in *Concord Assoc*. This Court's relationship to Authentic—a company which has made public statements against President Trump and which supports his political opponents—creates more than an "aroma of favoritism." It creates the very real prospect of tainting what is likely to be one of the most consequential—and politically divisive—criminal prosecutions in the history of this country. Plainly, there is an appearance of a partiality present here. The financial well-being of Your Honor's daughter depends at least in part on the success of Authentic. And Authentic's business model is one that requires it to attack President Trump and support individuals and causes in direct competition with President Trump. It necessarily follows that the rulings the Court makes in this case will carry at least the appearance of bias.

Although the New York State Advisory Committee on Judicial Ethics (the "Committee") has not issued any advisory opinions which directly address the highly unusual issue at hand, it has issued advisory opinions addressing recusal in the context of situations where an adult child of a judge had an indirect interest or was otherwise impacted by litigation pending before the judge. The Committee has repeatedly taken the position that such situations require recusal.

For example, in Opinion 13-24 (2013), the Committee concluded that a judge must disqualify themselves when commercial tenants of the judge's adult children or stepchildren appear before the judge as attorneys or parties. Similarly, the Committee in Opinion 02-36 (2002) expressed the view that the judge must disqualify themselves when the judge's child rents an apartment in a building that was purchased by a police officer who regularly appears in the judge's court (although the Committee did not indicate whether the police officer appears as a party or a witness) because "the landlord/tenant relationship between the police officer and the judge's daughter could reflect adversely on the judge's impartiality."

Similarly, in Opinion 92-46 (1992), the Committee concluded that a judge must disqualify themselves from presiding over an insurance rehabilitation proceeding where the judge's first cousin was the vice president of another insurance company, which was not a party to the transaction, but had offered to purchase a portion of the rehabilitee's portfolio; and where the judge's son had interviewed for a position with that company. The Committee concluded that based upon the "totality of circumstances," the judge was disqualified and permitted remittal only upon all parties agreeing in writing that "the judge's relationships are immaterial" to the litigation.

Given these guidelines, the Court presiding over this case would not promote public confidence in the judiciary's integrity and impartiality, *see* § 100.2(A), and it would create a situation in which this Court's impartiality might reasonably be questioned.[8]

---

[8] In fact, press articles already reflect that this Court's impartiality is being questioned:

- "As the Manhattan grand jury's case against Donald Trump continues in the following weeks and months, the question of whether Juan Merchan's daughter's work history compromises the judge's stance towards the former president is likely to continue hovering over the legal process." G. Carbonaro,

(continued…)

The Court should therefore recuse itself.

**B. The Court Should Recuse Due To Its Prior Involvement In Attempting To Induce Allen Weisselberg to Cooperate Against Donald Trump**

The Court's prior involvement in plea negotiations with Allen Weisselberg where the Court, along with the District Attorney's Office, attempted to induce Allen Weisselberg to cooperate against President Trump and his companies additionally requires Your Honor's recusal.

Your Honor's prior conduct in attempting to induce cooperation against President Trump and his interests creates a perception that Your Honor is biased against President Trump and warrants recusal in this case. Surely, the Court would not have pushed Mr. Weisselberg to cooperate against President Trump and his interests unless it thought he was someone who was worthy of prosecution. That mindset reveals Your Honor as someone who has prejudged the defendant's guilt and is biased against his interests.

It is of course true that "trial courts are not categorically precluded from initiating or facilitating plea agreements under appropriate circumstances," but the court's involvement must still "conform with 'significant ethical, constitutional, and statutory limits." *People v. Towns*, 33 N.Y.3d326, 333 n.4 (2019). At times, such as this case, the Court's involvement in Allen

---

Juan Merchan Under Pressure as Trump Supporters Focus on Daughter's Ties, Newsweek, Apr. 5, 2023, available at www.newsweek.com/juan-merchan-under-pressure-daughter-works-democrats-trump-1792701 (last accessed: Apr. 6, 2023).

- "Speculation of political bias is heightening surrounding Donald Trump's indictment after it was revealed the daughter of the judge presiding over the case worked for Vice President Kamala Harris' 2020 presidential run and a slew of other progressive campaigns." K. Caralle, REVEALED: The progressive daughter of judge presiding over Donald Trump's hush money case in Manhattan who worked for Kamala Harris and Joe Biden - and is swirling speculation of bias against the ex-president, DailyMail, Apr. 5, 2023, available at www.dailymail.co.uk/news/article-11938591/Daughter-judge-presiding-Trumps-hush-money-case-worked-Kamala-Joe-Biden.html (last accessed: Apr. 6, 2023).

Weisselberg's plea discussions "create[d] an appearance of partiality and [is] an indication that the judge is predisposed towards the defendant's guilt." Opinions of the Advisory Committee on Judicial Ethics, Op. 09-118. Here, the Court's role in encouraging Allen Weisselberg to cooperate against President Trump and his corporate entities created such an appearance of partiality.

The Court, in encouraging Allen Weisselberg to cooperate against Donald Trump, "assum[ed] the function of an interested party and deviat[ed] from its own role as a neutral arbiter." *Towns*, 33 N.Y.3d at 333. Therefore, it would "conflict[t] impermissibly with the notion of fundamental fairness," *id.*, for the Court to preside over Donald Trump's trial.

For this reason, too, the Court should recuse.

