# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

THE PEOPLE OF THE STATE OF
NEW YORK

v.

DONALD J. TRUMP,

*Defendant.*

No. 23 Civ. 3773 (AKH)

**ORAL ARGUMENT SCHEDULED
FOR FEBRUARY 4, 2026**

# STATEMENT OF INTEREST
# OF THE UNITED STATES OF AMERICA

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

ERIC J. HAMILTON
*Deputy Assistant Attorney General*

SARAH WELCH
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Ave NW
Washington, DC 20530
Tel: (202) 514-2000
sarah.e.welch@usdoj.gov

December 15, 2025

# TABLE OF CONTENTS

**PAGE(S)**

INTEREST OF THE UNITED STATES ....................................................................... 1

STATEMENT OF THE CASE ...................................................................................... 1

    A.    Statutory Background ................................................................... 1

    B.    Factual Background and Prior Proceedings ................................ 3

ARGUMENT ................................................................................................................ 6

THIS CASE WAS PROPERLY REMOVED TO FEDERAL COURT. ................... 6

    A.    The federal officer removal statute permits removal after entry of
judgment and sentencing. ............................................................ 6

    B.    The post-trial removal notice adequately alleges that the state
prosecution relates to official acts and adequately raises a
colorable federal defense. ......................................................... 10

    C.    Good cause exists for post-trial removal. ................................. 14

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE(S)**

*Agyin v. Razmzan,*
  986 F.3d 168 (2d Cir. 2021) ................................................................12-13

*Arizona v. Manypenny,*
  451 U.S. 232 (1981) .......................................................................... 2, 8

*Dart Cherokee Basin Operating Co. v. Owens,*
  574 U.S. 81 (2014) ............................................................................. 12

*Davis v. South Carolina,*
  107 U.S. 597 (1883) ............................................................................. 2

*FDIC v. Keating,*
  12 F.3d 314 (1st Cir. 1993) .................................................................. 8

*Griffith v. Kentucky,*
  479 U.S. 314 (1987) ............................................................................. 8

*Harris v. U.S. Dep't of Transp. FMCSA,*
  122 F.4th 418 (D.C. Cir. 2024) ............................................................ 7

*In re Meyerland Co.,*
  960 F.2d 512 (5th Cir. 1992) ............................................................... 8

*In re Savers Fed. Sav. & Loan Ass'n,*
  872 F.2d 963 (11th Cir. 1989) ............................................................. 8

*Isaacson v. Dow Chem. Co.,*
  517 F.3d 129 (2d Cir. 2008) ......................................................... 12, 13

*Jefferson County v. Acker,*
  527 U.S. 423 (1999) ...................................................................1, 6, 12, 13

*Martin v. Hunter's Lessee,*
  14 U.S. (1 Wheat.) 304 (1816) ............................................................ 9

*Mesa v. California,*
  489 U.S. 121 (1989) ..................................................................2, 10, 12

*Morales v. Trans World Airlines, Inc.*,
　　504 U.S. 374 (1992) ................................................................................ 11

*New York v. Trump*,
　　158 F.4th 458 (2d Cir. 2025) ............................................................. 5, 16

*Pennsylvania v. Newcomer*,
　　618 F.2d 246 (3d Cir. 1980) ...................................................................... 2

*Plaquemines Par. v. BP Am. Prod. Co.*,
　　103 F.4th 324 (5th Cir. 2024) .................................................................. 16

*Resolution Tr. Corp. v. BVS Dev., Inc.*,
　　42 F.3d 1206 (9th Cir. 1994) ..................................................................... 8

*Sawyer v. Foster Wheeler LLC*,
　　860 F.3d 249 (4th Cir. 2017) ................................................................... 16

*Stirling v. Minasian*,
　　955 F.3d 795 (9th Cir. 2020) ..................................................................... 2

*Tennessee v. Davis*,
　　100 U.S. 257 (1880) ................................................................................... 2

*Trump v. United States*,
　　603 U.S. 593 (2024) ........................................................................ *passim*

*United States v. Johnson*,
　　383 U.S. 169 (1966) ................................................................................. 15

*Willingham v. Morgan*,
　　395 U.S. 402 (1969) .................................................................. 2, 9, 12, 13

**STATUTES:**

12 U.S.C. § 1819(b)(2)(B) ................................................................................ 7

28 U.S.C. § 1442(a) ............................................................................... *passim*

28 U.S.C. § 1455(b) ............................................................................... 2, 7, 14

N.Y. Penal Law §§ 175.05, 175.10 (McKinney) .............................................. 3

