# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK,<br><br>v.<br><br>DONALD J. TRUMP,<br><br>*Defendant*. | No. 23 Civ. 3773 (AKH)<br><br>**ORAL ARGUMENT SCHEDULED FOR FEBRUARY 4, 2026** |

## POST-REMAND REPLY IN SUPPORT OF PRESIDENT TRUMP'S MOTION FOR LEAVE TO FILE SECOND NOTICE OF REMOVAL

Robert J. Giuffra, Jr.
Matthew A. Schwartz
James M. McDonald
Maxwell F. Gottschall
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel:  (212) 558-4000
giuffrar@sullcrom.com

Jeffrey B. Wall*
Morgan L. Ratner*
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, DC  20006
Tel:  (202) 956-7000

*pro hac vice*

*Counsel for President Donald J. Trump*

January 21, 2026

## TABLE OF CONTENTS

*Page*

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 5

I.    DANY'S OPPOSITION CONFIRMS THAT THE FEDERAL-OFFICER
      REMOVAL STATUTE PERMITS REMOVAL AFTER SENTENCING ................ 5

II.   THE OPPOSITION CONFIRMS THAT PRESIDENT TRUMP
      SATISFIED THE STATUTORY REQUIREMENTS FOR
      FEDERAL-OFFICER REMOVAL ................................................................ 9

      A.    This Prosecution "Relates To" President Trump's Official Acts ........................... 9

            1.    Under *Trump*, a prosecution "relates to" a President's official acts if
                  the government uses official Presidential acts as evidence ........................9

            2.    DANY did use President Trump's official acts as evidence at trial .........12

      B.    The Second Removal Notice Asserted Multiple Colorable Federal Defenses ..... 15

            1.    President Trump's notice presented a colorable immunity defense ..........15

            2.    President Trump's notice presented a second colorable defense
                  of preemption ............................................................................17

III.  DANY CANNOT DENY THAT PRESIDENT TRUMP HAD GOOD
      CAUSE FOR SEEKING TO REMOVE WHEN HE DID ................................ 20

      A.    President Trump Could Not Have Filed This Removal Notice Before The
            Supreme Court's Decision In *Trump* .................................................. 21

      B.    President Trump Filed His Removal Motion Promptly After *Trump* .................. 22

      C.    DANY's Other Assorted "Good Cause" Arguments Are Unpersuasive ............. 26

CONCLUSION .................................................................................. 29

## TABLE OF AFFIDAVITS AND EXHIBITS

The following affidavits and exhibits accompany this reply brief:

Declaration of Matthew A. Schwartz, dated January 21, 2026 (appending exhibit).

Ex. C    Excerpt from the Trial Transcript in *People* v. *Trump*, N.Y. County Ind. No. 71543/2023 (Sup. Ct. N.Y. County 2024) (Juan Merchan, J.)

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abraham Watkins Nichols Agosto Aziz & Stogner* v. *Festeryga*,
155 F.4th 456 (5th Cir. 2025) ............................................................23, 25

*Agyin* v. *Razmzan*,
986 F.3d 168 (2d Cir. 2021)...............................................................10

*Albuquerque* v. *Soto Enterprises, Inc.*,
864 F.3d 1089 (10th Cir. 2017) .........................................................4, 25

*Allen* v. *McCurry*,
449 U.S. 90 (1980)..............................................................................20

*Arizona* v. *Meadows*,
2024 WL 4198384 (D. Ariz. Sept. 16, 2024)....................................22

*AT&T Corp.* v. *Atos IT Sols. & Servs., Inc.*,
714 F. Supp. 3d 310 (S.D.N.Y. 2024)................................................3

*Brims* v. *Collado*,
2025 WL 2650802 (S.D.N.Y. Sept. 15, 2025)....................................23

*Carey* v. *Saffold*,
536 U.S. 214 (2002)............................................................................6

*Clinton* v. *Jones*,
520 U.S. 681 (1997)............................................................................13

*Council on Am. Islamic Relations* v. *Ballenger*,
444 F.3d 659 (D.C. Cir. 2006) ...........................................................13

*Fritsch* v. *Swift Transp. Co. of Arizona, LLC*,
899 F.3d 785 (9th Cir. 2018) ..............................................................22

*Georgia* v. *Meadows*,
692 F. Supp. 3d 1310 (N.D. Ga. 2023) ..............................................27

*Georgia* v. *Meadows*,
692 F. Supp. 3d 1334 (N.D. Ga. 2023) ..............................................27

*Granny Goose Foods, Inc.* v. *Bhd. of Teamsters & Auto Truck*
    *Drivers Loc. No. 70*,
    415 U.S. 423 (1974) ............................................................................................8

*Harris* v. *U.S. Dep't of Transp. FMCSA*,
    122 F.4th 418 (D.C. Cir. 2024) .............................................................4, 6, 7, 8

*Holtzman* v. *Oliensis*,
    91 N.Y.2d 488 (1998) .......................................................................................18

*Isaacson* v. *Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008)...............................................................................17

*Jefferson Cnty.* v. *Acker*,
    527 U.S. 423 (1999)..............................................................................1, 2, 9, 12

*Kenny* v. *Wal-Mart Stores, Inc.*,
    881 F.3d 786 (9th Cir. 2018) .........................................................................3, 24

*McGucken* v. *Content IQ LLC*,
    2021 WL 5357473 (S.D.N.Y. Nov. 16, 2021) ...................................................23

*Mesa* v. *California*,
    489 U.S. 121 (1989)........................................................................................9, 17

*Missouri* v. *Pate*,
    2024 WL 3518594 (E.D. Mo. July 24, 2024) ....................................................28

*Morales* v. *Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)..............................................................................................9

*New York* v. *De Vecchio*,
    468 F. Supp. 2d 448 (E.D.N.Y. 2007) ...............................................................17

*Nicholas* v. *Goord*,
    430 F.3d 652 (2d Cir. 2005) ..............................................................................11

*Northrop Grumman Tech. Servs., Inc.* v. *DynCorp Int'l LLC*,
    865 F.3d 181 (4th Cir. 2017) .........................................................................4, 24

*Ortiz* v. *McBride*,
    380 F.3d 649 (2d Cir. 2004)...............................................................................26

*Pantalone* v. *Aurora Pump. Co.*,
    576 F. Supp. 2d 325 (D. Conn. 2008).................................................................27

iv

*People* v. *Hamlin*,
   71 N.Y.2d 750 (1988) ..................................................................................15, 16

*Reilly* v. *Waukesha Cnty.*,
   993 F.2d 1284 (7th Cir. 1993) ......................................................................16

*Rosenthal* v. *Coates*,
   148 U.S. 142 (1893) .......................................................................................25

*State ex rel. Tong* v. *Exxon Mobil Corp.*,
   83 F.4th 122 (2d Cir. 2023) ......................................................................10, 11

*Trump* v. *United States*,
   603 U.S. 593 (2024) .................................................................................. *passim*

*United States* v. *Tenzer*,
   213 F.3d 34 (2d Cir. 2000) .............................................................................20

*United States* v. *Zhong*,
   26 F.4th 536 (2d Cir. 2022) .......................................................................21, 22

*Vera* v. *Saks & Co.*,
   335 F.3d 109 (2d Cir. 2003) ..........................................................................27

*Willingham* v. *Morgan*,
   395 U.S. 402 (1969) ............................................................................7, 10, 28

*Wilson* v. *Libby*,
   535 F.3d 697 (D.C. Cir. 2008) ......................................................................13

