**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, <br><br> v. <br><br> DONALD J. TRUMP, <br><br> *Defendant*. | No. 23 Civ. 3773 (AKH) <br><br> **ORAL ARGUMENT SCHEDULED FOR FEBRUARY 4, 2026** |

**DECLARATION OF MATTHEW A. SCHWARTZ IN SUPPORT OF PRESIDENT TRUMP'S REPLY IN SUPPORT OF HIS MOTION FOR LEAVE TO FILE SECOND NOTICE OF REMOVAL**

I, Matthew A. Schwartz, hereby declare under penalty of perjury as follows:

1.      I am a member of the Bar of the State of New York and a partner at Sullivan & Cromwell LLP, counsel for President Donald J. Trump in the above-captioned action.  I respectfully submit this Declaration in support of President Trump's Reply in Support of His Motion for Leave to File a Second Notice of Removal.

2.      Attached to this Declaration as Exhibit C is an excerpt of a true and correct copy of a transcript of trial proceedings that took place before the New York Supreme Court in this case on May 29, 2024.  The excerpt provided is of the jury charge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 21, 2026, in New York, New York.

*/s/ Matthew A. Schwartz*
Matthew A. Schwartz

Exhibit C

Case 1:23-cv-03773-AKH    Document 78-1    Filed 01/21/26    Page 3 of 58

A7883

**Jury Charge and Deliberations Transcript, dated May 29, 2024**
**[pp. A7883 - A7976]**

```
                                                              4815

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - CRIMINAL TERM - PART: 59
 - - - - - - - - - - - - - - - - - - - - - X
THE PEOPLE OF THE STATE OF NEW YORK,          Indict. No.
                                              71543-2023

   -against-                                  CHARGE

DONALD J. TRUMP,
                                              FALSIFYING BUSINESS
                                               RECORDS 1ST DEGREE
    DEFENDANT.
                                              JURY TRIAL
 - - - - - - - - - - - - - - - - - - - - - X
                           100 Centre Street
                           New York, New York 10013
                           May 29, 2024
B E F O R E:
                  HONORABLE JUAN M. MERCHAN
                  JUSTICE OF THE SUPREME COURT

A P P E A R A N C E S:
FOR THE PEOPLE:
ALVIN BRAGG, JR., ESQ.
DISTRICT ATTORNEY, NEW YORK COUNTY
One Hogan Place
New York, New York 10013
BY:  JOSHUA STEINGLASS, ESQ.
     MATTHEW COLANGELO, ESQ.
     SUSAN HOFFINGER, ESQ.
     CHRISTOPHER CONROY, ESQ.
     BECKY MANGOLD, ESQ.
     KATHERINE ELLIS, ESQ.
Assistant District Attorneys


BLANCHE LAW
BY:  TODD BLANCHE, ESQ.
     EMIL BOVE, ESQ.
     KENDRA WHARTON, ESQ.


NECHELES LAW, LLP
BY:  SUSAN NECHELES, ESQ.
Attorneys for the Defendant
                             SUSAN PEARCE-BATES, RPR, CSR, RSA
                             Principal Court Reporter
                             LAURIE EISENBERG, RPR, CSR
                             LISA KRAMSKY
                             THERESA MAGNICCARI
                             Senior Court Reporters
```

4816

 1              SERGEANT:  All rise.

 2              Part 59 is now in session.  The Honorable Juan

 3     Merchan presiding.

 4              THE CLERK:  This is The People of the State of

 5     New York against Donald J. Trump.  Indictment 71543 of

 6     2023.

 7              Appearances starting with the People, please.

 8              MR. STEINGLASS:  For the People, ADAs Joshua

 9     Steinglass, Matthew Coangelo, Susan Hoffinger, Becky

10     Mangold, Christopher Conroy and Katherine Ellis.

11              Good morning.

12              THE COURT:  Good morning.

13              MR. BLANCHE:  Todd Blanche, and I am joined by

14     Emil Bove, Susan Necheles and Kendra Wharton on behalf of

15     President Trump to my left.

16              Good morning.

17              THE COURT:  Good morning.

18              Good morning, Mr. Trump.

19              I believe that you were both presented with the

20     proposed verdict sheet and I see that, Mr. Steinglass, you

21     initialed it on behalf of the People.

22              Mr. Bove, you initialed it on behalf of the

23     Defense.  Is that right?

24              MR. BLANCHE:  Yes.

25              MR. STEINGLASS:  Yes.

A7885

Jury Charge

4817

1              THE COURT:  Anything that we need to go over
2       before we bring at jury out?
3              MR. STEINGLASS:  Very briefly.
4              As we were comparing a verdict sheet to the
5       charge, we noticed a minor omission.
6              On Page 40, for the 34th Count to be consistent
7       with the other counts, we believe it should say after the
8       date, bearing check number 003006.
9              THE COURT:  That was for the 34th Count, right?
10             MR. STEINGLASS:  Yes, Judge.
11             Thank you.
12             THE COURT:  Anything else?
13             All right.
14             Let's get the jury, please.
15             SERGEANT:  All rise.
16             Jury entering.
17                 (Whereupon, the jurors entered the courtroom
18                 and were properly seated.)
19             THE COURT:  You may be seated.
20             THE CLERK:  Do all parties stipulate that all
21      jurors are present and properly seated?
22             MR. STEINGLASS:  Yes.
23             MR. BLANCHE:  Yes.
24             THE CLERK:  Thank you.
25             THE COURT:  Good morning, Jurors.

A7886

Jury Charge

4818

1    Members of the Jury, I will now instruct you on

2  the law.  I will first review the general principles of law

3  that apply to this case and all criminal cases.

4    You have heard me explain some of those

5  principles at the beginning of the trial.  I am sure you

6  can appreciate the benefits of repeating those instructions

7  at this stage of the proceedings.

8    Next, I will define the crimes charged in this

9  case, explain the law that applies to those definitions and

10  spell out the elements of the charged crimes.

11    Finally, I will outline the process of jury

12  deliberations.

13    These instructions will take about an hour, and

14  you will not receive copies of them.  You may however,

15  request that I read them back to you in whole or in part as

16  many times as you wish, and I will be happy to do so.

17    During these instructions, I will not summarize

18  the evidence.  If it is necessary, I may refer to portions

19  of the evidence to explain the law that relates to it.  My

20  reference to evidence, or my decision not to refer to

21  evidence, expresses no opinion about the truthfulness,

22  accuracy or importance of any particular evidence.

23    In fact, nothing I have said in the course of

24  this trial was meant to suggest that I have an opinion

25  about this case.  If you have formed an impression that I

A7887

Jury Charge

4819

1    do have an opinion, you must put it out of your mind and

2    disregard it.

3          The level of my voice or intonation may vary

4    during these instructions.  If I do that, it is done to

5    help you to understand.  It is not done to communicate any

6    opinion about the law or the facts of the case or of

7    whether the Defendant is guilty or not guilty.

8          It is not my responsibility to judge the evidence

9    here.  It is yours.  You are the judges of the facts, and

10   you are responsible for deciding whether the Defendant is

11   guilty or not guilty.

12         Remember, you have promised to be a fair juror.

13   A fair juror is a person who will simply keep their promise

14   to be fair and impartial and who will not permit the

15   verdict to be influenced by bias or prejudice in favor of

16   or against the person who appeared in this trial on account

17   of that person's race, color, national origin, ancestry,

18   gender, gender identity or expression, religion, religious

19   practice, age, disability or sexual orientation.

20         And further, a fair juror must be mindful of any

21   stereotypes, attitudes about people or about groups of

22   people that the juror may have and must not allow those

23   stereotypes or attitudes to affect their verdict.

24         As I have explained, we all develop and hold

25   unconscious views on many subjects.  Some of those

A7888

Jury Charge

4820

1    unconscious views may come from stereotypes and attitudes

2    about people or groups of people that may impact on a

3    person's thinking and decision-making without that person

4    even knowing it.