**C. Your Honor Should Clarify The Record Regarding His Apparent Campaign Contributions To Joe Biden And Other Causes Contrary To President Trump's Agenda**

Finally, we respectfully ask that the Your Honor clarify, on the record, the nature of his apparent political contributions to the Biden campaign. As it is, Your Honor's apparent donation to President Trump's opponent in the 2020 presidential campaign creates an appearance of partiality that precludes Your Honor from presiding over this case, absent Your Honor providing a reason for the contributions that obviates the actual or perceived bias that currently exists on this front.

Separately, and for much the same reason, the contributions to other political funds, such as to "Stop Republicans," also requires an explanation. On their face, all of these contributions appear to violate 22 N.Y.C.R.R. §100.5(A)(1)(e) which prohibits a sitting judge from "publicly opposing (other than by running against) another candidate for public office" and Section 100.5(A)(1)(c), which prohibits a sitting judge from "engaging in any partisan political activity." These prohibitions are intended to ensure "that the public, including litigants and the bar, [do

not] perceive judges as beholden to a particular political leader or party after they assume judicial duties." *In re Raab*, 100 N.Y.2d 305, 316 (2003).

The rules prohibit a judge from making *any* political contributions, irrespective of the amount. This is notably distinct from the rule governing certain "personal appointees" of a judge, which limits their aggregate yearly contributions to no more than $500. *See* Judicial Handbook at 41–42. In other words, when it comes to a sitting judge, any political contribution is presumed by the ethical rules to raise a perception of bias. Of course, many judges made political contributions before assuming office and we assume that those judges can put those biases aside once they don their black robes. But the rules prohibit *all* political contributions by a sitting judge exactly because any such contributions indicate (or at least appear to indicate) that the judge has been unable to set aside his political priorities and biases upon assuming his judgeship.

Without further explanation from Your Honor, the perceived bias created by these political contributions would not merely be that Your Honor previously contributed to political organizations opposed to President Trump and the Republican Party. Rather, they would raise the question how Your Honor, without at least the appearance of partiality, could rule on numerous forthcoming defense motions in a case many "view as a manifest abuse of power and nakedly political prosecution … that has the potential to interfere with … an upcoming federal election," *Bragg v. Jordan*, 2023 US Dist. LEXIS 68644, at *36 (S.D.N.Y. Apr. 19, 2023). For example, the defense is contemplating a selective prosecution motion arguing that this case was impermissibly brought by a Democratic district attorney to prevent President Trump from successfully running for re-election. *See generally Sonne v. Bd. Of Trustees of Vil. Of Suffern*, 67 A.D.3d 192, 203-204 (2d Dep't 2009) (holding that it is an unconstitutional selective prosecution where the defendant is "singled out for an impermissible motive not related to legitimate

governmental objectives, which could include personal or political gain, or retaliation for the exercise of constitutional rights" such as "because she exercised her rights to free speech under the First Amendment[.]). The fact that Your Honor previously donated money to President Trump's opponent in 2020 might suggest to the reasonable observer that the Court would rather another candidate be elected in 2024 over President Trump.

Similarly, the political motivations of DANY in belatedly bringing this case will also be relevant to any *Singer* motion. *See People v. Taranovich*, 37 N.Y.2d 442, 446-447 (1975) (holding that, among other factors, a court "balancing the merits of an assertion that there has been a denial of defendant's right to a speedy trial" should consider "the reason for the delay"). Similarly, there will likely be *motions in limine* (as there were in the recent Trump Corporation tax case) about the permissibility of the defense arguing, or cross-examining witnesses about their belief, that this case is politically motivated to prevent President Trump from being re-elected as President. Any ruling Your Honor would make in regard to these (or related motions) would be colored by the fact that Your Honor previously donated in support of candidates and causes opposing President Trump and his re-election.

We respectfully submit that, without further explanation from Your Honor concerning these apparent political contributions, Your Honor would not be able to impartially preside over this case. Given that the facts reported in the media, and available on the FEC website, that the Court has contributed both to President Biden's campaign and, quite literally, to a campaign to "Stop Republicans," a reasonable person—unless some clarification was provided by Your Honor—would view the Court as having an inappropriate bias against President Trump. Thus, whether there is an actual or perceived conflict is irrelevant, as either is enough to warrant recusal. Under these circumstances, the "public would justifiably lose confidence in the court

system," *In re Raab*, 100 N.Y.2d at 316, were the Court to remain as the presiding judge in this case without any explanation.

The Court should therefore clarify the record concerning these contributions—and give the defense a chance to further address the implication of that explanation—or otherwise recuse itself from this case.

## CONCLUSION

This case before this Court is historic and it is important that the People of the State of New York and this nation have confidence that the jurist who presides over it is impartial. Most respectfully, the foregoing facts compel the conclusion that Your Honor is not and thus should recuse.

Dated: New York, New York
May 31, 2023

Respectfully submitted,

/s/ Todd Blanche
Todd Blanche, Esq.
Blanche Law
99 Wall Street, Suite 4460
New York NY 10005
212-716-1250
toddblanche@blanchelaw.com

/s/ Susan R. Necheles
Susan R. Necheles
NECHELESLAW LLP
1120 Sixth Avenue, 4th Floor
New York, NY 10036
212-997-7400
srn@necheleslaw.com

Attorneys for President Donald J. Trump