N.Y. Penal Law § 175.10 ...................................................................................... 3

Removal Clarification Act of 2011,
 Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545, 545 ............................................10-11

**OTHER AUTHORITY:**

Federal Practice and Procedure § 3726............................................................. 16

## INTEREST OF THE UNITED STATES

This case involves the scope of the federal officer removal statute, 28 U.S.C. § 1442. The Department of Justice represents agencies, federal officers, and federal employees who face personal legal risk under state law on account of their federal offices and responsibilities. Section 1442 was enacted for the protection of federal entities and officers and those enlisted by the federal government to perform federal tasks. The statute is a critical tool to ensure that federal defendants have a federal forum to resolve their federal defenses—including, as here, an evidentiary immunity under the Constitution of the United States. Accordingly, the United States has a strong, direct interest in the removal issues presented in this case.

## STATEMENT OF THE CASE

### A.    Statutory Background

The federal-officer removal statute, 28 U.S.C. § 1442, authorizes the United States, a federal agency, a federal officer, or any person acting under a federal officer to remove a "civil action or criminal prosecution" that is "for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." *Id.* § 1442(a)(1). Suits that fall within the scope of Section 1442(a) may be removed even when the federal question arises only by way of a defense to a state law claim. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). The federal officer removal statute reflects Congress's desire to ensure that state

prosecutors and state courts cannot wield state judicial processes to interfere with the operations of the federal government. *See Willingham v. Morgan*, 395 U.S. 402, 406 (1969); *Tennessee v. Davis*, 100 U.S. 257, 263 (1880). The statute guarantees to federal officers—from law enforcement agents, *e.g.*, *Davis v. South Carolina*, 107 U.S. 597 (1883), to postal workers, *e.g.*, *Pennsylvania v. Newcomer*, 618 F.2d 246 (3d Cir. 1980), to military attorneys, *e.g.*, *Stirling v. Minasian*, 955 F.3d 795 (9th Cir. 2020)—"a federal forum in any case where [they are] entitled to raise a defense arising out of [their] official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).

The statute imposes three requirements. First, the defendant must be a federal officer, a federal agency, or a person acting under a federal officer. 28 U.S.C. § 1442(a). Second, the defendant must assert a "colorable" federal defense. *Mesa v. California*, 489 U.S. 121, 129 (1989). And third, the defendant must establish that the suit is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

In a state criminal case, the notice of removal must be filed "not later than 30 days after the arraignment in the [s]tate court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant … leave to file the notice at a later time." 28 U.S.C. § 1455(b)(1). A second such notice "may be filed only on grounds not existing at the time of the original notice," but "the United States district court may grant relief from" that requirement "[f]or good cause shown." *Id.* § 1455(b)(2).

### B.    Factual Background and Prior Proceedings

1.  In March 2023, a New York County grand jury returned an indictment charging President Trump with 34 counts of falsifying business records, in violation of N.Y. Penal Law § 175.10.  ECF 1-1 at 4-19.  That statute makes it a felony for any person, "with intent to defraud" that "includes an intent to commit another crime or to aid or conceal the commission thereof," to "[m]ake[] or cause[] a false entry in the business records of an enterprise."  N.Y. Penal Law §§ 175.05, 175.10 (McKinney). As alleged in a statement of facts, ECF 1-1 at 77-89, the criminal charges were based on reimbursements for payments made during the runup to the 2016 presidential election, which were recorded as attorney's fees in the business records of the Trump Organization, *id.* at 83-89.

In May 2023, pursuant to the federal officer removal statute, President Trump removed the suit to the United States District Court for the Southern District of New York.  ECF 1.  Removal was based on anticipated federal defenses involving preemption and presidential immunity.  *Id.* at 5-7.

The district court remanded the case to state court.  ECF 43.  It determined that the federal officer removal statute had been improperly invoked because the state criminal proceeding was not "for or relating to any act under color of [the] office" of President, *see* 28 U.S.C. § 1442(a)(1), and because no colorable federal defense had been raised.  ECF 43 at 11-24.  With respect to the immunity defense in particular, the court stated that "hiring and making payments to a personal attorney to handle

3

personal affairs" could not be viewed as carrying out a constitutional duty of the President. *Id.* at 16-17.

The case proceeded to trial in state court, and the jury returned a verdict of guilty on all counts. ECF 46 at 19.