*Yusefzadeh* v. *Nelson, Mullins, Riley & Scarborough, LLP*,
   365 F.3d 1244 (11th Cir. 2004) ....................................................................25

## Constitutional and Statutory Provisions

9 U.S.C. § 205 ...........................................................................................................5

12 U.S.C. § 632 .........................................................................................................5

22 U.S.C. § 282f ........................................................................................................5

28 U.S.C. § 1291 ........................................................................................................8

28 U.S.C. § 1442 .....................................................................................5, 6, 9, 11, 12

28 U.S.C. § 1455 ........................................................................................................5

52 U.S.C. § 30109 .....................................................................................................14

52 U.S.C. § 30143 ........................................................................................................18

N.Y. Crim. Proc. Law § 450.10 ....................................................................................5

N.Y. Election Law § 17-152 ...............................................................................17, 19

**Other Authorities**

11 C.F.R. § 108.7(b) ....................................................................................................18

Michael Cohen, *When Politics Blinds Justice* (Jan. 16, 2026),
    https://therealmichaelcohen.substack.com/p/when-politics-blind-justice ..........................7, 16

16 Moore's Federal Practice Civil § 107.132 (2026) ..................................................24

## INTRODUCTION

DANY wrongly claims that "[t]ime has not improved" President Donald J. Trump's arguments since he first sought to remove this case two years ago. Opp. 1. Not so: time has *confirmed* that this case belongs in federal court. The Supreme Court's landmark decision in *Trump* v. *United States* and DANY's litigating choices during President Trump's trial make clear that this prosecution both relates to his official acts and presents several clear issues of federal law. These include (i) the scope of the Presidential evidentiary immunity, and (ii) the merits of President Trump's FECA preemption defense—a defense that this Court previously rejected only because, in 2023, DANY represented (incorrectly, it turned out) that it would *not* pursue the exact state-law theory that it later used to convict President Trump the next year. To the limited extent that DANY engages with these points, its Opposition confirms that removal is warranted.

*First*, removal is plainly available even though President Trump has been sentenced by the state trial court. DANY does not deny that (i) the federal-officer removal statute expressly permits removal of any "pending" criminal case; (ii) DANY's prosecution of President Trump remains "pending" on appeal in the New York courts under any meaning of that word; and (iii) substantial precedent authorizes post-judgment removal from a *state* court followed by review in a federal *appellate* court, which is what President Trump seeks.

*Second*, the statutory criteria for removal are met because this prosecution clearly "relates to" official Presidential acts, and President Trump has articulated colorable defenses of immunity and FECA preemption. DANY does not deny that President Trump must make only an "adequate threshold showing" that both arguments are "colorable," *Jefferson Cnty.* v. *Acker*, 527 U.S. 423, 431-432 (1999), a threshold cleared here. Instead, DANY spends much of its Opposition in the weeds on the merits of the many "unprecedented and momentous questions" implicated by the prosecution of a former, and now-sitting, President. *Trump* v. *United States*, 603 U.S. 593, 616

(2024).  But again, President Trump is not required "to win his case before he can have it removed" because that would "defeat the purpose of the removal statute":  to ensure a federal court decides those federal questions.  *Acker*, 527 U.S. at 431 (internal quotation marks omitted).

At any rate, DANY's arguments are wrong.  To cite one example, DANY maintains that President Trump was not even *colorably* engaging in official conduct when he discussed with his White House Communications Director in the Oval Office the content of statements that she should give to the press and the White House's overall strategy for responding to false news stories about his fitness for office.  But the Supreme Court in *Trump* held that a President's "discussions with" government officials about "their official responsibilities," or that "concern [the officials'] role," are "readily categorized" as official conduct.  *Trump*, 603 U.S. at 617, 622-624, 637.  DANY responds that the "subject matter" of the press reports had no "connection with the general matters committed by law" to the President's "control or supervision."  Opp. 46 (citation omitted).  *Trump* rejects that argument too, explaining that a "long-recognized aspect of Presidential power" is speaking "in ways that the President believes would advance the public interest" even on matters "that may not directly implicate the activities of the Federal Government," 603 U.S. at 629—including, as relevant here, the President's fitness for office, *see* Opening Br. 26.

DANY also is wrong in claiming that its introduction of any official-acts evidence was harmless.  Tellingly, DANY says nothing in response to its own description—during closing arguments, no less—of the relevant official-acts evidence here as "'devastating,' 'damaging,' and 'critical pieces of the puzzle' that supposedly 'put the nail in the coffin' of President Trump." Opening Br. 30.  Those characterizations during closing cannot be squared with DANY's current claim that such evidence was harmless beyond any reasonable doubt.  The opposite is true.

*Third*, President Trump has shown "good cause" for this second removal request. He asked this Court for permission to remove less than two months after the Supreme Court issued its landmark decision in *Trump*—which, in DANY's own words, "announced new rules" of Presidential evidentiary immunity and thus gave rise to new grounds for removal. Brief for Appellee 32, *Trump*, No. 24-2299 (2d Cir. Jan. 13, 2025), Dkt. 58 (DANY 2d Cir. Br.). The only question remaining is the one the Second Circuit left open: whether President Trump "acted diligently and without undue delay to remove the case based on those new grounds." ECF No. 56 (2d Cir. Op.) at 24. He did. No fewer than 17 courts in this Circuit have applied analogous provisions to find that a "party acts diligently if it seeks" relief, as the President did here, "within approximately two months" of learning of its entitlement to do so. *E.g.*, *AT&T Corp.* v. *Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 326 n.14 (S.D.N.Y. 2024) (citation omitted); *see* Opening Br. 33-34 & n.7. DANY cites no case going the other way. In fact, DANY ignores President Trump's cases entirely, effectively conceding that President Trump moved with sufficient speed in coming to this Court.

Instead, DANY says (at 17) that President Trump cannot establish good cause to remove because his supposed "delay" was improperly "strategic," in the sense that he raised his evidentiary-immunity arguments to the state trial court before seeking removal here. DANY has effectively conceded that President Trump acted quickly enough, but now claims that President Trump "affirmatively waived" his right to removal by first presenting the immunity question raised by *Trump* to the state court. Opp. 20.

To waive, a defendant must "manifest his or her intent to have the matter adjudicated" in state court, "and to abandon his or her right to a federal forum." *Kenny* v. *Wal-Mart Stores, Inc.*, 881 F.3d 786, 790 (9th Cir. 2018). President Trump manifested the *opposite* intent by seeking to

remove this prosecution from its outset in 2023. When *Trump* was decided, the state court was scheduled to impose sentence—and potentially incarcerate him—just ten days later, in the middle of the Presidential campaign. Raising that argument to the state court first was the only way to avoid harm by forestalling the sentencing. Once it became clear that the state court would not rule in a timely manner, President Trump quickly removed. Courts of appeals have recognized that this sort of "compel[led]" state-court action to avoid "potential harm"—here, actual imminent harm—does not waive the right to remove. *Albuquerque* v. *Soto Enterprises, Inc.*, 864 F.3d 1089, 1099 (10th Cir. 2017). Nor does it amount to the sort of "extreme situation[]" in which "judicial economy, fairness, and comity demand" a finding of implicit waiver. *Northrop Grumman Tech. Servs., Inc.* v. *DynCorp Int'l LLC*, 865 F.3d 181, 186 (4th Cir. 2017). Simply put, President Trump clearly did not waive his right to a federal forum.