5            As a juror, you are asked to make a very

6    important decision about another member of the community.

7            I know you would not want to make that decision

8    based on such stereotypes or attitudes, that is, on what we

9    call implicit biases and it would be wrong for you to do

10   so.

11           A fair juror must guard against the impact of

12   such stereotypes or attitudes.  You can do this by asking

13   yourselves during your deliberations whether your views and

14   conclusions would be different if the Defendant, witnesses

15   or others that you have heard about or seen in court were

16   of a different race, color, national origin, ancestry,

17   gender, gender identity or expression, religious practice,

18   age or sexual orientation, or if they did not have a

19   disability.

20           If the answer is yes, then, in keeping with your

21   promise to be fair, reconsider your views and conclusions

22   along with the other jurors, and make sure your verdict is

23   based on evidence and not on stereotypes or attitudes.

24   Justice requires no less.

25           Jurors, you will recall that during jury

Jury Charge

4821

1    selection you agreed that you would set aside any personal

2    opinions or bias you might have in favor of or against the

3    Defendant, and that you would decide this case fairly on

4    the evidence and on the law.

5            Again, I direct you to decide this case on the

6    evidence and the law as it relates to the Defendant here on

7    trial.

8            You must set aside any personal opinions or bias

9    you might have in favor of or against the Defendant, and

10   you must not allow any such opinions to influence your

11   verdict.

12           Remember, also, in your deliberations, you may

13   not consider or speculate about matters relating to

14   sentence or punishment.  If there is a verdict of guilty,

15   it will be my responsibility to impose an appropriate

16   sentence.

17           When you judge the facts, you are to consider

18   only the evidence.

19           The evidence in this case includes:

20           The testimony of the witnesses, the exhibits that

21   were received in evidence, and the stipulations agreed to

22   by the parties.

23           Remember, a stipulation is information the

24   parties have agreed to present to the jury as evidence,

25   without calling a witness to testify.

Jury Charge

4822

1          Testimony which was stricken from the record or

2    to which an objection was sustained must be disregarded by

3    you.

4          Exhibits that were received in evidence, are

5    available, upon your request, for your inspection and

6    consideration.

7          Exhibits that were just seen during the trial, or

8    marked for identification but not received in evidence, are

9    not evidence, and are thus not available for your

10   inspection and consideration.

11         Testimony based upon those exhibits that were not

12   received in evidence may be considered by you.  It is just

13   the exhibit itself is not available for your inspection and

14   that may not be considered.

15         In evaluating the evidence, you may consider any

16   fact that is proven and any inference which may be drawn

17   from such fact.

18         To draw an inference means to infer, find,

19   conclude that a fact exists or does not exist based upon

20   proof of some other fact or facts.

21         So, for example, suppose you go to bed one night

22   and it is not raining, and when you wake up in the morning,

23   you look out your window.  You do not see rain, but you see

24   that the street and sidewalk are wet, and that people are

25   wearing raincoats and carrying umbrellas.  Under those

4823

1    circumstances, it may be reasonable to infer, and that is

2    conclude, that it rained during the night.

3         In other words, the fact of it having rained

4    while you were asleep is an inference that might be drawn

5    from the proven facts of the presence of the water on the

6    street and sidewalk, and people in raincoats and carrying

7    umbrellas.

8         An inference must only by drawn from a proven

9    fact or facts, and then, only if the inference flows

10   naturally, reasonably and logically from the proven fact or

11   facts, not if it is speculative.

12        Therefore, in deciding whether to draw than

13   inference, you must look at and consider all the facts in

14   light of reason, common sense, and experience.

15        As you know, certain exhibits were admitted into

16   evidence with some portions blacked out or redacted.  Those

17   redactions were made to remove personal identifying

18   information and to ensure that only relevant admissible

19   evidence was put before you.

20        You may not speculate as to what material was

21   redacted or why, and you may not draw any inference,

22   favorable or unfavorable against either party, from the

23   fact that certain material has been redacted.

24        You may recall that I instructed you several

25   times during the trial that certain exhibits were being

4824

1    accepted into evidence for a limited purpose only, and that

2    you were not to consider that evidence for any other

3    purpose.

4           Under the law we refer to that as a limiting

5    instruction.  I will now remind you of some of the limiting

6    instructions you were given during that trial.

7           You will recall that you heard testimony that

8    while David Pecker was an executive at AMI, AMI entered

9    into a Non-Prosecution Agreement with Federal prosecutors,

10   as well as the Conciliation Agreement with the Federal

11   Election Commission, the FEC.  I remind you that evidence

12   was permitted to assist you, the jury, in assessing David

13   Pecker's credibility and to help provide context for some

14   of the surrounding events.  You may consider that testimony

15   for those purposes only.

16          Neither the Non-Prosecution Agreement, nor the

17   Conciliation Agreement is evidence of the Defendant's

18   guilt, and you may not consider them in determining whether

19   the Defendant is guilty or not guilty of the charged

20   crimes.

21          You also heard testimony that the Federal

22   Election Commission conducted an investigation into the

23   payment to Stormy Daniels and of responses submitted by

24   Michael Cohen and his attorneys to the investigation.  That

25   evidence was permitted to assist you, the jury, in

A7893

Jury Charge

4825

1   assessing Michael Cohen's credibility and to help provide

2   context for some of the surrounding events.  You may

3   consider that evidence for those purposes only.

4          Likewise, you will recall that you heard

5   testimony that Michael Cohen pled guilty to violating the

6   Federal Election Campaign Act, otherwise known a FECA.  I

7   remind you that evidence was permitted to assist you, the

8   jury, in assessing Mr. Cohen's credibility as a witness and

9   to help provide context for some of the events that

10  followed.  You may consider that testimony for those

11  purposes, only.

12         Neither the fact of the FEC investigation, Mr.

13  Cohen and his attorney's responses or the fact that Mr.

14  Cohen pleaded guilty, constitutes evidence of the

15  Defendant's guilt and you may not consider them in

16  determining whether the Defendant is guilty or not guilty

17  of the charged crimes.

18         You will recall that certain Wall Street Journal

19  news articles were accepted into evidence during the trial.

20  I remind you now that the articles were accepted and may be

21  considered by you for the limited purpose of demonstrating

22  that the articles were published on or about a certain date

23  and to provide context for the other evidence.

24         The exhibits may not be considered by you as

25  evidence that any of the assertions contained in the

4826

1    articles is actually true.

2                    There were other exhibits which contained hearsay

3    and were not accepted for the truth of the matter asserted

4    but for another purpose.

5                    For example, there were several National Enquirer

6    headlines and an invoice from Investor Advisory Services

7    which is People's 161 in evidence.  Those were accepted for

8    the limited purpose of demonstrating that the articles were

9    published and the document created.

10                    There were also some text messages that were

11    accepted with a similar limitation.

12                    For example, People's Exhibit 171-A with respect

13    to Gina Rodriguez's texts only and 257 with respect to

14    Chris Cuomo's texts only.

15                    Those text messages were accepted for the limited

16    purpose of providing context for the responses by Dylan

17    Howard and Michael Cohen.

18                    The exhibits which were accepted into evidence

19    with a limiting instruction are 152, 153-A, 153-B, 153-C,

20    161, 171-A, 180, 181 and 257.

21                    If you have any additional questions or need

22    clarification as to which exhibits were accepted into

23    evidence with limitations, just send me a note with your

24    question and I will be happy to clarify.

25                    We now turn to the fundamental principles of our

4827

1    law that apply in all criminal trials:  The presumption of

2    innocence, the burden of proof and the requirement of proof

3    beyond a reasonable doubt.