2. On July 1, 2024, after the trial in this case, the Supreme Court held in *Trump v. United States*, 603 U.S. 593 (2024), that the President is entitled to absolute immunity from criminal prosecution with respect to the exercise of his "core constitutional powers," and that he is further entitled to "at least a presumptive immunity" from prosecution for acts within the "outer perimeter of his official responsibility." *Id.* at 606, 614 (emphasis omitted). The Supreme Court further held that, although the President is entitled to "no immunity" for his unofficial acts, *id.* at 615, evidence concerning the President's official acts for which he is immune from prosecution cannot be used to "prove his liability on any charge," *id.* at 631. *See also id.* at 632 n.3 (acknowledging that a "prosecutor may point to the public record" to show that the President performed an official act but could not "admit testimony or private records of the President or his advisers probing the official act itself").

3. After *Trump v. United States*, President Trump filed a post-trial motion in state court to dismiss the indictment and vacate the verdict based on presidential immunity. ECF 47-17. On September 3, 2024, before the state court ruled on that motion, President Trump sought leave to file a second removal notice in the U.S. District Court for the Southern District of New York. ECF 49; *see also* ECF 46

4

(removal notice filed on August 29, 2024). He argued that the State improperly introduced evidence of official presidential acts through testimony, social media posts, and a financial disclosure form. ECF 46 at 32-37. He further asserted that he sought a federal forum to litigate colorable immunity and preemption defenses. *Id.* at 38.

Days later, this Court declined to permit the removal notice to be filed. ECF 50. President Trump appealed, and on November 6, 2025, the Second Circuit vacated the Court's order denying leave to file a second notice of removal and remanded for the Court's reconsideration. In particular, the Second Circuit directed the Court to consider whether the State's use of the three categories of evidence challenged by President Trump "means that his prosecution relates to acts taken under color of the Presidency as contemplated by *Trump v. United States*," whether President Trump "has a colorable federal defense and whether he diligently sought removal," and whether removal is available "at this stage of the state court proceedings." *New York v. Trump*, 158 F.4th 458, 469 (2d Cir. 2025).

4. On December 16, 2024, the state trial court denied President Trump's post-trial motion on immunity. Addendum for Appellee 27-67, *New York v. Trump*, No. 24-2299 (2d Cir.). On January 10, 2025, it sentenced President Trump to an unconditional discharge. *Id.* at 111-12. President Trump appealed that judgment to the First Department of the Appellate Division. *See People v. Trump*, Index No. 71543/2023 (N.Y. App. Div. appeal filed Jan. 29, 2025).

# ARGUMENT

## THIS CASE WAS PROPERLY REMOVED TO FEDERAL COURT.

The post-trial removal notice filed by President Trump satisfies the statutory requirements.  Section 1442(a)(1) permits a federal officer to remove a state criminal prosecution after judgment has been entered and a sentence has been imposed in the state court.  The President's post-trial removal notice, which explains that evidence of his official acts was improperly used to convict him of a state crime, establishes the necessary "causal connection between the charged conduct and asserted official authority," *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (cleaned up), and raises at the very minimum a colorable federal defense.  And the fact that the Supreme Court issued its landmark presidential immunity decision—including a broad evidentiary immunity prohibiting prosecutors from inviting a jury to probe a President's official acts—after his state criminal trial supplies good cause for post-trial removal.

### A.    The federal officer removal statute permits removal after entry of judgment and sentencing.

The parties dispute whether the federal officer removal statute, 28 U.S.C. § 1442(a)(1), permits a federal officer to remove a state criminal prosecution to federal court after the state trial is complete.  It does.  The statute's plain language allows removal of a criminal prosecution brought in state court, including after conviction and sentencing.  Section 1442(a)(1) applies to criminal prosecutions that are "commenced in a State court," and it allows such cases to be removed to the federal

6

district court for the location where the state proceeding is pending. Nothing in the text of Section 1442(a)(1) or any other applicable statute limits the removal window to before the criminal sentencing.

Moreover, the plain language of Section 1455(b), which governs the removal procedure for criminal cases, provides that defendants are entitled to remove a criminal prosecution "at a later time" than the time limit provided in the rule, which otherwise expires before trial, "for good cause shown." 28 U.S.C. § 1455(b)(1). The statute imposes no outer limit on when the federal officer can remove his criminal case based on a showing of good cause, including after the federal officer has been convicted and sentenced.