With the benefit of the Second Circuit's remand opinion, the analysis here is straightforward. Under the federal-officer removal statute, it is clear that removal remains available while a case is on appeal. It is equally clear, after *Trump*, that this case presents federal questions of enormous importance not just for President Trump himself, but for "the institution of the Presidency." 603 U.S. at 632. There is no way that Congress, "animated by an approximately 200-year-old concern that the contours of federal power be determined by federal courts," would have wanted those questions resolved by the state trial and appellate courts. *Harris* v. *U.S. Dep't of Transp. FMCSA*, 122 F.4th 418, 423 (D.C. Cir. 2024). This unprecedented case must be removed to federal court.

**ARGUMENT**

**I.    DANY'S OPPOSITION CONFIRMS THAT THE FEDERAL-OFFICER REMOVAL STATUTE PERMITS REMOVAL AFTER SENTENCING.**

The threshold question—which DANY saves for last—is whether removal is available at this stage of this case.  It plainly is:  federal-officer removal remains available after the trial court enters judgment so long as the defendant can show "good cause," 28 U.S.C. § 1455(a), (b)(1), which President Trump has here.  The statutory text, sound policy, and precedent make that clear. Opening Br. 12-20; U.S. Amicus Br. 6-10.  In response, DANY trots out the same handful of unpersuasive points that it made before the Second Circuit, to which President Trump has already responded at length.

*First*, DANY continues to misconstrue the governing text.  DANY insists (at 50) that President Trump's argument rests on a "tacit" reading of the statute based on "the absence of a provision explicitly forbidding removal" after judgment.  Not so.  The statute *expressly* authorizes a defendant with "good cause" to remove any "pending" prosecution "at a later time" than "before trial." 28 U.S.C. § 1455(a), (b)(1).  That is explicit, not tacit.  Section 1455's express authorization for post-judgment removal diverges from other provisions in which Congress has expressly required removal before a particular deadline.  *See* 12 U.S.C. § 632 (allowing removal of qualifying case "at any time *before the trial thereof*") (emphasis added); *id.* § 1452(f) (same); 9 U.S.C. § 205 (same); 22 U.S.C. § 282f (same).  DANY says nothing in response to these statutes.

Instead, DANY briefly asserts that as "a matter of state law, the criminal action here terminated with defendant's sentencing."  Opp. 2; *see id.* at 50.  But DANY cannot mean that this case is over, or that President Trump did not have the right to appeal his criminal judgment in New York, *see* N.Y. Crim. Proc. Law § 450.10, as he has done.  In any event, the question here is one of *federal*, not state, law:  what the federal-officer removal statute means by authorizing removal

5

of any "pending" prosecution.  28 U.S.C. § 1442(a).  As the D.C. Circuit explained in *Harris*,

under the "plain meaning of the word," a state action is "pending" "as long as the parties are still

actively contesting the case in the state court system," regardless of whether they are "contesting

the case in the state trial court or on appeal."  122 F.4th at 422-423 (citing *Yassan* v. *J.P. Morgan*

*Chase & Co.*, 708 F.3d 963, 969 (7th Cir. 2013)); *see Carey* v. *Saffold*, 536 U.S. 214, 219 (2002)

("The dictionary defines 'pending' (when used as an adjective) as 'in continuance' or 'not yet

decided.'").  DANY offers no competing definition, thus effectively conceding that the case here

is pending, and that removal should be granted.

Second, DANY cites a number of district court cases that, it claims, "concluded that

removal was no longer available" after sentencing.  Opp. 53.  As President Trump's opening brief

already demonstrated (at 17), most of those cases involved attempts to remove by defendants

*decades* after the end of their state *appeals*.  Because direct review had ended, and there was no

longer a pending state action, removal was indeed unavailable, unlike here where appellate

proceedings continue.  None of DANY's district-court cases is persuasive authority here, as none

offers any reasoning.  Opening Br. 17.

DANY also has little to say to undercut the significant *appellate* precedent cutting the other

way.  At least four courts of appeals—the First, Fifth, Eleventh, and D.C. Circuits—have

interpreted either this statute or a parallel removal statute to permit post-judgment removal.  *See*

Opening Br. 13-14.  DANY notes that all those were civil cases and so did not "address the distinct

procedural requirements and statutory language applicable to the removal of state criminal

prosecutions."  Opp. 53.  But the D.C. Circuit in *Harris* interpreted the same federal-officer

removal statute governing here:  28 U.S.C. § 1442(a), which applies to both civil *and* criminal

cases.  And if there is anything to a criminal/civil distinction, it goes the other way.  Congress

would be *most* concerned about the serious interference with federal supremacy that follows from state criminal prosecution of federal officers. The whole premise of the federal-officer removal statute is that states may be "hostile" to federal policies and federal officers. *Willingham* v. *Morgan*, 395 U.S. 402, 405 (1969). There is no more dangerous (or more efficacious) way to enact that hostility than threatening to incarcerate federal officers.

DANY insists (at 28) that "no such hostility has been present in this case," but that fact question is irrelevant to the legal issue of how to read the federal-officer removal statute. The issue is what Congress intended in a statute that applies to all 50 States, and to a host of local prosecutors with varying incentives and audiences.

At any rate, DANY's self-serving praise of the New York prosecutors' and courts' handling of this matter ignores what actually transpired. As one egregious example, the trial court declined to recuse from this case, which took place in the heat of the 2024 presidential election, despite having made prohibited political contributions to the Biden campaign and to a group called "Stop Republicans PAC" during the 2020 general election. Making matters worse, the trial court also refused to recuse despite undisputed reports that his close family member, a political consultant, was being paid millions by the Harris campaign and other Democrats, including to create political advertisements specifically invoking *this very prosecution*. ECF No. 49-1 at 19-23, 53. No federal judge would continue to preside in such dubious circumstances. There is more. DANY has now been publicly accused by its star witness, Michael Cohen, of "pressur[ing] and coerc[ing]" him to provide only "testimony . . . that would enable them to convict President Trump" and of "frequently ask[ing] inappropriate leading questions to elicit answers that supported their narrative." Michael Cohen, *When Politics Blinds Justice* (Jan. 16, 2026), https://therealmichaelcohen.substack.com/p/when-politics-blind-justice.

Next, DANY maintains (at 54-55) that removal cannot possibly be available post-judgment because it would create unworkable "procedural puzzles." For example, DANY says that removal would be possible "even after a ruling by a state's intermediate appellate court," "even after a ruling by a state's highest court," or "even during a collateral attack on a conviction." Opp. 55. These hypothetical scenarios did not trouble the four courts of appeals that unanimously approved post-judgment removal under analogous statutes. In part, that is because a criminal case would no longer be "pending" in at least some of these hypotheticals—after final, non-appealable judgment, or in a separate collateral attack. In any event, the "good cause" requirement is also a roadblock to DANY's parade of horribles. The further a criminal case progresses through the state court system, the more difficult it will be to show "good cause" to remove the case from that system. But so long as the appeal is "pending," removal remains at least potentially available as a "safety valve" for "unusual circumstances," such as those presented in this case, the first ever prosecution of a President. U.S. Amicus Br. 18.

Finally, DANY says that there is no "statutory provision" authorizing "this Court [to] simply transfer the case to the Second Circuit" after removal. Opp. 52. But DANY ignores President Trump's (and the D.C. Circuit's) clear explanation of the appropriate next steps for this Court (at 20), which do not require it to "transfer" anything: the Court should simply enter an order "adopt[ing] the state court's judgment as its own," *Harris*, 122 F.4th at 426 (Henderson, J., concurring), after which President Trump would be entitled to file a notice of appeal from that "final decision[] of the district court[]." 28 U.S.C. § 1291. The Second Circuit would then do what federal courts always do "[a]fter removal," which is "take[] the case up where the State court left it off." *Granny Goose Foods, Inc.* v. *Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 436 (1974).