4         Throughout these proceedings, the Defendant is

5    presumed to be innocent.  As a result, you must find the

6    Defendant not guilty, unless, on the evidence presented at

7    this trial, you conclude that the People have proven the

8    Defendant guilty beyond a reasonable doubt.

9         In determining whether the People have satisfied

10   their burden of proving the Defendant's guilt beyond a

11   reasonable doubt, you may consider all of the evidence

12   presented, whether by the People or by the Defendant.

13        In doing so, however, remember that, even though

14   the Defendant introduced evidence, the burden of proof

15   remains on the People.

16        The fact that the Defendant did not testify is

17   not a factor from which any inference unfavorable to the

18   Defendant may be drawn.

19        The Defendant is not required to prove that he is

20   not guilty.  In fact, the Defendant is not required to

21   prove or disprove anything.  To the contrary, the People

22   have the burden of proving the Defendant guilty beyond a

23   reasonable doubt.  That means, before you can find the

24   Defendant guilty of a crime, the People must prove beyond a

25   reasonable doubt every element of the crime including that

4828

1    the Defendant is the person who committed that crime.

2            The burden of proof never shifts from the People

3    to the Defendant.

4            If the People failed to satisfy their burden of

5    proof, you must find the Defendant not guilty, and if the

6    People satisfy their burden of proof you must find the

7    Defendant guilty.

8            What does our law mean when it requires proof of

9    guilt beyond a reasonable doubt?

10           The law uses the term of proof beyond a

11   reasonable doubt to tell you how convincing the evidence of

12   guilt must be to permit a verdict of guilty.

13           The law recognizes that in dealing with human

14   affairs, there are very few things in this world that we

15   know with absolute certainty.  Therefore, the law does not

16   require the People to prove a defendant guilty beyond all

17   possible doubt.

18           On the other hand, it is not sufficient to prove

19   that the Defendant is probably guilty.  In a criminal case,

20   the proof of guilt must be stronger than that.  It must be

21   beyond a reasonable doubt.

22           A reasonable doubt is an honest doubt of the

23   Defendant's guilt for which a reason exists based upon the

24   nature and the quality of the evidence.  It is an actual

25   doubt, not an imaginary doubt.  It is a doubt that a

4829

1    reasonable person, acting in a matter of this importance

2    would be likely to entertain because of the evidence that

3    was presented or because of the lack of convincing

4    evidence.

5            Proof of guilt beyond a reasonable doubt is proof

6    that leaves you so firmly convinced of the Defendant's

7    guilt that you have no reasonable doubt of the existence of

8    any element of the crime or of the Defendant's identity as

9    the person who committed the crime.

10           In determining whether the People have proven the

11   Defendant's guilt beyond a reasonable doubt, you should be

12   guided solely by a full and fair evaluation of the

13   evidence.

14           After carefully evaluating the evidence, each of

15   you must decide whether that evidence convinces you beyond

16   a reasonable doubt of the Defendant's guilt.

17           Whatever your verdict may be, it must not rest

18   upon baseless speculation.  Nor may it be influenced in any

19   way by bias, prejudice, sympathy, or by a desire to bring

20   an end to your deliberations or to avoid an unpleasant

21   duty.

22           If you are not convinced beyond a reasonable

23   doubt that the Defendant is guilty of a charged crime, you

24   must find the Defendant not guilty of that crime, and if

25   you are convinced beyond a reasonable doubt that the

4830

1    Defendant is guilty of a charged crime, you must find the

2    Defendant guilty of that crime.

3         As judges of the facts, you alone determine the

4    truthfulness and accuracy of the testimony of each witness.

5         You must decide whether a witness has told the

6    truth and was accurate, or instead, testified falsely or

7    was mistaken.

8         You must also decide what importance to give to

9    the testimony you accept as truthful and accurate.  It is

10   the quality of the testimony that is controlling, not the

11   number of witnesses who testified.

12        If you find that any witness has intentionally

13   testified falsely as to any material fact, you may

14   disregard that witness's entire testimony.  Or, you may

15   disregard so much of it as you find was untruthful, and

16   accept so much of it as you find to have been truthful and

17   accurate.

18        There is no particular formula for evaluating the

19   truthfulness and accuracy of another person's statements or

20   testimony.  You bring to this process all of your varied

21   experiences.  In life, you frequently decide the

22   truthfulness and accuracy of statements made to you by

23   other people.  The same factors used to make those

24   decisions, should be used in this case when evaluating

25   testimony.

4831

1                Some of the factors that you may wish to consider
2        in evaluating testimony of a witness are as follows:
3                Did the witness have an opportunity to see or
4        hear the events about which he or she testified?
5                Did the witness have the ability to recall those
6        events accurately?
7                Was the testimony of the witness plausible and
8        likely to be true, or was it implausible and not likely to
9        be true?
10               Was the testimony of the witness consistent or
11       inconsistent with other testimony or evidence in the case?
12               Did the manner in which the witness testified
13       reflect upon the truthfulness of that witness's testimony?
14               To what extent, if any, did the witness's
15       background, training, education or experience affect the
16       believability of that witness's testimony.
17               Did the witness have a conscious bias, hostility
18       or some other attitude that affected the truthfulness of
19       the witness's testimony?
20               Did the witness show an, unconscious bias, that
21       is, a bias that the witness may have even unknowingly
22       acquired from stereotypes and attitudes about people or
23       groups of people, and if so, did that unconscious bias
24       impact that witness's ability to be truthful and accurate.
25               You may consider whether a witness had, or did

4832

1     not have, a motive to lie.

2              If I witness had a motive to lie, you may

3     consider whether and to what extent, if any, that motive

4     affected the truthfulness of that witness's testimony.

5              If a witness did not have a motive to lie, you

6     may consider that as well in evaluating the witness's

7     truthfulness.

8              You may consider whether a witness hopes for or

9     expects to receive a benefit for testifying.  If so, you

10    may consider whether and to what extent it affected the

11    truthfulness of the witness's testimony.

12             You may consider whether a witness has any

13    interest in the outcome of the case, or instead, whether

14    the witness has no such interest.

15             You are not required to reject the testimony of

16    an interested witness, or to accept the testimony of a

17    witness who has no interest in the outcome of the case.

18             You may, however, consider whether an interest in

19    the outcome, or the lack of such interest, affected the

20    truthfulness of the witness's testimony.

21             You may consider whether a witness has been

22    convicted of a crime or has engaged in criminal conduct,

23    and if so, whether and to what extent it affects your

24    evaluation of the truthfulness of that witness's testimony.

25             You are not required to reject the testimony of a

4833

1    witness who has been convicted of a crime or who has

2    engaged in criminal conduct, or to accept the testimony of

3    a witness who has not.

4              You may, however, consider whether a witness's

5    criminal conviction or conduct has affected the

6    truthfulness of the witness's testimony.

7              You may consider whether a witness made

8    statements at this trial that are inconsistent with each

9    other.

10             You may also consider whether a witness made

11   previous statements that are inconsistent with his or her

12   testimony at trial.

13             You may consider whether a witness testified to a

14   fact here at trial that the witness omitted to state at a

15   prior time, when it would have been reasonable and logical

16   for the witness to have stated that fact.  In determining

17   whether it would have been reasonable and logical for the

18   witness to have stated the omitted fact, you may consider

19   whether the witness's attention was called to the matter,

20   and whether the witness was specifically asked about it.

21             If a witness has made such inconsistent

22   statements or omissions, you may consider whether and to

23   what extent they affect the truthfulness or accuracy of

24   that witness's testimony here at this trial.

25             The contents of a prior inconsistent statement

A7902

Jury Charge

4834

1    are not proof of what happened.  You may use evidence of a

2    prior inconsistent statement only to evaluate the

3    truthfulness or accuracy of the witness's testimony here at

4    trial.

5             You may consider whether a witness's testimony is

6    consistent with the testimony of other witnesses or with

7    other evidence in the case.

8             If there were inconsistencies by or among

9    witnesses, you may consider whether they were significant

10    inconsistencies related to important facts, or instead were

11    the kind of minor inconsistencies that one might expect

12    from multiple witnesses to the same event.