Accordingly, the D.C. Circuit recently held that a federal officer may remove a pending state case to federal court even after the state trial court has imposed its judgment and the case has progressed to the court of appeals, reasoning that the only statutory preconditions to removal are that the suit was commenced in state court and that it was directed against a qualifying federal official. *Harris v. U.S. Dep't of Transp. FMCSA*, 122 F.4th 418, 422, 424 (D.C. Cir. 2024). That decision aligns with other cases that have addressed removal from a state appellate court to federal district court. For example, the Fifth Circuit held that a statute authorizing the Federal Deposit Insurance Corporation (FDIC) to remove "any action, suit, or proceeding from a State court to the appropriate United States district court," 12 U.S.C. § 1819(b)(2)(B), permits the FDIC to remove an action to federal district court even if a state trial

court had already issued its judgment and the case was pending in state appellate court at the time of removal. *In re Meyerland Co.*, 960 F.2d 512, 516-17 (5th Cir. 1992). Such post-judgment removal was proper because the removal statute "does not limit removable actions to those that have not yet reached a state trial court judgment, nor does it limit removable actions to those that come to the federal courts from a specific state court." *Id.* at 516. Other courts have reached the same conclusion about Section 1819(b)(2)(B), its predecessor statute, or similar removal statutes. *See FDIC v. Keating*, 12 F.3d 314, 316 (1st Cir. 1993) (per curiam) (collecting cases); *In re Savers Fed. Sav. & Loan Ass'n*, 872 F.2d 963, 966 (11th Cir. 1989) (interpreting predecessor to Section 1819); *Resolution Tr. Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1211 (9th Cir. 1994) (collecting cases interpreting either the FDIC's or the Resolution Trust Corporation's removal statute to permit removal after the state trial court has issued a judgment).

The D.C. Circuit's decision applying the reasoning of those cases to similar language in the federal officer removal statute is firmly grounded in the statutory text. It also fits with Section 1442(a)'s purpose to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties," *Arizona v. Maypenny*, 451 U.S. 232, 241 (1981), and with the general principle that a criminal judgment is not final until a "judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied," *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987).

8

More broadly, it would be peculiar if the federal officer removal statute did not permit post-judgment removal in appropriate state criminal cases. The statute's purpose is to ensure that federal officers have access to a federal forum to litigate federal defenses arising from their offices and official acts. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Not every such federal defense is evident before trial. Perhaps Congress enacts a new statute while the trial is underway. Or perhaps the Supreme Court issues a new decision, as it did here. The federal officer removal statute's text and structure reflect Congress's intent that federal officials in those circumstances should enjoy the same access to a federal forum.

Holding otherwise would risk incentivizing state and local prosecutors to manipulate trial dates and the timing of evidentiary submissions in the most high-profile of cases. As the Supreme Court has recognized, in our federal system, state and local officials are sometimes affirmatively "hostile" to federal policies and federal officers, particularly during "periods of national stress." *Willingham*, 395 U.S. at 405. State and local prosecutors have strong incentives to respond to the particularized interests and views of their local communities, but no comparable incentives to accord the requisite weight to the effect of their local decisions on the Nation as a whole. As the Court has explained, their decisions may be influenced by "state attachments, state prejudices, state jealousies, and state interests." *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 347 (1816). The potential for such improper considerations—which President Trump has argued influenced his proceedings, *see,*

*e.g.*, Appellant's Br. 53-57, *New York v. Trump*, No. 24-2299 (2d Cir.)—militates in favor of federal jurisdiction.  Absent an explicit textual command, therefore, it would be extraordinary to construe the federal officer removal statute—which was enacted against this historical backdrop, and with an eye to preserving federal supremacy—to preclude a federal official from obtaining a federal forum solely because the state trial court has entered judgment.

**B.    The post-trial removal notice adequately alleges that the state prosecution relates to official acts and adequately raises a colorable federal defense.**

President Trump's post-trial removal notice satisfies the threshold requirements for removal:  The state prosecution is "for or relating to any act under color of [his federal] office," *see* 28 U.S.C. § 1442(a)(1), and President Trump has raised a colorable federal defense, *see Mesa v. California*, 489 U.S. 121, 129 (1989).

1.  Because the post-trial removal notice asserts a federal evidentiary immunity specific to the President that was recognized by the Supreme Court in *Trump v. United States*, 603 U.S. 593, 631 (2024), President Trump seeks removal of a state prosecution that "relat[es] to any act under color of [his] office" within the meaning of 28 U.S.C. § 1442(a)(1).  Under the plain text of Section 1442(a)(1), a state criminal case may be removed to federal court even if the prosecution is not "for" the federal officer's official acts.  In 2011, Congress amended the statute to provide that a federal officer may remove a state criminal prosecution "for *or relating to* any act under color of [his federal] office."  28 U.S.C. § 1442(a)(1) (emphasis added); *see* Removal

10

Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545, 545.  The use of official-act evidence to convict the President in a state criminal proceeding brings such a prosecution comfortably within the current version of Section 1442(a)(1) as a prosecution "relating to" official acts.