8

## II.    THE OPPOSITION CONFIRMS THAT PRESIDENT TRUMP SATISFIED THE STATUTORY REQUIREMENTS FOR FEDERAL-OFFICER REMOVAL.

Because there is no statutory bar to removal here, the next question is whether this case qualifies under the federal-officer removal statute. It does. This prosecution satisfies the two requirements for removal:  (i) the prosecution is "for or relating to any" official act, and (ii) President Trump has at least one colorable federal defense.  *See* 28 U.S.C. § 1442(a)(1); *Mesa* v. *California*, 489 U.S. 121, 129 (1989).  At a minimum, President Trump has made an "adequate threshold showing" on both points, especially considering that this Court must "credit [his] theory of the case" in making that determination—a point DANY studiously ignores.  *Acker*, 527 U.S. at 431-432.

### A.    This Prosecution "Relates To" President Trump's Official Acts.

#### 1.    Under *Trump*, a prosecution "relates to" a President's official acts if the government uses official Presidential acts as evidence.

This prosecution at least *colorably* "relates to" President Trump's official acts under the plain meaning of that broad phrase:  "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with."  *Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).  Some of the most significant evidence in this case—evidence that DANY itself, in closing, called "devastating," in supposedly establishing President Trump's knowledge and intent, ECF No. 47-17 at 17—was testimony concerning alleged conversations between the President and senior government officials about their official duties (as explained below).  One of the central legal disputes in this case is whether that evidence impermissibly concerned official Presidential acts (it did), and, if so, whether the conviction must be set aside (it must).  Indeed, DANY spends 14 pages on the merits of that Presidential immunity defense.  *See* Opp. 36-49.  Because appellate courts must evaluate that immunity defense, this case plainly has

an "association with or connection" with official acts sufficient to trigger removal. The point of removal is "to have the validity of the defense of official immunity tried in a federal court." *Willingham*, 395 U.S. at 407.

In response, DANY tries to shift from the statutory text, claiming that the only relevant question is whether the charged conduct—not the evidence used to obtain a conviction—relates to official acts. But that is just another way of saying that the prosecution must be "for" the President's official acts to be removed, and the statute is broader than that. In 2011, Congress amended the removal statute to allow removal in prosecutions not just "for" official acts but also "relating to" them. Opening Br. 23. DANY never addresses that express amendment.

Instead, DANY contends that the Second Circuit already held in its remand opinion that only "the nature of the conduct underlying the criminal charges" is relevant for removal analysis. Opp. 30-33. DANY is wrong. The Second Circuit expressly left this issue for this Court to decide. During its background description of the issue, the Second Circuit noted its previous statement, in an unexplained footnote, that Congress's addition of the "relating to" language in 2011 did not "abrogate[]" the court's earlier precedents. 2d Cir. Op. 22 (quoting *State ex rel. Tong* v. *Exxon Mobil Corp.*, 83 F.4th 122, 145 n.7 (2d Cir. 2023)). But the Second Circuit then remanded for *this* Court to decide "whether in fact the State's use of [official-acts] evidence means that [President Trump's] prosecution relates to" those acts and therefore triggers the right to removal. *Id.* at 27. This remand would have been pointless if the Second Circuit had already concluded that the *Tong* footnote foreclosed President Trump from even arguing that the use of official-acts evidence is sufficient to support removal, which it did not.

To be clear, *Tong*'s one-sentence footnote does not control the question here. Opening Br. 23 n.6. For starters, that footnote did not provide any reasoning or purport to set down a governing

rule:  the court merely noted that the Second Circuit has "continued to apply the causal-nexus requirement . . . long after 2011."  83 F.4th at 145 n.7 (citing *Agyin* v. *Razmzan*, 986 F.3d 168, 179 (2d Cir. 2021)).  The case it cited, *Agyin*, did not mention Congress's 2011 amendment at all.  And neither *Tong* nor *Agyin* addressed whether the introduction of critical official-act evidence can be relevant to removal, which it can.  *Tong*, for example, "involved an attempt by a former federal contractor to remove a civil suit against it despite no obvious relationship" between anything in the case and the performance of a federal contract.  Opening Br. 23 n.6.  It is axiomatic that courts "must read . . . general language in judicial opinions" "as referring in context to circumstances similar to the circumstances then before the Court," and not "to quite different circumstances that the Court was not then considering."  *Nicholas* v. *Goord*, 430 F.3d 652, 674 (2d Cir. 2005) (Leval, J., concurring) (quoting *Illinois* v. *Lidster*, 540 U.S. 419, 424 (2004)).

On the merits, DANY tries, and fails, to save its narrow reading of the removal statute by reaching for a purportedly "absurd" hypothetical, saying that the use in evidence of a postal employee's confession to a supervisor would not transform the postal employee's prosecution for an off-duty crime into one that "relates to" her official acts.  Opp. 34-35.  If that is correct for the postal employee, it is because confessing to a crime is clearly not one of a postal employee's federal duties—that is, it is not official-act evidence *at all*.

In any event, most other possible federal defendants like the postal employee do not enjoy a constitutional evidentiary immunity that applies in criminal prosecutions.  Notably, DANY never disputes that the only other federal defendants who do—legislators under the Speech or Debate Clause—would be entitled to remove if a state prosecutor introduced evidence covered by the Clause, even if the allegedly offending speech was about the legislator's personal life.  *See* Opening Br. 15-16.  This Court thus need not address how Section 1442's "relating to" language

applies in cases that do not present "the peculiar constitutional concerns implicated in the prosecution of a former President." *Trump*, 603 U.S. at 631.

>    **2.    DANY did use President Trump's official acts as evidence at trial.**

By any measure, President Trump has made at least the required *colorable* showing that DANY introduced at least *some* official-acts evidence in violation of the Presidential evidentiary immunity.  *See* Opening Br. 25-28.  In trying to claim otherwise (at 41-49), DANY barely acknowledges that President Trump need make only an "adequate threshold showing" to satisfy this Court's limited "jurisdictional inquiry" here under the removal statute.  *Acker*, 527 U.S. at 432.  Instead, DANY just argues the merits in detail, improperly asking this Court to "choose between [the parties'] readings" of both *Trump* and the state-court record, which would of course be "to decide the merits of this case."  *Id.*  Again, as the Supreme Court has made clear, President Trump is not required "virtually to win his case before he can have it removed."  *Id.* at 431.  To defeat removal, DANY must show that President Trump's arguments are not even "colorable" *after* "credit[ing] [his] theory of the case."  *Id.* at 432.

DANY has not remotely made that showing.  For example, DANY says that when President Trump spoke with White House Communication Director Hope Hicks in the Oval Office about the White House's press strategy, he was somehow not engaged in official conduct because the "subject matter" had no "connection with the general matters committed by law" to the President's "control or supervision."  Opp. 46 (citation omitted).  *Trump* squarely rejected this kind of argument.  It repeatedly held that a President's "discussions with" government officials about "their official responsibilities," or that "concern [the officials'] role," are "readily categorized" as official conduct.  *Trump*, 603 U.S. at 617, 622-624, 637.  It was Ms. Hicks's "official responsibilit[y]" to interact with and provide information to the press, so it was plainly

an official act for the President to discuss those duties with her in the Oval Office.  As the Supreme Court stated, the animating purpose of the immunity is to ensure that each President can "execute the duties of his office fearlessly and fairly," which would be impossible if a President's discussions with his staff were not immune.  *Id.* at 613.