13             You have heard testimony about the prosecution

14    and defense counsel speaking to a witness about the case

15    before the witness testified at this trial.

16             The law permits the prosecution and defense

17    counsel to speak to a witness about the case before the

18    witness testifies, and the law permits the prosecutor and

19    defense counsel to review with the witness the questions

20    that will or may be asked at trial, including the questions

21    that may be asked on cross-examination.

22             You have also heard testimony that a witness read

23    or reviewed certain materials pertaining to this case

24    before the witness testified at trial.  The law permits a

25    witness to do so.

4835

1          Speaking to a witness about his or her testimony

2     and permitting the witness to review materials pertaining

3     to the case before the witness testifies is a normal part

4     of preparing for trial.

5          It is not improper as long as it is not suggested

6     that the witness depart from the truth.

7          The People have the burden of proving beyond a

8     reasonable doubt, not only that a charged crime was

9     committed, but that the Defendant is the person who

10    committed that crime.

11         Thus, even if you are convinced beyond a

12    reasonable doubt that a charged crime was committed by

13    someone, you cannot convict the Defendant of that crime

14    unless your also convinced beyond a reasonable doubt that

15    he is the person who committed that crime.

16         Under our law, Michael Cohen is an accomplice

17    because there is evidence that he participated in a crime

18    based upon conduct involved in the allegations here against

19    the Defendant.

20         Our law is especially concerned about the

21    testimony of an accomplice who implicates another in the

22    commission of a crime, particularly when the accomplice has

23    received, expects or hopes for a benefit in return for his

24    testimony.

25         Therefore, our law provides that a defendant may

Jury Charge

4836

1    not be convicted of any crime upon the testimony of an

2    accomplice, unless it is supported by corroborative

3    evidence tending to connect the Defendant with the

4    commission of that crime.

5            In other words, even if you find the testimony of

6    Michael Cohen to be believable, you may not convict the

7    Defendant solely upon that testimony unless you also find

8    that it was corroborated by other evidence tending to

9    connect the Defendant with the commission of the crime.

10            The corroborative evidence need not, by itself,

11   prove that a crime was committed or that the Defendant is

12   guilty.  What the law requires is that there be evidence

13   that tends to connect the Defendant with the commission of

14   the crime charged in such a way as may reasonably satisfy

15   you that the accomplice is telling the truth about the

16   Defendant's participation in that crime.

17            In determining whether there is the necessary

18   corroboration, you may consider whether there is material,

19   believable evidence, apart from the testimony of Michael

20   Cohen, which itself tends to connect the Defendant to the

21   commission of the crime.

22            You may also consider whether there is material,

23   believable evidence, apart from the testimony of Michael

24   Cohen, which, while it does not itself tend to connect the

25   Defendant with the commission of the crime charged, it

4837

1    nonetheless so harmonizes with the narrative of the

2    accomplice as to satisfy you that the accomplice is telling

3    the truth about the Defendant's participation in the crime

4    and thereby tends to connect the Defendant to the

5    commission of the crime.

6           I will now instruct you on the law applicable to

7    the charged offenses.  That offense is falsifying business

8    records in the first degree, 34 counts.

9           Our law recognizes that two or more individuals

10   can act jointly to commit a crime, and that in certain

11   circumstances, each can be held criminally liable for the

12   acts of the others.  In that situation, those persons can

13   be said to be, acting in concert with each other.

14          Our law defines the circumstance under which one

15   person may be criminally liable for the conduct of another.

16          That definition is as follows:

17          When one person engages in conduct which

18   constitutes an offense, another is criminally liable for

19   such conduct when, acting with the state of mind required

20   for the commission of that offense, he or she solicits,

21   requests, commands, importunes, or intentionally aids such

22   person to engage in such conduct.

23          Under that definition, mere presence at the scene

24   of a crime, even with knowledge that the crime was taking

25   place, or mere association with a perpetrator of a crime,

A7906

Jury Charge

4838

1    does not by itself make a defendant criminally liable for

2    that crime.

3         In order for the Defendant to be held criminally

4    liable for the conduct of another which constitutes an

5    offense, you must find beyond a reasonable doubt:

6         First, that he solicited, requested, commanded

7    importuned, or intentionally aided that person to engage in

8    that conduct.

9         And second, that he did so with the state of mind

10   required for the commission of the offense.

11        If it is proven beyond a reasonable doubt that

12   the Defendant is criminally liable for the conduct of

13   another, the extent or degree of the defendant's

14   participation in the crime does to the matter.

15        A defendant proven beyond a reasonable doubt to

16   be criminally liable for the conduct of another in the

17   commission of crime is as guilty of the crime as if the

18   Defendant, personally, had committed every act constituting

19   that crime.

20        The People have the burden of proving beyond a

21   reasonable doubt that the Defendant acted in the state of

22   mind required for the commission of the crime, and either

23   personally, or by acting in concert with another person,

24   committed each of the remaining elements of the crime.

25        Your verdict on each count you consider, whether

4839

1    guilty or not guilty, must be unanimous.  In order to find

2    the Defendant guilty, however, you need not be unanimous on

3    whether the Defendant committed the crime personally, or by

4    acting in concert with another, or both.

5            The First Count is falsifying business records in

6    the first degree:

7            Under our law, a person is guilty of falsifying

8    business records in the first degree when, with intent to

9    defraud that includes an intent to commit another crime or

10   to aid or conceal the commission thereof, that person:

11           Makes or causes a false entry in the business

12   records of an enterprise.

13           The following terms used in that definition have

14   a special meaning under our law:

15           Enterprise means any entity of one or more

16   persons, corporate or otherwise, public or private, engaged

17   in business, commercial, professional, industrial, social,

18   political or governmental activity.

19           Business record means any writing or article,

20   including computer data or a computer program, kept or

21   maintained by an enterprise for the purpose of evidencing

22   or reflecting its condition or activity.

23           Intent means conscious objective or purpose.

24           Thus, a person acts with intent to defraud when

25   his or her conscious objective or purpose is to do so.

4840

1    Intent does not require premeditation.  In other
2    words, intent does not require advance planning.  Nor is it
3    necessary that the intent be in a person's mind for any
4    particular period of time.
5    The intent can be formed, and need only exist, at
6    the very moment the person engages in prohibited conduct or
7    acts to cause the prohibited result, and not at any earlier
8    time.
9    The question naturally arises as to how to
10   determine whether a defendant had the intent required for
11   the commission of a crime.
12   To make that determination in this case, you must
13   decide if the required intent can be inferred beyond a
14   reasonable doubt from the proven facts.
15   In doing so, you may consider the person's
16   conduct and all of the circumstances surrounding that
17   conduct, including, but not limited to, to the following:
18   What, if anything, did the person do or say?
19   What result, if any, followed the person's
20   conduct?
21   And was that result the natural, necessary and
22   probable consequence of that conduct.
23   Therefore, in this case, from the facts you find
24   to have been proven, decide whether you can infer beyond a
25   reasonable doubt that the Defendant had the intent required

4841

1    for the commission of this crime.

2              As I previously explained, a person acts with

3    intent to defraud when his or her conscious objective or

4    purpose is to do so.

5              In order to prove an intent to defraud, the

6    People need not prove that the Defendant acted with the

7    intent to defraud any particular person or entity.  A

8    general intent to defraud any person or entity suffices.

9              Intent to defraud is also not constricted to an

10   intent to deprive another of property or money and can

11   extend beyond economic concerns.

12             For the crime of falsifying business records in

13   the first degree, the intent to defraud must include an

14   intent to commit another crime or to aid or conceal the

15   commission thereof.

16             Under our law, although the People must prove an

17   intent to commit another crime or to aid or conceal the

18   commission thereof, they need not prove that the other

19   crime was, in fact, committed, aided, or concealed.