In *Trump v. United States*, the Supreme Court recognized a special federal evidentiary immunity in light of the "peculiar constitutional concerns implicated in the prosecution of a former President."  603 U.S. at 631.  Under that rule of immunity, evidence concerning the President's official acts from which he is immune from prosecution cannot be used to "prove his liability on any charge," even if the charge is unrelated to the exercise of the President's official responsibilities.  *Id.*

It follows that a state criminal prosecution of a President "relat[es] to" his official acts when the President challenges the use of official-act evidence in the state proceeding.  The Supreme Court has recognized that "[t]he ordinary meaning of the[] words ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'"  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).  Here, as alleged in the President's notice of removal, New York prosecutors chose to prove their case by introducing evidence of the President Trump's official acts.  Prosecutors thereby brought their case "into association with or connection with" those presidential acts, *id.*, and thus within the ambit of the federal officer removal statute.

2.  For many of the same reasons, President Trump has raised a colorable federal defense under *Mesa*, 489 U.S. at 129.  At this stage of the proceedings, the defense must only be "colorable"; it need not be "clearly sustainable."  *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999) (cleaned up); *see Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138-39 (2d Cir. 2008).  The "colorable" standard is appropriately low.  As the Supreme Court has stressed, a federal officer need not "win his case before he can have it removed," because "[o]ne of the primary purposes of the removal statute" is "to have [federal] defenses litigated in the federal courts."  *Willingham*, 395 U.S. at 407.

President Trump has made that threshold showing.  He has identified certain categories of the State's trial evidence, including testimony about his conversations in the Oval Office with the Attorney General and the White House Communications Director, that facially involve official acts.  *See* ECF No. 69 at 21-30.  Indeed, in the *Trump* decision itself, the Supreme Court held that the President's conversations with the Attorney General were official acts that could not be introduced as evidence of criminal liability.  *See Trump*, 603 U.S. at 619-20.  The notice of removal plausibly alleges that prosecutors introduced prohibited official-act evidence in the state criminal trial and urged the jury to draw inferences of guilt from it.  Given those specific allegations, and in light of the Supreme Court's decision in *Trump*, President Trump has established, at the very minimum, a "colorable" federal defense on appeal. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (rules for evaluating complaints apply to removal notices); *Agyin v. Razmzan*, 986 F.3d 168, 181

(2d Cir. 2021) (applying *Dart* to removal under Section 1442).  As the Second Circuit has recognized, "[c]ourts have imposed few limitations on what qualifies as a colorable federal defense," other than the asserted interest must be "defensive" and "based in federal law." *Isaacson*, 517 F.3d at 138 (cleaned up).  Those minima are plainly present here.

The State will remain free, of course, to argue that any evidentiary use of President Trump's official acts was somehow acceptable.  The point for present purposes is that federal law guarantees the President a federal forum to assert that defense, just as it guarantees every federal agency and officer a federal forum for the adjudication of federal defenses.  Section 1442 reflects Congress's judgment that, in our federal system, providing such a federal forum is essential to protecting the autonomy and independence of the federal government from state interference.  A federal forum is especially vital for the preservation of official immunities, such as the evidentiary immunity that President Trump asserts here.  "[O]ne of the most important reasons for [federal officer] removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham*, 395 U.S. at 407.

President Trump also raises a federal preemption defense.  *See* ECF No. 69 at 30-31.  That preemption defense likewise exceeds the appropriately low "colorable" standard for removal so that a federal court can address the defense on its merits. *Jefferson County*, 527 U.S. at 432; *Isaacson*, 517 F.3d at 138.

C.     **Good cause exists for post-trial removal.**

President Trump's post-trial removal notice is timely.  For a state criminal case, the notice of removal must be filed "not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant … leave to file the notice at a later time."  28 U.S.C. § 1455(b)(1).  The statute imposes no outer time limit on a federal court's authority to grant leave for a removal notice filed "at a later time," as long as good cause exists.