Moreover, *Trump* recognized that Presidents routinely speak in their official capacity on all kinds of "matters of public concern" "touch[ing] on nearly every aspect of American life," even if they do not "directly implicate the activities of the Federal Government."  603 U.S. at 629.  That includes answering criticisms and accusations that bear on the President's fitness for office, such as those raised by the press stories that the President discussed with Ms. Hicks.  Indeed, the Supreme Court has already stated (in a decision DANY does not address) that when "persons authorized to speak for the President publicly . . . deny[]" allegations of personal misconduct by the President, such denials at least "*may* involve conduct within the outer perimeter of the President's official responsibilities."  *Clinton* v. *Jones*, 520 U.S. 681, 686 (1997) (emphasis added).  An argument that the Supreme Court has said "may" be right is by definition colorable.  And indeed, multiple D.C. Circuit decisions have embraced that position as the correct (not just colorable) view.  In *Council on American Islamic Relations* v. *Ballenger*, for example, the D.C. Circuit found a "clear nexus between [a] congressman answering a reporter's question about the congressman's personal life and [his] ability to carry out his representative responsibilities effectively," bringing such statements within the scope of his official employment.  444 F.3d 659, 664-666 (D.C. Cir. 2006); *see Wilson* v. *Libby*, 535 F.3d 697, 702, 712 (D.C. Cir. 2008) (same for high-ranking government officials who leaked identity of undercover CIA agent to "discredit" her husband as a "public critic[] of the Executive Branch").

13

DANY's arguments concerning the other evidence are no more persuasive.  DANY claims (at 45) that it introduced President Trump's official statements on Twitter only to "show their effect on" Michael Cohen, and not to "invite the jury to inspect the President's motivations" for making the statements in direct violation of *Trump*, 603 U.S. at 632 n.3.  Not so.  In summation, DANY told the jury in no uncertain terms that "these tweets were . . . *designed to send a clear message* to other potential witnesses:  Cooperate, and you will face the wrath of Donald Trump." ECF No. 69-1 at 30 (emphasis added).  That was a clear invitation to "inspect the President's motivations."  603 U.S. at 632 n.3.  DANY also claims (at 49) that the alleged discussions between President Trump and Attorney General Jeff Sessions were not colorably official because the "FEC is an independent administrative agency."  That ignores that (i) the FEC may refer matters to the Justice Department for criminal enforcement, 52 U.S.C. § 30109(a)(5)(C); and (ii) there is no such thing as an agency that is free from Presidential oversight, as *Trump* made clear about the FEC itself, 603 U.S. at 627.  Finally, DANY does not even dispute that the testimony it compelled from the former Director of Oval Office Operations Madeleine Westerhout was a "highly intrusive" exercise in exposing the general functioning of the Presidency to "probing," "second-guessing," and "inspection," again in direct contravention of *Trump*.  603 U.S. at 632 n.3.

DANY also contends that its introduction of official-acts evidence "at most give[s] rise to a presumption of immunity that is easily rebutted here."  Opp. 44; *see id.* at 47.  That argument fails too.  As an initial matter, if President Trump's arguments are strong enough to shift the burden of persuasion to DANY, they are by definition colorable and thus trigger removal.  In addition, the Supreme Court in *Trump* did not "decide whether th[e] immunity" that it recognized "is presumptive or absolute"; rather, the Court held that there is "*at least* a presumptive immunity from criminal prosecution for a President's acts within the outer perimeter of his official

responsibility." 603 U.S. at 614-615 (emphasis added). President Trump's (more than colorable) position is that the immunity is indeed absolute in this case.

In any event, it was DANY's "burden to rebut the presumption" by demonstrating that having the jury scrutinize the evidence here "pose[d] *no* dangers of intrusion on the authority and functions of the Executive Branch." *Id.* at 615, 624. The state trial court erred by allowing DANY to introduce this evidence, and to highlight it in closing, without having to first carry that burden. And even if DANY were permitted to belatedly do so now, that would only confirm that President Trump's defense is at least colorable, as required for removal.

**B.    The Second Removal Notice Asserted Multiple Colorable Federal Defenses.**

**1.    President Trump's notice presented a colorable immunity defense.**

Because DANY introduced significant evidence concerning what are at least colorably official Presidential acts, President Trump has a colorable defense of Presidential immunity. *See* Opening Br. 28-30. On this point, too, DANY mostly just argues the merits (at 38-41), claiming that (i) harmless-error review applies, and (ii) DANY's introduction of official-acts evidence was harmless beyond a reasonable doubt.

DANY is wrong on both of its responses. *See* Opening Br. 29-30. On whether harmless-error review applies, DANY says (at 40) that the Supreme Court's decision in *Trump* did not "mention[], let alone dispense[] with, harmless-error review." But that is a strawman; the point is that the way *Trump* conceived of and analyzed Presidential immunity means that any violation requires *per se* reversal.

In any event, even if harmless-error review applied (it does not), it is at least *colorable* that the Second Circuit would find a "*reasonable possibility* that the erroneously admitted evidence *contributed to the conviction*" and thus was not "harmless beyond a reasonable doubt." *People*

15

v. *Hamlin*, 71 N.Y.2d 750, 756 (1988) (emphasis added).  On that point, DANY notably offers no response to its "repeated, emphatic references in closing arguments to" the official-act evidence at issue as "'devastating,' 'damaging,' and 'critical pieces of the puzzle' that supposedly 'put the nail in the coffin' of President Trump" by demonstrating his knowledge and intent.  Opening Br. 30. Those characterizations alone are dispositive.  Their impact is magnified even further because DANY's *only* direct evidence of President Trump's state of mind was the testimony of Michael Cohen, who had previously told even his own attorneys that President Trump was innocent, *see* Dkt. 71-9 at 25, and who has now explained that in addition to being pressured and coerced, he changed his story "to do whatever [he] could to obtain [his] Rule 35(b) [substantial-assistance] motion" and be released early from prison.  Cohen, *supra*, 16.

DANY also claims that President Trump "failed to preserve many of his federal claims about the alleged inadmissibility of purported official-acts evidence," and that the trial court's preservation ruling precludes federal review.  Opp. 27.  That is wrong twice over.  In fact, the state trial court found that President Trump properly objected to much of the evidence at issue, including the relevant testimony by Hope Hicks and President Trump's official statements on Twitter (now X).  *See* Opening Br. 29.  DANY does not dispute that if either of those objections is colorable, which both are, the entire case must be removed.  *See id.*

Regardless, the trial court's ruling that President Trump's other evidentiary objections were not preserved is wrong and is entitled to no preclusive effect.  After removal, the Second Circuit can review that ruling, like any other ruling of the trial court.  *See, e.g.*, *Reilly* v. *Waukesha Cnty.*, 993 F.2d 1284, 1287 (7th Cir. 1993) ("A state court's decisions prior to removal are merged into the final judgment and may be reviewed on appeal" by a federal appellate court.).