20             The People allege that the other crime the

21   Defendant intended to commit, aid, or conceal is a

22   violation of New York Election Law Section 17-152.

23             Section 17-152 of the New York Election Law

24   provides that any two or more than persons who conspire to

25   promote or prevent the election of any person to a public

A7910

Jury Charge

4842

1    office by unlawful means and which conspiracy is acted upon

2    by one or more of the parties thereto, shall be guilty of

3    conspiracy to promote or prevent an election.

4            Under our law, a person is guilty of such a

5    conspiracy when, with intent that conduct be performed that

6    would promote or prevent the election of a person to public

7    office by unlawful means, he or she agrees with one or more

8    persons to engage in or cause the performance of such

9    conduct.

10            Knowledge of a conspiracy does not by itself make

11    the Defendant a co-conspirator.  The Defendant must intend

12    that conduct be performed that would promote or prevent the

13    election of a person to public office by unlawful means.

14    Intent mean conscious objective or purpose.

15            Thus, a person acts with the intent that conduct

16    be performed that would promote or prevent the election of

17    a person to public office by unlawful means when his or her

18    conscious objective or purpose is that such conduct be

19    performed.

20            Evidence that Defendant was present when others

21    agreed to engage in the performance of a crime does not by

22    itself show that he personally agreed to engage in the

23    conspiracy.

24            (Whereupon, Principal Court Reporter, Susan

25    Pearce-Bates was relieved by Senior Court Reporter Lisa

Jury Charge

4843

1        Kramsky.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4844

```
 1                    *******
 2              (The following proceedings are continued from the
 3         preceding page.)
 4         THE COURT:  (Continuing.)
 5              Although you must conclude unanimously that the
 6    Defendant conspired to promote or prevent the election of
 7    any person to a public office by unlawful means, you need
 8    not be unanimous as to what those unlawful means were.
 9              In determining whether the Defendant conspired to
10    promote or prevent the election of any person to a public
11    office by unlawful means, you may consider the following:
12              One, violations of the Federal Election Campaign
13    Act, again, otherwise known as FECA;
14              Two, the falsification of other business records;
15         or, three, violation of tax laws.
16              The first of the People's theories of "unlawful
17    means," which I will now define for you is the Federal
18    Election Campaign Act.
19              Under the Federal Election Campaign Act, it is
20    unlawful for an individual to willfully make a contribution
21    to any candidate with respect to any election for Federal
22    office, including the office of President of the United
23    States, which exceeds a certain limit.
24              In 2015 and 2016, that limit was $2,700.
25              It is also unlawful under the Federal Election
```

Jury Charge

4845

1    Campaign Act for any corporation to willfully make a

2    contribution of any amount to a candidate or candidate's

3    campaign in connection with any Federal election, or for any

4    person to cause such a corporate contribution.

5            For purposes of these prohibitions, and expenditure

6    made in cooperation, consultation or concert with, or at the

7    request or suggestion of, a candidate or his agents shall be

8    considered to be a contribution to such candidate.

9            The terms "contribution" and "expenditure" include

10   anything of value, including any purchase, payment, loan, or

11   advance, made by any person for the purpose of influencing

12   any election to Federal office.

13           Under Federal law, a third party's payment of a

14   candidate's expenses is deemed to be a contribution to the

15   candidate, unless, the payment would have been made

16   irrespective of the candidacy.

17           If the payment would have been made even in the

18   absence of the candidacy, the payment should not be treated

19   as a contribution.

20           FECA's definitions of "contribution" and

21   "expenditure" do not include any cost incurred in covering

22   or carrying a news story, commentary, or editorial by a

23   magazine, periodical publication, or similar press entity so

24   long as such activity is a normal, legitimate press

25   function.

Lisa Kramsky,
Senior Court Reporter

4846

1          This is called the Press Exemption.

2          For example, the term "legitimate press function"

3    includes solicitation letters seeking new subscribers to a

4    publication.

5          The second of the People's theories of "unlawful

6    means," which I will define for you now is the falsification

7    of other business records.

8          Under New York Law, a person is guilty of

9    Falsifying Business Records in the Second Degree when with

10   intent to defraud, he or she makes or causes a false entries

11   in the business records of an enterprise.

12         I previously defined for you the terms enterprise,

13   business records and intent to defraud.

14         For purposes of determine whether Falsifying

15   Business Records in the Second Degree was an unlawful means

16   used by a conspiracy to promote or prevent an election here,

17   you may consider:

18         One, the bank records associated with Michael

19   Cohen's account formation paperwork for Resolution

20   Consultants -- for Resolution Consultants LLC and Essential

21   Consultants LLC accounts;

22          Two, the bank records associated with Michael

23   Cohen's wire to Keith Davidson;

24         Three, the invoice from Investor Advisory Services,

25   Inc., to Resolution Consultants LLC;

4847

1          And, four, the 1099-Miscellaneous forms that The

2    Trump Organization issued to Michael Cohen.

3          The People's third theory of "unlawful means,"

4    which I will define for you now, is a violation of Tax Laws.

5               Under New York State and New York City Law, it is

6    unlawful to knowingly supply or submit materially false or

7    fraudulent information in connection with any tax return.

8               Likewise, under Federal law, it is unlawful for a

9    person to willfully make any tax return, statement, or other

10   document that is fraudulent or false as to any material

11   matter, or that the person does not believe to be true or

12   correct as to every material matter.

13         Under these Federal, State and Local Laws, such

14   conduct is unlawful, even if it does not result in

15   underpayment of taxes.

16         In order for you to find the Defendant guilty of

17   the crime of Falsifying Business Records in the First

18   Degree, under count one of the indictment, the People are

19   required to prove, from all of the evidence in the case,

20   beyond a reasonable doubt, each of the following two

21   elements:

22         First, that on or about February 14th, 2017, in the

23   County of New York and elsewhere, the Defendant, personally,

24   or by acting in concert with another person or persons, made

25   or caused the false entry in the business records of an

4848

1    enterprise, specifically, an invoice from Michael Cohen

2    dated February 14th, 2017, marked as a record of the Donald

3    J. Trump Revocable Trust, and kept and maintained by The

4    Trump Organization;

5            And, two, that the Defendant did so with intent to

6    defraud that included an intent to commit another crime or

7    to aid or conceal the commission thereof.

8            If you find the People have proven beyond a

9    reasonable doubt each of those two elements, you must find

10    the Defendant guilty of this crime.

11            If you find that the People have not proven beyond

12    a reasonable doubt either one or both of those elements, you

13    must find the Defendant not guilty of this crime.

14            You have now heard me define the law for count one.

15    There are 33 remaining counts in the indictment.  Each for

16    Falsifying Business Records in the First Degree and each

17    occurring in New York County.

18            The only difference is that each count pertains to

19    a different business record and possibly a different date.

20            The underlying law applies in the same way to each

21    of the remaining counts so I will only repeat it in full one

22    more time before I read count 34.

23            Of course, you can ask me to repeat the law in its

24    entirety as many times as you wish and I will be happy to do

25    so.

4849

1     The second count pertains to an entry in the Detail

2     General Ledger for the Donald J. Trump Revocable Trust,

3     dated February 14th, 2017, bearing voucher number 842457,

4     and kept or maintained by The Trump Organization.

5     The third count pertains to an entry in the Detail

6     General Ledger for the Donald J. Trump Revocable Trust,

7     dated February 14th, 2017, bearing voucher number 842460,

8     and kept or maintained by The Trump Organization.

9     The fourth count pertains to a Donald J. Trump

10    Revocable Trust account check and check stub dated

11    February 14, 2017, bearing check number 000138, and kept or

12    maintained by The Trump Organization.