Good cause for post-trial removal exists here.  A federal official generally has good cause to remove a state criminal case to federal court after trial when, as here, the basis for removal becomes clear only during or after the trial.  In the unusual circumstance in which a federal official is tried by state authorities for conduct, or based on evidence, that intervening federal law colorably places off limits, the requisite "good cause" for post-trial removal is established.  The very point of the statutory "good cause" standard is to provide a safety valve for circumstances of that kind.

President Trump's evidentiary immunity defense meets that standard.  It was not until after the state criminal trial that the Supreme Court issued its landmark decision in *Trump v. United States*, 603 U.S. 593 (2024).  That decision resolved, for the first time in our Nation's history, the constitutional immunity from criminal prosecution that shields the official acts of the small number of people who will ever

14

hold the office of President of the United States.  It further held that the Constitution precludes the use of official-act evidence in *any* criminal prosecution, even where the charges are based on unofficial acts undertaken before the defendant became the President.  *Id.* at 631.  Neither the existence nor the parameters of that special evidentiary immunity were established before the prosecutors here introduced evidence of President Trump's official acts in an effort to secure his conviction of a state criminal offense.  After the Supreme Court's decision, President Trump promptly asserted his right to a federal forum to challenge prosecutors' use of that official-act evidence.

A contrary conclusion would be difficult to fathom.  Suppose New York had instead prosecuted a Member of Congress for alleged personal-capacity offenses, and prosecutors unexpectedly introduced evidence of the Member's speeches on the House floor to secure a conviction.  That Member would have good cause to remove the case to federal court after trial to assert Speech or Debate immunity.  *Cf. United States v. Johnson*, 383 U.S. 169, 173-77 (1966) (Speech or Debate Clause prohibits evidentiary use of legislative acts).  That result would be even more clear if, as here, the Supreme Court had recognizing the relevant evidentiary immunity only after the state criminal trial concluded.  Similarly, suppose Congress enacted a federal statute after the state court entered judgment in this case expressly preempting state criminal prosecutions of federal officials based on evidence of their official acts.  President Trump would undoubtedly have good cause at that point to remove the case to

15

federal court to pursue an appeal based on that new statute. That President Trump's defense in fact takes the form of a new *constitutional* immunity announced by the Supreme Court after his trial ended, not a new statute enacted by Congress, should if anything cut in the President's favor.

Before the Second Circuit, the parties disputed whether the State's prosecution theory shifted during the trial, precipitating good cause for post-trial removal based on President Trump's preemption defense. *See* Appellant's Br. 65-67, Appellee's Br. 50-51, Appellant's Reply Br. 30-31, *New York v. Trump*, No. 24-2299 (2d Cir.). The Court need not address that question here because it is clear that President Trump established good cause for post-trial removal based on his immunity defense. If one claim satisfies the requirements for removal, "the entire case is deemed removable." *Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 333 (5th Cir. 2024); *see, e.g.*, *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017); 14C Charles A. Wright, et al., *Federal Practice and Procedure* § 3726, at 275 (rev. 4th ed, June 2024 update).

Finally, President Trump "acted diligently and without undue delay," *Trump*, 158 F.4th at 468, in filing his post-trial removal notice just two months after the Supreme Court created the evidentiary immunity on which he relied. That is especially true when those two months fell during the closing months of a presidential election. And there is no fixed deadline for filing a post-trial removal notice, so decisions finding parties diligent for filing amended pleadings after the deadline for

16

amendment or filing untimely pretrial motions cut decidedly in President Trump's favor here. *See* ECF No. 69 at 33-34 & n.7.

Moreover, the passage of two months between the Supreme Court's landmark decision and the filing of President Trump's second removal notice did not materially affect the litigation: There is no reason to think the state court or opposing counsel were prejudiced in any way by that timing. Concluding that the President may not assert an immunity created by the Constitution and newly recognized by the Supreme Court because he filed a post-trial removal notice, for which there is no formal deadline, within two months after the Supreme Court's decision would strain credulity and undermine federal officer removal.

## CONCLUSION

For the foregoing reasons, the court should permit President Trump to file a second notice of removal.

Dated: December 15, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

ERIC J. HAMILTON
*Deputy Assistant Attorney General*

/s/ Sarah Welch
SARAH WELCH
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Ave NW
Washington, DC 20530
Tel: (202) 514-2000
sarah.e.welch@usdoj.gov

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of December, 2025, I electronically filed the foregoing Statement of Interest with the Clerk of the Court using the CM/ECF system. I certify that service will be accomplished by the CM/ECF system for all participants in this case who are registered CM/ECF users.

Respectfully submitted,

*/s/ Sarah Welch*
Sarah Welch

December 15, 2025

19