Last, DANY asserts that President Trump's evidentiary-immunity argument is somehow not the kind of "true defense" that is necessary to trigger the power to remove. Opp. 37. That theory contradicts binding precedent. As the Second Circuit has held, under the federal-officer removal statute, there are "few limitations on what qualifies as a colorable federal defense": the defendant need only "raise a claim that is 'defensive,'" "based in federal law," and "aris[ing] out of [his] official duties." *Isaacson* v. *Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008) (quoting *Arizona* v. *Manypenny*, 451 U.S. 232, 241 (1981)). After all, the point of the "colorable federal defense" requirement is not to draw a line between "true defenses" and other kinds (whatever that means), but to ensure that the removal statute does not "expand[] the jurisdiction of the federal courts beyond the bounds established by the Constitution." *Mesa*, 489 U.S. at 136. The "colorable federal defense" requirement serves that goal by ensuring the presence of at least one federal question to provide "the substantive Art. III foundation." *Id.* at 136-137. Here, there is no doubt that President Trump's evidentiary-immunity argument is "defensive" in nature, "based in federal law," and arises directly out of his official position. *Isaacson*, 517 F.3d at 138. That is all that is needed.[1]

### 2. President Trump's notice presented a second colorable defense of preemption.

In his opening brief, President Trump also summarized (at 30-31) his separate federal defense of preemption under FECA. In short, DANY convicted President Trump under the unprecedented theory that N.Y. Election Law § 17-152—the sole predicate crime DANY offered

---

[1]    DANY points to *New York* v. *De Vecchio*, 468 F. Supp. 2d 448, 463 (E.D.N.Y. 2007), which predated *Isaacson* and is no longer good law. Regardless, *De Vecchio* is distinguishable. The defendant's suppression-of-evidence defense there arose not out of his official duties, but from a supposed grant of testimonial immunity offered by federal investigators. *Id.*

to the jury to create a felony here—makes it a crime under New York law to make a federal campaign contribution prohibited by FECA.

At DANY's request, the state trial court instructed the jury that one of the ways that a defendant can "promote or prevent the election of any person to a public office by unlawful means," and thus violate Section 17-152, is by engaging in a "violation[] of the Federal Election Campaign Act." Declaration of Matthew A. Schwartz, Ex. C at 29-30, 32. The state court then defined the elements of a FECA violation, *id.* at 32-34, including by instructing the jury on how FECA defines the term "contribution" and explaining that Presidential contributions greater than $2,700 are "unlawful under [FECA]," *id.* at 32-33. DANY then urged the jury to find that President Trump had "intent to conspire to promote [his own] election by any unlawful means," the "most obvious" of which was "potential Federal campaign finance violations known as FECA violations," including a "corporate campaign contribution" and a supposed "FECA violation . . . from Cohen making and the Defendant accepting excessive campaign contribution[s]." Dkt. 69-1 at 66-68.

Construed and applied in that FECA-duplicative way, Section 17-152 is preempted. FECA expressly and broadly preempts "any provision of State law with respect to election to Federal office." 52 U.S.C. § 30143(a). That language preempts any State law that, like Section 17-152 under DANY's theory, imposes a "limitation on contributions and expenditures regarding Federal candidates." 11 C.F.R. § 108.7(b)(3); *see, e.g., Holtzman* v. *Oliensis*, 91 N.Y.2d 488, 495 (1998) (FECA preempts all state "regulation of the conduct and financing of campaigns for Federal elective office").

DANY's opposition does not dispute a single one of these controlling points. It does not make any attempt to explain how its application of Section 17-152 is not preempted, let alone that

preemption is not even a colorable defense. Instead, DANY says that President Trump's opening brief did not "engage with or even acknowledge this Court's explanation" in its initial remand decision "for why FECA does not preempt . . . Election Law § 17-152." Opp. 49-50.

That argument is wrong. In July 2023, this Court ruled that Section 17-152 was "not preempted by FECA" because the "conduct prohibited by [Election Law] § 17-152" is *not* "covered by any . . . provision of FECA." 683 F. Supp. 3d at 350. But the Court correctly recognized that FECA preempts a state law "if the law, *or its application*, constitutes a specific regulation of conduct covered by FECA." *Id.* (emphasis added). The Court even emphasized that Section 17-152 was unlike "other provisions of New York's election law that directly target campaign contributions and expenditures, *and which, therefore, are preempted*." 683 F. Supp. 3d at 350 (emphasis added). But that statement was based on DANY's representations that have proven to be untrue. At trial, contrary to what it represented to this Court in opposing remand in May 2023, DANY urged the jury to apply Section 17-152 in a manner that undeniably "target[s] campaign contributions and expenditures." So by this Court's earlier—correct—logic, DANY's application of Section 17-152 in this case is preempted. That makes President Trump's preemption defense not only colorable but correct.

Try as it might, DANY cannot deny that it "obscur[ed] the FECA-based theory of Section 17-152 that [it] eventually submitted to the jury" from this Court during the initial removal proceedings. Opening Br. 32. At the time of the first removal notice in May 2023, DANY had identified four potential predicate crimes that it might eventually put to the jury: Section 17-152, N.Y. Tax Law §§ 1801(a)(3) and 1802, N.Y. Penal Law §§ 175.05 and 175.10, and FECA itself. ECF No. 49-1 at 9. But late in the trial, and pressing for a conviction in this most political and high-profile of cases, DANY shifted to a novel and convoluted theory of liability, under which it

charged *only* Section 17-152 as the sole predicate, but then claimed that Section 17-152 is itself

violated, in turn, by violating FECA.  DANY had never previously suggested that it would stack

predicates in that way.  To the contrary, DANY expressly assured this Court that its theory of

liability would "*not relate to* the specific disclosures mandated by FECA."  ECF No. 38 at 12

(emphasis added).  DANY then turned around and did the exact opposite at trial.  DANY now

protests that it did not intend to mislead.  But DANY convinced this Court to base its earlier July

2023 decision on removal on the key premise that Section 17-152 could not be applied in exactly

the preempted way that DANY later applied it at trial to convict President Trump.

DANY lastly says that because President Trump "did not appeal from this Court's prior

ruling" remanding the case in July 2023, "he is barred from simply relitigating the Court's prior

conclusion" on FECA.  Opp. 50.  In support, DANY cites only *Allen* v. *McCurry*, 449 U.S. 90

(1980), but does not explain its relevance.  Assuming DANY meant to refer to the law-of-the-case

doctrine, that doctrine allows a court to reconsider an earlier ruling for "'cogent' or 'compelling'

reasons," including but not limited to "the availability of new evidence" or information "or the

need to correct a clear error or prevent manifest injustice."  *United States* v. *Tenzer*, 213 F.3d 34,

39 (2d Cir. 2000).  All of those reasons apply to this kind of case, where DANY's post-remand

conduct at trial contradicted what DANY told this Court before it issued its July 2023 remand

decision.  And even if this Court could not reconsider its preemption conclusion, the Second

Circuit has every right to review President Trump's preemption defense on his appeal from the

final judgment after removal.

## III.   DANY CANNOT DENY THAT PRESIDENT TRUMP HAD GOOD CAUSE FOR SEEKING TO REMOVE WHEN HE DID.

In its Opposition, DANY trains most of its focus (at 17-30) on the final "good cause"

question.  That is a shift from DANY's earlier briefing in the Second Circuit, which mostly claimed

that removal is unavailable as a statutory matter and spent only 1.5 pages on good cause. *See* DANY 2d Cir. Br. 40-41. DANY now claims that President Trump lacks good cause because he did not seek this second removal *before* the Supreme Court's decision in *Trump* or immediately after that decision, and because state courts are best positioned to address the violation of Presidential immunity here. None of that is right.

**A.    President Trump Could Not Have Filed This Removal Notice Before The Supreme Court's Decision In *Trump*.**

DANY first claims that President Trump could have "raise[d] the same evidentiary claim based on presidential immunity that he raises now" *before* the Supreme Court's ruling in *Trump*. Opp. 18. DANY presses that in March 2024, several months before *Trump* was decided, President Trump filed a pre-trial motion in state court seeking to preclude official-acts evidence. *Id.* But that is irrelevant because President Trump plainly could not have sought a second removal at that time.