13    The fifth count pertains to an invoice from Michael

14    Cohen dated March 16, 2017, marked as a record of the Donald

15    J. Trump Revocable Trust and kept or maintained by The Trump

16    Organization.

17    The sixth count pertains to an entry in the Detail

18    General Ledger for the Donald J. Trump Revocable Trust,

19    dated March 17, 2017, bearing voucher number 846907, and

20    kept or maintained by The Trump Organization.

21    The seventh count pertains to a Donald J. Trump

22    Revocable Trust account check and check stub dated

23    March 17th, 2017, bearing check number 000147, and kept or

24    maintained by The Trump Organization.

25    The eighth count pertains to an invoice from

A7918

Jury Charge

4850

1  Michael Cohen, dated April 13th, 2017, marked as a record of

2  Donald J. Trump, and kept or maintained by The Trump

3  Organization.

4         The ninth count pertains to an entry in the Detail

5  General Ledger for Donald J. Trump, dated June 19th, 2017,

6  bearing voucher number 858770, and kept or maintained by The

7  Trump Organization.

8         The tenth count pertains to a Donald J. Trump

9  account check and check stub dated June 19th, 2017, bearing

10 check number 002740, and kept or maintained by The Trump

11 Organization.

12        The eleventh count pertains to an invoice from

13 Michael Cohen dated May 22nd, 2017, marked as a record of

14 Donald J. Trump, and kept or maintained by The Trump

15 Organization.

16        The 12th count pertains to an entry in the Detail

17 General Ledger for Donald J. Trump, dated May 22nd, 2017,

18 bearing voucher number 855331, and kept or maintained by The

19 Trump Organization.

20        The 13th count pertains to a Donald J. Trump

21 account check and check stub dated May 23rd, 2017, bearing

22 check number 002700, and kept or maintained by The Trump

23 Organization.

24        The 14th count pertains to an invoice from Michael

25 Cohen, dated June 16th, 2017, marked as a record of Donald

4851

1  J. Trump, and kept or maintained by The Trump Organization.

2        The 15th count pertains to an entry in the Detail
3  General Ledger for Donald J. Trump, dated June 19th, 2017,
4  bearing voucher number 858772, and kept or maintained by The
5  Trump Organization.

6        The 16th count pertains to a Donald J. Trump
7  account check and check stub dated June 19th, 2017, bearing
8  check number 002741, and kept or maintained by The Trump
9  Organization.

10        The 17th count pertains to an invoice from Michael
11  Cohen dated July 11th, 2017, marked as a record of Donald J.
12  Trump, and kept or maintained by The Trump Organization.

13        The 18th count pertains to an entry in the Detail
14  General Ledger for Donald J. Trump, dated July 11, 2017,
15  bearing voucher number 861096, and kept or maintained by The
16  Trump Organization.

17        The 19th count pertains to a Donald J. Trump
18  account check and check stub dated July 11th, 2017, bearing
19  number check number 002781, and kept or maintained by The
20  Trump Organization.

21        The 20th count pertains to an invoice from Michael
22  Cohen dated August 1st, 2017, marked as a record of Donald
23  J. Trump, and kept or maintained by The Trump Organization.

24         The 21st count pertains to an entry in the Detail
25  General Ledger for Donald J. Trump, dated August 1, 2017,

A7920

Jury Charge

4852

1    bearing voucher number 863641, and kept or maintained by The
2    Trump Organization.
3           The 22nd count pertains to a Donald J. Trump
4    account check and check stub dated August 1, 2017, bearing
5    check number 002821, and kept or maintained by The Trump
6    Organization.
7           The 23rd count pertains to an invoice from Michael
8    Cohen dated September 11th, 2017, marked as a record of
9    Donald J. Trump, and kept or maintained by The Trump
10   Organization.
11          The 24th count pertains to an entry in the Detail
12   General Ledger for Donald J. Trump, dated September 11th,
13   2017, bearing voucher number 868174, and kept or maintained
14   by The Trump Organization.
15          The 25th count pertains to a Donald J. Trump
16   account check and check stub, dated September 12th, 2017,
17   bearing check number 002908, and kept or maintained by The
18   Trump Organization.
19          The 26th count pertains to an invoice from Michael
20   Cohen dated October 18th, 2017, marked as a record of Donald
21   J. Trump and kept or maintained by The Trump Organization.
22          The 27th count pertains to an entry in the Detail
23   General Ledger for Donald J. Trump, dated October 18th,
24   2017, bearing voucher number 872654, and kept or maintained
25   by The Trump Organization.

A7921

Jury Charge

4853

1          The 28th count pertains to a Donald J. Trump

2    account check and check stub dated October 18th, 2017,

3    bearing check number 002944, and kept or maintained by The

4    Trump Organization.

5          The 29th count pertains to an invoice from Michael

6    Cohen dated November 20th, 2017, marked as a record of

7    Donald J. Trump, and kept or maintained by The Trump

8    Organization.

9          The 30th count pertains to an entry in the Detail

10   General Ledger for Donald J. Trump, dated November 20, 2017,

11   bearing voucher number 876511, and kept or maintained by The

12   Trump Organization.

13         The 31st count pertains to a Donald J. Trump

14   account or check stub dated November 21st, 2017, bearing

15   check number 002980, and kept or maintained by The Trump

16   Organization.

17         The 32nd count pertains to an invoice from Michael

18   Cohen, dated December 1st, 2017, marked as a record of

19   Donald J. Trump, and kept or maintained by The Trump

20   Organization.

21         The 33rd count pertains to an entry in the Detail

22   General Ledger for Donald J. Trump, dated December 1st,

23   2017, bearing voucher number 877785, and kept or maintained

24   by The Trump Organization.

25         The 34th count is also Falsifying Business Records

Lisa Kramsky,
Senior Court Reporter

4854

1    in the First Degree, but as it pertains to a check and

2    check stub dated September 5th, 2017, bearing check number

3    003006.

4         I will now repeat for you the law pertaining to the

5    crime of Falsifying Business Records in the First Degree in

6    its entirety.

7         Under our law, a person is guilty of Falsifying

8    Business Records in the First Degree when, with intent to

9    defraud that includes an intent to commit another crime or

10   to aid or conceal the commission thereof, that person makes

11   or causes a false entry in the business records of an

12   enterprise.

13        The following terms used in that definition have a

14   special meaning:

15        "Enterprise."  "Enterprise" means any entity of one

16   or more persons, corporate or otherwise, public or private,

17   engaged in business, commercial, professional, industrial,

18   social, political or governmental activity.

19        "Business record" means any writing or article,

20   including computer data or a computer program, kept or

21   maintained by an enterprise for the purpose of evidencing or

22   reflecting its condition or activity.

23        "Intent" means conscious objective or purpose.

24   Thus, a person acts with intent to defraud when his or her

25   conscious objective or purpose is to do so.

4855

1          Intent does not require premeditation.  In other

2    words, intent does not require advance planning.  Nor is it

3    necessary that the intent be in a person's mind for any

4    particular period of time.

5          The intent can be formed, and need only exist, at

6    the very moment the person engages in prohibited conduct or

7    acts to cause the prohibited result, and not at any earlier

8    time.

9          The question naturally arises as to how to

10   determine whether a defendant had the intent required for

11   the commission of a crime.

12         To make that determination in this case, you must

13   decide whether if the required intent can be inferred beyond

14   a reasonable doubt from the proven facts.

15         In doing so, you may consider the person's conduct

16   and all of the circumstances surrounding that conduct,

17   including, but not limited to, the following:

18         What, if anything, did the person do or say; what

19   result, if any, followed the person's conduct; and was that

20   result the natural and necessary and probable consequence of

21   that conduct?

22         Therefore, in this case, from the facts you find to

23   have been proven, decide whether you can infer beyond a

24   reasonable doubt that the Defendant had the intent required

25   for the commission of this crime.

Jury Charge

4856

1        As I previously explained, a person acts with

2   intent to defraud when his or her conscious objective or

3   purpose is to do so.