*First*, the President's evidentiary-immunity defense was not ripe for removal, as the state trial court had not yet permitted DANY to "invite the jury to examine acts for which a President is immune from prosecution." *Trump*, 603 U.S. at 631; *see* Opening Br. 31-32. Indeed, the state trial court instructed President Trump to "wait until trial" to "make [his] objections," as DANY itself concedes. Opp. 9 (citation omitted).

*Second*, before the Supreme Court's landmark decision in *Trump*, "[n]either the existence nor the parameters of [a former President's] special evidentiary immunity were established." U.S. Amicus Br. 15. At the time, Second Circuit law *denied the existence* of that kind of evidence-specific immunity, and permitted prosecutors to introduce evidence of immunized conduct to prove "charged non-immune conduct." *United States* v. *Zhong*, 26 F.4th 536, 553 n.9 (2d Cir. 2022) ("[T]here is no per se bar on the use of immune behavior in completing the story—or proving

a defendant's knowledge, intent, or planning—of charged non-immune conduct."). Under that binding precedent, any pre-*Trump* motion to remove to this Court based on evidentiary immunity would have been futile. Even DANY agreed in its Second Circuit briefing that *Trump* "announced *new rules*" for Presidential evidentiary immunity. DANY 2d Cir. Br. 32 (emphasis added). *Trump* was thus the kind of "intervening change in the law" that can appropriately "justif[y] a successive removal petition." *Fritsch* v. *Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 789 (9th Cir. 2018).[2]

In sum, the "good cause" clock here did not begin to run until *Trump* "change[d] [the] controlling law" and thus made this case removable on July 1, 2024. 2d Cir. Op. 18, 20.

## B.    President Trump Filed His Removal Motion Promptly After *Trump*.

In seeking to remove *less than two months* later on August 29, President Trump "diligently sought removal" and thus had "good cause" for his motion. 2d Cir. Op. 27. DANY's counterarguments all fail.

As President Trump explained (at 33-35 & n.7), "[d]ozens of decisions from district courts in this Circuit have held . . . that seeking relief within less than two months"—even within three or four months—"of learning of new grounds for relief demonstrates diligence" and is not "undue delay." President Trump cited 17 such cases, all of which concerned "good cause" procedural statutes that the Second Circuit expressly deemed "analogous" here. 2d Cir. Op. 18. By contrast, DANY fails to cite a single case—not even one—finding a lack of diligence where the movant

---

[2]    The best DANY can do is to invoke an out-of-circuit district court decision rejecting a defendant's attempt to excuse a late removal notice by pointing to *Trump*. Opp. 18-19 (citing *Arizona* v. *Meadows*, 2024 WL 4198384 (D. Ariz. Sept. 16, 2024)). But in that case, the defendant (who of course was never President of the United States) "acknowledged" that he could "have sought removal" regardless of "the issuance of the opinion in *Trump*" and admitted that *Trump* "did not bring new grounds [for removal] into existence" for his case. 2024 WL 4198384, at *4 & n.3.

acted within two months.  Indeed, DANY notably ignores this extensive authority.  "Because [DANY] failed to respond" to President Trump's arguments or authority on that score, DANY "has effectively conceded this argument."  *Brims* v. *Collado*, 2025 WL 2650802, at *3 (S.D.N.Y. Sept. 15, 2025).

DANY likewise ignores President Trump's separate, additional point that the two months between *Trump* and removal "caused no prejudice to either DANY or the New York courts." Opening Br. 35.  As President Trump explained (at 35), "even where the moving party has *not* shown diligence" (which he did), courts in this Circuit consistently find good cause for untimely filings where they are "not prejudicial."  *McGucken* v. *Content IQ LLC*, 2021 WL 5357473, at *1 (S.D.N.Y. Nov. 16, 2021) (Hellerstein, J.) (emphasis added).  DANY again says nothing and thus concedes the point.

Instead, DANY puts nearly all of its "good cause" eggs in one basket.  It asserts that President Trump's decision to "present his evidentiary claim . . . to the state court in the first instance"—rather than coming to federal court immediately—"weighs heavily against" good cause.  Opp. 19-20.  That is wrong for several reasons.

*First*, because DANY has effectively conceded that President Trump sought relief in a timely fashion and did not cause prejudice, it is irrelevant *why* President Trump moved when he did.  DANY's constant refrain of "strategic delay" cannot be squared with its concession that there was no meaningful "delay" in the first place.  Put differently, if a party files in a timely manner, with no prejudice to the other side, then courts need not "look behind" that decision to see whether the party might have filed even faster.

*Second*, as DANY admits, the few cases it cites in support of its "strategic delay" argument are not "good cause" cases at all, but rather cases addressing the separate question whether a

defendant has "affirmatively *waived*" its right to removal.  Opp. 20 (emphasis added).  DANY does not actually argue that President Trump waived his right to remove here, and for good reason: this case does not clear the high bar for finding waiver.

To waive the right to remove, a defendant must "take[] actions in state court that manifest his or her intent to have the matter adjudicated there, and *to abandon his or her right to a federal forum*."  *Kenny*, 881 F.3d at 790 (9th Cir. 2018); *see* 16 Moore's Federal Practice Civil § 107.132 (2026) (same).  Moreover, the "defendant's intent to remain in state court must be clear and unequivocal."  *Abraham Watkins Nichols Agosto Aziz & Stogner* v. *Festeryga*, 155 F.4th 456, 460 (5th Cir. 2025) (internal quotation marks omitted).  And "[w]aiver "is no casual affair," *id.*—as DANY's own case notes, "a finding of waiver is appropriate only in extreme situations, when judicial economy, fairness, and comity demand it."  *Northrop Grumman*, 865 F.3d at 186.

President Trump's actions do not come close to *clearly* and *unequivocally* manifesting an "intent to have [this] matter adjudicated" by the state courts, let alone an intent to "abandon his . . . right to a federal forum."  *Kenny*, 881 F.3d at 790.  Just the opposite:  President Trump invoked his right to federal forum at the first opportunity in 2023, ECF No. 1, urging this Court to exercise jurisdiction and resolve his federal defenses of "preemption and federal immunity," ECF No. 34 at 25.  That alone distinguishes the handful of cases finding waiver that DANY cites (at 20), none of which involved a second attempt to remove by a defendant who had already been unsuccessful in his first attempt to remove.

*Third*, President Trump engaged in no strategic delay on removal issues.  He had no practical choice but to raise his *Trump*-based evidentiary defense to the state court immediately after the Supreme Court ruled on July 1, 2024.  At that time, as President Trump has explained throughout these proceedings, he was under extraordinary time pressure to "forestall an[]

unprecedented development:  the criminal sentencing of a Presidential candidate weeks before the general election," Reply Brief 32, *Trump*, No. 24-2299 (2d Cir. Mar. 3, 2025), Dkt. 68, which was scheduled for July 11, ECF No. 49-1 at 15.  Faced with possible incarceration in just ten days, President Trump could not rest on the hope that this Court would act extremely quickly on a motion for leave to remove and then address the Presidential immunity issue raised by *Trump*.  Instead, he had no real choice but to raise the *Trump* decision with the state court to try to stave off imminent and irreparable injury.  Litigating in state court does not waive removal when the posture of the case effectively "compel[s] [the] defendant's state-court participation" to avoid "potential harm."  *Albuquerque*, 864 F.3d at 1099 (10th Cir. 2017); *see Yusefzadeh* v. *Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (no waiver if state "place[s] [the] state court defendant in a quandary" that requires state-court participation).