4        In order to prove an intent to defraud, the People

5   need not prove that the Defendant acted with the intent to

6   defraud any particular person or entity.

7        A general intent to defraud any person or entity

8   suffices.

9        Intent to defraud is also not constricted to an

10  intent to deprive another of property or money and can

11  extend beyond economic concerns.

12       For the count of Falsifying Business Records in the

13  First Degree, the intent to defraud must include an intent

14  to commit another crime or to aid or conceal the commission

15  thereof.

16       Under our law, although the People must prove an

17  intent to commit another crime or to aid or conceal the

18  commission thereof, they need not prove that the other crime

19  was, in fact, committed, aided or concealed.

20       The People allege that the other crime that the

21  Defendant intended to commit, aid, or conceal is a violation

22  of New York Election Law Section 17-152.

23       Section 17-152 of the New York Election Law

24  provides that any two or more persons who conspire to

25  promote or prevent the election of any person to a public

4857

1  office by unlawful means, and which conspiracy is acted upon

2  by one or more of the parties thereto, shall be guilty of

3  conspiracy to promote or prevent an election.

4         Under our law, a person is guilty of such a

5  conspiracy when, with intent that conduct be performed that

6  would promote or prevent the election of a person to public

7  office by unlawful means, he or she agrees with one or more

8  persons to engage in or cause the performance of such

9  conduct.

10         Knowledge of a conspiracy does not by itself make

11  the Defendant a coconspirator.

12         The Defendant must intend that conduct be performed

13  that would promote or prevent the election of a person to

14  public office by unlawful means.

15         Intent means conscious objective or purpose.

16         Thus, a person acts with the intent that conduct be

17  performed that would promote or prevent the election of a

18  person to public office by unlawful means when his or her

19  conscious objective or purpose is that such conduct be

20  performed.

21         Evidence that the Defendant was present when others

22  agreed to engage in the performance of a crime does not by

23  itself show that he personally agreed to engage in a

24  conspiracy.

25         Although you must conclude unanimously that the

4858

1  Defendant conspired to promote or prevent the election of

2  any person to a public office by unlawful means, you need

3  not be unanimous as to what those unlawful means were.

4       In determining whether the Defendant conspired to

5  promote or prevent the election of any person to a public

6  office by unlawful means, you may consider the following

7  unlawful means:

8       Violations of the Federal Election Campaign Act,

9  otherwise known as FECA; the falsification of other business

10  records; or violations of Tax Laws.

11       The first of the People's theories of "unlawful

12  means," which I will now define for you is the Federal

13  Election Campaign Act.

14       Under the Federal Election Campaign Act, it is

15  unlawful for an individual to willfully make a contribution

16  to any candidate with respect to any election for Federal

17  office, including the office of President of the United

18  States, which exceeds a certain limit.

19       In 2015 and 2016, that limit was $2,700.

20       It is also unlawful under the Federal Election

21  Campaign Act for any corporation to willfully make a

22  contribution of any amount to a candidate or candidate's

23  campaign in connection with any Federal election, or for any

24  person to cause such a corporate contribution.

25       For purposes of these prohibitions, and expenditure

4859

1  made in cooperation, consultation or concert with, or at the

2  request or suggestion of, a candidate or his agents, shall

3  be considered to be a contribution to such candidate.

4      The terms "contribution" and "expenditure" include

5  anything of value, including any purchase, payment, loan, or

6  advance made by any person for the purpose of influencing

7  any election for Federal office.

8      Under Federal Law, a third party's payment of a

9  candidate's expenses is deemed to be a contribution to the

10  candidate unless the payment would have been made

11  irrespective of the candidacy.

12      If the payment would have been made even in the

13  absence of the candidacy, the payment should not be treated

14  as a contribution.

15      FECA's definitions of "contribution" and

16  "expenditure" do not include any costs incurred in covering

17  or carrying a news story, commentary, or editorial by a

18  magazine, periodical publication, or similar press entity,

19  so long as such activity is a normal, legitimate press

20  function.

21      This is called the Press Exemption.  For example,

22  the term "legitimate press function," includes solicitation

23  letters seeking new subscribers to a publication.

24      The People's second theory of "unlawful means,"

25  which I will define for you is the falsification of other

Lisa Kramsky,
Senior Court Reporter

4860

business records.

        Under New York Law, a person is guilty of
Falsifying Business Records in the Second Degree when with
intent to the defraud, he or she makes or causes a false
entry in a business records of an enterprise.

        I previously defined for you the terms enterprise,
business records and intent to defraud.

        For purposes of determining whether Falsifying
Business Records in the Second Degree was an "unlawful
means," used by conspiracy to promote or prevent an
election, you may consider:

        The bank records associated with Michael Cohen's
account formation paperwork for the Resolution Consultants
LLC and Essential Consultants LLC accounts;

        The bank records associated with Michael Cohen's
wire to Keith Davidson;

        The invoice from Investor Advisory Services, Inc.,
to Resolution Consultants;

        And the 1099-Miscellaneous forms that The Trump
Organization issued to Michael Cohen.

        The People's third theory of "unlawful means,"
which I will define for you, is a violation of Tax Laws.

        Under New York State and New York City Law, it is
unlawful to knowingly supply or submit materially false or
fraudulent information in connection with any tax return.

A7929

Jury Charge

4861

1           Likewise, under Federal Law, it is unlawful for a

2    person to willfully make any tax return, statement, or other

3    document that is fraudulent or false as to any material

4    matter, or that the person does not believe to be true and

5    correct as to every material matter.

6           Under these Federal, State and Local Laws, such

7    conduct is unlawful even if it does not result in

8    underpayment of taxes.

9           In order for you to find the Defendant guilty of

10    the crime of Falsifying Business Records in the First Degree

11    under count 34, the People are required to prove, from all

12    of the evidence in the case, beyond a reasonable doubt, each

13    of the following two elements:

14           First, that on or about December 5, 2017, in the

15    County of New York, and elsewhere, the Defendant,

16    personally, or by acting in concert with another person or

17    persons, made or caused a false entry in the business

18    records of an enterprise, specifically, a Donald J. Trump

19    account check and check stub dated December 5th, 2017,

20    bearing check number 003006, and kept or maintained by The

21    Trump Organization;

22           And that the Defendant did so with intent to

23    defraud that included an intent to commit another crime or

24    to aid or conceal the commission thereof.

25           If you find the People have proven beyond a

Jury Charge

4862

1    reasonable doubt both of those elements, you must find the
2    Defendant guilty of this crime.
3            If you find the People have not proven beyond a
4    reasonable doubt either one or both of these elements, you
5    must find the Defendant not guilty of this crime.
6            Let me now explain motive, and in particular, the
7    difference between motive and intent.
8            Intent means conscious objective or purpose.  Thus,
9    a person commits a crime -- a criminal act with intent, when
10   that person's conscious objective or purpose is to engage in
11   the act which the law forbids or to bring about an unlawful
12   result.
13           Motive, on the other hand, is the reason why a
14   person chooses to engage in criminal conduct.
15           If intent is an element of a charged crime, that
16   element must be proved by the People beyond a reasonable
17   doubt.
18           In this case, intent is, as I have explained, an
19   element of the crime of Falsifying Business Records in the
20   First Degree.
21           Motive, however, is not an element of the crimes
22   charged.
23           Therefore, the People are not required to prove a
24   motive for the commission of the charged crimes.
25           Nevertheless, evidence of a motive, or evidence of

A7931

Jury Charge

4863

1  the lack of a motive, may be considered by the jury.

2          For example, if you find from the evidence that the

3  Defendant had a motive to commit the crime charged, that is

4  a circumstance you may wish to consider as tending to

5  support a finding of guilt.

6          On the other hand, if the proof establishes that

7  the Defendant had no motive to commit the crime charged,

8  that is a circumstance you may wish to consider as tending

9  to establish that the Defendant is not guilty of a charged

10 crime.