Ignoring these extraordinary circumstances and the dilemma that they posed to President Trump, DANY instead claims that his real strategy was to "take two bites at the apple":  to first "experiment on his case in state court, and, upon an adverse decision, then transfer it to federal court."  Opp. 20-21 (quoting *Rosenthal* v. *Coates*, 148 U.S. 142, 147 (1893)).  DANY is incorrect.  DANY ignores that President Trump sought to remove *weeks before* the state trial court rendered "an adverse decision" on immunity.  *Rosenthal*, 147 U.S. at 147.  "Filing a motion that sits idle" and does not actually result in a "hearing or ruling . . . does not trigger waiver." *Abraham Watkins*, 155 F.4th at 461.  Again, President Trump was seeking the speediest possible resolution of his evidentiary-immunity defense, in keeping with the Supreme Court's instruction that questions of Presidential immunity may not be "postponed until after conviction and sentence." *Trump*, 603 U.S. at 654 (Barrett, J., concurring in part); *see* 603 U.S. at 635-636 (majority op.) (immunity issues "must be addressed at the outset of a proceeding" because the "essence of immunity is the

entitlement not to be subject to suit"). When the state court did not act promptly and indicated that it would not allow time for interlocutory appeal of any adverse decision, he diligently moved in federal court.

DANY wrongly asserts that President Trump evinced a clear "lack of respect for the state court[]" by not seeking to remove right after the Supreme Court issued its decision in *Trump*. Opp. 21. But President Trump was in an impossible position. If he had come to this Court immediately, DANY would surely have charged that he was not giving the state court the respect to consider the immunity issue. After all, the state court had "already considered the parties' (pre-*Trump*) briefing and arguments on Presidential evidentiary immunity" and was obviously "familiar with the contours and impact of the official-acts evidence" at issue. Opening Br. 36. The "doctrine of comity" sometimes requires that the court that is "already cognizant of the litigation" be given "an opportunity to pass upon the matter." *Ortiz* v. *McBride*, 380 F.3d 649, 660 (2d Cir. 2004) (citation omitted). Stuck in a dilemma where he would be second-guessed either way, President Trump made the most reasonable choice: he asked the state court to stop the impending criminal sentencing of a president, and leading Presidential candidate, then moved to federal court when the state court did not act promptly.

### C.    DANY's Other Assorted "Good Cause" Arguments Are Unpersuasive.

Although DANY raises a handful of additional arguments against "good cause," they are no more persuasive than its failed timing objections.

*First*, DANY says (at 26) that this Court should deny leave to remove because President Trump has also raised "multiple state-law issues" in his appeal that, "if resolved in [his] favor," could "eliminat[e] any need to resolve questions about defendant's purported federal defenses." DANY is right that President Trump has multiple meritorious arguments under state law—arising

out of the unlawful and convoluted way that DANY twisted the law to fabricate an unprecedented felony charge here.  But a federal court may not decline jurisdiction over a properly removed case just because the case may also present questions of state law.[3]  Almost by definition, state-law questions will commonly be present in criminal cases removed from state court.

*Second*, DANY contends that "[t]he advanced stage of the state proceedings" itself "warrants denial of leave."  Opp. 25; *see id*. at 25-26 ("[T]he post-sentencing posture of a criminal prosecution provides multiple . . . compelling reasons to channel a defendant's federal defenses through the ordinary state-court appellate process."); *id.* at 55 ("There is no good reason to disrupt the state appellate proceedings midstream.").  That too is wrong.

For starters, it is irrelevant what has happened since August 2024, when President Trump filed the instant motion for leave to remove.  As President Trump explained (at 20), it is black-letter law that "[t]he propriety of removal under the [federal-officer removal] statute should be considered at the time of removal."  *Pantalone* v. *Aurora Pump. Co.*, 576 F. Supp. 2d 325, 329 (D. Conn. 2008); *see Vera* v. *Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003) ("[W]e generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed.").  DANY offers no counterargument.  Instead, DANY irrelevantly cites (at 26) the Second

---

[3]     DANY quotes a district court decision for the proposition that where "federal and state interests" are "at issue in a criminal case," that "actually favor[s] the resolution of [the] case in State court."  Opp. 26 (quoting *Georgia* v. *Meadows*, 692 F. Supp. 3d 1334, 1340 (N.D. Ga. 2023). But that quote is taken badly out of context from an unpersuasive and irrelevant decision.  In *Meadows*, the court had already concluded, in an earlier opinion denying removal, that it had "no jurisdiction over the removal of Meadows's criminal prosecution" because his alleged conduct involved "constitutionally protected state actions" and "clearly [fell] outside [federal] executive authority."  *Georgia* v. *Meadows*, 692 F. Supp. 3d 1310, 1333 (N.D. Ga. 2023).   DANY misleadingly quotes from the court's *later* opinion denying a stay, in which the court explained that it had already "indicated that the federal and state interests at issue in Meadows's action actually favor the resolution of his case in the State Court," 692 F. Supp. 3d at 1340—*because* the prosecution was not subject to removal.  That says nothing about whether a federal court should exercise jurisdiction where the prosecution *is* subject to removal.

Circuit's statement that "good cause" is a "flexible standard that requires consideration of all interests in the particular case." That simply refers to the wide range of "interests" that may have been implicated *as matters stood when President Trump filed this motion*.[4]

Regardless, nothing in the past 17 months undermines the case for removal. To the extent the Court is concerned about the progress of the state appeal—which, again, is not legally relevant—a decision from the New York intermediate appellate court is not likely to come anytime soon. DANY has not yet even filed a merits brief in that proceeding, and DANY has indicated that it may seek further extensions to the briefing deadlines. Thus, the practical effect of granting leave to remove here would simply be to move the pending appeal by the President from the state intermediate appellate court to the Second Circuit, where it belongs. *See supra*, p. 8. That outcome would cause no meaningful delay, disruption, or prejudice.

DANY tries to muddy those procedural waters by insisting without citation (at 28) that it would be "entitled to file a remand motion" before this Court if the Court grants leave to remove. The Court should ignore that obvious delay tactic and reject any such further filings. DANY has already filed a 57-page, 15,000-word brief opposing federal jurisdiction in this case, on top of the two appellate briefs it filed on the same issues before the Second Circuit. DANY has had more than enough time and space to fully develop its arguments. Further repetitive briefing after this Court has decided the jurisdictional questions here would make a mockery of the Supreme Court's admonition that a federal "officer need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407.

---

[4]    DANY quotes *Missouri* v. *Pate*, 2024 WL 3518594 (E.D. Mo. July 24, 2024), without acknowledging that *Pate* concerned a defendant's attempt to remove *nine years* after his *appeal* had terminated. *See* Opening Br. 17 n.1.

## CONCLUSION

For the foregoing reasons, the Court should grant President Trump's motion for leave to file his second removal notice. The Court should then immediately adopt the state court judgment to enable President Trump to file a notice of appeal and seek reversal of the judgment in the Second Circuit.

Dated: January 21, 2026

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Matthew A. Schwartz
James M. McDonald
Maxwell F. Gottschall
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000
giuffrar@sullcrom.com

Jeffrey B. Wall*
Morgan L. Ratner*
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, DC 20006
Tel: (202) 956-7000

*Counsel for President Donald J. Trump*

*\*pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2026, I electronically filed the foregoing Reply with the Clerk of the Court using the CM/ECF system.  I certify that service will be accomplished by the CM/ECF system for all participants in this case who are registered CM/ECF users.

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*