11         Your verdict, on each count you consider, whether

12 guilty or not guilty, must be unanimous, that is, each and

13 every juror must agree to it.

14         To reach a unanimous verdict, you must deliberate

15 with the other jurors.

16         That means, you should discuss the evidence and

17 consult with each other, listen to each other, give each

18 other's views careful consideration, and reason together

19 when considering the evidence.

20         And when you deliberate, you should do so with a

21 view towards reaching an agreement, if that can be done

22 without surrendering individual judgment.

23         Each of you must decide the case for yourself, but

24 only after a fair and impartial consideration of the

25 evidence with the other jurors.

4864

1          You should not surrender an honest view of the

2    evidence simply because you want the trial to end, or

3    because you are out voted.

4          At the same time, you should not hesitate to

5    re-examine your views and change your mind, if you become

6    convinced that your position was not correct.

7          Some jurors took notes.  Any notes taken are only

8    an aid to your memory and must not take precedence over your

9    independent recollection.

10          Those jurors who chose not to take notes must rely

11    on their own independent recollection and must not be

12    influenced by any notes that another juror may have taken.

13           Any notes you took are only for your own personal

14    use in refreshing your recollection.

15          A juror's notes are not a substitute for the

16    recorded transcript of the testimony or for any exhibit

17    received in evidence.

18          If there is a discrepancy between a juror's

19    recollection and his or her notes regarding the evidence,

20    you should ask to have the relevant testimony read back or

21    the exhibit produced in the jury room.

22          In addition, a juror's notes are not a substitute

23    for the detailed explanation I have given you of the

24    principles of law that govern this case.

25          If there is a discrepancy between a juror's

4865

1  recollection and his or her notes regarding those

2  principles, you should ask me to explain those principles

3  again, and I'll do so.

4       You may see any or all of the exhibits that were

5  received in evidence.

6       Simply write me a note telling me which exhibit or

7  exhibits you want to see.

8       You may also have the testimony of any witness read

9  back to you in whole or in part.

10      Again, if you want a read back, write me a note

11 telling me what testimony you wish to hear.

12      If you are interested in hearing only a portion of

13 a witness' testimony, please specify in your note which

14 witness and, with as much detail as possible, which part of

15 the testimony it is that you want to hear.

16      Of course, when testimony is read back, questions

17 to which an objection was sustained and material otherwise

18 struck from the record is not read back.

19      If you have a question on the law, write me a note

20 specifying what you want me to review with you.

21      Under our law, the first juror selected is known as

22 the foreperson.

23      During deliberations, the foreperson's opinion and

24 vote are not entitled to any more importance than that of

25 any other juror.

4866

1          What we ask the foreperson to do during
2    deliberations is we ask you to sign any written note that
3    the jury sends to the Court.
4          The foreperson does not have to write the note or
5    even agree with its contents.
6          The foreperson's signature indicates only that the
7    writing does, in fact, come from the jury.
8          The foreperson may also chair the jury's
9    discussions during deliberations.
10          When the jury has reached a verdict, guilty or not
11    guilty, the entire jury will be asked to come into court.
12           The foreperson will be asked whether the jury has
13    reached a verdict.
14          And if the foreperson says, yes, the foreperson
15    will then be asked what the verdict is for each of the
16    charged counts.
17          After that, the entire jury will be asked whether
18    that is their verdict and will answer yes or no.
19          Finally, upon the request of the party, each juror
20    will be asked individually, whether the announced verdict is
21    the verdict of that juror, and upon being asked, each juror
22    will answer yes or no.
23          I will give you a form known as a verdict sheet.
24    The verdict sheet lists each count submitted for your
25    consideration and the possible verdicts.

A7935

Jury Charge

4867

1      Please use the form to record your verdict with an
2  "X" or a check mark in the appropriate place.
3      In addition to listing the counts, I have added
4  some additional language on the verdict sheet in order to
5  distinguish the counts.
6      You will notice that I have indicated whether a
7  count pertains to an invoice, a voucher or a check.
8      For the invoices, I have added the date and for the
9  vouchers and checks I have added the number.
10      The sole reason for doing this is to help you
11  distinguish between the various counts.
12      It is not a substitute for my full instructions on
13  the meaning and elements of each charge, and it should not
14  discourage you from asking me to define a crime again if a
15  question about it arises.
16      Finally, there are a few remaining rules which you
17  must observe during your deliberations.
18      First, while you are here in the courthouse,
19  deliberating on the case, you will be kept together in the
20  jury room.
21      You may not leave the jury room during
22  deliberations.
23      Lunch, of course, be provided.
24      If you have a cell phone or other electronic
25  device, please give it to a court officer or the sergeant to

Lisa Kramsky,
Senior Court Reporter

4868

1    hold for you while you are engaged in deliberations.

2          You must deliberate about the case only when you

3    are all gathered together in the jury room.

4          You must not, for example, discuss the case as you

5    go to and from the courtroom.

6          It is important that each juror have the

7    opportunity to hear whatever another juror has to say about

8    the case, and that by law must only be done when you are all

9    gathered together in the jury room.

10          Thus, if for any reason, all 12 of you are not

11    gathered together in the jury room, please stop deliberating

12    until you are all present.

13          During your deliberations, you must discuss the

14    case only among yourselves; you must not discuss the case

15    with anyone else, including a court officer, and you must

16    not permit anyone other than a fellow juror to discuss the

17    case in your presence.

18          If you have a question or request, you must

19    communicate with me by writing a note, which you will give

20    to me -- which you will give to a court officer to give to

21    me.

22          The law requires that you communicate with me in

23    writing, in part, to make sure that there are no

24    misunderstandings.

25          At this time, the plan is to work today until 4:30.

4869

 1   We will figure out the other days going forward.

 2          It is unlikely, however, that even if we do work

 3   late that we would work beyond 6:00 on any night.

 4          I should explain that, under our law, I am not

 5   permitted to have a conversation about the facts of the

 6   case, or a possible verdict, or the vote of the jury on any

 7   count, with any one juror, or group of jurors, or even all

 8   of the jurors.

 9          Thus, in any note that you send to me, do not tell

10   me what the vote of the jury is on any count.

11          If a juror wants to speak to me during

12   deliberations, a meeting here in the courtroom with the

13   parties will be arranged.

14          No juror, however, can tell me what is being said

15   about the facts of the case, or a possible verdict, or what

16   the vote of any juror or the jury is on any count.

17          And, while I will, of course, listen to whatever a

18   juror has to say that does not involve those subjects, I may

19   not be able to respond to that juror if the response

20   involves instructions on the law.

21          I may be required to call into court the entire

22   jury and respond by speaking to the entire jury.

23          The reason for that is that our law wants to make

24   sure that each and every juror hears, at exactly the same

25   time, whatever I have to say about the law, and our law

4870

1   wants to make sure that the jury hears those instructions

2   from me and not from another juror.

3           That concludes my instructions on the law.

4            Counsel, please approach, with the court reporter.

5           (At Side Bar.)

6   ******

7           THE COURT:  Are there any objections or exceptions?

8           MR. STEINGLASS:  Just one thing.  Just one minor

9   thing.

10          THE COURT:  Are there any exceptions to the charge?

11          MR. STEINGLASS:  No.

12          MR. BOVE:  No, Judge.

13          Other than to preserve the ones that we made, to

14  the extent that it differs from our requests and what we

15  raised in the charge conference.

16          MR. STEINGLASS:  One thing is that, Judge, I'm

17  sorry I didn't notice this earlier, that we asked that when

18  the foreperson signs the notes, can we make it clear that he

19  does that with his juror number and not his actual name?

20          THE COURT:  I think I made clear that Juror Number

21  1 is the foreperson.

22          MR. STEINGLASS:  No, I know.

23          THE COURT:  You mean to sign it with his juror

24  number instead of his name?

25          MR. STEINGLASS:  To sign it with his juror number,